SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
JEFFREY S. CROWE, Cal. Bar No. 216055
650 Town Center Drive, 10th Floor
Costa Mesa, California 92626
Telephone:    714.513.5100
Facsimile:    714.513.5130
Email:        jcrowe@sheppardmullin.com

SCOTT SVESLOSKY, Cal. Bar No. 217660
MARY E. GREGORY, Cal. Bar No. 210247
350 S. Grand Ave., 40th Floor
Los Angeles, California 90071-3460
Telephone:    213.620.1780
Facsimile:    213.620.1398
Email:        ssveslosky@sheppardmullin.com
              mgregory@sheppardmullin.com

Attorneys for Defendant
LIBERTY INSURANCE CORPORATION

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION**

| | |
|---|---|
| RLC INDUSTRIES CO. and ROSEBURG FOREST PRODUCTS CO., <br><br> Plaintiffs, <br><br> v. <br><br> LIBERTY INSURANCE CORPORATION, EVEREST NATIONAL INSURANCE COMPANY, and THE OHIO CASUALTY INSURANCE COMPANY, <br><br> Defendants. | Case No. 2:23-cv-00649-TLN-SCR <br><br> Assigned to the Hon. Troy L. Nunley and Magistrate Judge Sean C. Riordan <br><br> **COMPENDIUM OF EXHIBITS IN SUPPORT OF DEFENDANT LIBERTY INSURANCE CORPORATION'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT** <br><br> **VOLUME 1 OF 2 (EXHIBITS 1 – 20)** <br><br> Date:      February 6, 2025 <br> Time:      2:00 p.m. <br> Place:     Courtroom 2, 15th Floor |

SMRH:4925-9171-3029.3
COMPENDIUM OF EXHIBITS IN SUPPORT OF LIBERTY'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT

Defendant Liberty Insurance Corporation ("Liberty") hereby submits the following Compendium of Evidence in support of its Motion for Summary Judgment, or Alternatively, Partial Summary Judgment:

| EXHIBIT NO. | DESCRIPTION | PAGE NOS. |
|---|---|---|
| 1. | Certified copy of Liberty Commercial General Liability Policy No. TB7-661-067089-031 issued to RLC Industries Co. | 1-127 |
| 2. | Copy of Ohio Casualty Insurance Company Policy No. ECO (22) 60 07 79 06 issued to RLC Industries | 1-34 |
| 3. | *Smith v. Roseburg Forest Products Co.*, Siskiyou County Superior Court Case No. CV PO 22-951 (filed September 6, 2022)<br>        Removed to the United States District Court, Eastern District of California, Case No. 2:22-cv-01763 | 1-4 |
| 4. | *Hammond, et al. v. Roseburg Forest Products Co.*, Sacramento County Superior Court Case No. 34-2022-00326413-CU-NP-GDS (filed September 8, 2022)<br>        Removed to the United States District Court, Eastern District of California, Case No. 2:22-cv-01767 | 1-12 |
| 5. | *Candasa v. Roseburg Forest Products Co.*, San Francisco County Superior Court Case No. CGC-22-601752 (filed September 13, 2022)<br>        Removed to the United States District Court, Northern District of California, Case No. 4:22-cv-05778 | 1-10 |
| 6. | *Robert Davies v. Roseburg Forest Products Co.*, San Francisco County Superior Court Case No. CGC-22-602159 (filed October 4, 2022) | 1-21 |

| EXHIBIT NO. | DESCRIPTION | PAGE NOS. |
|---|---|---|
| | Removed to the United States District Court, Northern District of California, Case No. 3:22-cv-05780 | |
| 7. | *Dorothy Dixon, et al., v. Roseburg Forest Products Co., Benjamin Hornsby and Jeffery Lee,* San Francisco County Superior Court Case No. CGC-22-602896 (filed November 18, 2022) | 1-20 |
| 8. | Baker-Roseburg Retention Letter dated September 6, 2022 | 1-10 |
| 9. | Letter from BakerHostetler ("Baker") to Liberty dated September 7, 2022 | 1-7 |
| 10. | Email from Steve Hurley to Sarah Kaufman dated September 8, 2022 | 1-2 |
| 11. | Letter from Baker to Liberty dated September 9, 2022 | 1-14 |
| 12. | Letter from Baker to Liberty dated September 12, 2022 | 1-6 |
| 13. | AlixPartners-Roseburg Retention Letter dated September 12, 2022 | 1-9 |
| 14. | Email from Sarah Kaufman to David Bona dated September 13, 2022 | 1 |
| 15. | Letter from Baker to Liberty dated September 14, 2022 | 1-12 |
| 16. | Emails between Sarah Kaufman and David Bona dated September 22, 2022 | 1-3 |
| 17. | Letter from Liberty to Baker dated September 22, 2022 | 1-11 |
| 18. | Emails between Sarah Kaufman and David Bona dated September 27, 2022 and attachments | 1-4 |
| 19. | Emails between Sarah Kaufman and David Bona dated September 28, 2022 | 1-2 |
| 20. | Letter from Baker to Liberty dated October 5, 2022 | 1-23 |
| 21. | Email from Sarah Kaufman to David Bona dated October 5, 2022 | 1-2 |

| EXHIBIT NO. | DESCRIPTION | PAGE NOS. |
|---|---|---|
| 22. | Email from David Bona to Sarah Kaufman dated October 5, 2022 | 1 |
| 23. | Letter from Scott DeVries and Rachel Hudgins of Hunton Andrews Kurth to Sarah Kaufman and Phil Meagher of Liberty dated October 7, 2022 | 1-36 |
| 24. | Email from David Bona to Victoria Weatherford dated October 12, 2022 | 1 |
| 25. | Emails between David Bona and Victoria Weatherford dated October 19, 2022 | 1-6 |
| 26. | Email from Victoria Weatherford to Dustin Dow dated October 19, 2022; Spreadsheet of Baker Fees and Costs billed | 1-9 |
| 27. | Letter from Scott DeVries and Rachel Hudgins to Sarah Kaufman and the other carrier adjusters in Roseburg's insurance tower dated October 19, 2022 | 1-18 |
| 28. | Email from Robert Julian to James Frantz dated October 24, 2022 (BH00024348) | 1-3 |
| 29. | Letter from Jeffrey Crowe of Sheppard Mullin to Scott DeVries and Rachel Hudgins dated October 25, 2022 | 1-5 |
| 30. | Letter from Mary Gregory of Sheppard Mullin to Scott DeVries and Rachel Hudgins dated November 9, 2022 | 1-13 |
| 31. | Letter from Mary Gregory to Scott DeVries and Rachel Hudgins dated November 22, 2022 | 1-8 |
| 32. | Email from Scott DeVries and Rachel Hudgins to Sarah Kaufman dated November 22, 2022 | 1-6 |
| 33. | Letter from Baker to Liberty dated November 22, 2022 | 1-22 |
| 34. | Emails between Sarah Kaufman and David Bona dated November 28, 2022 | 1-2 |

-4-

| EXHIBIT NO. | DESCRIPTION | PAGE NOS. |
|---|---|---|
| 35. | Emails between David Bona and Victoria Weatherford of Baker dated November 28, 2022 | 1-2 |
| 36. | Emails between David Bona and Sarah Kaufman dated November 30, 2022 and December 1, 2022 | 1-2 |
| 37. | Email from Rachel Hudgins to David Bona dated December 1, 2022 | 1-3 |
| 38. | Email from Mary Gregory to Scott DeVries and Rachel Hudgins dated December 1, 2022 | 1-7 |
| 39. | Letter from Scott DeVries and Rachel Hudgins to Mary Gregory dated December 21, 2022 | 1-6 |
| 40. | Emails between Scott DeVries, Mary Gregory and David Bona dated December 5, 2022 | 1-4 |
| 41. | Email from Scott DeVries to David Bona dated December 14, 2022 | 1-6 |
| 42. | Email from Rachel Hudgins to Sarah Kaufman and the other carrier adjusters in Roseburg's insurance tower dated January 6, 2023 | 1-2 |
| 43. | Letter from Mary Gregory to Matthew Lawless of Roseburg dated January 24, 2023 | 1-7 |
| 44. | Emails between Rachel Hudgins, Sarah Kaufman and the other carrier adjusters in Roseburg's insurance tower and Mary Gregory dated January 25, 2023 and January 26, 2023 | 1-4 |
| 45. | Letter from Mary Gregory to Matthew Lawless of Roseburg dated February 9, 2023 | 1-7 |
| 46. | Email from Rachel Hudgins to Chris Faddis and the carrier adjusters in Roseburg's insurance tower dated March 24, 2023 | 1-5 |

-5-

| EXHIBIT NO. | DESCRIPTION | PAGE NOS. |
|---|---|---|
| 47. | Emails between Scott DeVries and Jeffrey Crowe dated June 21, 2023 | 1-2 |
| 48. | Letter from Scott DeVries and Rachel Hudgins to Jeffrey Crowe, Mary Gregory and Frank Falzetta dated December 19, 2023 | 1-10 |
| 49. | Complaint filed by RLC Industries Co. and Roseburg Forest Products Co. on April 7, 2023 (ECF 1) | 1-340 |
| 50. | Court's Minute Order Dismissing Ohio Casualty Insurance Company With Prejudice dated August 7, 2023 (ECF 28) | 1-2 |
| 51. | Liberty's Requests for Production of Documents to Roseburg Forest Products, Co. dated July 18, 2023 | 1-7 |
| 52. | Liberty's Requests for Production of Documents to RLC Industries Co. dated July 18, 2023 | 1-7 |
| 53. | Roseburg Forest Products Co.'s Responses to Liberty's First Set of Interrogatories dated September 20, 2023 | 1-21 |
| 54. | RLC Industries Co.'s Responses to Liberty's First Set of Interrogatories dated September 20, 2023 | 1-21 |
| 55. | Liberty's Subpoena to BakerHostetler dated January 24, 2024 | 1-12 |
| 56. | Roseburg Forest Products Co.'s Responses to Liberty's Second Set of Requests for Admissions dated April 22, 2024 | 1-12 |
| 57. | Liberty's Subpoena to AlixPartners dated October 9, 2024 | 1-5 |
| 58. | Excerpts from the deposition of Baker and Robert Julian taken in this matter on May 30, 2024 | 1-66 |
| 59. | Excerpts from the deposition of Roseburg taken in this matter on April 26 and 29, 2024 | 1-125 |
| 60. | Excerpts from the deposition of David Frangiamore taken in this matter on October 10, 2024 | 1-111 |

-6-

| EXHIBIT NO. | DESCRIPTION | PAGE NOS. |
|---|---|---|
| 61. | Excerpts from the deposition of Merri Baldwin taken in this matter on November 5, 2024 | 1-137 |
| 62. | Excerpts from the deposition of Robert McEvoy taken in this matter on November 13, 2024 | 1-8 |

Dated:  December 12, 2024          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By      _____
                        /s/ Jeffrey S. Crowe
                    JEFFREY S. CROWE
                    SCOTT SVESLOSKY
                    MARY E. GREGORY
                    Attorneys for Defendant
                    LIBERTY INSURANCE CORPORATION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SMRH:4925-9171-3029.3          COMPENDIUM OF EXHIBITS IN SUPPORT OF LIBERTY'S MOTION FOR SUMMARY
JUDGMENT, OR ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT

EXHIBIT 1

EXHIBIT 1

EXHIBIT 1

# POLICY CERTIFICATION FORM

**RE: NAMED INSURED: RLC INDUSTRIES CO**

**POLICY NUMBER:** TB7-661-067089-031

**EFFECTIVE DATES: 11-01-2021 TO 11-01-2022**

☒ **I certify this is to be a true copy of the original policy issued.**

☐ **I certify this is to be a true copy of the original Declarations page issued.**

☐ **I certify this is to be a true copy of the original Uninsured/Underinsured**

**Motor Rejection and/or the Personal Injury Rejection form(s).**

☐ **This policy was retrieved from Liberty Mutual's files and is Liberty Mutual's best Current evidence of the policy. Liberty Mutual, however, reserves the right to Supplement or amend this policy should further or different terms, conditions, Endorsements, or exclusions become known. Liberty Mutual does not acknowledge that this is a certified copy of the policy, or that it is the exact copy of the policy that was delivered to the insured.**

**LIBERTY MUTUAL RESERVES THE RIGHT TO FURTHER AMEND OR SUPPLEMENT THIS POLICY SHOULD ANY ADDITIONAL TERMS, CONDITIONS OR EXCLUSIONS COME TO OUR ATTENTION.**

*Lisa Donohue*

**Lisa Donohue, Business Operations Manager**
**004175-3325Central Processing Operations**
**Commercial Insurance**
**4Liberty Mutual Insurance**
**Lewiston, Maine**

**Date:**     09-09-2022

LIC0016560

Exhibit 1, Page 001

RLC Industries Co.
3660 Gateway St
Springfield OR 97477

**CNI 90 04 01 12**
Insured

LIC0016561

Exhibit 1, Page 002

ALLIANT INSURANCE SERVICES INC
805 SW BROADWAY STE 480
PORTLAND OR 97205-3300

**CNI 90 05 01 12**
Producer

LIC0016562

Exhibit 1, Page 003

Policy Number    TB7-661-067089-031
Issued by        Liberty Insurance Corporation

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

Change Endorsement

Named Insured                                          Endorsement number
RLC Industries Co.                                     001

The following changes are effective as of the effective dates shown below and will terminate with the policy.  All other provisions of the policy remain unchanged.

**Change Description**

Effective Date:    12/27/2021

The following form(s) are added:

Additional Insured - Designated Person Or Organization, Form CG 20 26 12 19

Waiver Of Transfer Of Rights Of Recovery Against Others To Us, Form CG 24 04 12 19

Notice Of Cancellation To Third Parties, Form LIM 99 01 05 11

Issued:  01/05/2021 SMB

IC 99 99 07 09          © 2008, Liberty Mutual Group of Companies.  All rights reserved.          Page 1 of 1

LIC0016563

POLICY NUMBER: TB7-661-067089-031

**COMMERCIAL GENERAL LIABILITY**
**CG 20 26 12 19**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s): |
|---|
| American AgCredit, PCA, as Agent for the Lenders under the Loan and Security Agreement |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**1.** In the performance of your ongoing operations; or

**2.** In connection with your premises owned by or rented to you.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable limits of insurance;

whichever is less.

This endorsement shall not increase the applicable limits of insurance.

**CG 20 26 12 19**          © Insurance Services Office, Inc., 2018          **Page 1 of 1**

POLICY NUMBER: TB7-661-067089-031

**COMMERCIAL GENERAL LIABILITY**
**CG 24 04 12 19**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US (WAIVER OF SUBROGATION)

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    ELECTRONIC DATA LIABILITY COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART DESIGNATED SITES
    POLLUTION LIABILITY LIMITED COVERAGE PART DESIGNATED SITES
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART
    UNDERGROUND STORAGE TANK POLICY DESIGNATED TANKS

**SCHEDULE**

| Name Of Person(s) Or Organization(s): |
| --- |
| American AgCredit, PCA, as Agent for the Lenders under the Loan and Security Agreement |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** of **Section IV – Conditions:**

We waive any right of recovery against the person(s) or organization(s) shown in the Schedule above because of payments we make under this Coverage Part. Such waiver by us applies only to the extent that the insured has waived its right of recovery against such person(s) or organization(s) prior to loss. This endorsement applies only to the person(s) or organization(s) shown in the Schedule above.

**CG 24 04 12 19**       © Insurance Services Office, Inc., 2018       **Page 1 of 1**

Policy Number  TB7-661-067089-031
Issued by  Liberty Insurance Corporation

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**NOTICE OF CANCELLATION TO THIRD PARTIES**

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE PART
MOTOR CARRIER COVERAGE PART
GARAGE COVERAGE PART
TRUCKERS COVERAGE PART
EXCESS AUTOMOBILE LIABILITY INDEMNITY COVERAGE PART
SELF-INSURED TRUCKER EXCESS LIABILITY COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
COMMERCIAL LIABILITY – UMBRELLA COVERAGE FORM

|   |   |   |
|---|---|---|
| **Schedule** | | |
| **Name of Other Person(s) / Organization(s):** | **Email Address or mailing address:** | **Number Days Notice:** |
| American AgCredit, PCA, as Agent for the Lenders under the Loan and Security Agreement | 5560 South Broadway Eureka CA 95503 | 30 |
|   |   |   |
|   |   |   |

A.  If we cancel this policy for any reason other than nonpayment of premium, we will notify the persons or organizations shown in the Schedule above.  We will send notice to the email or mailing address listed above at least 10 days, or the number of days listed above, if any, before the cancellation becomes effective.  In no event does the notice to the third party exceed the notice to the first named insured.

B.  This advance notification of a pending cancellation of coverage is intended as a courtesy only. Our failure to provide such advance notification will not extend the policy cancellation date nor negate cancellation of the policy.

All other terms and conditions of this policy remain unchanged.

**LIM 99 01 05 11**          © 2011 Liberty Mutual Group of Companies. All rights reserved.          Page 1 of 1
Includes copyrighted material of Insurance Services Office, Inc., with
its permission.

RLC Industries Co.
3660 Gateway St
Springfield OR 97477

**CNI 90 04 01 12**
Insured

LIC0016567

ALLIANT INSURANCE SERVICES INC
805 SW BROADWAY STE 480
PORTLAND OR 97205-3300

**CNI 90 05 01 12**
Producer

LIC0016568

Exhibit 1, Page 009

Policy Number     TB7-661-067089-031
Issued by         Liberty Insurance Corporation

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

Change Endorsement

Named Insured                                    Endorsement number
RLC Industries Co.                               002

The following changes are effective as of the effective dates shown below and will terminate with the policy.  All other provisions of the policy remain unchanged.

**Change Description**

Effective Date:   12/27/2021

Waiver Of Transfer Of Rights Of Recovery Against Others To Us, Form CG 24 04 12 19, previously attached to Endorsement Number 001, is deleted and replaced with Form CG 24 04 12 19.

Issued:  01/31/2022 JJS

LIC0016569

CTRL00000109_0003

Exhibit 1, Page 010

POLICY NUMBER: TB7-661-067089-031

**COMMERCIAL GENERAL LIABILITY**
**CG 24 04 12 19**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US (WAIVER OF SUBROGATION)

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> ELECTRONIC DATA LIABILITY COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART DESIGNATED SITES
> POLLUTION LIABILITY LIMITED COVERAGE PART DESIGNATED SITES
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART
> UNDERGROUND STORAGE TANK POLICY DESIGNATED TANKS

**SCHEDULE**

| Name Of Person(s) Or Organization(s): |
|---|
| American AgCredit, PCA, as the Agent, and the other Secured Parties under the Loan and Security Agreement |

| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |
|---|

The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** of **Section IV – Conditions:**

We waive any right of recovery against the person(s) or organization(s) shown in the Schedule above because of payments we make under this Coverage Part. Such waiver by us applies only to the extent that the insured has waived its right of recovery against such person(s) or organization(s) prior to loss. This endorsement applies only to the person(s) or organization(s) shown in the Schedule above.

**CG 24 04 12 19**          © Insurance Services Office, Inc., 2018          **Page 1 of 1**

Policy Number  TB7-661-067089-031
Issued by Liberty Insurance Corp.

## PARTICIPATING PROVISION

You may be eligible to participate in the distribution of surplus funds of the company through any dividends that may be declared for this policy.  A declaration or payment of dividends is not guaranteed.  The amount of any dividends that may be declared shall be to the extent, and upon the conditions fixed and determined by the Board of Directors and in compliance with any laws that  apply.

**In witness whereof**, the company has caused this policy to be signed by its President and its Secretary.

**SECRETARY**            **PRESIDENT**

LIC0016571

CTRL00000110_0001

Exhibit 1, Page 012

**COMMERCIAL GENERAL LIABILITY DECLARATIONS**
**OCCURRENCE**



Issued By Liberty Insurance Corp.

| | | | |
|---|---|---|---|
| Policy Number | TB7-661-067089-031 | Issuing Office | PORTLAND, OR-LN |
| Renewal Of | TB7-661-067089-030 | Issue Date | 2021-11-08 |
| Account Number | 6-067089 | Sub Account | 0000 |

Named Insured and Mailing Address
RLC Industries Co.
3660 Gateway St
Springfield OR 97477

Form of Business:  Corporation

Policy Period: The policy period is from 11/01/2021  to 11/01/2022 12:01 A.M. standard time at the Insured's mailing address.

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

### LIMITS OF INSURANCE

| | | | |
|---|---|---|---|
| Each Occurrence Limit | $ | 2,000,000 | |
| Damage to Premises Rented to You Limit | $ | 1,000,000 | Any one premises |
| Medical Expense Limit | $ | 5,000 | Any one person |
| Personal & Advertising Injury Limit | $ | 2,000,000 | |
| General Aggregate Limit | $ | 4,000,000 | |
| Products-Completed Operations Aggregate Limit | $ | 4,000,000 | |

### SCHEDULE

The declarations are completed on the accompanying "Declarations Extension Schedule(s)".

| | | |
|---|---|---|
| Commercial General Liability Coverage Part Premium | $ | 524,343 |
| | | |
| Total Estimated Premium | $ | 524,343 |
| Other Charge(s) | $ | |

Policywriting Minimum Premium   $  1,250

Forms Applicable:  See Attached Inventory

AON RISK  0002005277
AON RISK INS SERVICES WEST INC
PO BOX 19640

IRVINE CA 926239640

**LC 00 04 08 12**            © 2012 Liberty Mutual Insurance. All rights reserved.            **Page 1 of 1**
Includes copyrighted material of Insurance Services Office, Inc. with
its permission.

LIC0016572

CTRL00000110_0002

Exhibit 1, Page 013

**DECLARATIONS EXTENSION SCHEDULE – CLASSIFICATION DESCRIPTIONS**

Policy Number   TB7-661-067089-031

| Class Code | Description |
|---|---|
| 20350 | Manufacturers - Not Food, Beverage or Drug (Low) |

© 2012 Liberty Mutual Insurance. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with
its permission.
**Page 1 of 1**

LIC0016573

CTRL00000110_0003

Exhibit 1, Page 014

**DECLARATIONS EXTENSION SCHEDULE**
**-- COMPOSITE RATED COVERAGES --**

Policy Number   TB7-661-067089-031

| Description | Premium Basis | | Rates | | Premium |
|---|---|---|---|---|---|
| All Operations of the Named Insured | Sales | 1,637,238,000 | Per 1000 | 0.3100 | $507,543 |
| Variable Expense | | | | | $16,800 |
| **Adjustment to Liquor Liability minimum** | | | | | **$250** |
| **TOTAL** | | | | | **$524,343** |

LIC0016574

CTRL00000110_0004

Exhibit 1, Page 015

Policy Number  TB7-661-067089-031
Issued by Liberty Insurance Corp.

## Inventory
## Coverage Forms/Parts, Endorsements, Enclosures

COVERAGE FORMS/PARTS, ENDORSEMENTS AND ENCLOSURES FORMING A PART OF THIS POLICY AT INCEPTION:

**Form Number/Edition Date**        **Title**

**COMMON POLICY FORMS**

| Form Number/Edition Date | Title |
|---|---|
| LIL 90 05 06 13 | PARTICIPATING PROVISION |
| LC 00 04 08 12 | COMMERCIAL GENERAL LIABILITY DECLARATIONS |
| LCS 00 01 05 12 | DECLARATIONS EXTENSION SCHEDULE - CLASSIFICATION DESCRIPTIONS |
| LCS 00 02 05 12 | DECLARATIONS EXTENSION SCHEDULE |
| IC 00 42 07 09 | Inventory Coverage Forms/Parts, Endorsements, Enclosures |
| IC0017 11-93 | Countersignature Endorsement |
| IL 00 17 11 98 | Common Policy Conditions |
| IL 02 79 09 08 | Oregon Changes - Cancellation And Nonrenewal |

**COMMERCIAL GENERAL LIABILITY**

| | |
|---|---|
| CG 00 01 04 13 | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |

**Named Insured**

| | |
|---|---|
| LC 99 40 09 17 | Broad Form Named Insured-Majority Interest |

**Deductible**

| | |
|---|---|
| LC 03 02 06 05 | Deductible - Damages and Supplementary Payments |

**Composite Rate**

| | |
|---|---|
| LC 99 12 08 17 | COMPOSITE RATE |

**Coverage Endorsement(s)**

| | |
|---|---|
| CG 02 24 10 93 | Earlier Notice of Cancellation Provided By Us |
| CG 04 35 12 07 | Employee Benefits Liability Coverage |
| CG 20 01 12 19 | PRIMARY AND NONCONTRIBUTORY - OTHER INSURANCE CONDITION |
| CG 22 64 04 13 | PESTICIDE OR HERBICIDE APPLICATOR - LIMITED POLLUTION COVERAGE |
| CG 24 08 10 93 | Liquor Liability |
| CG 24 12 11 85 | BOATS |
| CG 24 17 10 01 | Contractual Liability - Railroads |
| LC 04 01 06 05 | Reasonable Force |

IC 00 42 07 09        © 2008, Liberty Mutual Group of Companies.  All rights reserved.        Page  1 of  3

LIC0016575

| Form Number/Edition Date | Title |
|---|---|
| LC 04 02 01 17 | PROFESSIONAL HEALTH CARE SERVICES BY EMPLOYEES OR VOLUNTEER WORKERS COVERAGE |
| LC 04 27 10 11 | BROADENED DAMAGE TO PREMISES RENTED TO YOU COVERAGE |
| LC 04 46 01 17 | COMMERCIAL GENERAL LIABILITY ENHANCEMENT FOR MANUFACTURERS |
| LC 20 61 01 17 | COMMERCIAL GENERAL LIABILITY ADDITIONAL INSURED ENHANCEMENT FOR MANUFACTURERS |
| LC 25 13 08 08 | Non-Cumulation of Liability (Same Occurrence) |
| LC 29 04 08 08 | Personal and Advertising Injury - Definition of Publication |
| LC 29 06 08 08 | Personal and Advertising Injury - Occurrence Redefined |
| LC 29 08 10 11 | Advertisement Redefined |
| LC 29 09 10 11 | BODILY INJURY REDEFINED |
| LC 99 02 01 17 | KNOWLEDGE OF OCCURRENCE OR OFFENSE |
| LC 99 36 02 13 | PREMIUM RESPONSIBILITY ENDORSEMENT |
| LIM 99 01 05 11 | NOTICE OF CANCELLATION TO THIRD PARTIES |
| LC 99 39 10 13 | Joint Venture or Partnership |
| LC 04 48 10 13 | Manufacturers Errors and Omissions |
| LD 04 16 07 11 | Loggers Property Damage Liability Coverage - Manuscript |
| LC 24 18 10 13 | Limited Unintentional Discrimination Coverage |

**Additional Insured(s)**

| | |
|---|---|
| CG 20 26 12 19 | ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION |

**TRIA Exclusion(s)**

| | |
|---|---|
| CG 21 73 01 15 | EXCLUSION OF CERTIFIED ACTS OF TERRORISM |
| CG 26 88 01 15 | ALASKA EXCLUSION OF CERTIFIED ACTS OF TERRORISM |

**Other Exclusion(s)**

| | |
|---|---|
| CG 21 06 05 14 | EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION |
| CG 21 47 12 07 | Employment-Related Practices Exclusion |
| CG 21 65 12 04 | Total Pollution Exclusion With a Building Heating, Cooling and Dehumidifying Equipment Exception and a Hostile Fire Exception |
| IL 00 21 09 08 | Nuclear Energy Liability Exclusion Endorsement (Broad Form) |
| LC 21 01 06 05 | Asbestos Exclusion Endorsement |
| LC 21 02 06 05 | Silica Exclusion Endorsement |
| LC 21 91 09 12 | FUNGI OR BACTERIA EXCLUSION (LEGIONELLA BACTERIUM EXCLUDED) |

**State Mandatory**

| | |
|---|---|
| IL 01 42 09 08 | Oregon Changes - Domestic Partnership |
| IL 01 99 09 08 | Arkansas Changes - Transfer Of Rights Of Recovery Against Others To Us |

LIC0016576

CTRL00000110_0006

Exhibit 1, Page 017

**Form Number/Edition Date**      **Title**

**NOTICE(S) TO POLICYHOLDER**

SNI 04 01 12 20          LIBERTY MUTUAL GROUP CALIFORNIA PRIVACY NOTICE
SNI 90 01 12 18          POLICYHOLDER NOTICE - COMPANY CONTACT INFORMATION
SNI 90 02 01 20          TERRORISM RISK INSURANCE ACT

LIC0016577

CTRL00000110_0007

Exhibit 1, Page 018

Policy Number TB7-661-067089-031
Issued by Liberty Insurance Corp.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## Countersignature Endorsement

This endorsement is effective at the inception of the policy and attaches to and forms a part of this policy.

Type of Insurance                                     State

Commercial General Liability Coverage                 Mississippi

Signed by _____
                        Countersigning Agent

IC0017                                      Page 1 of 1
11-93

LIC0016578

## Common Policy Conditions

All Coverage Parts included in this policy are subject to the following conditions:

**A. CANCELLATION**

    **1.** The First Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

    **2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

        **a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

        **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

    **3.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

    **4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

    **5.** If this policy is canceled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

    **6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. CHANGES**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. EXAMINATION OF YOUR BOOKS AND RECORDS**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. INSPECTIONS AND SURVEYS**

    **1.** We have the right to:

        **a.** Make inspections and surveys at any time;

        **b.** Give you reports on the conditions we find; and

        **c.** Recommend changes.

    **2.** We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

        **a.** Are safe or healthful; or

Copyright, Insurance Services Office, Inc., 1998

LIC0016579

CTRL00000110_0009

Exhibit 1, Page 020

    **b.**   Comply with laws, regulations, codes or standards.

**3.**  Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**4.**  Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E.  PREMIUMS

The first Named Insured shown in the Declarations:

**1.**  Is responsible for the payment of all premiums; and

**2.**  Will be the payee for any return premiums we pay.

## F.  TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

LIC0016580

IL 02 79 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OREGON CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2.** If this policy has been in effect for:

**a.** Fewer than 60 days and is not a renewal policy, we may cancel for any reason.

**b.** 60 days or more or is a renewal policy, we may cancel only for one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** Fraud or material misrepresentation made by you or with your knowledge in obtaining the policy, continuing the policy or in presenting a claim under the policy;

**(3)** Substantial increase in the risk of loss after insurance coverage has been issued or renewed, including but not limited to an increase in exposure due to rules, legislation or court decision;

**(4)** Failure to comply with reasonable loss control recommendations;

**(5)** Substantial breach of contractual duties, conditions or warranties;

**(6)** Determination by the commissioner that the continuation of a line of insurance or class of business to which the policy belongs will jeopardize our solvency or will place us in violation of the insurance laws of Oregon or any other state; or

**(7)** Loss or decrease in reinsurance covering the risk.

**c.** 60 days or more or is a renewal policy, we may cancel for any other reason approved by the commissioner by rule, but only with respect to insurance provided under the following:

**(1)** A package policy that includes commercial property and commercial liability insurance;

**(2)** Commercial Automobile Coverage Part;

**(3)** Commercial General Liability Coverage Part;

**(4)** Commercial Property Coverage Part – Legal Liability Coverage Form;

**(5)** Commercial Property Coverage Part – Mortgageholders Errors And Omissions Coverage Form;

**(6)** Employment-related Practices Liability Coverage Part;

**(7)** Farm Coverage Part – Farm Liability Coverage Form;

**(8)** Liquor Liability Coverage Part;

**(9)** Products/Completed Operations Liability Coverage Part; or

**(10)** Medical Professional Liability Coverage Part.

© ISO Properties, Inc., 2007          **Page 1 of 2**

LIC0016581

CTRL00000110_0011

Exhibit 1, Page 022

**B.** Paragraph **3.** of the **Cancellation** Common Policy Condition is amended by the addition of the following:

> **3.** We will mail or deliver to the first Named Insured written notice of cancellation, stating the reason for cancellation.

**C.** The following is added to the **Cancellation** Common Policy Condition:

> **7. Number Of Days' Notice Of Cancellation:**
>
> **a.** With respect to insurance provided under **2.c.(1)** through **(10)** above, cancellation will not be effective until at least 10 working days after the first Named Insured received our notice.
>
> **b.** With respect to insurance other than that provided under **2.c.(1)** through **(10)** above, cancellation will not be effective until at least:
>
> > **(1)** 10 days after the first Named Insured receives our notice, if we cancel for nonpayment of premium; or
> >
> > **(2)** 30 days after the first Named Insured receives our notice, if we cancel for any other reason.

**D.** Paragraph **6.** of the **Cancellation** Common Policy Condition does not apply.

**E.** The following are added and supersede any provision to the contrary:

> **1. Nonrenewal**
>
> We may elect not to renew this policy by mailing or delivering to the first Named Insured, at the last mailing address known to us, written notice of nonrenewal before the:
>
> **a.** Expiration date of the policy; or
>
> **b.** Anniversary date of the policy if the policy is written for a term of more than one year or without a fixed expiration date.

However, if this policy is issued for a term of more than one year and for additional consideration the premium is guaranteed, we may not refuse to renew the policy at its anniversary date.

Nonrenewal will not be effective until at least 45 days after the first Named Insured receives our notice.

> **2. Mailing Of Notices**
>
> **a.** If notice of cancellation or nonrenewal is mailed, a post office certificate of mailing will be conclusive proof that the first Named Insured received the notice on the third calendar day after the date of the certificate of mailing.
>
> **b.** The following provision applies with respect to coverage provided under the Farm Coverage Part:
>
> If the first Named Insured has affirmatively consented to our use of an electronic record to deliver notice of cancellation or nonrenewal and has not withdrawn such consent, then the electronic record delivering notice of cancellation or nonrenewal satisfies the requirement that the notice of cancellation or nonrenewal be provided, or made available, to the first Named Insured in writing if we send the first Named Insured the electronic record with a request for a return receipt and we receive the return receipt. If we do not receive the return receipt, we may cancel or nonrenew the policy only after providing or delivering the notice of cancellation or nonrenewal to the first Named Insured in writing, subject to Paragraph **2.a.** above.

LIC0016582

CTRL00000110_0012

Exhibit 1, Page 023

COMMERCIAL GENERAL LIABILITY
CG 00 01 04 13

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

### COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

LIC0016583

CTRL00000110_0013

Exhibit 1, Page 024

## 2. Exclusions

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

  **(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

  **(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

  **(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

  **(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

  **(a)** Employment by the insured; or

  **(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

 © Insurance Services Office, Inc., 2012 **CG 00 01 04 13**

LIC0016584

CTRL00000110_0014

Exhibit 1, Page 025

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

LIC0016585

Exhibit 1, Page 026

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

© Insurance Services Office, Inc., 2012    **CG 00 01 04 13**

LIC0016586

CTRL00000110_0016

Exhibit 1, Page 027

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

LIC0016587

CTRL00000110_0017

Exhibit 1, Page 028

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

LIC0016588

CTRL00000110_0018

Exhibit 1, Page 029

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

LIC0016589

CTRL00000110_0019

Exhibit 1, Page 030

**COVERAGE C – MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A.**

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

LIC0016590

CTRL00000110_0020

Exhibit 1, Page 031

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I –** Coverage **A –** Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

LIC0016591

Exhibit 1, Page 032

**2.** Each of the following is also an insured:

   **a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

     **(1)** "Bodily injury" or "personal and advertising injury":

       **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

       **(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

       **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

       **(d)** Arising out of his or her providing or failing to provide professional health care services.

     **(2)** "Property damage" to property:

       **(a)** Owned, occupied or used by;

       **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

     you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   **b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

   **c.** Any person or organization having proper temporary custody of your property if you die, but only:

     **(1)** With respect to liability arising out of the maintenance or use of that property; and

     **(2)** Until your legal representative has been appointed.

   **d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   **a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   **b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   **c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   **a.** Insureds;

   **b.** Claims made or "suits" brought; or

   **c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

   **a.** Medical expenses under Coverage **C;**

   **b.** Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   **c.** Damages under Coverage **B.**

   © Insurance Services Office, Inc., 2012   **CG 00 01 04 13**

LIC0016592

CTRL00000110_0022

Exhibit 1, Page 033

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

  **a.** Damages under Coverage **A**; and

  **b.** Medical expenses under Coverage **C**

  because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**1. Bankruptcy**

  Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

  **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

  **(1)** How, when and where the "occurrence" or offense took place;

  **(2)** The names and addresses of any injured persons and witnesses; and

  **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

  **b.** If a claim is made or "suit" is brought against any insured, you must:

  **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

  **(2)** Notify us as soon as practicable.

  You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

  **c.** You and any other involved insured must:

  **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

  **(2)** Authorize us to obtain records and other information;

  **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

  **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

  **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

  No person or organization has a right under this Coverage Part:

  **a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

  **b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

  A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

LIC0016593

CTRL00000110_0023

Exhibit 1, Page 034

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I –** Coverage **A –** Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

© Insurance Services Office, Inc., 2012

LIC0016594

CTRL00000110_0024

Exhibit 1, Page 035

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

LIC0016595

CTRL00000110_0025

Exhibit 1, Page 036

**9.** "Insured contract" means:

 **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

 **b.** A sidetrack agreement;

 **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

 **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

 **e.** An elevator maintenance agreement;

 **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

  Paragraph **f.** does not include that part of any contract or agreement:

  **(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

  **(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

  **(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

 **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

 **b.** While it is in or on an aircraft, watercraft or "auto"; or

 **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

 but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

 **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

 **b.** Vehicles maintained for use solely on or next to premises you own or rent;

 **c.** Vehicles that travel on crawler treads;

 **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

  **(1)** Power cranes, shovels, loaders, diggers or drills; or

  **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

 **e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

  **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

  **(2)** Cherry pickers and similar devices used to raise or lower workers;

 **f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

© Insurance Services Office, Inc., 2012

**CG 00 01 04 13**

LIC0016596

CTRL00000110_0026

Exhibit 1, Page 037

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

    **(a)** Snow removal;

    **(b)** Road maintenance, but not construction or resurfacing; or

    **(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    **a.** False arrest, detention or imprisonment;

    **b.** Malicious prosecution;

    **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

    **f.** The use of another's advertising idea in your "advertisement"; or

    **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

    **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        **(1)** Products that are still in your physical possession; or

        **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

            **(a)** When all of the work called for in your contract has been completed.

            **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

            **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

        Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    **b.** Does not include "bodily injury" or "property damage" arising out of:

        **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

        **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

        **(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

    **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

LIC0016597

CTRL00000110_0027

Exhibit 1, Page 038

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

LIC0016598

CTRL00000110_0028

Exhibit 1, Page 039

Policy Number  TB7-661-067089-031
Issued by Liberty Insurance Corp.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE  READ IT CAREFULLY.**

**BROAD FORM NAMED INSURED – MAJORITY INTEREST**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.**  The term Named Insured includes: the person or organization  designated in the Declarations as the first Named Insured; the person(s) or organization(s) shown in the Declarations Extension Schedule (Named Insured); and any other organization  (except for a partnership or joint venture) incorporated  or organized  under the laws of the United States of America or its states, territories or possessions; Puerto Rico; or Canada or its provinces, but only while the first Named Insured or any of the Named Insureds shown in the Declarations Extension Schedule (Named Insured) directly or indirectly owns, during the policy period, an interest therein of more than 50%. But:

None of the persons or organizations described in Paragraph  **A.** is a Named Insured with respect to:

**(1)**  "Bodily injury" or "property damage" that occurred; or

**(2)**  "Personal and advertising injury" caused by an offense or a series of related offenses committed

prior to the ownership interests described above.

**B.**  Paragraph  **3.** of **Section II – Who Is An Insured** is deleted.

**C.**  The final paragraph of  **Section II – Who Is An Insured** is replaced by the following:

A partnership or joint venture is not a Named Insured unless it is shown in the Declarations or in the Declarations Extension Schedule (Named Insured). No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named  Insured in the Declarations or in the Declarations Extension Schedule (Named Insured) or for any limited liability company that is not a Named Insured.

**D.**  The first Named Insured is authorized  to act and agrees to act on behalf of all persons or organizations  insured under this policy with respect to all matters pertaining to the insurance afforded by the policy.

LIC0016599
CTRL00000110_0029

Exhibit 1, Page 040

Policy Number TB7-661-067089-031
Issued by Liberty Insurance Corp.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## Deductible – Damages and Supplementary Payments
## Damages Within the Deductible Erode the Policy Limits

This endorsement modifies the insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**DEDUCTIBLE AMOUNT**

Bodily Injury and Property Damage Liability,                              $ 250,000
Personal and Advertising Injury Liability,
Medical Payments and Supplementary Payments

A.  DEDUCTIBLE

DAMAGES AND SUPPLEMENTARY PAYMENTS ERODE DEDUCTIBLE

You are responsible, up to the Deductible Amount shown in the Schedule, for the total of:

1.  All damages, including amounts paid in settlement of a claim or "suit" and medical payments, plus

2.  All SUPPLEMENTARY PAYMENTS

because of all "bodily injury" and "property damage" under Coverage A that results from any one "occurrence", all "personal and advertising injury" under Coverage B sustained by any one person or organization and all "bodily injury" sustained by one person under Coverage C.

We are responsible for those amounts of damages and medical expenses to which this insurance applies (subject to the applicable limits of insurance) and SUPPLEMENTARY PAYMENTS that exceed the Deductible Amount shown in the Schedule.

We have the right but not the duty to advance any part or all of these amounts. Exercise of our right to advance such amount shall not create any obligations or be construed as a waiver or estoppel of our rights under this policy

B.  EFFECT OF DEDUCTIBLE ON LIMITS OF INSURANCE

1.  The Each Occurrence Limit, the Personal and Advertising Injury Limit, the Medical Expense Limit and any applicable aggregate limits of insurance are reduced by the amount of damages, as referred to in paragraph A. above, paid or payable by you within the deductible.

2.  For purposes of this paragraph B., all damages are deemed to have been paid or to be payable before SUPPLEMENTARY PAYMENTS have been paid or are payable.

C.  CONDITIONS

1.  Recovery from Others

**LC 03 02 06 05**                                                              Page 1 of 2

In the event we recover any advance or payment made under this policy by exercising our right of subrogation, the amount so recovered shall first be applied to any payments made by us in excess of the Deductible Amount; only then shall the remainder of such recovery, if any, be applied to reduce the Deductible Amount payable or paid by you.

2.  Cancellation

You must (a) promptly pay all amounts for which you are responsible under this endorsement, and (b) reimburse us for any such amounts that we pay or advance upon receipt of a billing from us.

If you fail to do so, we may, at our option and to the extent permitted by law, cancel either this endorsement or this policy by mailing or delivering to you notice of cancellation pursuant to the terms applicable to cancellation for non-payment of premium in the policy or an endorsement thereto.

3.  Your Duties

a.  The first Named Insured shown in the Declarations agrees and is authorized to pay all Deductible Amounts on behalf of all Named Insureds and to reimburse us for any such amounts that we advance.

b.  Each Named Insured is jointly and severally liable for all Deductible Amounts under this policy.

4.  Other Rights and Duties (Ours and Yours)

All other terms of this policy, including those which govern (a) our right and duty to defend any claim, proceeding or "suit" against you, and (b) your duties if injury occurs, apply irrespective of application of this deductible endorsement.

LIC0016601

CTRL00000110_0031

Exhibit 1, Page 042

Policy Number  TB7-661-067089-031
Issued by Liberty Insurance Corp.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE  READ IT CAREFULLY.**

**COMPOSITE RATE**

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART
    SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY – NEW YORK

With regard to composite rated premium for this policy, exposure types are defined as:

A.  **Admissions means**:  Shall be calculated  in accordance  with Division 6, Rule 24 of the ISO Commercial  Lines Manual, Premium Basis A. Admissions.

B.  **Area means**:  Shall be calculated  in accordance  with Division 6, Rule 24 of the ISO Commercial Lines Manual, Premium Basis A. Area.   Changes in exposure during each annual rating period shall be determined  by averaging the exposure that is  used as a premium basis at the beginning and end of each annual rating period.

C.  **Each means**:  Shall be calculated  based on the sum of the units of exposure noted as the premium basis. Changes in exposure during each policy period shall be determined by averaging the exposure used as the premium basis at the effective  and expiration dates of each policy period.

D.  **Gross Sales means**:  Shall be calculated  in accordance  with Division 6, Rule 24 of the ISO Commercial  Lines Manual, Premium Basis A. Gross Sales.

E.  **General Liability Payroll**:  Shall be calculated  in accordance  with Division 6, Rule 24 of the ISO Commercial Lines Manual, Premium Basis E. Payroll.

F.  **Total Cost**:  Shall be calculated  in accordance  with Division 6, Rule 24 of the ISO Commercial Lines Manual, Premium Basis F. Total Cost.

G.  **Total Operating Expenditures**:   Shall be  calculated  in accordance  with Division 6, Rule 24 of the ISO Commercial Lines  Manual, Premium Basis G. Total Operating Expenditures.

H.  **Workers Compensation Payroll**:  Shall be calculated  in accordance  with the NCCI Basic Manual Rule 2.B, or the corresponding rules in the applicable  state manual for independent states and the monopolistic states of OH, ND and WY.

    For payroll in the monopolistic state of WA, the payroll shall be computed in accordance with the NCCI Basic Manual Rule 2.B. with the exception of the handling of executive officers, sole proprietors and partners. Executive officers, sole proprietors and partners in WA will be included in the audit using the flat payroll amount as indicated in the ISO Commercial Lines Manual,  Rule 24, State Exceptions for WA.

LIC0016602

CTRL00000110_0032

Exhibit 1, Page 043

For payroll in the U.S. territories of Puerto Rico, Guam and the U.S. Virgin Islands, the payroll shall be calculated in accordance with the NCCI Basic Manual Rule 2.B. with the exception of the handling of executive officers, sole proprietors and partners.  Executive officers, sole proprietors and partners in Puerto Rico and Guam will be included in the audit using the flat payroll amount as indicated in the ISO Commercial Lines Manual, Rule 24, State Exceptions for the applicable U.S. territory.  Executive officers, sole proprietors and partners in the U.S. Virgin Islands will be included in the audit using the flat payroll as indicated in the ISO Commercial Lines Manual, Rule 24, State Exceptions for Puerto Rico.

I.  **Units means**:  Shall be calculated in accordance with Division 6, Rule 24 of the ISO Commercial Lines Manual, Premium Basis H. Units

J.  **Other means**:

LIC0016603

CTRL00000110_0033

Exhibit 1, Page 044

POLICY NUMBER: TB7-661-067089-031                    **COMMERCIAL GENERAL LIABILITY**
**CG 02 24 10 93**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE  READ IT CAREFULLY.**

# EARLIER NOTICE OF CANCELLATION
# PROVIDED BY US

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

**Number of Days' Notice**    **90**

(If no entry appears above, information required to complete this Schedule will be shown in the Declarations as applicable to this endorsement.)

For any statutorily permitted reason other than nonpayment of premium, the number of days required for notice of cancellation, as provided in paragraph **2.** of either the CANCELLATION Common Policy Condition or as amended by an applicable state cancellation endorsement, is increased to the number of days shown in the Schedule above.

**CG 02 24 10 93**    Copyright, Insurance Services Office, Inc., 1992    **Page  1 of  1**

LIC0016604

CTRL00000110_0034

Exhibit 1, Page 045

POLICY NUMBER: TB7-661-067089-031

**COMMERCIAL GENERAL LIABILITY**
**CG 04 35 12 07**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYEE BENEFITS LIABILITY COVERAGE

**THIS ENDORSEMENT PROVIDES CLAIMS-MADE COVERAGE.**
**PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Coverage | Limit Of Insurance | | Each Employee Deductible |
|---|---|---|---|
| **Employee Benefits Programs** | $ 1,000,000 | **each employee** | Not Applicable |
| | $ 2,000,000 | **aggregate** | |
| **Retroactive Date:** | 09/01/1989 | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | |

**A.** The following is added to **Section I – Coverages:**

**COVERAGE – EMPLOYEE BENEFITS LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of any act, error or omission, of the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any report of an act, error or omission and settle any "claim" or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Paragraph **D.** (Section **III** – Limits Of Insurance); and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

**b.** This insurance applies to damages only if:

**(1)** The act, error or omission, is negligently committed in the "administration" of your "employee benefit program";

**(2)** The act, error or omission, did not take place before the Retroactive Date, if any, shown in the Schedule nor after the end of the policy period; and

**(3)** A "claim" for damages, because of an act, error or omission, is first made against any insured, in accordance with Paragraph **c.** below, during the policy period or an Extended Reporting Period we provide under Paragraph **F.** of this endorsement.

**c.** A "claim" seeking damages will be deemed to have been made at the earlier of the following times:

**(1)** When notice of such "claim" is received and recorded by any insured or by us, whichever comes first; or

**CG 04 35 12 07**                    © ISO Properties, Inc., 2006                    **Page 1 of 6**

LIC0016605

CTRL00000110_0035

Exhibit 1, Page 046

**(2)** When we make settlement in accordance with Paragraph **a.** above.

A "claim" received and recorded by the insured within 60 days after the end of the policy period will be considered to have been received within the policy period, if no subsequent policy is available to cover the claim.

**d.** All "claims" for damages made by an "employee" because of any act, error or omission, or a series of related acts, errors or omissions, including damages claimed by such "employee's" dependents and beneficiaries, will be deemed to have been made at the time the first of those "claims" is made against any insured.

**2. Exclusions**

This insurance does not apply to:

**a. Dishonest, Fraudulent, Criminal Or Malicious Act**

Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

**b. Bodily Injury, Property Damage, Or Personal And Advertising Injury**

"Bodily injury", "property damage" or "personal and advertising injury".

**c. Failure To Perform A Contract**

Damages arising out of failure of performance of contract by any insurer.

**d. Insufficiency Of Funds**

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

**e. Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation**

Any "claim" based upon:

**(1)** Failure of any investment to perform;

**(2)** Errors in providing information on past performance of investment vehicles; or

**(3)** Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program".

**f. Workers' Compensation And Similar Laws**

Any "claim" arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

**g. ERISA**

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

**h. Available Benefits**

Any "claim" for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

**i. Taxes, Fines Or Penalties**

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

**j. Employment-Related Practices**

Damages arising out of wrongful termination of employment, discrimination, or other employment-related practices.

**B.** For the purposes of the coverage provided by this endorsement:

**1.** All references to Supplementary Payments - Coverages **A** and **B** are replaced by Supplementary Payments - Coverages **A, B** and **Employee Benefits Liability**.

**2.** Paragraphs **1.b.** and **2.** of the Supplementary Payments provision do not apply.

**C.** For the purposes of the coverage provided by this endorsement, Paragraphs **2.** and **3.** of **Section II - Who Is An Insured** are replaced by the following:

**2.** Each of the following is also an insured:

**a.** Each of your "employees" who is or was authorized to administer your "employee benefit program".

**b.** Any persons, organizations or "employees" having proper temporary authorization to administer your "employee benefit program" if you die, but only until your legal representative is appointed.

LIC0016606

CTRL00000110_0036

Exhibit 1, Page 047

**c.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Endorsement.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if no other similar insurance applies to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier.

**b.** Coverage under this provision does not apply to any act, error or omission that was committed before you acquired or formed the organization.

**D.** For the purposes of the coverage provided by this endorsement, **Section III – Limits Of Insurance** is replaced by the following:

**1. Limits Of Insurance**

**a.** The Limits of Insurance shown in the Schedule and the rules below fix the most we will pay regardless of the number of:

**(1)** Insureds;

**(2)** "Claims" made or "suits" brought;

**(3)** Persons or organizations making "claims" or bringing "suits";

**(4)** Acts, errors or omissions; or

**(5)** Benefits included in your "employee benefit program".

**b.** The Aggregate Limit is the most we will pay for all damages because of acts, errors or omissions negligently committed in the "administration" of your "employee benefit program".

**c.** Subject to the Aggregate Limit, the Each Employee Limit is the most we will pay for all damages sustained by any one "employee", including damages sustained by such "employee's" dependents and beneficiaries, as a result of:

**(1)** An act, error or omission; or

**(2)** A series of related acts, errors or omissions

negligently committed in the "administration" of your "employee benefit program".

However, the amount paid under this endorsement shall not exceed, and will be subject to, the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit program".

The Limits of Insurance of this endorsement apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations of the policy to which this endorsement is attached, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance.

**2. Deductible**

**a.** Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the deductible amount stated in the Schedule as applicable to Each Employee. The limits of insurance shall not be reduced by the amount of this deductible.

**b.** The deductible amount stated in the Schedule applies to all damages sustained by any one "employee", including such "employee's" dependents and beneficiaries, because of all acts, errors or omissions to which this insurance applies.

**c.** The terms of this insurance, including those with respect to:

**(1)** Our right and duty to defend any "suits" seeking those damages; and

**(2)** Your duties, and the duties of any other involved insured, in the event of an act, error or omission, or "claim"

apply irrespective of the application of the deductible amount.

**d.** We may pay any part or all of the deductible amount to effect settlement of any "claim" or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as we have paid.

**E.** For the purposes of the coverage provided by this endorsement, Conditions **2.** and **4.** of **Section IV - Commercial General Liability Conditions** are replaced by the following:

**2. Duties In The Event Of An Act, Error Or Omission, Or "Claim" Or "Suit"**

**a.** You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a "claim". To the extent possible, notice should include:

**(1)** What the act, error or omission was and when it occurred; and

LIC0016607

**(2)** The names and addresses of anyone who may suffer damages as a result of the act, error or omission.

**b.** If a "claim" is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the "claim" or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error or omission to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense without our consent.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under this endorsement, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis that is effective prior to the beginning of the policy period shown in the Schedule of this insurance and that applies to an act, error or omission on other than a claims-made basis, if:

**(a)** No Retroactive Date is shown in the Schedule of this insurance; or

**(b)** The other insurance has a policy period which continues after the Retroactive Date shown in the Schedule of this insurance.

**(2)** When this insurance is excess, we will have no duty to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of the total amount that all such other insurance would pay for the loss in absence of this insurance; and the total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Schedule of this endorsement.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limits of insurance to the total applicable limits of insurance of all insurers.

LIC0016608

Exhibit 1, Page 049

**F.** For the purposes of the coverage provided by this endorsement, the following Extended Reporting Period provisions are added, or, if this endorsement is attached to a claims-made Coverage Part, replaces any similar Section in that Coverage Part:

**EXTENDED REPORTING PERIOD**

**1.** You will have the right to purchase an Extended Reporting Period, as described below, if:

**a.** This endorsement is canceled or not renewed; or

**b.** We renew or replace this endorsement with insurance that:

**(1)** Has a Retroactive Date later than the date shown in the Schedule of this endorsement; or

**(2)** Does not apply to an act, error or omission on a claims-made basis.

**2.** The Extended Reporting Period does not extend the policy period or change the scope of coverage provided. It applies only to "claims" for acts, errors or omissions that were first committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Schedule. Once in effect, the Extended Reporting Period may not be canceled.

**3.** An Extended Reporting Period of five years is available, but only by an endorsement and for an extra charge.

You must give us a written request for the endorsement within 60 days after the end of the policy period. The Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

**a.** The "employee benefit programs" insured;

**b.** Previous types and amounts of insurance;

**c.** Limits of insurance available under this endorsement for future payment of damages; and

**d.** Other related factors.

The additional premium will not exceed 100% of the annual premium for this endorsement.

The Extended Reporting Period endorsement applicable to this coverage shall set forth the terms, not inconsistent with this Section, applicable to the Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Extended Reporting Period starts.

**4.** If the Extended Reporting Period is in effect, we will provide an extended reporting period aggregate limit of insurance described below, but only for claims first received and recorded during the Extended Reporting Period.

The extended reporting period aggregate limit of insurance will be equal to the dollar amount shown in the Schedule of this endorsement under Limits of Insurance.

Paragraph **D.1.b.** of this endorsement will be amended accordingly. The Each Employee Limit shown in the Schedule will then continue to apply as set forth in Paragraph **D.1.c.**

**G.** For the purposes of the coverage provided by this endorsement, the following definitions are added to the **Definitions** Section:

**1.** "Administration" means:

**a.** Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

**b.** Handling records in connection with the "employee benefit program"; or

**c.** Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program".

However, "administration" does not include handling payroll deductions.

**2.** "Cafeteria plans" means plans authorized by applicable law to allow employees to elect to pay for certain benefits with pre-tax dollars.

**3.** "Claim" means any demand, or "suit", made by an "employee" or an "employee's" dependents and beneficiaries, for damages as the result of an act, error or omission.

LIC0016609

**4.** "Employee benefit program" means a program providing some or all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

  **a.** Group life insurance, group accident or health insurance, dental, vision and hearing plans, and flexible spending accounts, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

  **b.** Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;

  **c.** Unemployment insurance, social security benefits, workers' compensation and disability benefits;

  **d.** Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies; and

  **e.** Any other similar benefits designated in the Schedule or added thereto by endorsement.

**H.** For the purposes of the coverage provided by this endorsement, Definitions **5.** and **18.** in the **Definitions** Section are replaced by the following:

  **5.** "Employee" means a person actively employed, formerly employed, on leave of absence or disabled, or retired. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

  **18.** "Suit" means a civil proceeding in which damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes:

    **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

    **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

LIC0016610

CTRL00000110_0040

Exhibit 1, Page 051

COMMERCIAL GENERAL LIABILITY
CG 20 01 12 19

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PRIMARY AND NONCONTRIBUTORY – OTHER INSURANCE CONDITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The following is added to the **Other Insurance** Condition and supersedes any provision to the contrary:

**Primary And Noncontributory Insurance**

This insurance is primary to and will not seek contribution from any other insurance available to an additional insured under your policy provided that:

**(1)** The additional insured is a Named Insured under such other insurance; and

**(2)** You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

LIC0016611

CTRL00000110_0041

Exhibit 1, Page 052

POLICY NUMBER: TB7-661-067089-031

COMMERCIAL GENERAL LIABILITY
CG 22 64 04 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PESTICIDE OR HERBICIDE APPLICATOR - LIMITED POLLUTION COVERAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

With respect to the operations shown in the Schedule, Paragraph **(1)(d)** of Exclusion **f.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** does not apply if the operations meet all standards of any statute, ordinance, regulation or license requirement of any federal, state or local government which apply to those operations.

**SCHEDULE**

**Description Of Operations:**

All operations to which this endorsement applies

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**CG 22 64 04 13**          © Insurance Services Office, Inc., 2012          **Page 1 of 1**

**COMMERCIAL GENERAL LIABILITY**
**CG 24 08 10 93**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE  READ IT CAREFULLY.**

# LIQUOR LIABILITY

This endorsement modifies insurance provided under the following:

  COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **c.** – Liquor Liability of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section **I**) – Coverages does not  apply.

**CG 24 08 10 93**          Copyright, Insurance Services Office, Inc.,  1992          **Page  1  of  1**

LIC0016613

CTRL00000110_0043

Exhibit 1, Page 054

POLICY NUMBER: TB7-661-067089-031          **COMMERCIAL GENERAL LIABILITY**
                                                              **CG 24 12 11 85**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE  READ IT CAREFULLY.**

# BOATS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

1. Exclusion g. of COVERAGE A (Section I) does not apply to any watercraft owned or used by or rented to the insured shown in the Schedule.
2. WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization legally responsible for the use of any such watercraft you own, provided the actual use is with your permission.

**SCHEDULE**

**Description of Watercraft:**

Any non-owned watercraft that is less than 50 feet long and not being used to carry persons or property for a charge.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

LIC0016614

CTRL00000110_0044

Exhibit 1, Page 055

POLICY NUMBER: TB7-661-067089-031                           **COMMERCIAL GENERAL LIABILITY**
                                                                         **CG 24 17 10 01**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE  READ IT CAREFULLY.**

# CONTRACTUAL LIABILITY – RAILROADS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

With respect to operations performed for, or affecting, a Scheduled Railroad at a Designated Job Site, the definition of "insured contract" in the **Definitions** section is replaced by the following:

9.  "Insured Contract" means:

   a.  A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b.  A sidetrack agreement;

   c.  Any easement or license agreement;

   d.  An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e.  An elevator maintenance agreement;

   f.  That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

   (1)  That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      (a)  Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

      (b)  Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

   (2)  Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph **(1)** above and supervisory, inspection, architectural or engineering activities.

**SCHEDULE**

**Scheduled Railroad:**

Any railroad for which you are performing operations and for which no Railroad Protective Liability Policy has been purchased for the railroad by you, or any railroad for which "your work" has been completed or put to its intended use.

**Designated Job Site:**

All jobsites.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

LIC0016615

CTRL00000110_0045

Exhibit 1, Page 056

Policy Number TB7-661-067089-031
Issued by Liberty Insurance Corp.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## Reasonable Force

This endorsement modifies the insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **a.** of Coverage **A** is replaced by the following:

**a.**   Expected or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

**LC 04 01 06 05**                                                                                     Page   1  of   1

LIC0016616

Exhibit 1, Page 057

Policy Number  TB7-661-067089-031
Issued by Liberty Insurance Corp.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE  READ IT CAREFULLY.**

**PROFESSIONAL HEALTH CARE SERVICES BY EMPLOYEES
OR VOLUNTEER WORKERS COVERAGE**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART

**Schedule**

**Sublimit of Insurance:**    $     2,000,000    **Each Occurrence**

A.  Paragraph 2.a.(1)(d) of Section II – Who Is An Insured is replaced by the following:

   (d)  Arising out of his or her providing or failing to provide professional health care services.  However, any "employee" or "volunteer worker" of the Named Insured who is acting as a Good Samaritan in response to a public or medical emergency or who is a "designated health care provider" is an insured with respect to "bodily injury" and "personal and  advertising injury" that:

     (i)  Arises out of the providing of or failure to provide professional health care services; and

     (ii)  Occurs in the course of and within the scope of such "employee's" or "volunteer worker's" employment by the Named Insured.

B.  **Limits of Insurance**

   1.  The insurance provided by this endorsement  is subject to the sublimit shown in the Schedule of this endorsement.   This sublimit is subject to the Each Occurrence Limit shown in the Declarations; it is not in addition to the Each Occurrence Limit.  If a sublimit is not shown in the Schedule of this endorsement, the applicable limit is the Each Occurrence Limit  shown in the Declarations.

   2.  This insurance is subject to the General Aggregate Limit shown in the Declarations.

C.  With respect to "employees" and "volunteer workers" providing professional health care services, the following exclusions are added to Paragraph 2. Exclusions of Section I – Coverage  A – Bodily Injury And Property Damage Liability and Paragraph 2. Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

   This insurance does not apply to:

   (1)  Liability assumed under an "insured contract" or any other contract or agreement;

   (2)  Liability arising out of the providing of professional health care services in violation of law;

   (3)  Liability arising out of the providing of any professional health  care services while in any degree under the influence of  intoxicants or narcotics;

   (4)  Liability arising out of any dishonest, fraudulent, malicious or knowingly wrongful act or failure to act; or

LIC0016617

CTRL00000110_0047

Exhibit 1, Page 058

(5)  Punitive or exemplary damages, fines or penalties.

D.  The following definition is added to the Section V – Definitions:

"Designated health care provider" means any "employee" or "volunteer worker" of the Named Insured whose duties include providing professional health care services, including but not limited to doctors, nurses, emergency medical technicians or designated first aid  personnel.

E.  **Other Insurance**

1.  This provision applies only to the Commercial General Liability Coverage Part.

2.  The insurance provided by this endorsement is excess over any other valid and collectible insurance available to the insured,  whether primary, excess, contingent or on any other basis.

LIC0016618

CTRL00000110_0048

Exhibit 1, Page 059

Policy Number  TB7-661-067089-031
Issued by Liberty Insurance Corp.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE  READ IT CAREFULLY.**

**BROADENED DAMAGE TO PREMISES RENTED TO YOU COVERAGE**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.  The final paragraph  of 2. Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability is replaced by the  following:

Exclusions c. through n. do not apply to damage by fire, lightning or explosion or subsequent damages  resulting from such fire, lightning or explosion including water damage  to premises while rented to you or temporarily occupied by you with permission  of the owner.   A separate limit of insurance applies to this coverage  as described in Section III - Limits Of Insurance.

B.  Paragraph 6. of Section III – Limits Of Insurance is replaced by the following:

6.  Subject to Paragraph 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, lightning, explosion or subsequent damages resulting from such fire, lightning or explosion including water damage to premises while rented to you or temporarily occupied by you with permission of the owner.

C.  Subparagraph 9.a. of the definition of "insured contract" is replaced by the following:

a.  A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage  by fire, lightning, explosion or subsequent damages resulting from such fire, lightning or explosion including water damage to premises while rented to you or temporarily occupied by you with permission of  the owner is not an "insured contract".

D.  The paragraph  immediately  following  Paragraph  (6) of exclusion j. of Section I – Coverage A  – Bodily Injury And Property Damage Liability is replaced by the following:

Paragraphs  (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire, lightning or explosion or subsequent  damages  resulting from such fire, lightning or explosion including water damage)  to premises, including  the contents of such premises, rented to you for a period  of 7 or fewer consecutive days.  A separate limit of insurance applies to Damage to Premises Rented To You as described in Section III – Limits of Insurance.

LIC0016619

CTRL00000110_0049

Exhibit 1, Page 060

Policy Number  TB7-661-067089-031
Issued by Liberty Insurance Corp.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE  READ IT CAREFULLY.**

**COMMERCIAL GENERAL LIABILITY ENHANCEMENT FOR MANUFACTURERS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Index of modified items:

Item 1.    **Reasonable Force**
Item 2.    **Non-Owned Watercraft Extension**
Item 3.    **Damage To Premises Rented To You – Expanded Coverage**
Item 4.    **Bodily Injury To Co-Employees**
Item 5.    **Health Care Professionals As Insureds**
Item 6.    **Knowledge Of Occurrence Or Offense**
Item 7.    **Notice Of Occurrence Or Offense**
Item 8.    **Unintentional Failure To Disclose**
Item 9.    **Bodily Injury Redefined**
Item 10.   **Supplementary Payments – Increased Limits**
Item 11.   **Aircraft With Chartered Crew**
Item 12.   **Property In Your Care, Custody Or Control**
Item 13.   **Mobile Equipment Redefined**
Item 14.   **Newly Formed Or Acquired Entities**
Item 15.   **Waiver Of Right Of Recovery By Written Contract Or Agreement**

Item 1.    **Reasonable Force**

Exclusion a. of Section I – Coverage A – Bodily Injury And Property Damage Liability is replaced by the following:

a.   Expected Or Intended Injury

     "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

Item 2.    **Non-Owned Watercraft Extension**

Paragraph (2) of Exclusion g. of Section I – Coverage A – Bodily Injury And Property Damage Liability is replaced by the following:

(2)  A watercraft you do not own that is:

     (a)  Less than 55 feet long; and

     (b)  Not being used to carry persons or property for a charge;

Item 3.    **Damage To Premises Rented To You – Expanded Coverage**

A.   The final paragraph  of 2. Exclusions of Section I – Coverage  A – Bodily Injury And Property Damage  Liability is replaced by  the following:

LIC0016620

CTRL00000110_0050

Exhibit 1, Page 061

Exclusions c. through n. do not apply to damage by fire, lightning or explosion or subsequent damages resulting from such fire, lightning or explosion including water damage to premises while rented to you or temporarily occupied by you with permission of the owner.  A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

B.  Paragraph 6. of Section III – Limits Of Insurance is replaced by the following:

   6.  Subject to Paragraph 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, lightning, explosion or subsequent damages resulting from such fire, lightning or explosion including water damage to premises while rented to you or temporarily occupied by you with permission of the owner.

   The Damage To Premises Rented To You Limit is the greater of:

   a.  $300,000; or

   b.  The Damage To Premises Rented To You Limit shown on the Declarations.

C.  Paragraph 9.a. of the definition of "insured contract" in Section V – Definitions is replaced by the following:

   a.  A contract for a lease of premises.  However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire, lightning, explosion or subsequent damages resulting from such fire, lightning or explosion including water damage to premises while rented to you or temporarily occupied by you with permission of  the owner is not an "insured contract";

D.  The paragraph immediately following Paragraph (6) of Exclusion j. of Section I – Coverage A – Bodily Injury And Property Damage Liability is replaced by the following:

   Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire, lightning or explosion or subsequent damages resulting from such fire, lightning or explosion including water damage) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days.  A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits of Insurance.

Item 4.    **Bodily Injury To Co-Employees**

A.  Paragraph 2. of Section II – Who Is An Insured is amended to include:

   Each of the following is also an insured:

   Your "employees" (other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company)) or "volunteer workers" are insureds while in the course of their employment or while performing duties related to the conduct of your business with respect to "bodily injury":

   (1)  To you;

   (2)  To your partners or members (if you are a partnership or joint venture);

   (3)  To your members (if you are a limited liability company); or

   (4)  To a co-"employee" or "volunteer worker" while that co-"employee" or "volunteer worker" is either in the course of his or her employment by you or while performing duties related to the conduct of your business (including participation in any recreational activities sponsored by you).

   Paragraph 2.a.(1)(a) of Section II – Who Is An Insured does not apply to "bodily injury" for which insurance is provided by this paragraph.

LIC0016621

CTRL00000110_0051

Exhibit 1, Page 062

B.  The insurance provided by this Item 4. for "bodily injury" to a co-"employee" or "volunteer worker" will not apply if the injured co-"employee's" or "volunteer worker's" sole remedy for such injury is provided under a workers' compensation law or any similar law.

C.  Other Insurance

The insurance provided by this Item 4. is excess over any other valid and collectible insurance available to the insured, whether primary, excess, contingent or on any other basis.

Item 5.    **Health Care Professionals As Insureds**

A.  Paragraph 2.a.(1)(d) of Section II – Who Is An Insured is replaced by the following:

(d)  Arising out of his or her providing or failing to provide professional health care services. However, any "employee" or "volunteer worker" of the Named Insured who is acting as a Good Samaritan in response to a public or medical emergency or who is a "designated health care provider" is an insured with respect to "bodily injury" and "personal and advertising injury" that:

(i)  Arises out of the providing of or failure to provide professional health care services; and

(ii)  Occurs in the course of and within the scope of such "employee's" or "volunteer worker's" employment by the Named Insured.

B.  With respect to "employees" and "volunteer workers" providing professional health care services, the following exclusions are added to Paragraph 2. Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability and Paragraph 2. Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

This insurance does not apply to:

(1)  Liability assumed under an "insured contract" or any other contract or agreement;

(2)  Liability arising out of the providing of professional health care services in violation of law;

(3)  Liability arising out of the providing of any professional health care services while in any degree under the influence of intoxicants or narcotics;

(4)  Liability arising out of any dishonest, fraudulent, malicious or knowingly wrongful act or failure to act; or

(5)  Punitive or exemplary damages, fines or penalties.

C.  The following definition is added to Section V – Definitions:

"Designated health care provider" means any "employee" or "volunteer worker" of the Named Insured whose duties include providing professional health care services, including but not limited to doctors, nurses, emergency medical technicians or designated first aid personnel.

D.  Other Insurance

The insurance provided by this Item 5. is excess over any other valid and collectible insurance available to the insured, whether primary, excess, contingent or on any other basis.

Item 6.    **Knowledge Of Occurrence Or Offense**

Knowledge of an "occurrence" or offense by your agent, servant or "employee" will not in itself constitute knowledge by you unless your "executive officer" or "employee" designated by you to notify us of an "occurrence" or offense has knowledge of the "occurrence" or offense.

    © 2016 Liberty Mutual Insurance
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

LIC0016622

Item 7.    **Notice Of Occurrence Or Offense**

For purposes of Paragraph 2.a. of Section IV – Commercial General Liability Conditions, you refers to your "executive officer" or "employee" that you have designated to give us notice.

Item 8.    **Unintentional Failure To Disclose**

Unintentional failure of the Named Insured to disclose all hazards existing at the inception of this policy shall not be a basis for denial of any coverage afforded by this policy. However, you must report such an error or omission to us as soon as practicable after its discovery.

This provision does not affect our right to collect additional premium or exercise our right of cancellation or non-renewal.

Item 9.    **Bodily Injury Redefined**

The definition of "bodily injury" in Section V – Definitions is replaced by the following:

"Bodily injury" means:

a.  Bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time; and

b.  Mental anguish, shock or humiliation arising out of injury as defined in Paragraph a. above. Mental anguish means any type of mental or emotional illness or distress.

Item 10.    **Supplementary Payments – Increased Limits**

Paragraphs 1.b. and 1.d. of Section I – Supplementary Payments – Coverages A And B are replaced by the following:

b.  Up to $3,000 for the cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

d.  All reasonable expenses incurred by the insured at our request to assist in the investigation or defense of the claim or "suit", including actual loss of earnings up to $500 a day because of time off from work.

Item 11.    **Aircraft With Chartered Crew**

The following is added to Exclusion g. of Section I – Coverage A – Bodily Injury And Property Damage Liability:

This exclusion does not apply to an aircraft that you do not own that is:

(a)  Chartered with a pilot by any insured; and

(b)  Not being used to carry any person or property for a charge collected or received by the insured.

Item 12.    **Property In Your Care, Custody Or Control**

A.  Paragraphs (3) and (4) of Exclusion j. of Section I – Coverage A – Bodily Injury And Property Damage Liability are deleted.

B.  Additional Exclusion

Coverage provided by this endorsement does not apply to "property damage" to property while in transit.

C.  Limits of Insurance

LIC0016623

Exhibit 1, Page 064

Subject to Paragraphs 2., 3., and 5. of Section III – Limits Of Insurance, the most we will pay for insurance provided by Paragraph A. above is:

$10,000 Each Occurrence Limit

$75,000 Aggregate Limit

The Each Occurrence Limit for this coverage applies to all damages as a result of any one "occurrence" regardless of the number of persons or organizations who sustain damage because of that "occurrence".

The Aggregate Limit is the most we will pay for the sum of all damages under this Item 12.

D.  Other Insurance

This insurance does not apply to any portion of a loss for which the insured has available any other valid and collectible insurance, whether primary, excess, contingent, or on any other basis, unless such other insurance was specifically purchased by the insured to apply in excess of this policy.

Item 13.   **Mobile Equipment Redefined**

The definition of "mobile equipment" in Section V – Definitions is amended to include self-propelled vehicles with permanently attached equipment less than 1000 pounds gross vehicle weight that are primarily designed for:

(1)  Snow removal;

(2)  Road maintenance, but not construction or resurfacing; or

(3)  Street cleaning.

Item 14.   **Newly Formed Or Acquired Entities**

A.  Paragraph 3. of Section II – Who Is An Insured is replaced by the following:

3.  Any organization you newly acquire or form, other than a partnership or joint venture, and over which you maintain majority ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a.  Coverage under this provision is afforded only until:

(1)  The 180th day after you acquire or form the organization;

(2)  Separate coverage is purchased for the organization; or

(3)  The end of the policy period

whichever is earlier;

b.  Section I – Coverage A – Bodily Injury And Property Damage Liability does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c.  Section I – Coverage B – Personal And Advertising Injury Liability does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

B.  The insurance afforded to any organization as a Named Insured under this Item 14. does not apply if a Broad Form Named Insured endorsement attached to this policy applies to that organization.

LIC0016624

CTRL00000110_0054

Exhibit 1, Page 065

Item 15.    **Waiver Of Right Of Recovery By Written Contract Or Agreement**

The following is added to Paragraph 8. Transfer Of Rights Of Recovery Against Others To Us of Section IV – Commercial General Liability  Conditions:

We waive any right of recovery because of payments we make under this policy for injury or damage  arising out of your ongoing operations or "your work" included in the "products-completed  operations hazard" that we may have against any person or organization with whom you have agreed in a written contract or agreement to waive your rights of recovery but only if the "bodily injury" or "property damage" occurs, or offense giving rise to "personal and advertising injury" is committed subsequent to the execution of the written contract or agreement.

LIC0016625

CTRL00000110_0055

Exhibit 1, Page 066

Policy Number  TB7-661-067089-031
Issued by Liberty Insurance Corp.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE  READ IT CAREFULLY.**

**COMMERCIAL GENERAL LIABILITY**
**ADDITIONAL INSURED ENHANCEMENT FOR MANUFACTURERS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Index of modified items:

Item 1.    **Blanket Additional Insured Where Required By Written Agreement**
           Lessors of Leased Equipment
           Managers or Lessors of Premises
           Mortgagees, Assignees or Receivers
           Grantor of Franchise
           Vendors
           Any Person or Organization
Item 2.    **Blanket Additional Insured – Grantor Of Permits**
Item 3.    **Other Insurance Amendment**

Item 1.    **Blanket Additional Insured Where Required By Written Agreement**

Paragraph 2. of Section II – Who Is An Insured is amended to add the following:

Additional Insured by Written Agreement

The following are insureds under the policy when you have agreed in a written agreement  to provide them coverage
as additional insureds under your policy:

1.  **Lessors of Leased Equipment**:  The person(s) or organization(s) from whom you lease equipment, but only
    with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in
    whole or in part, by your maintenance, operation or use of equipment leased to you by such person(s) or
    organization(s).

    This insurance does not apply to any "occurrence" which takes place after the equipment lease expires.

2.  **Managers or Lessors of Premises**:  Any manager(s) or lessor(s) of premises leased to you in which the
    written lease agreement obligates you to procure additional insured coverage.

    The coverage afforded  to the additional  insured is limited to liability in connection with the ownership,
    maintenance or use of the premises leased to you and caused, in whole or in part, by some negligent act(s) or
    omission(s) of you, your "employees",  your agents or your subcontractors. There is no coverage for the
    additional insured for liability arising out of the sole negligence of the additional insured or those acting on
    behalf of the additional insured, except as provided below.

    If the written agreement  obligates you to procure additional insured coverage for the additional insured's sole
    negligence, then the coverage for the additional  insured shall conform to the agreement,  but only if the
    applicable law would allow you to indemnify the additional  insured for liability arising out of the additional
    insured's sole negligence.

LIC0016626
CTRL00000110_0056
Exhibit 1, Page 067

This insurance does not apply to:

    a.  Any "occurrence" which takes place after you cease to be a tenant in that premises or to lease that land;

    b.  Structural alterations, new construction or demolition operations performed by or on behalf of that manager or lessor; or

    c.  Any premises for which coverage is excluded by endorsement.

3.  **Mortgagees, Assignees or Receivers**:  Any person(s) or organization(s) with respect to their liability as mortgagee, assignee or receiver and arising out of your ownership, maintenance or use of the premises.

This insurance does not apply to structural alterations, new construction and demolition operations performed by or on behalf of such person(s) or organization(s).

4.  **Grantor of Franchise**:  Any person(s) or organization(s) but only with respect to their liability as grantor of a franchise to you.

5.  **Vendors**:  Any person(s) or organization(s) that distributes or sells "your products" in the regular course of their business, hereafter referred to as vendors, but only with respect to "bodily injury" or "property damage" arising out of "your products" which are distributed or sold in the regular course of the vendor's business, subject to the following additional exclusions:

    a.  The insurance afforded the vendor does not apply to:

        (1)  "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement.   This exclusion does not apply to the liability for damages that the vendor  would have in the absence of the contract or agreement;

        (2)  Any express warranty unauthorized by you;

        (3)  Any physical or chemical change in the product made intentionally by the vendor;

        (4)  Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

        (5)  Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

        (6)  Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

        (7)  Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

        (8)  "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf.  However, this exclusion does not apply to:

           (a)  The exceptions contained in Paragraphs (4) or (6) above; or

           (b)  Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

    b.  This insurance does not apply to any insured, person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

LIC0016627

CTRL00000110_0057

Exhibit 1, Page 068

6. **Any Person or Organization Other Than a Joint Venture**:  Any person(s) or organization(s) (other than a joint venture of which you are a member) for whom you are obligated to procure additional insured coverage, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your act(s) or  omission(s) or the act(s) or omission(s) of those acting on your behalf:

    a.  In the performance of your ongoing operations; or

    b.  In connection with premises owned by or rented to you.

    This insurance does not apply to:

    a.  Any person(s) or organization(s) more specifically covered in Paragraphs 1 through 5 above;

    b.  Any construction, renovation, demolition or installation operations performed by or on behalf of you, or those operating  on your behalf; or

    c.  Any person(s) or organization(s)  whose profession, business or occupation is that of an architect, surveyor or engineer with respect to liability arising out of the rendering of, or failure to render, any professional architectural, engineering or  surveying services, including:

        (1)  The preparing, approving or failing to prepare or approve, maps, drawings, opinions, reports, surveys, field orders, change orders, designs and specifications; or

        (2)  Supervisory, inspection, architectural or engineering activities.

        This exclusion applies even if the claims against any insured allege  negligence or other wrongdoing in the supervision, hiring, employment,  training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional  services by or on behalf of you, or those operating  on your behalf.

The insurance afforded to any person(s) or organization(s) as an insured under this Item 1:

1.  Applies to the extent permitted by law;

2.  Applies only to the scope of coverage  and the minimum  limits of insurance required by the written agreement, but in no event exceeds either the scope of coverage or the limits of insurance provided by this policy;

3.  Does not apply to any person(s) or organization(s) for any "bodily injury", "property damage" or "personal and advertising injury" if any other additional insured endorsement attached to this policy applies to such person(s) or organization(s) with regard to the "bodily injury", "property damage" or "personal and advertising injury";

4.  Applies only if the "bodily injury" or "property damage" occurs, or the offense giving rise to the "personal and advertising injury" is committed, subsequent to the execution of the written agreement; and

5.  Applies only if the written agreement  is in effect at the time the "bodily injury" or "property damage" occurs, or at the time the offense giving rise to the "personal and advertising injury" is committed.

Item 2.    **Blanket Additional Insured – Grantor Of Permits**

Paragraph 2. of Section II - Who Is An Insured is amended to add the following:

Any state, municipality or political subdivision that has issued you a permit in connection with any operations performed by you or on your behalf, or in connection with premises you own, rent or control, and to which this insurance applies, but only to the extent that you are required to provide additional insured status to the state, municipality or political subdivision as a condition of receiving and maintaining the permit.  Such state, municipality or political subdivision that has issued you a permit is an insured only with respect to their liability as grantor of such permit to you.

LIC0016628

CTRL00000110_0058

Exhibit 1, Page 069

However, with respect to the state, municipality or political subdivision:

1.  Coverage will be no broader than required; and

2.  Limits of insurance will not exceed the minimum limits of insurance required as a condition for receiving or maintaining the permit;

but neither the scope of coverage nor the limits of insurance will exceed those provided by this policy.

This insurance does not apply to:

1.  "Bodily injury", "property damage" or "personal and advertising injury" arising out of operations performed for the state, municipality or political subdivision;

2.  Any "bodily injury" or "property damage" included within the "products-completed operations hazard", except when required by written agreement initiated prior to loss; or

3.  "Bodily injury", "property damage" or "personal and advertising injury", unless negligently caused, in whole or in part, by you or those acting on your behalf.

Item 3.    **Other Insurance Amendment**

If you are obligated under a written agreement to provide liability insurance on a primary, excess, contingent, or any other basis for any person(s) or organization(s) that qualifies as an additional insured on this policy, this policy will apply solely on the basis required by such written agreement and Paragraph 4. Other Insurance of Section IV – Commercial General Liability Conditions will not apply. Where the applicable written agreement does not specify on what basis the liability insurance will apply, the provisions of Paragraph 4. Other Insurance of Section IV – Commercial General Liability Conditions will apply. However, this insurance is excess over any other insurance available to the additional insured for which it is also covered as an additional insured by attachment of an endorsement to another policy providing coverage for the same "occurrence", claim or "suit".

LIC0016629

CTRL00000110_0059

Exhibit 1, Page 070

Policy Number TB7-661-067089-031
Issued by Liberty Insurance Corp.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## Non-Cumulation of Liability
## (Same Occurrence)

This endorsement modifies the insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

1.  The following is added to paragraph 4. of the Limits of Insurance Section:

    If one "occurrence" causes "personal and advertising injury" to which this policy applies and to which one or more prior and/or future liability policy(ies) issued to you by us also applies, then this policy's Personal and Advertising Injury Limit will be reduced by the amount of each payment made by us under the other policy(ies) because of such "occurrence".

2.  The following is added to paragraph 5. of the Limits of Insurance Section:

    If one "occurrence" causes "bodily injury" and/or "property damage" during the policy period and during the policy period of one or more prior and/or future liability policy(ies) issued to you by us, then this policy's Each Occurrence Limit will be reduced by the amount of each payment made by us under the other policy(ies) because of such "occurrence".

3.  The final paragraph of the Limits of Insurance Section is replaced with the following:

    The aggregate Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months.  In that case, the additional period will be deemed part of the last preceding period for purposes of determining the aggregated Limits of Insurance. However, the Each Occurrence Limit is the most we will pay for damages and Medical Expenses because of all "bodily injury" and "property damage" arising out of any one "occurrence" and the Personal and Advertising Injury Limit is the most we will pay for damage because of all "personal and advertising injury" arising out of any one "occurrence", regardless of the length of the policy period.

**LC 25 13 08 08**                                                                                      Page   1 of  1

LIC0016630

Exhibit 1, Page 071

Policy Number TB7-661-067089-031
Issued by Liberty Insurance Corp.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## Personal and Advertising Injury Redefined - Definition of Publication

This endorsement modifies the insurance provided under the following:

>       COMMERCIAL GENERAL LIABILITY COVERAGE PART
>       EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraphs **d.** and **e.** of the definition of "personal and advertising injury" are replaced by the following:

"Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**d.**  Oral or written "publication" directly to the public at large of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services.

**e.** **(1)**  Oral or written "publication" directly to the public at large of material that violates a person's right of privacy;

    **(2)**  Oral or written "publication" of material that violates a person's right of privacy by misappropriation of that person's name or likeness.

The following definition is added to the Definitions Section:

"Publication" means an insured's act of disseminating or broadcasting material or information.  Publication does not include the wrongful appropriation, interception or retrieval of material or information by a third party or the insured's dissemination or broadcasting of material or information to a person who is the subject of the material or the information.

**LC 29 04 08 08**                                                                                              Page   1  of  1

LIC0016631
Exhibit 1, Page 072

Policy Number TB7-661-067089-031
Issued by Liberty Insurance Corp.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## Personal and Advertising Injury - Occurrence Redefined

This endorsement modifies the insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.**  Paragraph **4.** of the Limits of Insurance section is replaced by the following:

**4.**  Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" arising out of any one "occurrence".

**B.**  The definition of "occurrence" in the Definitions section is replaced by the following:

"Occurrence" means:

**a.**  With respect to "bodily injury" or "property damage", an accident, including continuous or repeated exposure to substantially the same general harmful conditions; or

**b.**  With respect to "personal and advertising injury", an offense or series of related offenses.

LIC0016632

Exhibit 1, Page 073

Policy Number  TB7-661-067089-031
Issued by Liberty Insurance Corp.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**ADVERTISEMENT REDEFINED**

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART

The definition of "advertisement" in the Definitions Section is replaced by the following:

"Advertisement" means a paid announcement that is broadcast or published in the print, broadcast or electronic media to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.  For the purposes of this definition:

a.  Announcements that are published include material placed on the Internet or on similar electronic means of communication; and

b.  Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

LIC0016633

CTRL00000110_0063

Exhibit 1, Page 074

Policy Number  TB7-661-067089-031
Issued by Liberty Insurance Corp.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE  READ IT CAREFULLY.**

**BODILY INJURY REDEFINED**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS COVERAGE PART

The definition of "bodily injury" in the Definition section is replaced by the following:

"Bodily injury" means:

    a. Bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time;  and

    b. Mental anguish, shock or humiliation arising out of injury as defined in paragraph a. above. Mental anguish means any type of mental or emotional illness or distress.

     © 2011, Liberty Mutual Group of Companies.  All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with
its permission.

LIC0016634
CTRL00000110_0064

Exhibit 1, Page 075

Policy Number  TB7-661-067089-031
Issued by Liberty Insurance Corp.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE  READ IT CAREFULLY.**

**KNOWLEDGE OF OCCURRENCE OR OFFENSE**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

Knowledge of an "occurrence" or offense by your agent, servant or "employee"  will not in itself constitute knowledge by you unless your "executive officer" or "employee"  designated by you to notify us of an "occurrence"  or offense has knowledge of the "occurrence" or offense.

LIC0016635

Exhibit 1, Page 076

Policy Number  TB7-661-067089-031
Issued by Liberty Insurance Corp.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**PREMIUM RESPONSIBILITY ENDORSEMENT**

This endorsement modifies insurance provided under the following:

   COMMERCIAL GENERAL LIABILITY COVERAGE PART
   LIQUOR LIABILITY COVERAGE PART
   PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
   PRODUCT WITHDRAWAL COVERAGE PART

Paragraph E. Premiums of the Common Policy Conditions is replaced by the following:

1.  Each Named Insured is jointly and severally liable for all premiums due under this policy and for any other financial obligations of any Named Insured to us arising out of any agreements contained in this policy.

2.  The first Named Insured will be the payee for any return premiums we pay.

**LC 99 36 02 13**              © 2013 Liberty Mutual Insurance. All rights reserved.              Page  1 of  1
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Policy Number  TB7-661-067089-031
Issued by Liberty Insurance Corp.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE  READ IT CAREFULLY.**

**NOTICE OF CANCELLATION TO THIRD PARTIES**

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE PART
MOTOR CARRIER COVERAGE PART
GARAGE COVERAGE PART
TRUCKERS COVERAGE PART
EXCESS AUTOMOBILE LIABILITY INDEMNITY COVERAGE PART
SELF-INSURED TRUCKER EXCESS LIABILITY COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
COMMERCIAL LIABILITY - UMBRELLA COVERAGE FORM

A.  If we cancel this policy for any reason other than nonpayment of premium, we will notify the persons or organizations shown in the Schedule of this endorsement . We will send notice to the email or mailing address listed above at least 10 days, or the number of days listed above, if any, before the cancellation becomes effective.  In no event does the notice to the third party exceed the notice   to the first named insured.

B.  This advance notification of a pending cancellation of coverage is intended as a courtesy only. Our failure to provide such advance notification will not extend the policy cancellation date nor negate cancellation of the policy.

All other terms and conditions of this policy remain unchanged.

**Schedule**

| Name of Other Person(s) / Organization(s): | Email Address or mailing address: | Number Days Notice: |
| --- | --- | --- |
| Weyerhaeuser Company | 63459 Olive Barber Rd Coos Bay OR 97420 | 30 |

**LIM 99 01 05 11**        © 2011, Liberty Mutual Group of Companies.  All rights reserved.        Page  1  of  1
Includes copyrighted material of Insurance Services Office, Inc., with
its permission.

LIC0016637

CTRL00000110_0067

Exhibit 1, Page 078

Policy Number  TB7-661-067089-031
Issued by Liberty Insurance Corp.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE  READ IT CAREFULLY.**

**NOTICE OF CANCELLATION TO THIRD PARTIES**

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE PART
MOTOR CARRIER COVERAGE PART
GARAGE COVERAGE PART
TRUCKERS COVERAGE PART
EXCESS AUTOMOBILE LIABILITY INDEMNITY COVERAGE PART
SELF-INSURED TRUCKER EXCESS LIABILITY COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
COMMERCIAL LIABILITY - UMBRELLA COVERAGE FORM

A.  If we cancel this policy for any reason other than nonpayment of premium, we will notify the persons or organizations shown in the Schedule of this endorsement . We will send notice to the email or mailing address listed above at least 10 days, or the number of days listed above, if any, before the cancellation becomes effective.  In no event does the notice to the third party exceed the notice   to the first named insured.

B.  This advance notification of a pending cancellation of coverage is intended as a courtesy only. Our failure to provide such advance  notification will not extend the policy cancellation date nor negate cancellation of the policy.

All other terms and conditions of this policy remain unchanged.

**Schedule**

| Name of Other Person(s) / Organization(s): | Email Address or mailing address: | Number Days Notice: |
|---|---|---|
| Division of Operations - Coos Bay District Bureau of Land Management | 1300 Airport Lane North Bend OR 97459 | 30 |

**LIM 99 01 05 11**        © 2011, Liberty Mutual Group of Companies.  All rights reserved.          Page  1 of  1
Includes copyrighted material of Insurance Services Office, Inc., with
its permission.

LIC0016638

Exhibit 1, Page 079

Policy Number  TB7-661-067089-031
Issued by Liberty Insurance Corp.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE  READ IT CAREFULLY.**

**NOTICE OF CANCELLATION TO THIRD PARTIES**

This endorsement modifies insurance provided under the following:

    BUSINESS AUTO COVERAGE PART
    MOTOR CARRIER COVERAGE PART
    GARAGE COVERAGE PART
    TRUCKERS COVERAGE PART
    EXCESS AUTOMOBILE LIABILITY INDEMNITY COVERAGE PART
    SELF-INSURED TRUCKER EXCESS LIABILITY COVERAGE PART
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    COMMERCIAL LIABILITY - UMBRELLA COVERAGE FORM

A.  If we cancel this policy for any reason other than nonpayment of premium, we will notify the persons or organizations shown in the Schedule of this endorsement . We will send notice to the email or mailing address listed above at least 10 days, or the number of days listed above, if any, before the cancellation becomes effective.  In no event does the notice to the third party exceed the notice   to the first named insured.

B.  This advance notification of a pending cancellation of coverage is intended as a courtesy only. Our failure to provide such advance notification will not extend the policy cancellation date nor negate cancellation of the policy.

All other terms and conditions of this policy remain unchanged.

**Schedule**

| Name of Other Person(s) / Organization(s): | Email Address or mailing address: | Number Days Notice: |
|---|---|---|
| Bank of America, NA as Agent It's Successors and Assign | 400 4th Street Lake Oswego OR 97034 | 30 |

**LIM 99 01 05 11**      © 2011, Liberty Mutual Group of Companies.  All rights reserved.      Page  1  of  1
Includes copyrighted material of Insurance Services Office, Inc., with
its permission.

LIC0016639

Exhibit 1, Page 080

Policy Number  TB7-661-067089-031
Issued by Liberty Insurance Corp.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE  READ IT CAREFULLY.**

**NOTICE OF CANCELLATION TO THIRD PARTIES**

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE PART
MOTOR CARRIER COVERAGE PART
GARAGE COVERAGE PART
TRUCKERS COVERAGE PART
EXCESS AUTOMOBILE LIABILITY INDEMNITY COVERAGE PART
SELF-INSURED TRUCKER EXCESS LIABILITY COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
COMMERCIAL LIABILITY - UMBRELLA COVERAGE FORM

A. If we cancel this policy for any reason other than nonpayment of premium, we will notify the persons or organizations shown in the Schedule of this endorsement . We will send notice to the email or mailing address listed above at least 10 days, or the number of days listed above, if any, before the cancellation becomes effective.  In no event does the notice to the third party exceed the notice   to the first named insured.

B. This advance notification of a pending cancellation of coverage is intended as a courtesy only. Our failure to provide such advance notification will not extend the policy cancellation date nor negate cancellation of the policy.

All other terms and conditions of this policy remain unchanged.

**Schedule**

| Name of Other Person(s) / Organization(s): | Email Address or mailing address: | Number Days Notice: |
|---|---|---|
| SENECA JONES TIMBER COMPANY, LLC AN OREGON LIMITED LIABILITY COMPANY | P.O. BOX 10265 EUGENE. OR 97440 | 30 |

**LIM 99 01 05 11**          © 2011, Liberty Mutual Group of Companies.  All rights reserved.          Page  1  of  1
Includes copyrighted material of Insurance Services Office, Inc., with
its permission.

LIC0016640

Policy Number  TB7-661-067089-031
Issued by Liberty Insurance Corp.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE  READ IT CAREFULLY.**

**NOTICE OF CANCELLATION TO THIRD PARTIES**

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE PART
MOTOR CARRIER COVERAGE PART
GARAGE COVERAGE PART
TRUCKERS COVERAGE PART
EXCESS AUTOMOBILE LIABILITY INDEMNITY COVERAGE PART
SELF-INSURED TRUCKER EXCESS LIABILITY COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
COMMERCIAL LIABILITY - UMBRELLA COVERAGE FORM

A.  If we cancel this policy for any reason other than nonpayment of premium, we will notify the persons or organizations shown in the Schedule of this endorsement . We will send notice to the email or mailing address listed above at least 10 days, or the number of days listed above, if any, before the cancellation becomes effective.  In no event does the notice to the third party exceed the notice   to the first named insured.

B.  This advance notification of a pending cancellation of coverage is intended as a courtesy only. Our failure to provide such advance notification will not extend the policy cancellation date nor negate cancellation of the policy.

All other terms and conditions of this policy remain unchanged.

**Schedule**

| Name of Other Person(s) / Organization(s): | Email Address or mailing address: | Number Days Notice: |
|---|---|---|
| Per Schedule on file with the Company | Per Schedule on file with the Company | 30 |

LIC0016641

CTRL00000110_0071

Exhibit 1, Page 082

Policy Number  TB7-661-067089-031
Issued by Liberty Insurance Corp.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE  READ IT CAREFULLY.**

**NOTICE OF CANCELLATION TO THIRD PARTIES**

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE PART
MOTOR CARRIER COVERAGE PART
GARAGE COVERAGE PART
TRUCKERS COVERAGE PART
EXCESS AUTOMOBILE LIABILITY INDEMNITY COVERAGE PART
SELF-INSURED TRUCKER EXCESS LIABILITY COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
COMMERCIAL LIABILITY - UMBRELLA COVERAGE FORM

A. If we cancel this policy for any reason other than nonpayment of premium, we will notify the persons or organizations shown in the Schedule of this endorsement . We will send notice to the email or mailing address listed above at least 10 days, or the number of days listed above, if any, before the cancellation becomes effective.  In no event does the notice to the third party exceed the notice   to the first named insured.

B. This advance notification of a pending cancellation of coverage is intended as a courtesy only. Our failure to provide such advance notification will not extend the policy cancellation date nor negate cancellation of the policy.

All other terms and conditions of this policy remain unchanged.

**Schedule**

| Name of Other Person(s) / Organization(s): | Email Address or mailing address: | Number Days Notice: |
|---|---|---|
| Douglas County Land Department Douglas County Courthouse | 1036 SE Douglas Roseburg, OR 97470 | 30 |

**LIM 99 01 05 11**     © 2011, Liberty Mutual Group of Companies.  All rights reserved.     Page  1  of  1
Includes copyrighted material of Insurance Services Office, Inc., with
its permission.

LIC0016642

Policy Number  TB7-661-067089-031
Issued by Liberty Insurance Corp.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE  READ IT CAREFULLY.**

**NOTICE OF CANCELLATION TO THIRD PARTIES**

This endorsement modifies insurance provided under the following:

    BUSINESS AUTO COVERAGE PART
    MOTOR CARRIER COVERAGE PART
    GARAGE COVERAGE PART
    TRUCKERS COVERAGE PART
    EXCESS AUTOMOBILE LIABILITY INDEMNITY COVERAGE PART
    SELF-INSURED TRUCKER EXCESS LIABILITY COVERAGE PART
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    COMMERCIAL LIABILITY - UMBRELLA COVERAGE FORM

A.  If we cancel this policy for any reason other than nonpayment of premium, we will notify the persons or organizations shown in the Schedule of this endorsement . We will send notice to the email or mailing address listed above at least 10 days, or the number of days listed above, if any, before the cancellation becomes effective.  In no event does the notice to the third party exceed the notice   to the first named insured.

B.  This advance notification of a pending cancellation of coverage is intended as a courtesy only. Our failure to provide such advance notification will not extend the policy cancellation date nor negate cancellation of the policy.

All other terms and conditions of this policy remain unchanged.

**Schedule**

| Name of Other Person(s) / Organization(s): | Email Address or mailing address: | Number Days Notice: |
|---|---|---|
| Lone Rock Timberland Co. Lone Rock Timber Management Company | PO Box 1127 Roseburg, OR 97470 | 30 |

**LIM 99 01 05 11**          © 2011, Liberty Mutual Group of Companies.  All rights reserved.          Page  1  of  1
Includes copyrighted material of Insurance Services Office, Inc., with
its permission.

LIC0016643

Exhibit 1, Page 084

Policy Number  TB7-661-067089-031
Issued by Liberty Insurance Corp.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE  READ IT CAREFULLY.**

**NOTICE OF CANCELLATION TO THIRD PARTIES**

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE PART
MOTOR CARRIER COVERAGE PART
GARAGE COVERAGE PART
TRUCKERS COVERAGE PART
EXCESS AUTOMOBILE LIABILITY INDEMNITY COVERAGE PART
SELF-INSURED TRUCKER EXCESS LIABILITY COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
COMMERCIAL LIABILITY - UMBRELLA COVERAGE FORM

A.  If we cancel this policy for any reason other than nonpayment of premium, we will notify the persons or organizations shown in the Schedule of this endorsement . We will send notice to the email or mailing address listed above at least 10 days, or the number of days listed above, if any, before the cancellation becomes effective.  In no event does the notice to the third party exceed the notice   to the first named insured.

B.  This advance notification of a pending cancellation of coverage is intended as a courtesy only. Our failure to provide such advance notification will not extend the policy cancellation date nor negate cancellation of the policy.

All other terms and conditions of this policy remain unchanged.

**Schedule**

| Name of Other Person(s) / Organization(s): | Email Address or mailing address: | Number Days Notice: |
|---|---|---|
| Fessenden Hall Inc. | 1050 Sherman Ave. Pennsauken, NJ 08110 | 30 |

**LIM 99 01 05 11**          © 2011, Liberty Mutual Group of Companies.  All rights reserved.          Page  1  of  1
Includes copyrighted material of Insurance Services Office, Inc., with
its permission.

LIC0016644

Exhibit 1, Page 085

Policy Number  TB7-661-067089-031
Issued by Liberty Insurance Corp.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE  READ IT CAREFULLY.**

**NOTICE OF CANCELLATION TO THIRD PARTIES**

This endorsement modifies insurance provided under the following:

    BUSINESS AUTO COVERAGE PART
    MOTOR CARRIER COVERAGE PART
    GARAGE COVERAGE PART
    TRUCKERS COVERAGE PART
    EXCESS AUTOMOBILE LIABILITY INDEMNITY COVERAGE PART
    SELF-INSURED TRUCKER EXCESS LIABILITY COVERAGE PART
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    COMMERCIAL LIABILITY - UMBRELLA COVERAGE FORM

A.  If we cancel this policy for any reason other than nonpayment of premium, we will notify the persons or organizations shown in the Schedule of this endorsement . We will send notice to the email or mailing address listed above at least 10 days, or the number of days listed above, if any, before the cancellation becomes effective.  In no event does the notice to the third party exceed the notice   to the first named insured.

B.  This advance notification of a pending cancellation of coverage is intended as a courtesy only. Our failure to provide such advance notification will not extend the policy cancellation date nor negate cancellation of the policy.

All other terms and conditions of this policy remain unchanged.

**Schedule**

| Name of Other Person(s) / Organization(s): | Email Address or mailing address: | Number Days Notice: |
|---|---|---|
| Keystone Forest Investments, LLC c/o Barnes & Associates, Inc. | 3000 Stewart Parkway, Suite 204 Roseburg, OR 97471 | 30 |

**LIM 99 01 05 11**    © 2011, Liberty Mutual Group of Companies.  All rights reserved.    Page  1 of  1
Includes copyrighted material of Insurance Services Office, Inc., with
its permission.

Policy Number  TB7-661-067089-031
Issued by Liberty Insurance Corp.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE  READ IT CAREFULLY.**

**NOTICE OF CANCELLATION TO THIRD PARTIES**

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE PART
MOTOR CARRIER COVERAGE PART
GARAGE COVERAGE PART
TRUCKERS COVERAGE PART
EXCESS AUTOMOBILE LIABILITY INDEMNITY COVERAGE PART
SELF-INSURED TRUCKER EXCESS LIABILITY COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
COMMERCIAL LIABILITY - UMBRELLA COVERAGE FORM

A.  If we cancel this policy for any reason other than nonpayment of premium, we will notify the persons or organizations shown in the Schedule of this endorsement . We will send notice to the email or mailing address listed above at least 10 days, or the number of days listed above, if any, before the cancellation becomes effective.  In no event does the notice to the third party exceed the notice   to the first named insured.

B.  This advance notification of a pending cancellation of coverage is intended as a courtesy only. Our failure to provide such advance notification will not extend the policy cancellation date nor negate cancellation of the policy.

All other terms and conditions of this policy remain unchanged.

**Schedule**

| Name of Other Person(s) / Organization(s): | Email Address or mailing address: | Number Days Notice: |
|---|---|---|
| Forest Investment Associates c/o Barnes & Associates, Inc. | 3000 Stewart Parkway, Suite 204 Roseburg, OR 97471 | 30 |

**LIM 99 01 05 11**          © 2011, Liberty Mutual Group of Companies.  All rights reserved.          Page  1  of  1
Includes copyrighted material of Insurance Services Office, Inc., with
its permission.

LIC0016646

Exhibit 1, Page 087

Policy Number  TB7-661-067089-031
Issued by Liberty Insurance Corp.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE  READ IT CAREFULLY.**

**NOTICE OF CANCELLATION TO THIRD PARTIES**

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE PART
MOTOR CARRIER COVERAGE PART
GARAGE COVERAGE PART
TRUCKERS COVERAGE PART
EXCESS AUTOMOBILE LIABILITY INDEMNITY COVERAGE PART
SELF-INSURED TRUCKER EXCESS LIABILITY COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
COMMERCIAL LIABILITY - UMBRELLA COVERAGE FORM

A.  If we cancel this policy for any reason other than nonpayment of premium, we will notify the persons or organizations shown in the Schedule of this endorsement . We will send notice to the email or mailing address listed above at least 10 days, or the number of days listed above, if any, before the cancellation becomes effective.  In no event does the notice to the third party exceed the notice   to the first named insured.

B.  This advance notification of a pending cancellation of coverage is intended as a courtesy only. Our failure to provide such advance notification will not extend the policy cancellation date nor negate cancellation of the policy.

All other terms and conditions of this policy remain unchanged.

**Schedule**

| Name of Other Person(s) / Organization(s): | Email Address or mailing address: | Number Days Notice: |
|---|---|---|
| Barnes & Associates, Inc. | 3000 Stewart Parkway, Suite 204 Roseburg, OR 97471 | 30 |

**LIM 99 01 05 11**          © 2011, Liberty Mutual Group of Companies.  All rights reserved.          Page  1 of  1
Includes copyrighted material of Insurance Services Office, Inc., with
its permission.

Policy Number  TB7-661-067089-031
Issued by Liberty Insurance Corp.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE  READ IT CAREFULLY.**

**NOTICE OF CANCELLATION TO THIRD PARTIES**

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE PART
MOTOR CARRIER COVERAGE PART
GARAGE COVERAGE PART
TRUCKERS COVERAGE PART
EXCESS AUTOMOBILE LIABILITY INDEMNITY COVERAGE PART
SELF-INSURED TRUCKER EXCESS LIABILITY COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
COMMERCIAL LIABILITY - UMBRELLA COVERAGE FORM

A.  If we cancel this policy for any reason other than nonpayment of premium, we will notify the persons or organizations shown in the Schedule of this endorsement . We will send notice to the email or mailing address listed above at least 10 days, or the number of days listed above, if any, before the cancellation becomes effective.  In no event does the notice to the third party exceed the notice   to the first named insured.

B.  This advance notification of a pending cancellation of coverage is intended as a courtesy only. Our failure to provide such advance  notification will not extend the policy cancellation date nor negate cancellation of the policy.

All other terms and conditions of this policy remain unchanged.

**Schedule**

| Name of Other Person(s) / Organization(s): | Email Address or mailing address: | Number Days Notice: |
|---|---|---|
| Bavarian Olympus Timber, LLC c/o Barnes & Associates, Inc. | 3000 Stewart Parkway, Suite 204 Roseburg, OR 97471 | 30 |

**LIM 99 01 05 11**        © 2011, Liberty Mutual Group of Companies.  All rights reserved.        Page  1  of  1
Includes copyrighted material of Insurance Services Office, Inc., with
its permission.

LIC0016648

Policy Number  TB7-661-067089-031
Issued by Liberty Insurance Corp.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE  READ IT CAREFULLY.**

**NOTICE OF CANCELLATION TO THIRD PARTIES**

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE PART
MOTOR CARRIER COVERAGE PART
GARAGE COVERAGE PART
TRUCKERS COVERAGE PART
EXCESS AUTOMOBILE LIABILITY INDEMNITY COVERAGE PART
SELF-INSURED TRUCKER EXCESS LIABILITY COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
COMMERCIAL LIABILITY - UMBRELLA COVERAGE FORM

A.  If we cancel this policy for any reason other than nonpayment of premium, we will notify the persons or organizations shown in the Schedule of this endorsement . We will send notice to the email or mailing address listed above at least 10 days, or the number of days listed above, if any, before the cancellation becomes effective.  In no event does the notice to the third party exceed the notice   to the first named insured.

B.  This advance notification of a pending cancellation of coverage is intended as a courtesy only. Our failure to provide such advance notification will not extend the policy cancellation date nor negate cancellation of the policy.

All other terms and conditions of this policy remain unchanged.

**Schedule**

| Name of Other Person(s) / Organization(s): | Email Address or mailing address: | Number Days Notice: |
|---|---|---|
| Silver Butte Timber Co. | PO Box 4, Riddle, OR 97469 | 30 |

LIC0016649

CTRL00000110_0079

Exhibit 1, Page 090

Policy Number  TB7-661-067089-031
Issued by        LIBERTY INSURANCE CORPORATION

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

**JOINT VENTURE OR PARTNERSHIP**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
EXCESS COMMERCIAL GENERAL LIABILTY COVERAGE PART

**Schedule**

| Joint Venture or Partnership: |
| --- |
| Roseburg Renewable Energy, LLC |

The term Named Insured includes in addition to the person or organization designated in the Declarations as the first Named Insured:

Any joint venture or partnership, in which you are a member or partner, provided that:

(1)  The joint venture or partnership is controlled by you;

(2)  You have an operating interest in the joint venture or partnership;

(3)  You are obligated under a written contract or agreement, prior to any loss, to provide insurance coverage; or

(4)  The joint venture or partnership is shown in the Schedule.

However:

    a.  Coverage for the joint venture or partnership under this endorsement is excess over any other valid and collectible insurance purchased specifically to cover the joint venture or partnership;

    b.  No person or organization is an insured with respect to the conduct of the joint venture or partnership if no Named Insured is a partner or member during the policy period or which is not engaged in any activities during the policy period;

    c.  This insurance does not apply to any injury or damage that occurred prior to the interest or obligation described above in the joint venture or partnership;

    d.  For scheduled joint ventures or partnerships, this insurance does not apply to any injury or damage that occurred prior to the joint venture or partnership being added to the Schedule; and

    e.  This insurance does not apply to any injury or damage that occurs once you no longer have an interest or obligation, as described above, in the joint venture or partnership.

The final paragraph of Section II – Who Is An Insured does not apply to the extent that it conflicts with coverage provided in this endorsement for joint ventures and partnerships.

**LC 99 39 10 13**        © 2013 Liberty Mutual Insurance.  All rights reserved. Includes copyrighted          Page 1 of 1
material of Insurance Services Office, Inc., with its permission.

LIC0016650

CTRL00000110_0080

Exhibit 1, Page 091

Policy Number  TB7-661-067089-031
Issued by        LIBERTY INSURANCE CORPORATION

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**MANUFACTURERS ERRORS AND OMISSIONS COVERAGE
CLAIMS-MADE AND DEFENSE WITHIN LIMITS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**THIS ENDORSEMENT PROVIDES CLAIMS-MADE AND REPORTED COVERAGE. THE COVERAGE IS PROVIDED ON A DEFENSE WITHIN THE LIMITS BASIS. COSTS INCURRED BY THE COMPANY IN DEFENDING CLAIMS WILL REDUCE THE LIMITS OF LIABILITY.**

**Schedule**

| Coverage | Limits Of Insurance | | Deductible Amount |
|---|---|---|---|
| **Manufacturers Errors and Omissions** | **$ 2,000,000** | **Per Act, Error or Omission Limit** | **$ 250,000** |
| | **$ 4,000,000** | **Aggregate** | |
| **Retroactive Date:** | N/A | | |
| **Insured Products:** Huber Wood Zip System - wood product not including tape and liquid flash | | | |
| **Information required to complete this Schedule, if not shown above, will be shown in the Declarations** | | | |

A.  The following is added to Section I - Coverages:

**Coverage – Manufacturer's Errors and Omissions**

1.  Insuring Agreement

    We will pay on the insured's behalf those sums which the insured becomes legally obligated to pay as "damages" because of any claim or "suit" arising out of a "manufacturer's error or omission" committed by the insured to which this insurance applies. We will have the right and duty to defend any claim or "suit" seeking "damages" to which this insurance applies. However, we will have no duty to defend any claim or "suit" seeking "damages" to which this insurance does not apply.  We may, at our discretion, investigate any "manufacturer's error or omission" and settle any claim or "suit" that may result.  But:

    a.  The amount we will pay for "damages" and Supplementary Payments is limited as described in Section III – Limits of Insurance;

    b.  Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments, settlements or Supplementary Payments;

LIC0016651

CTRL00000110_0081

Exhibit 1, Page 092

c.  The "manufacturer's error or omission" must not have been committed before the Retroactive Date, if any, shown in the Schedule, or after the end of the policy period; and

d.  A claim seeking "damages" because of a "manufacturer's error or omission" must first be made or brought against an insured during the policy period or, if applicable, during an Extended Reporting Period we provide.

A claim made or brought against the insured within 60 days after the end of the policy period will be considered to have been made or brought within the policy period if no subsequent policy is available to cover the claim.

A claim seeking "damages" will be deemed to have been first made at the earlier of the following times:

(1)  When notice of such claim is received and recorded by any insured or by us, whichever comes first; or

(2)  When we first make settlement in accordance with this Paragraph 1.

All claims arising out of the same "manufacturer's error or omission" or related "manufacturer's errors or omissions" will be deemed to have been made at the time the first of those claims is made and reported.

2.  Exclusions

For the purposes of this endorsement only, this insurance does not apply to:

a.  Bodily Injury Or Personal And Advertising Injury

"Damages" arising from "bodily injury" or "personal and advertising injury".

b.  Property Damage:

"Property damage" determined to be covered, in whole or in part, under any other part of the policy, including any other endorsements, to which this endorsement is attached.

c.  Dishonest, Fraudulent, Criminal Or Malicious Act

"Damages" arising from any actual or alleged intentional, dishonest, fraudulent, criminal or malicious act, error or omission committed by any insured, including the willful or reckless violation of any statute.

d.  Recording And Distribution Of Material Or Information In Violation Of Law Exclusion

"Damages" arising from any actual or alleged act, error, or omission that violates or is alleged to violate:

(1)  The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2)  The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3)  The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

(4)  Any federal, state or local statute other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating, or distribution of material or information.

© 2013 Liberty Mutual Insurance. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

LIC0016652

CTRL00000110_0082

Exhibit 1, Page 093

e.  Infringement of Copyright, Patent, Trademark or Trade Secret

"Damages" arising from any actual or alleged infringement of copyright, title, slogan, patent, trademark, trade dress, trade secret, trade name, service mark, service name or other designation of origin or authenticity.

f.  Contractual Liability

"Damages" that the insured is obligated to pay by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability that the insured would have in the absence of the contract or agreement.

g.  Pollution

"Damages" arising out of any:

(1)  Actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants";

(2)  Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(3)  Claim or "suit" by or on behalf of a governmental authority for "damages" because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

h.  Nuclear Energy

"Damages" arising out of the hazardous properties" of "nuclear material.

i.  Government Demands or Proceedings

"Damages" arising from any demand made or proceeding brought by or on behalf of any:

(1)  Federal, state, or local government agency or authority; or

(2)  Licensing or regulatory organization.

j.  Insureds Against Insureds

Loss for which a claim or "suit" is made or brought by or on behalf of any current or former insured against any current or former insured.

k.  Breach of Contract, Guarantee or Warranty

"Damages" arising out of any actual or alleged breach of contract, guarantee or express warranty, including but not limited to:

(1)  Cost estimates or cost guarantees being exceeded; or

(2)  Any delay or default by or on behalf of the insured with respect to the performance of any contract or agreement.

l.  Prior Knowledge

LIC0016653

Exhibit 1, Page 094

"Damages" arising out of any actual or alleged "manufacturer's error or omission" the insured had knowledge of prior to the effective date from which we have continuously provided this coverage to you.

m. War

"Damages" arising out of, or in connection with:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

n. Microorganisms

"Damages" arising from any type or form of organism of microscopic or ultramicroscopic size including, but not limited to, fungus, wet or dry rot, virus, algae, bacterial or any associated by-product.

o. Satellite Malfunction

"Damages" arising out of any malfunction of a satellite or failure of a satellite to provide the intended service or fulfill its intended purpose.

p. Professional Services

"Damages" arising out of the rendering or failure to render any professional services, except the designing, installation or manufacturing of an "insured product".

q. Cosmetic Defects

"Damages" arising from any cosmetic defects in your "insured product".

r. Product Recall

"Damages" arising out of the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of any "insured product" if such "insured product" is publicly withdrawn or recalled from the market.

s. Bankruptcy

"Damages" arising out of the bankruptcy, insolvency or other financial impairment of any insured or any other person or organization providing services, products or work for or on behalf of any insured.

t. Asbestos

"Damages" arising out of or caused by, or allegedly caused by, asbestos either alone or in combination with other substances or factors.

u. Auto, Watercraft, Aircraft or Mobile Equipment Loss of Use

"Damages" arising out of the loss of use of any aircraft, "auto", watercraft or "mobile equipment".

LIC0016654

CTRL00000110_0084

Exhibit 1, Page 095

v.   Cyber Liability

"Damages" arising out of any actual or alleged failure to prevent identity theft.

w.   Internet Service Interruption

"Damages" arising out of any internet service interruption or failure.

x.   Electronic Data

"Damages" arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, web-sites, hard or floppy disks, CD ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

y.   Lead

"Damages" arising directly or indirectly from lead or the exposure to lead in any form, including the request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize lead.

## B.  Defense Within Limits

1.   With respect to claims or "suits" to which this endorsement applies, Section I - Supplementary Payments – Coverages A and B is replaced by:

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a.   Both:

(1)   Fees, salaries and expenses of attorneys, legal interns and paralegals we retain (including our employees); and

(2)   All other expenses, including but not limited to expenses, fees, and/or any other amounts paid to or for experts and consultants, that we incur;

that are directly allocable to the particular claim or "suit".

b.   The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

c.   All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

d.   All court costs taxed against the insured in the "suit".  However, these payments do not include attorney's fees or attorney's expenses taxed against the insured.

e.   Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

LIC0016655

Exhibit 1, Page 096

    f.   All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

ALL SUPPLEMENTARY PAYMENTS MADE PURSUANT TO THIS ENDORSEMENT WILL REDUCE THE LIMITS OF INSURANCE AVAILABLE. However, amounts we pay for the salaries, fees and expenses of (1) independent adjusters we might hire and (2) any of our employees other than those described in 1.a. will not reduce the Limits of Insurance.

2.   With respect to claims or "suits" to which this endorsement applies, the following Condition is added to Section IV – Commercial General Liability Conditions:

Transfer of Duties When the Applicable Limit of Insurance Is Used Up.

   a.   When a limit of insurance has been used up in the payment of judgments, settlements and/or Supplementary Payments:

      (1)  We will notify the first Named Insured and any insured against whom a claim or "suit" is pending, in writing, as soon as practicable, that:

         (a)  Such a limit has been used up, and

         (b)  Our duty to defend claims and "suits" seeking "damages" subject to that limit has also ended.

      (2)  The first Named Insured and any insured against whom a claim or "suit" is pending will, as soon as practicable, arrange for the transfer of control of the defense of all such claims and "suits".

      (3)  We will assist in, and all insureds must cooperate in, the transfer of control of the defense of all such claims and "suits" seeking "damages" which are subject to that limit and which are reported to us before that limit is used up.

      (4)  We will take steps we deem appropriate to avoid a default in, or continue the defense of, such claims or "suits" until the transfer is completed, provided the appropriate insured is cooperating in completing such transfer. The first Named Insured and any insured against whom a claim or "suit" is pending will reimburse us for any expenses we incur (for which expenses each Named Insured and each insured against whom the claim or "suit" is pending are jointly and severally liable) to take such steps on and after the date on which the applicable limit of insurance is used up.

      (5)  We will take no action whatsoever with respect to any claim or "suit" reported to us after the applicable limit of insurance has been used up.

   b.   The duty to reimburse us will begin on the date the applicable limit of insurance is used up. The exhaustion of any limit of insurance by the payments of judgments, settlements and/or Supplementary Payments, and the resulting end of our duty to defend, will not be affected by our failure to comply with any of the provisions of this Condition.

C.  For the purposes of this endorsement only, Section III – Limits Of Insurance of the policy is replaced by the following:

**Section III – Limits of Insurance**

1.   The Limits of Insurance shown in the Schedule and the rules below fix the most we will pay regardless of the number of:
   a.   Insureds;

   b.   Claims made or "suits" brought;

    c.   Persons or organizations making claims or bringing "suits"; or

    d.   **"Manufacturer's errors or omissions".**

2.  The Aggregate Limit is the most we will pay for the sum of "damages" and Supplementary Payments for all claims and "suits" arising out of all "manufacturer's errors or omissions".

3.  The Per Act, Error or Omission Limit is the most we will pay for the sum of "damages" and Supplementary Payments due to claims or "suits" arising out of any one "manufacturer's error or omission" committed by or on behalf of the insured.

4.   Any causally connected series of "manufacturer's errors or omissions" committed by or on behalf of the insured will be considered one "manufacturer's error or omission".

5.  Deductible

    We will only pay for the amount of "damages" and Supplementary Payments that are in excess of the deductible amount shown in the Schedule of this endorsement. The deductible applies separately to each "manufacturer's error or omission" or series of causally connected "manufacturer's errors or omissions". The limits of insurance will be reduced by the amount paid or payable by you within this deductible.

    We do not have the duty to advance any amount subject to your deductible obligation. Exercise of our right to advance such amount shall not create any obligations or be construed as a waiver or estoppel of our rights under this policy. If required by law, we will pay all or any part of any deductible amount, if applicable, to effect settlement of any claim or "suit". Upon notice of our payment of a deductible amount, you shall promptly reimburse us for the part of the deductible amount we paid.

The Limits of Insurance of Manufacturer's Errors and Omissions Coverage apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

D.  For the purposes of the coverage provided by this endorsement, Conditions 2. of Section IV – Commercial General Liability Conditions is replaced by the following:

2.  Duties In The Event Of "Manufacturer's Error or Omission", or Claim or "Suit"

    a.  You must see to it that we are notified as soon as practicable of a "manufacturer's error or omission" which may result in a claim. To the extent possible, notice should include:

        (1)  What the "manufacturer's error or omission" was and when it occurred; and

        (2)  The names and addresses of anyone who may suffer "damages" as a result of such "manufacturer's error or omission".

    b.  If a claim is made or "suit" is brought against any insured, you must:

        (1)  Immediately record the specifics of the claim or "suit" and the date received; and

        (2)  Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    c.  You and any other involved insured must:

LIC0016657

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error or omission to which this insurance may also apply.

   d. No insured will make a payment, assume any obligation or incur any expense without our consent.

**E. Extended Reporting Period**

   1. You will have the right to purchase an Extended Reporting Period, as described below, if:

     a. This endorsement is canceled or not renewed; or

     b. We renew or replace this endorsement with insurance that:

      (1) Has a Retroactive Date later than the date shown in the Schedule of this endorsement; or

      (2) Does not apply to an act, error or omission on a claims-made basis.

   2. The Extended Reporting Period does not extend the policy period or change the scope of coverage provided. It applies only to claims for "manufacturer's errors or omissions" that were first committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Schedule of this endorsement. Once in effect, the Extended Reporting Period may not be canceled. The Extended Reporting Period does not apply to claims made or brought within 60 days after the end of the policy period.

   3. An Extended Reporting Period of five years is available, but only by an endorsement and for an extra charge.

     You must give us a written request for the endorsement within 60 days after the end of the policy period. The Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

     The additional premium will be 200% of the annual premium for this endorsement.

     The Extended Reporting Period endorsement applicable to this coverage shall set forth the terms, not inconsistent with this Section, applicable to the Extended Reporting Period, including a provision to the effect that the insurance afforded for claims first received during such period is excess over any other valid and collectible insurance available under policies in force after the Extended Reporting Period starts.

   4. If the Extended Reporting Period is in effect, we will provide an Extended Reporting Period Aggregate Limit Of Insurance described below, but only for claims first received and recorded during the Extended Reporting Period.

     The Extended Reporting Period Aggregate Limit Of Insurance will be equal to the dollar amount shown in the Schedule of this endorsement under Limits of Insurance.

**F. Definitions**

   The following definitions are added to Section V – Definitions:

LC 04 48 10 13      © 2013 Liberty Mutual Insurance. All rights reserved.      Page 8 of 9
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

1. "Manufacturer's error or omission":

    a. Means an insured's negligent design, installation or manufacture of an "insured product" resulting in the failure of the "insured product" to perform the function or serve the purpose intended after it has left the possession of any insured.

    b. Does not include:

        (1) Faulty installation of the "insured product" except when installed by you.

        (2) General wear and tear that can be reasonably expected.

        (3) Enhancements of the "insured product" after it has been put to its intended purpose.

2. "Damages":

    a. Means economic loss sustained by your customer because of their loss of use of their tangible property which has not been physically injured or destroyed, provided that such loss of use does not arise from any sudden and accidental physical injury to your "insured product".

    b. Does not include:

        (1) The purchase or contract price for your "insured product".

        (2) Costs and expenses incurred by you or on your behalf to fulfill a warranty, representation, or promise provided with your "insured product".

        (3) Disgorgement of profits, restitution, or any money or credits that represent any gain, profit, or advantage to which you are not legally entitled.

        (4) Costs to restore goodwill of your customer.

        (5) Criminal or civil penalties.

3. "Insured product" means all Insured Products shown in the Schedule of this endorsement.

LIC0016659

Policy Number:  TB7-661-067089-031
Issued by:  LIBERTY INSURANCE CORPORATION

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**LOGGER'S PROPERTY DAMAGE LIABILITY ENDORSEMENT**

THIS ENDORSEMENT CONTAINS AN AGREEMENT WHICH MAY RESULT IN SUSPENSION OF THE COVERAGE PROVIDED BY THIS ENDORSEMENT IF BREACHED. MAKE SURE YOU READ IT CAREFULLY AND UNDERSTAND THE CONDITIONS UNDER WHICH THIS INSURANCE COULD BE SUSPENDED. IF YOU HAVE QUESTIONS, CONTACT YOUR LIBERTY MUTUAL REPRESENTATIVE.

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**Schedule**

| **Designated Customer**: | | | |
|---|---|---|---|
| **Limits of Insurance:** | $ | 2,000,000 | **Logger's Each Occurrence Limit** |
| | $ | 4,000,000 | **Logger's Property Damage Aggregate Limit** |
| **Deductible:** | $ | N/A | |

The following exclusion is added to Paragraph 2. Coverage A (Section I):

This insurance does not apply to "property damage" for which coverage is provided under Logger's Property Damage Liability Coverage.

The following coverage is added to Section I - Coverages:

LOGGER'S PROPERTY DAMAGE LIABILITY COVERAGE

1. **Insuring Agreement:**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "logger's property damage" to which this insurance applies arising out of "your logging and lumbering operations".  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

      (1) The amount we will pay for damages is limited as described in Section III -- Limits of Insurance; and

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under the Logger's Property Damage Liability Coverage.

   As used above, damages because of "logger's property damage" includes "fire fighting expenses" resulting from "your logging and lumbering operations" only if no "forester" has suspended these operations.

LIC0016660

CTRL00000110_0090

Exhibit 1, Page 101

Supplementary Payments - Coverages A and B shall apply to the Logger's Property Damage Liability Coverage. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

b.  This insurance applies to "logger's property damage" only if:

(1)  The "logger's property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2)  The "logger's property damage" occurs during the policy period; and

(3)  The "logger's property damage" arises out of "your logging and lumbering operations" performed pursuant to a written contract for a Designated Customer listed in the Schedule.

2.  **Exclusions**

This insurance does not apply to:

a.  "Logger's property damage" expected or intended from the standpoint of the insured.

b.  "Logger's property damage" caused by fire which begins or spreads because of any willful or malicious act of the insured.

c.  "Logger's property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants."

d.  Any loss, cost or expense arising out of any:

(1)  Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2)  Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

e.  "Logger's property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned or operated by or rented or loaned to any insured.  Use includes operation and "loading or unloading".

This exclusion does not apply to:

(1)  A watercraft while ashore on premises you own or rent;

(2)  A watercraft you do not own that is:

(a)  Less than 26 feet long; and

(b)  Not being used to carry persons or property for a charge;

(3)  Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(4)  "Logger's property damage" arising out of the operation of any of the equipment listed in Paragraph f. (2) or f. (3) of the definition of "mobile equipment" (Section V).

LIC0016661

Exhibit 1, Page 102

    f.   "Logger's property damage" to:

        (1)  Property you own or rent;

        (2)  Premises you sell, give away or abandon, if the "logger's property damage" arises out of any part of those premises; or

        (3)  Personal property in the care, custody or control of the insured except any "vehicle" or railroad rolling stock.

    g.   Punitive damages or exemplary damages, penalties, fees, double or treble damages.

    h.   "Logger's property damage" for which you have assumed liability in a contract or agreement. This does not apply to liability for damages which the insured would have in the absence of the contract or agreement.

3.   The following changes apply to Section III – Limits of Insurance:

    a.   The following is added to Paragraph 2.

        2.   The General Aggregate Limit is the most we will pay for the sum of:

            d.   Damages under the Logger's Property Damage Liability Coverage.

    b.   The following paragraphs are added:

        8.   The Logger's Property Damage Aggregate Limit shown in the Schedule is the most we will pay for the sum of all damages because of "logger's property damage".

        9.   Subject to 2. and 8. above, the Logger's Each Occurrence Limit shown in the Schedule is the most we will pay for all damages because of "logger's property damage" arising out of any one "occurrence".

    c.   You are responsible, up to the Deductible Amount shown above, for the total of:

        (1)  all damages, including amounts paid in settlement of a claim or "suit", plus

        (2)  all "allocated loss adjustment expense";

    because of all "property damage" as the result of any one "occurrence". We are responsible for those amounts of damages to which this insurance applies (subject to the applicable limits of insurance) and "allocated loss adjustment expense" that exceed the applicable deductible amount shown above.

    The Logger's Each Occurrence Limit and the Logger's Property Damage Aggregate Limit shown in the Schedule shall be reduced by amounts paid or payable by you within the deductible amount.

    We have the right to advance any part or all of the deductible to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible as has been advanced by us. Exercise of our right to advance such amount shall not create any obligations or be construed as a waiver or estoppel of our rights under this policy.

4.   **Additional Definitions**

    a.   "Your logging and lumbering operations" means logging, the felling and bucking of timber, log road building, sawmilling, planning, plywood, veneer, pulp or paper milling, and all operations necessary or incidental to logging including railroading or trucking of felled trees or timber, maintenance of logging campsites, and the ownership, management, or reforestation of timberlands by you or on your behalf.

LD 04 16 07 11        © 2011 Liberty Mutual Group of Companies. All rights reserved.        Page 3 of 4
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

LIC0016662

b. "Logger's property damage" means:

   (1) physical injury to any "vehicle" or railroad rolling stock while being loaded or unloaded including all resulting loss of use; and

   (2) "property damage" due to fire resulting from "your logging and lumbering operations" including physical injury to timberlands, standing timber, felled or bucked timber, owned by others.

c. "Vehicle," as used in the Logger's Property Damage Liability Coverage means any land motor vehicle, trailer or semi-trailer.

d. "Fire fighting expenses" means your portion of the actual cost incurred by others in controlling or extinguishing a fire. It does not include your expenses for your "employees", or others you may hire to fulfill your obligation to use a reasonable effort, to control or extinguish a fire.

e. "Forester" means a federal or state forester, including any of his or her authorized representatives.

f. "Allocated loss adjustment expense" includes, but is not limited to:

   (1) Attorneys' fees for claims in "suit";

   (2) Court costs and other items of expense such as:

      (a) costs for medical, expert and other witnesses at trials or hearings, stenographic costs and costs of copies of documents and transcripts; and

      (b) medical, expert, or consultant fees and expenses relating to the defense of any claim or "suit"; and

   (3) Any other expense described in Supplementary Payments – Coverages A and B.

5. **Additional Condition**

The following condition is added to Section IV – Commercial General Liability Conditions:

a. You agree that:

   (1) slash will be burned only at such times and under such conditions as approved, directed or provided by a "forester"; and

   (2) "logging and lumbering operations" will be completely suspended whenever directed by a "forester".

IF YOU BREACH THIS AGREEMENT, THE INSURANCE AFFORDED UNDER THE LOGGER'S PROPERTY DAMAGE LIABILITY COVERAGE WILL BE SUSPENDED DURING THE ENTIRE PERIOD OF SUCH BREACH OF THIS AGREEMENT AND SHALL NOT APPLY TO "LOGGER'S PROPERTY DAMAGE" ARISING OUT OF "YOUR LOGGING AND LUMBERING OPERATIONS" CONDUCTED DURING THE PERIOD OF SUCH BREACH. However, the exclusion added to Coverage A (Section I) will remain in force. The agreement afforded by this endorsement shall not be prejudiced by your failure to comply with this agreement for reasons or causes over which you have no control.

LIC0016663

Policy Number  TB7-661-067089-031
Issued by        LIBERTY INSURANCE CORPORATION

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**LIMITED UNINTENTIONAL DISCRIMINATION COVERAGE**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**Schedule**

| | |
|---|---|
| **Discrimination Limit:** | $  2,000,000 |
| **Discrimination Aggregate:** | $  4,000,000 |
| **Discrimination Deductible:** | $  250,000 |

A.  **Coverage**

The following offense is added to the definition of "personal and advertising injury":

Discrimination based upon race, creed, religion, national origin, age, sex, sexual orientation, marital status, physical capabilities, characteristics or condition, or mental capabilities or condition.

This coverage for discrimination does not apply to any:

1.  Discrimination intentionally committed by the insured;

2.  Discrimination committed by, at the direction of or with the knowledge or consent of you or any of your executive officers, directors, stockholders, partners or members;

3.  Discrimination directly or indirectly related to the employment, prospective employment, refusal to employ or termination of any person;

4.  Discrimination if insurance for such is prohibited by applicable law or public policy;

5.  Liability for the cost of making accommodations required by the American with Disabilities Act of 1990, or any amendment thereto, or any similar federal, state or local law, including but not limited to any facility alterations or the acquisition or modification of equipment or devices. However, this exclusion does not apply to liability for the failure to make reasonable accommodations to a disability.

B.  **Additional Exclusion**

The following exclusion is added to Paragraph 2. Exclusions of Section I - Coverage A – Bodily Injury and Property Damage Liability:

This insurance does not apply to:

Damages arising out of unlawful discrimination.

© 2013 Liberty Mutual Insurance. All rights reserved. Includes copyrighted
material of Insurance Services Office, Inc., with its permission.        Page 1 of 2

LIC0016664

CTRL00000110_0094

Exhibit 1, Page 105

C. **Limits of Insurance**

1. This insurance is subject to the Discrimination Limit shown in the schedule of this endorsement.

   This Discrimination Limit is the most we will pay for damages because of all "personal and advertising injury" arising out of any one "occurrence" because of discrimination.

   This Discrimination Limit is subject to the Personal and Advertising Injury Limit shown in the Declarations; it is not in addition to the Personal and Advertising Injury Limit.

   If a Discrimination Limit  is not designated in the schedule of this endorsement, the applicable limit is the Personal and Advertising Injury Limit shown in the Declarations.

2. This insurance is subject to the Discrimination Aggregate shown in the Schedule. If no Discrimination Aggregate is shown in the Schedule, this insurance is subject to the General Aggregate Limit shown in the Declarations.

D. **Deductible**

1. You are responsible, up to the Discrimination Deductible shown in the Schedule of this endorsement, for the total of all damages, including amounts paid in settlement of a claim or "suit" and Supplementary Payments because of "personal and advertising injury" arising out of any one "occurrence" because of discrimination.  Subject to the applicable limits of insurance, we are responsible for those amounts of damages, including amounts paid in settlement of a claim or "suit" and Supplementary Payments because of discrimination that exceed the Discrimination Deductible shown in the Schedule of this endorsement.

2. The Personal and Advertising Injury Limit and any applicable aggregate limits of insurance are reduced by the amount of damages paid or payable by you within the deductible.

3. We have the right but not the duty to advance any part or all of the deductible amount.  If we exercise this right, you must promptly reimburse us for any such amounts advanced.  All such amounts advanced shall remain your sole and exclusive liability.  Exercise of our right to advance such amounts shall not create any obligations or be construed as a waiver or estoppel of our rights under this policy.

4. In the event we recover any advance or payment made under this policy by exercising our right of subrogation, the amount so recovered shall first be applied to any payments made by us in excess of the deductible amount; only then shall the remainder of such recovery, if any, be applied to reduce the deductible amount payable or paid by you.

5. Any other deductible endorsement attached to this policy does not apply to the insurance provided by this endorsement.

6. All other terms of this policy, including those which govern:

   a. Our right and duty to defend claims or "suits"; and

   b. The insured's duties in the event of an "occurrence";

   apply irrespective of application of the deductible amount.

E. **Other Insurance**

This insurance does not apply to any portion of a loss for which the insured has available any other valid and collectible insurance, whether primary, excess, contingent, or on any other basis, unless such other insurance was specifically purchased by the insured to apply in excess of this policy.

          © 2013 Liberty Mutual Insurance. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc., with its permission.

POLICY NUMBER: TB7-661-067089-031

**COMMERCIAL GENERAL LIABILITY**
**CG 20 26 12 19**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**1.** In the performance of your ongoing operations; or

**2.** In connection with your premises owned by or rented to you.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable limits of insurance;

whichever is less.

This endorsement shall not increase the applicable limits of insurance.

**SCHEDULE**

**Name Of Additional Insured Person(s) Or Organization(s):**

Drs Emergency Corporation dba Cascade medical Associates TIN 93-0593500

Medical Directors: Dr. Richard Abraham Dr. Marc Schnapper Dr. Luci Kovacevic Dr. Brian Hoyt

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

LIC0016666

CTRL00000110_0096

Exhibit 1, Page 107

COMMERCIAL GENERAL LIABILITY
CG 21 73 01 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism".

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

**2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

LIC0016667

CTRL00000110_0097

Exhibit 1, Page 108

**COMMERCIAL GENERAL LIABILITY**
**CG 26 88 01 15**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ALASKA EXCLUSION OF
# CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising out of a "certified act of terrorism".

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

**2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

LIC0016668

CTRL00000110_0098

COMMERCIAL GENERAL LIABILITY
CG 21 06 05 14

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

LIC0016669

CTRL00000110_0099

Exhibit 1, Page 110

COMMERCIAL GENERAL LIABILITY
CG 21 47 12 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE  READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

   **(a)** Refusal to employ that person;

   **(b)** Termination of that person's employment; or

   **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

   **(a)** Refusal to employ that person;

   **(b)** Termination of that person's employment; or

   **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

LIC0016670

CTRL00000110_0100

Exhibit 1, Page 111

COMMERCIAL GENERAL LIABILITY
CG 21 65 12 04

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE  READ IT CAREFULLY.

# TOTAL POLLUTION EXCLUSION WITH A BUILDING HEATING, COOLING AND DEHUMIDIFYING EQUIPMENT EXCEPTION AND A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to:

**(a)** "Bodily injury" if sustained within a building which is or was at any time owned or occupied by, or rented or loaned to, any insured and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests; or

**(b)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

**(i)** At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

**(ii)** At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

CG 21 65 12 04                    © ISO Properties, Inc., 2003                    **Page 1 of 1**

LIC0016671

CTRL00000110_0101

Exhibit 1, Page 112

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## Nuclear Energy Liability Exclusion Endorsement (Broad Form)

This endorsement modifies the insurance provided under the following:

> COMMERCIAL AUTOMOBILE COVERAGE PART
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> FARM COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART
> UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured;" or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

© ISO Properties, Inc., 2007

IL 00 21 09 08
09-08

Page  1  of  2

**2.** As used in this endorsement:

"Hazardous properties" include radioactive, toxic or explosive properties.

"Nuclear material" means "source material," "special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

   **(a)** Any "nuclear reactor";

   **(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

   **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

   **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

LIC0016673

Policy Number TB7-661-067089-031
Issued by Liberty Insurance Corp.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## Asbestos Exclusion Endorsement

This endorsement modifies the insurance provided under the following:

       COMMERCIAL GENERAL LIABILITY COVERAGE PART
       EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART
       GARAGE COVERAGE PART
       LIQUOR LIABILITY COVERAGE PART
       MOTOR TRUCK CARGO COVERAGE PART
       OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
       POLLUTION LIABILITY COVERAGE PART
       PRINTERS LIABILITY COVERAGE PART
       PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
       RAILROAD PROTECTIVE LIABILITY COVERAGE PART
       SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY – NEW YORK
       WAREHOUSEMAN'S LEGAL LIABILITY COVERAGE PART

This insurance does not apply to any liability, damages, loss, injury, demand, claim or "suit" arising out of or caused by, or allegedly caused by, asbestos either alone or in combination with other substances or factors.

**LC 21 01 06 05**                                                                                      Page   1 of  1

LIC0016674

Exhibit 1, Page 115

Policy Number TB7-661-067089-031
Issued by Liberty Insurance Corp.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## Silica Exclusion Endorsement

This endorsement modifies the insurance provided under the following:

        COMMERCIAL GENERAL LIABILITY COVERAGE PART
        EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART
        GARAGE COVERAGE PART
        LIQUOR LIABILITY COVERAGE PART
        MOTOR TRUCK CARGO COVERAGE PART
        OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
        POLLUTION LIABILITY COVERAGE PART
        PRINTERS LIABILITY COVERAGE PART
        PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
        RAILROAD PROTECTIVE LIABILITY COVERAGE PART
        SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY – NEW YORK
        WAREHOUSEMEN'S LIABILITY COVERAGE PART

This insurance does not apply to any liability, damages, loss, injury, demand, claim or "suit" any part of which is caused by, or allegedly caused by, silica in any form or any substance containing silica, either alone or in combination with other substances or factors, whether included in a product or otherwise.

**LC 21 02 06 05**
 

LIC0016675

CTRL00000110_0105

Exhibit 1, Page 116

Policy Number  TB7-661-067089-031
Issued by Liberty Insurance Corp.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE  READ IT CAREFULLY.**

**FUNGI OR BACTERIA EXCLUSION**
**(LEGIONELLA BACTERIUM EXCLUDED)**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion is added to Paragraph 2. Exclusions of Section I – Coverage A – Bodily Injury and Property Damage Liability:

2. Exclusions

This insurance does not apply to:

Fungi or Bacteria

a. "Bodily injury" or "property damage" which would not have occurred, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such  injury or damage.

b. Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other  person or entity.

With the exception for legionella bacterium, this exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

B. The following exclusion is added to Paragraph 2. Exclusions of Section I – Coverage B – Personal and Advertising Injury Liability:

2. Exclusions

This insurance does not apply to:

Fungi or Bacteria

a. "Personal and advertising injury" which would not have taken place, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such  injury.

b. Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**LC 21 91 09 12**              © 2012 Liberty Mutual Insurance. All rights reserved.              Page  1 of  2
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

LIC0016676

CTRL00000110_0106

C.  The following definition is added to the Definitions  Section:

"Fungi" means  any type  or form  of  fungus, including  mold  or mildew  and  any  mycotoxins, spores, scents  or byproducts produced or released by fungi.

LIC0016677

CTRL00000110_0107

**IL 01 42 09 08**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OREGON CHANGES – DOMESTIC PARTNERSHIP

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK COVERAGE PART

**A.** The term "spouse" is replaced by the following:

Spouse or individual who is in a domestic partnership recognized under Oregon law.

**B.** Under the Commercial Auto Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to the:

**1.** Individual Named Insured by blood, adoption, marriage or domestic partnership recognized under Oregon law, who is a resident of such Named Insured's household, including a ward or foster child; or

**2.** Individual named in the Schedule by blood, adoption, marriage or domestic partnership recognized under Oregon law, who is a resident of the individual's household, including a ward or foster child, if the Drive Other Car Coverage – Broadened Coverage For Named Individual Endorsement is attached.

**C.** With respect to coverage for the ownership, maintenance, or use of "covered autos" provided under the Commercial Liability Umbrella Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to you by blood, adoption, marriage or domestic partnership recognized under Oregon law, who is a resident of your household, including a ward or foster child.

LIC0016678

CTRL00000110_0108

Exhibit 1, Page 119

**IL 01 99 09 08**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE  READ IT CAREFULLY.**

# ARKANSAS CHANGES – TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
FARM LIABILITY COVERAGE FORM
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK COVERAGE PART

The following is added to the **Transfer Of Rights Of Recovery Against Others To Us** Condition:

We will be entitled to recovery  only after the insured ("insured") has been fully compensated for the loss or damage sustained, including expenses incurred in obtaining full compensation for the  loss or damage.

LIC0016679

CTRL00000110_0109

Exhibit 1, Page 120

**LIBERTY MUTUAL GROUP CALIFORNIA PRIVACY NOTICE**
Commercial Lines (excluding Workers' Compensation)
(Effective December 15, 2020)

Liberty Mutual Group and its affiliates, subsidiaries, and partners (collectively "Liberty Mutual" or "we", "us" and "our") provide insurance to companies and other insurers. This Privacy Notice explains how we gather, use, and share your data. This Privacy Notice applies to you if you are a **Liberty Mutual commercial line insured or are a commercial line claimant residing in California.** It does not apply to covered employees or claimants under Workers' Compensation policies. If this notice does not apply to you, go to libertymutual.com/privacy to review the applicable Liberty Mutual privacy notice.

**What Data Does Liberty Mutual Gather?**

We may collect the following categories of data:

- **Identifiers**, including a real name, alias, postal address, unique personal identifier, online identifier, Internet Protocol address, email address, account name, Social Security Number, driver's license number, or other similar identifiers;
- **Personal information described in California Civil Code § 1798.80(e)**, such as your name, signature, Social Security Number, physical characteristics or description, address, telephone number, driver's license or state identification card number, insurance policy number, education, employment, employment history, bank account number, financial information, medical information, or health insurance information;
- **Protected classification characteristics**, including age, race, color, national origin, citizenship, religion or creed, marital status, medical condition, physical or mental disability, sex (including gender, gender identity, gender expression, pregnancy or childbirth and related medical conditions), sexual orientation, or veteran or military status;
- **Commercial information**, including records of personal property, products or services purchased, obtained, or considered, or other purchasing or consuming histories and tendencies;
- **Internet or other similar network activity**, including browsing history, search history, information on a consumer's interaction with a website, application, or advertisement;
- **Professional or employment related information**, including current or past job history or performance evaluations;
- **Inferences drawn from other personal information**, such as a profile reflecting a person's preferences, characteristics, psychological trends, predispositions, behavior, attitudes, intelligence, abilities, and aptitudes;
- **Risk data**, including data about your driving and/or accident history; this may include data from consumer reporting agencies, such as your motor vehicle records and loss history information, health data, or criminal convictions; and
- **Claims data**, including data about your previous and current claims, which may include data regarding your health, criminal convictions, third party reports, or other personal data.

For information about the types of personal data we have collected about California consumers in the past twelve (12) months, please go to libertymutual.com/privacy and click on the link for the California Supplemental Privacy Policy.

**How We Get the Personal Data:**

| We gather your personal data **directly from you**. For example, you provide us with data when you: | We also gather your personal data **from other people**. For example: |
|---|---|
| - ask about, buy insurance or file a claim | - your insurance agent or broker |
| - pay your policy | - your employer, association or business (if you are insured through them) |
| - visit our websites, call us, or visit our office | - our affiliates or other insurance companies about your transactions with them |

LIC0016680

CTRL00000110_0110

Exhibit 1, Page 121

| | |
|---|---|
| | • consumer reporting agencies, Motor Vehicle Departments, and inspection services, to gather your credit history, driving record, claims history, or value and condition of your property |
| | • other public directories and sources |
| | • third parties, including other insurers, brokers and insurance support organizations who you have communicated with about your policy or claim, anti-fraud databases, sanctions lists, court judgments and other databases, government entities, open electoral register, advertising networks, data analytics providers, social networks, data brokers or in the event of a claim, third parties including other parties to the claim witnesses, experts, loss adjustors and claim handlers |
| | • other third parties who take out a policy with us and are required to provide your data such as when you are named as a beneficiary or where a family member has taken out a policy which requires your personal data |

For information about how we have collected personal data in the past twelve (12) months, please go to libertymutual.com/privacy and click on the link for the California Supplemental Privacy Policy.

**How Does Liberty Mutual Use My Data?**

Liberty Mutual uses your data to provide you with our products and services, and as otherwise provided in this Privacy Notice. Your data may be used to:

| Business Purpose | Data Categories |
|---|---|
| **Market, sell and provide insurance.**<br>This includes for example:<br>• calculating your premium;<br>• determining your eligibility for a quote;<br>• confirming your identity and service your policy; | • Identifiers<br>• Personal Information<br>• Protected Classification Characteristics<br>• Commercial Information<br>• Internet or other similar network activity<br>• Professional or employment related information<br>• Inferences drawn from other personal information<br>• Risk data<br>• Claims data |
| **Manage your claim.**<br>This includes, for example:<br>• managing your claim, if any;<br>• conducting claims investigations;<br>• conducting medical examinations;<br>• conducting inspections, appraisals;<br>• providing roadside assistance;<br>• providing rental car replacement or repairs; | • Identifiers<br>• Personal Information<br>• Protected Classification Characteristics<br>• Commercial Information<br>• Internet or other similar network activity<br>• Professional or employment related information<br>• Inferences drawn from other personal information<br>• Risk Data<br>• Claims Data |

LIC0016681

CTRL00000110_0111

Exhibit 1, Page 122

| | |
|---|---|
| **Day to Day Business and Insurance Operations.** This includes, for example: <ul><li>creating, maintaining, customizing and securing accounts;</li><li>supporting day-to-day business and insurance related functions;</li><li>doing internal research for technology development;</li><li>marketing and creating products and services;</li><li>conducting audits related to a current contact with a consumer and other transactions;</li><li>as described at or before the point of gathering personal data or with your authorization;</li></ul> | <ul><li>Identifiers</li><li>Personal Information</li><li>Protected Classification Characteristics</li><li>Commercial Information</li><li>Internet or other similar network activity</li><li>Professional or employment related information</li><li>Inferences drawn from other personal information</li><li>Risk data</li><li>Claims data</li></ul> |
| **Security and Fraud Detection.** This includes for example: <ul><li>detecting security issues;</li><li>protecting against fraud or illegal activity, and to comply with regulatory and law enforcement authorities;</li><li>managing risk and securing our systems, assets, infrastructure and premises;</li><li>help to ensure the safety and security of Liberty staff, assets and resources, which may include physical and virtual access controls and access rights management;</li><li>supervisory controls and other monitoring and reviews, as permitted by law; and</li><li>emergency and business continuity management;</li></ul> | <ul><li>Identifiers</li><li>Personal Information</li><li>Protected Classification Characteristics</li><li>Commercial Information</li><li>Internet or other similar network activity</li><li>Professional or employment related information</li><li>Inferences drawn from other personal information</li><li>Risk data</li><li>Claims data</li></ul> |
| **Regulatory and Legal Requirements.** This includes for example: <ul><li>controls and access rights management;</li><li>to evaluate or conduct a merger, divestiture, restructuring, reorganization, dissolution, or other sale or transfer of some or all of Liberty's assets, whether as a going concern or as part of bankruptcy, liquidation, or similar proceeding, in which personal data held by Liberty is among the assets transferred;</li><li>exercising and defending our legal rights and positions;</li><li>to meet Liberty contract obligations;</li><li>to respond to law enforcement requests and as required by applicable law, court order, or governmental regulations;</li><li>as otherwise permitted by law.</li></ul> | <ul><li>Identifiers</li><li>Personal Information</li><li>Protected Classification Characteristics</li><li>Commercial Information</li><li>Internet or other similar network activity</li><li>Professional or employment related information</li><li>Inferences drawn from other personal information</li><li>Risk data</li><li>Claims data</li></ul> |

LIC0016682

CTRL00000110_0112

| | |
|---|---|
| **Improve Your Customer Experience and Our Products.**<br>This includes for example:<br>• improve your customer experience, our products and service;<br>• to provide, support, personalize and develop our website, products and services;<br>• create and offer new products and services; | • Identifiers<br>• Personal Information<br>• Commercial Information<br>• Internet or other similar network activity<br>• Professional or employment related information<br>• Inferences drawn from other personal information<br>• Risk data<br>• Claims data |
| **Analytics to identify, understand and manage our risks and products.**<br>This includes for example:<br>• conducting analytics to better identify, understand and manage risk and our products; | • Identifiers<br>• Personal Information<br>• Protected Classification Characteristics<br>• Commercial Information<br>• Internet or other similar network activity<br>• Professional or employment related information<br>• Inferences drawn from other personal information<br>• Risk data<br>• Claims data |
| **Customer service and technical support.**<br>This includes for example:<br>• answer questions and provide notifications;<br>• provide customer and technical support; | • Identifiers<br>• Personal Information<br>• Commercial Information<br>• Internet or other similar network activity<br>• Professional or employment related information<br>• Inferences drawn from other personal information<br>• Risk data<br>• Claims data |

<u>How Does Liberty Mutual Share My Data?</u>

Liberty Mutual does not sell your personal data as defined by the California Consumer Privacy Act.

Liberty Mutual shares personal data of California consumers with the following categories of third parties:

• Liberty Mutual affiliates;
• Service Providers;
• Insurance support organizations;
• Brokers and agents;
• Government entities and institutions (e.g. regulatory, quasi-regulatory, tax or other authorities, law enforcement agencies, courts, arbitrational bodies, and fraud prevention agencies);
• Professional advisors including law firms, accountants, auditors, and tax advisors;
• Advertising networks, data analytics providers and social networks;
• Insurers, re-insurers, policy holders, and claimants; and
• As permitted by law.

Liberty Mutual shares the following categories of personal data regarding California consumers to service providers for business purposes:

| | |
|---|---|
| Identifiers | Personal Data; |
| Protected Classification Characteristics; | Commercial Information; |
| Internet or other similar network activity; | Claims Data; |
| Inferences drawn from other personal information; | Risk Data; |
| Professional, employment, and education information; | |

For information about how we have shared personal information in the past twelve (12) months, please go to libertymutual.com/privacy and click on the link for the California Supplemental Privacy Policy.

LIC0016683

CTRL00000110_0113

Exhibit 1, Page 124

**What Privacy Rights Do I Have?**

The California Consumer Privacy Act provides California residents with specific rights regarding personal information.  These rights are subject to certain exceptions.  Our response may be limited as permitted under law.  For more information on your rights, please go to libertymutual.com/privacy  and click on the link for the California Supplemental Privacy Policy.

**Will Liberty Mutual Update This Privacy Notice?**

We reserve the right to makes changes to this notice at any time and for any reason.  The updated version of this policy will be effective once it is accessible.  You are responsible for reviewing this policy to stay informed of any changes or updates.

**Who Do I Contact Regarding Privacy?**

If you have any questions or comments about this Notice or the Supplemental  CCPA Notice, your rights, or are requesting the Notice in an  alternative format, please do not hesitate to contact Liberty Mutual at:

**Phone:**              800-344-0197

**Email:**              privacy@libertymutual.com

**Postal Address:**    Liberty Mutual Insurance Company
                       Attn Privacy Office
                       175 Berkeley St 6th Floor
                       Boston MA  02116

LIC0016684

CTRL00000110_0114

**POLICYHOLDER NOTICE - COMPANY CONTACT INFORMATION**

In the event you need to contact someone about this policy for any reason, please contact your Sales Representative or Producer of Record as shown on the policy Declarations or Information Page.

If you have additional questions, you may contact the company at the following address:

**Liberty Mutual Insurance**
**175 Berkeley Street**
**Boston, MA 02116**
**+1 (800) 344-0197**

LIC0016685

CTRL00000110_0115

Exhibit 1, Page 126

# POLICYHOLDER DISCLOSURE

## TERRORISM RISK INSURANCE ACT

**THIS NOTICE CONTAINS IMPORTANT INFORMATION PURSUANT TO THE TERRORISM RISK INSURANCE ACT. PLEASE READ IT CAREFULLY.**

In accordance with the Terrorism Risk Insurance Act, including all amendments, ("TRIA" or the "Act"), we are required to provide you with a notice of the portion of your premium attributable to coverage for "certified acts of terrorism," the federal share of payment of losses from such acts, and the limitation or "cap" on our liability under the Act.

**Disclosure of Premium**

The Company has made available coverage for "certified acts of terrorism" as defined in the Act. If purchased, the portion of your premium attributable to coverage for "certified acts of terrorism" is shown in the Declarations, Declarations Extension Schedule or elsewhere by endorsement in your policy.

**Federal Participation In Payment Of Terrorism Losses**

If an individual insurer's losses from "certified acts of terrorism" exceed a specified deductible amount, the government will generally reimburse the insurer for a percentage of losses (the "Federal Share") paid in excess of the deductible, but only if aggregate industry losses from "certified acts of terrorism" exceed the "Program Trigger".

Beginning in calendar year 2020, the Federal Share is 80% and Program Trigger is $200,000,000.

**Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to "certified acts of terrorism" exceed $100 billion in a calendar year and we have met our deductible under the Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion. Nor shall Treasury make any payment for any portion of the amount of such losses that exceeds $100 billion. In such case, insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

LIC0016686

CTRL00000110_0116

EXHIBIT 2

EXHIBIT 2

EXHIBIT 2



**Policyholder    Information**

| **Named Insured & Mailing Address** | **Agent Mailing Address & Phone No.** |
|---|---|
| RLC INDUSTRIES CO.<br>3660 GATEWAY ST<br>SPRINGFIELD, OR 97477-6010 | (503) 224-9700<br>AON RISK INS SERVICES WEST INC<br>PO BOX 19640<br>IRVINE, CA 92623-9640 |





THIS IS NOT A BILL

*Dear Policyholder:*

We know you work hard to build your business. We work together with your agent,
**AON RISK INS SERVICES WEST INC    (503) 224-9700**
to help protect the things you care about. Thank you for selecting us.

Enclosed are your insurance documents consisting of:

**Your Commercial Documents**

- Excess Liability

To find your limits of insurance and premium please refer to your Declarations page(s). Please refer to your policy for specific coverages.

If you have any questions or changes that may affect your insurance needs, please contact your Agent at (503) 224-9700



**Reminders**

- Verify that all information is correct
- If you have any changes, please contact your Agent at (503) 224-9700
- In case of a claim, call your Agent or  1-844-325-2467

**You Need To Know**

- **CONTINUED ON NEXT PAGE**

*To report a claim,  call  your Agent or 1-844-325-2467*

DS 70 20 01 08

**You Need To Know - continued**

- **NOTICE(S) TO POLICYHOLDER(S)**
  The Important Notice(s) to Policyholder(s) provide a general explanation of changes in coverage to your policy. The Important Notice(s) to Policyholder(s) is not a part of your insurance policy and it does not alter policy provisions or conditions. Only the provisions of your policy determine the scope of your insurance protection. It is important that you read your policy carefully to determine your rights, duties and what is and is not covered.

| FORM NUMBER | TITLE |
| --- | --- |
| CNI90 11 07 18 | Reporting A Commercial Claim 24 Hours A Day |
| NP 74 44 09 06 | U.S. Treasury Department's Office of Foreign Assets Control (OFAC) Advisory Notice to Policyholders |
| NP 93 98 10 13 | Notice to Policyholder - Important Notice Your Action Required |
| SNI04 01 12 20 | Liberty Mutual Group California Privacy Notice |
| SNU36 02 05 20 | Oregon - Terrorism Insurance Premium Disclosure And Opportunity To Elect Coverage |

CNI 90 11 07 18

# REPORTING A COMMERCIAL CLAIM 24 HOURS A DAY

**Liberty Mutual Insurance claims professionals across the United States are ready to resolve your claim quickly and fairly, so you and your team can focus on your business. Our claims teams are specialized, experienced and dedicated to a high standard of service.**

**We're Just a Call Away - One Phone Number to Report All Commercial Insurance Claims**

Reporting a new claim has never been easier. A Liberty Mutual customer service representative is available to you 24/7 at 1(800)362-0000 for reporting new property, auto, liability and workers' compensation claims. With contact centers strategically located throughout the country for continuity and accessibility, we're there when we're needed!

**Additional Resource for Workers' Compensation Customers**

In many states, employers are required by law to use state-specific workers compensation claims forms and posting notices. This type of information can be found in the Policyholders Toolkit section of our website along with other helpful resources such as:

- Direct links to state workers compensation websites where you can find state-specific claim forms

- Assistance finding local medical providers

- First Fill pharmacy forms - part of our managed care pharmacy program committed to helping injured workers recover and return to work

Our Policyholder Toolkit can be accessed at **www.libertymutualgroup.com/toolkit.**

For all claims inquiries please call us at 1(800)362-0000 .

© 2018 Liberty Mutual Insurance

# U.S. TREASURY DEPARTMENT'S  OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")
## ADVISORY  NOTICE  TO  POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

Please refer any questions you may have to your insurance agent.

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations;  and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site - http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

© 2011 Liberty Mutual Insurance. All rights reserved.

NP 74 44 09 06    Includes copyrighted material of Insurance Services Office, Inc., with its permission.    **Page 1 of 1**

NP 93 98 10 13

## IMPORTANT   NOTICE

## YOUR   ACTION   REQUIRED

THANK  YOU  FOR PLACING THIS EXCESS POLICY WITH  US.  WE TRUST  THAT  THIS  POLICY  WAS  ISSUED ACCORDING TO YOUR INSTRUCTIONS.

AS A REMINDER,  WITHIN  45 DAYS OF THE EFFECTIVE DATE, PLEASE FORWARD A COMPLETE COPY OF THE LEAD UMBRELLA. THIS COPY MUST  INCLUDE THE FOLLOWING:



- - DECLARATIONS PAGE
- - INSURING  AGREEMENT
- - COPIES OF ALL FORMS  AND ENDORSEMENTS

©  2013 Liberty Mutual Insurance. All rights reserved.

**NP 93 98 10 13**    Includes copyrighted  material of Insurance Services Office, Inc., with  its permission.    **Page 1 of 1**

Exhibit 2, Page 005

## LIBERTY MUTUAL  GROUP CALIFORNIA  PRIVACY  NOTICE
### Commercial  Lines  (excluding  Workers'  Compensation)
### (Effective  December  15,  2020)

Liberty  Mutual  Group  and  its  affiliates,  subsidiaries,  and  partners  (collectively  "Liberty  Mutual"  or  "we",  "us"  and  "our")  provide  insurance  to  companies  and  other  insurers.  This  Privacy  Notice  explains  how  we  gather,  use,  and  share  your  data.  This  Privacy  Notice  applies  to  you  if  you  are  a  **Liberty  Mutual  commercial  line  insured  or  are  a  commercial  line  claimant  residing  in  California** .  It  does  not  apply  to  covered  employees  or  claimants  under  Workers'  Compensation  policies.  If  this  notice  does  not  apply  to  you,  go  to  libertymutual.com/privacy    to  review  the  applicable  Liberty  Mutual  privacy  notice.

### What Data Does Liberty Mutual  Gather?

We  may  collect  the  following   categories  of  data:

- **Identifiers** ,  including  a  real  name,  alias,  postal  address,  unique  personal  identifier,  online  identifier,  Internet  Protocol  address,  email  address,  account  name,  Social  Security  Number,  driver's  license  number,  or  other  similar  identifiers;

- **Personal  information  described  in  California  Civil  Code  § 1798.80(e)** ,  such  as  your  name,  signature,  Social  Security  Number,  physical  characteristics  or  description,  address,  telephone  number,  driver's  license  or  state  identification  card  number,  insurance  policy  number,  education,  employment,  employment  history,  bank  account  number,  financial  information,  medical  information,  or  health  insurance  information;

- **Protected  classification  characteristics** ,  including  age,  race,  color,  national  origin,  citizenship,  religion  or  creed,  marital  status,  medical  condition,  physical  or  mental  disability,  sex  (including  gender,  gender  identity,  gender  expression,  pregnancy  or  childbirth  and  related  medical  conditions),  sexual  orientation,  or  veteran  or  military  status;

- **Commercial  information** ,  including  records  of  personal  property,  products  or  services  purchased,  obtained,  or  considered,  or  other  purchasing  or  consuming  histories  and  tendencies;

- **Internet  or  other  similar  network  activity** ,  including  browsing  history,  search  history,  information  on  a  consumer's  interaction  with  a  website,  application,  or  advertisement;

- **Professional  or  employment  related  information** ,  including  current  or  past  job  history  or  performance  evaluations;

- **Inferences  drawn  from  other  personal  information** ,  such  as  a  profile  reflecting  a  person's  preferences,  characteristics,  psychological  trends,  predispositions,  behavior,  attitudes,  intelligence,  abilities,  and  aptitudes;

- **Risk  data** ,  including  data  about  your  driving  and/or  accident  history;  this  may  include  data  from  consumer  reporting  agencies,  such  as  your  motor  vehicle  records  and  loss  history  information,  health  data,  or  criminal  convictions;  and

- **Claims  data** ,  including  data  about  your  previous  and  current  claims,  which  may  include  data  regarding  your  health,  criminal  convictions,  third  party  reports,  or  other  personal  data.

For  information   about  the  types  of  personal  data  we  have  collected  about  California  consumers  in  the  past  twelve  (12)  months,  please  go  to  libertymutual.com/privacy    and  click  on  the  link  for  the  California  Supplemental  Privacy  Policy.

### How We Get the Personal Data:

| We  gather  your  personal  data  **directly  from  you** . For  example,  you  provide  us  with  data  when  you: | We  also  gather  your  personal  data  **from  other people** .  For  example: |
|---|---|
| ● ask  about,  buy  insurance  or  file  a  claim | ● your  insurance  agent  or  broker |
| ● pay  your  policy | ● your  employer,  association  or  business  (if  you  are  insured  through  them) |

| | |
|---|---|
| ● visit our websites, call us, or visit our office | ● our affiliates or other insurance companies about your transactions with them |
| | ● consumer reporting agencies, Motor Vehicle Departments, and inspection services, to gather your credit history, driving record, claims history, or value and condition of your property |
| | ● other public directories and sources |
| | ● third parties, including other insurers, brokers and insurance support organizations who you have communicated with about your policy or claim, anti-fraud databases, sanctions lists, court judgments and other databases, government entities, open electoral register, advertising networks, data analytics providers, social networks, data brokers or in the event of a claim, third parties including other parties to the claim witnesses, experts, loss adjustors and claim handlers |
| | ● other third parties who take out a policy with us and are required to provide your data such as when you are named as a beneficiary or where a family member has taken out a policy which requires your personal data |

For information about how we have collected personal data in the past twelve (12) months, please go to libertymutual.com/privacy   and click on the link for the California Supplemental Privacy Policy.

**How Does Liberty Mutual Use My Data?**

Liberty Mutual uses your data to provide you with our products and services, and as otherwise provided in this Privacy Notice. Your data may be used to:

| Business Purpose | Data Categories |
|---|---|
| **Market, sell and provide insurance.** This includes for example:<br>● calculating your premium;<br>● determining your eligibility for a quote;<br>● confirming your identity and service your policy; | ● Identifiers<br>● Personal Information<br>● Protected Classification Characteristics<br>● Commercial Information<br>● Internet or other similar network activity<br>● Professional or employment related information<br>● Inferences drawn from other personal information<br>● Risk data<br>● Claims data |
| **Manage your claim.** This includes, for example:<br>● managing your claim, if any;<br>● conducting claims investigations;<br>● conducting medical examinations;<br>● conducting inspections, appraisals;<br>● providing roadside assistance;<br>● providing rental car replacement or repairs; | ● Identifiers<br>● Personal Information<br>● Protected Classification Characteristics<br>● Commercial Information<br>● Internet or other similar network activity<br>● Professional or employment related information<br>● Inferences drawn from other personal information |

©  2020 Liberty Mutual Insurance          SNI 04 01 12 20

Exhibit 2, Page 007

| | • Risk data<br>• Claims data |
|---|---|
| **Day to Day Business and Insurance Operations.**<br>This includes, for example:<br>• creating, maintaining, customizing and securing accounts;<br>• supporting day-to-day business and insurance related functions;<br>• doing internal research for technology<br>• development;<br>• marketing and creating products and services;<br>• conducting audits related to a current contact with a consumer and other transactions;<br>• as described at or before the point of gathering personal data or with your authorization; | • Identifiers<br>• Personal Information<br>• Protected Classification Characteristics<br>• Commercial Information<br>• Internet or other similar network activity<br>• Professional or employment related information<br>• Inferences drawn from other personal information<br>• Risk data<br>• Claims data |
| **Security and Fraud Detection.** This includes for example:<br>• detecting security issues;<br>• protecting against fraud or illegal activity, and to comply with regulatory and law enforcement authorities;<br>• managing risk and securing our systems, help to ensure the safety and security of Liberty staff, assets and resources, which<br>• may include physical and virtual access controls and access rights management;<br>• supervisory controls and other monitoring and reviews, as permitted by law; and<br>• emergency and business continuity management; | • Identifiers<br>• Personal Information<br>• Protected Classification Characteristics<br>• Commercial Information<br>• Internet or other similar network activity<br>• Professional or employment related information<br>• Inferences drawn from other personal information<br>• Risk data<br>• Claims data |
| **Regulatory and Legal Requirements.** This includes for example:<br>• controls and access rights management;<br>• to evaluate or conduct a merger, divestiture, restructuring, reorganization, dissolution, or other sale or transfer of some or all of<br>• Liberty's assets, whether as a going concern or as part of bankruptcy, liquidation, or similar proceeding, in which personal data held by Liberty is among the assets transferred;<br>• exercising and defending our legal rights and positions;<br>• to meet Liberty contract obligations;<br>• to respond to law enforcement requests and as required by applicable law, court order, or governmental regulations;<br>• as otherwise permitted by law. | • Identifiers<br>• Personal Information<br>• Protected Classification Characteristics<br>• Commercial Information<br>• Internet or other similar network activity<br>• Professional or employment related information<br>• Inferences drawn from other personal information<br>• Risk data<br>• Claims data |



| | |
|---|---|
| **Improve Your Customer Experience and Our Products.** This includes for example:<br>● improve your customer experience, our products and service;<br>● to provide, support, personalize and develop our website, products and services;<br>● create and offer new products and services; | ● Identifiers<br>● Personal Information<br>● Commercial Information<br>● Internet or other similar network activity<br>● Professional or employment related information<br>● Inferences drawn from other personal information<br>● Risk data<br>● Claims data |
| **Analytics to identify, understand and manage our risks and products.** This includes for example:<br>● conducting analytics to better identify, understand and manage risk and our products; | ● Identifiers<br>● Personal Information<br>● Protected Classification Characteristics<br>● Commercial Information<br>● Internet or other similar network activity<br>● Professional or employment related information<br>● Inferences drawn from other personal information<br>● Risk data<br>● Claims data |
| **Customer service and technical support.** This includes for example:<br>● answer questions and provide notifications;<br>● provide customer and technical support; | ● Identifiers<br>● Personal Information<br>● Commercial Information<br>● Internet or other similar network activity<br>● Professional or employment related information<br>● Inferences drawn from other personal information<br>● Risk data<br>● Claims data |

### How Does Liberty Mutual Share My Data?

Liberty Mutual does not sell your personal data as defined by the California Consumer Privacy Act.

Liberty Mutual shares personal data of California consumers with the following categories of third parties:

● Liberty Mutual affiliates;

● Service Providers;

● Insurance support organizations;

● Brokers and agents;

● Government entities and institutions (e.g. regulatory, quasi-regulatory, tax or other authorities, law enforcement agencies, courts, arbitrational bodies, and fraud prevention agencies);

● Professional advisors including law firms, accountants, auditors, and tax advisors;

● Advertising networks, data analytics providers and social networks;

● Insurers, re-insurers, policy holders, and claimants; and

● As permitted by law.

Liberty Mutual shares the following categories of personal data regarding California consumers to service providers for business purposes:

| | |
|---|---|
| Identifiers | Personal Data; |
| Protected Classification Characteristics; | Commercial Information; |
| Internet or other similar network activity; | Claims Data; |
| Inferences drawn from other personal information; | Risk Data; |
| Professional, employment, and education information; | |

For information about how we have shared personal information in the past twelve (12) months, please go to libertymutual.com/privacy    and click on the link for the California Supplemental Privacy Policy.

### What Privacy Rights Do I Have?

The California Consumer Privacy Act provides California residents with specific rights regarding personal information. These rights are subject to certain exceptions. Our response may be limited as permitted under law. For more information on your rights, please go to libertymutual.com/privacy    and click on the link for the California Supplemental Privacy Policy.

### Will Liberty Mutual Update This Privacy Notice?

We reserve the right to makes changes to this notice at any time and for any reason. The updated version of this policy will be effective once it is accessible. You are responsible for reviewing this policy to stay informed of any changes or updates.

### Who Do I Contact Regarding Privacy?

If you have any questions or comments about this Notice or the Supplemental CCPA Notice, your rights, or are requesting the Notice in an alternative format, please do not hesitate to contact Liberty Mutual at:

**Phone:**            800-344-0197

**Email:**            privacy@libertymutual.com

**Postal Address:**   Liberty Mutual Insurance Company
                      Attn Privacy Office
                      175 Berkeley St 6th Floor
                      Boston MA 02116

# OREGON - TERRORISM INSURANCE PREMIUM DISCLOSURE AND OPPORTUNITY TO ELECT COVERAGE

WE ARE SENDING YOU THIS NOTICE BECAUSE YOU PREVIOUSLY REJECTED COVERAGE FOR LOSSES RESULTING FROM A "CERTIFIED ACT OF TERRORISM" AS DEFINED BELOW.

THIS NOTICE PROVIDES YOU WITH A LIMITED PERIOD OF TIME WITHIN WHICH YOU MAY PURCHASE THIS COVERAGE FOR YOUR RENEWAL POLICY.

This notice contains important information about the Terrorism Risk Insurance Act and your option to elect terrorism insurance coverage. Please read it carefully.

## THE TERRORISM RISK INSURANCE ACT

The Terrorism Risk Insurance Act, including all amendments ("TRIA" or the "Act"), establishes a program to spread the risk of catastrophic losses from certain acts of terrorism between insurers and the federal government. If an individual insurer's losses from "certified acts of terrorism" exceed a specified deductible amount, the government will generally reimburse the insurer for a percentage of losses (the "Federal Share") paid in excess of the deductible, but only if aggregate industry losses from such acts exceed the "Program Trigger". An insurer that has met its insurer deductible is not liable for any portion of losses in excess of $100 billion per calendar year. Similarly, the federal government is not liable for any losses covered by the Act that exceed this amount. If aggregate insured losses exceed $100 billion, losses up to that amount may be pro-rated, as determined by the Secretary of the Treasury.

Beginning in calendar year 2020, the Federal Share is 80% and the Program Trigger is $200,000,000.

## MANDATORY AVAILABILITY OF COVERAGE FOR "CERTIFIED ACTS OF TERRORISM"

TRIA requires insurers to make coverage available for any loss that occurs within the United States (or outside of the U.S. in the case of U.S. missions and certain air carriers and vessels), results from a "certified act of terrorism" <u>AND</u> that is otherwise covered under your policy.

A "certified act of terrorism" means:

Any act that is certified by the Secretary, of the Treasury, in consultation with the Secretary of Home-land Security, and the Attorney General of the United States

(i)   to be an act of terrorism;

(ii)  to be a violent act or an act that is dangerous to

(I)   human life;

(II)  property; or

(III) infrastructure;

(iii) to have resulted in damage within the United States, or outside of the United States in the case of

(I)   an air carrier (as defined in section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States); or

(II)  the premises of a United States mission; and

(iv)  to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**WHAT YOU MUST DO TO ELECT TERRORISM INSURANCE COVERAGE**

We are offering you the opportunity to add coverage to your renewal policy for losses resulting from a "certified act of terrorism" as defined above. THE PREMIUM CHARGE FOR THIS COVERAGE APPEARS BELOW ON THIS DISCLOSURE AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT. If you elect to add this coverage, the coverage will be subject to all of the terms, definitions, exclusions and conditions contained in the policy.

To add this coverage you must contact your agent before the date your policy renews. If the date we first get this offer to you is after the date of renewal or within fourteen (14) days of the date of renewal, you will have fourteen (14) days from the date we get this offer to you to add the coverage. By contacting your agent, the coverage will be added and your renewal policy will be endorsed and billed accordingly.

Note: if you elect coverage for "certified acts of terrorism" in a Commercial Umbrella Liability Policy with us, you must also elect coverage for "certified acts of terrorism" in your underlying liability insurance.

Terrorism Risk Insurance Act Premium:  $2850.00

| Line of Business | Premium Determination |
|---|---|
|  |  |
| Commercial Umbrella | The premium for this Certified Acts of Terrorism Coverage is _____ . |

Please contact your agent to elect coverage.

**The summary of the Act and the coverage under your policy contained in this notice is necessarily general in nature. Your policy contains specific terms, definitions, exclusions and conditions. In case of any conflict, your policy language will control the resolution of all coverage questions. Please read your policy.**

If you have any questions regarding this notice, please contact your agent.



*Coverage Is Provided In:*

The Ohio Casualty Insurance Company

Policy Number:
**ECO   (22)  60 07 79 06**

**Excess  Liability**
**Policy  Declarations**

Basis: Occurrence



| **(ITEM 1) NAMED INSURED & MAILING ADDRESS** | **AGENT MAILING ADDRESS & PHONE NO.** |
|---|---|
| RLC INDUSTRIES CO.<br>3660 GATEWAY ST<br>SPRINGFIELD, OR 97477-6010 | (503) 224-9700<br>AON RISK INS SERVICES WEST INC<br>PO BOX 19640<br>IRVINE, CA 92623-9640 |

**Named Insured Is:**  CORPORATION

**Named Insured Business Is:**  WOOD PRODUCTS COMPANY

**(ITEM 2) POLICY PERIOD**

From 11/01/2021 TO 11/01/2022 12:01 AM Standard Time at Insured Mailing Location

**(ITEM 3) PREMIUM CHARGES**

| Explanation of Charges | DESCRIPTION | PREMIUM |
|---|---|---|
| | Excess Liability | $285,000.00 |
| | Oregon Surcharge | $.00 |
| | *Total Advance Charges* | *$285,000.00* |

*Note: This is not a bill*

BASIS OF PREMIUM:          NON-AUDITABLE( X )          AUDITABLE(  )

**(ITEM 4) LIMITS OF INSURANCE**

| DESCRIPTION | LIMIT |
|---|---|
| EACH OCCURRENCE | $20,000,000 |
| AGGREGATE (WHERE APPLICABLE) | $20,000,000 |

THESE LIMITS OF INSURANCE APPLY IN EXCESS OF THE UNDERLYING LIMITS OF INSURANCE INDICATED IN (ITEM 5) OF THE DECLARATIONS.

| Issue Date | 11/29/2021 | Authorized  Representative |
|---|---|---|

*To report a claim,  call  your Agent or 1-844-325-2467*

**DS 70 22 01 08**

Exhibit 2, Page 013

**Liberty Mutual® INSURANCE**

**Coverage Is Provided In:**

The Ohio Casualty Insurance Company

Policy Number:
**ECO    (22)    60 07 79 06**

## (ITEM 5) UNDERLYING INSURANCE

| CARRIER, POLICY NUMBER AND PERIOD | TYPE OF COVERAGE | LIMITS OF INSURANCE | |
|---|---|---|---|
| FIRST UNDERLYING INSURANCE MARKEL INSURANCE COMPANY | LEAD UMBRELLA | *$5,000,000* | EACH OCCURRENCE |
| | | *$5,000,000* | AGGREGATE |
| MKLM6MM70000398 11/01/2021 - 11/01/2022 | | *$5,000,000* | PRODUCTS - COMPLETED OPERATIONS AGGREGATE |
| OTHER UNDERLYING INSURANCE FEDERAL INSURANCE COMPANY | EXCESS LIABILITY | *$5,000,000* | EACH OCCURRENCE |
| | | *$5,000,000* | AGGREGATE |
| | | | EXCESS OF |
| 7819-50-57 11/01/2021 - 11/01/2022 | | *$5,000,000* | EACH OCCURRENCE |
| | | *$5,000,000* | AGGREGATE |

**Coverage Is Provided In:**

The Ohio Casualty Insurance Company

Policy Number:
**ECO    (22)  60 07 79 06**

**Liberty Mutual.**
**INSURANCE**

---

**(ITEM 5) UNDERLYING INSURANCE        - CONTINUED**

| CARRIER, POLICY NUMBER AND PERIOD | TYPE OF COVERAGE | LIMITS OF INSURANCE | |
|---|---|---|---|
| OTHER UNDERLYING INSURANCE ALLIED WORLD ASSURANCE (US) INC. | EXCESS LIABILITY | *$5,000,000* | EACH OCCURRENCE |
| | | *$5,000,000* | AGGREGATE |
| | | | EXCESS OF |
| 0311-5913 11/01/2021 - 11/01/2022 | | *$10,000,000* | EACH OCCURRENCE |
| | | *$10,000,000* | AGGREGATE |
| OTHER UNDERLYING INSURANCE EVEREST INDEMNITY INSURANCE COMPANY | EXCESS LIABILITY | *$10,000,000* | EACH OCCURRENCE |
| | | *$10,000,000* | AGGREGATE |
| | | | EXCESS OF |
| XC2EX00126-211 11/01/2021 - 11/01/2022 | | *$15,000,000* | EACH OCCURRENCE |
| | | *$15,000,000* | AGGREGATE |

*60077906*
*003316*
*221*
*of  20*
*15*

---

*To report a claim,  call  your Agent or 1-844-325-2467*

**DS 70 23 01 08**

**Liberty Mutual.**
**INSURANCE**

*Coverage Is Provided In:*

The Ohio Casualty Insurance Company

Policy Number:
**ECO    (22)   60 07 79 06**

## POLICY FORMS AND ENDORSEMENTS

This section lists all the Forms and Endorsements for your policy. Refer to these documents as needed for detailed information concerning your coverage.

| FORM NUMBER | TITLE |
|---|---|
| CE 65 24 06 97 | Excess Liability Coverage Form |
| CE 65 27 05 16 | Following Form Endorsement |
| CE 65 29 01 15 | Certified Acts Of Terrorism Exclusion |
| CE 66 54 05 09 | Recording And Distribution Of Material Or Information In Violation Of The Law Exclusion |
| CE 88 62 05 16 | Manufacturers Errors and Omissions Exclusion |
| CE 88 64 10 14 | Access or Disclosure Of Confidential Or Personal Information And Data-Related - Liability with Limited Bodily Injury Exception Exclusion |
| CNI90 11 07 18 | Reporting A Commercial Claim 24 Hours A Day |
| CU 60 05 06 97 | Named Insured |
| CU 60 53 06 97 | Cancellation Amendment |
| CU 61 69 09 08 | Oregon Changes - Cancellation |
| CU 64 87 10 05 | Economic or Trade Sanctions Condition Endorsement |
| SN U3 60 20 52 | Oregon - Terrorism Insurance Premium Disclosure And Opportunity To Elect Coverage |

In witness whereof, we have caused this policy to be signed by our authorized officers.

Mark Touhey
Secretary

David Long
President

CE 65 24 06 97

# EXCESS LIABILITY COVERAGE FORM

There are provisions in this policy that restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured. The words "we," "us" and "our" refer to the Company providing this insurance. The word Insured means any person or organization qualifying as such in the "first underlying insurance." Other words and phrases that appear in quotation marks have special meaning and can be found in the **DEFINITIONS** Section or the specific policy provision where they appear.

In consideration of the payment of the premium and in reliance upon the statements in the Declarations we agree with you to provide the coverage as follows:

## INSURING AGREEMENTS

### I. COVERAGE

We will pay on behalf of the Insured the amount of "loss" covered by this insurance in excess of the "Underlying Limits of Insurance" shown in Item **5.** of the Declarations, subject to **INSURING AGREEMENT** Section **II., Limits of Insurance.** Except for the terms, conditions, definitions and exclusions of this policy, the coverage provided by this policy will follow the "first underlying insurance."

### II. LIMITS OF INSURANCE

**A.** The Limits of Insurance shown in the Declarations and the rules below describe the most we will pay under the terms of this insurance regardless of the number of:

   **1.** Insureds;

   **2.** claims made or suits brought;

   **3.** persons or organizations making claims or bringing suits.

**B.** The Limits of Insurance of this policy will apply as follows:

   **1.** This policy applies only in excess of the "Underlying Limits of Insurance" shown in Item **5.** of the Declarations.

   **2.** The aggregate limit shown in Item **4.** of the Declarations is the most we will pay for all "loss" that is subject to an aggregate limit provided by the "first underlying insurance." The aggregate limit applies separately and in the same manner as the aggregate limits provided by the "first underlying insurance," provided that all "underlying insurance" applies their aggregate limit in the same manner as the "first underlying insurance."

   **3.** Subject to **B.2.,** the occurrence limit stated in Item **4.** of the Declarations is the most we will pay for all "loss" arising out of any one occurrence to which this policy applies.

   **4.** Subject to Paragraphs **B.2.** and **B.3.** above, if the "Underlying Limits of Insurance" described in Item **5.** of the Declarations are either reduced or exhausted solely by payment of "loss," such insurance provided by this policy will apply in excess of the reduced underlying limit or, if all underlying limits are exhausted, will apply as "underlying insurance" subject to the same terms, conditions, definitions and exclusions of the "first underlying insurance," except for the terms, conditions, definitions and exclusions of this policy.

CE 65 24 06 97                    (Page 1 of 7)

However, we will not pay that portion of a "loss" that is within the "Underlying Limits of Insurance" which the Insured has agreed to fund by self-insurance or means other than insurance.

5. The limits of this policy apply separately to each consecutive annual period, and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations unless the policy period is extended after issuance for an additional period of less than 12 months. In that case the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## III. DEFENSE

A. We will not be required to assume charge of the investigation of any claim or defense of any suit against you.

B. We will have the right, but not the duty, to be associated with you or your underlying insurer or both in the investigation of any claim or defense of any suit which in our opinion may create liability on us for "loss." If we exercise such right, we will do so at our own expense, but not after the limits of this policy are exhausted.

## IV. EXCLUSIONS

This policy does not apply to:

A. Any liability, including, but not limited to settlements, judgments, costs, charges, expenses, costs of investigations, or the fees of attorneys, experts, or consultants arising out of or related in any way, either directly or indirectly, to:

1. asbestos, asbestos products, asbestos-containing materials or products, asbestos fibers or asbestos dust, including, but not limited to, manufacture, mining, use, sale, installation, removal, or distribution activities;

2. exposure to testing for, monitoring of, cleaning up, removing, containing or treating of asbestos, asbestos pro-

ducts, asbestos-containing materials or products, asbestos fibers or asbestos dust; or

3. any obligation to investigate, settle or defend, or indemnify any person against any claim or suit arising out of or related in any way, either directly or indirectly, to asbestos, asbestos products, asbestos-containing materials or products, asbestos fibers or asbestos dust.

B. Any liability, including, but not limited to settlements, judgments, costs, charges, expenses, costs of investigations, or the fees of attorneys, experts, or consultants arising out of or in any way related to:

1. the actual, alleged or threatened presence, discharge, dispersal, seepage, migration, release or escape of "pollutants," however caused;

2. any request, demand, or order that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to or assess the effects of "pollutants." This includes demands, directives, complaints, suits, orders or requests brought by any governmental entity or by any person or group of persons;

3. steps taken or amounts incurred by a governmental unit or any other person or organization to test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize or assess the effects of "pollutants."

This exclusion will apply to any liability, costs, charges or expenses, or any judgments or settlements, arising directly or indirectly out of pollution whether or not the pollution was sudden, accidental, gradual, intended, expected, unexpected, preventable or not preventable.

As used in this exclusion "pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including, but not limited to, smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material.

Exhibit 2, Page 018

Waste material includes materials which are intended to be or have been to be recycled, reconditioned or reclaimed.

**C.** Any liability excluded by the Nuclear Energy Liability Exclusion attached to this policy.

## V. DEFINITIONS

**A.** "First underlying insurance" means the policy or policies of insurance stated as such in Item **5.** of the Declarations.

**B.** "Loss" means those sums actually paid in the settlement or satisfaction of a claim which you are legally obligated to pay as damages after making proper deductions for all recoveries and salvage.

**C.** "Underlying insurance" means "first underlying insurance" and all policies of insurance listed in Item **5.** of the Declarations.

**D.** "Underlying Limits of Insurance" means the total sum of the limits of all applicable "underlying insurance" stated in Item **5.** of the Declarations, including self-insurance, or means other than insurance.

## VI. CONDITIONS

### A. Appeals

In the event you or any underlying insurer elects not to appeal a judgment in excess of the amount of the "Underlying Limits of Insurance," we may elect to appeal at our expense. If we do so elect, we will be liable for the costs and interest incidental to this appeal. In no event will this provision increase our liability beyond the applicable Limits of Insurance described in Section **II.** of this policy.

### B. Bankruptcy or Insolvency

The bankruptcy, insolvency or inability to pay of any Insured or the bankruptcy, insolvency or inability to pay of any of the underlying insurers will not relieve us from the payment of any claim or suit covered by this policy.

In the event of bankruptcy or insolvency of any underlying Insurer, the insurance afforded by this policy will not replace

such "underlying insurance," but will apply as if the "underlying insurance" was available and collectible.

### C. Changes

Notice to any agent or knowledge possessed by any agent or any other person will not effect a waiver or change in any part of this policy. This policy can only be changed by a written endorsement that becomes a part of this policy and that is signed by one of our authorized representatives.

### D. Cancellation

**1.** You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

**2.** We may cancel this policy. If we cancel because of nonpayment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you not less than thirty (30) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item **1.** of the Declarations will be sufficient to prove notice.

**3.** The policy period will end on the day and hour stated in the cancellation notice.

**4.** If we cancel, final premium will be calculated pro rata based on the time this policy was in force.

**5.** If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure.

**6.** Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter but the cancellation will be effective even if we have not made or offered any refund due you. Our check or our representative's



Exhibit 2, Page 019

check, mailed or delivered, will be sufficient tender of any refund due you.

**7.** The first Named Insured in Item **1.** of the Declarations will act on behalf of all other Insureds with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

**8.** Any of these provisions that conflict with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with the law.

## E. First Named Insured Duties

The person or organization first named in Item **1.** of the Declarations is responsible for the payment of all premiums. The first Named Insured will act on behalf of all other Named Insureds for the giving and receiving of notice of cancellation or the receipt of any return premium that may become payable.

We will be furnished a complete copy of the "first underlying insurance" described in Item **5.** of the Declarations and any subsequently issued endorsements which may in any way affect this insurance.

## F. Legal Actions Against Us

There will be no right of action against us under this insurance unless:

**1.** you have complied with all the terms of this policy; and

**2.** the amount you owe has been determined by settlement with our consent or by actual trial and final judgment.

This insurance does not give anyone the right to add us as a party in an action against you to determine your liability.

## G. Maintenance of Underlying Insurance

During the period of this policy, you agree:

**1.** to keep the policies listed in Item **5.** of the Declarations in full force and effect;

**2.** that the Limits of Insurance of the "underlying insurance" policies listed in Item **5.** of the Declarations will be maintained except for any reduction or exhaustion of aggregate limits by payment of claims or suits for "losses" covered by "underlying insurance."

If you fail to comply with these requirements, we will only be liable to the same extent that we would have been had you fully complied with these requirements.

## H. Notice of Occurrence

**1.** You must see to it that we are notified as soon as practicable of an occurrence which may result in a claim or suit which may involve this policy. To the extent possible, notice will include:

**a.** how, when and where the occurrence took place;

**b.** the names and addresses of any injured persons and witnesses;

**c.** the nature and location of any injury or damage arising out of the occurrence.

**2.** If a claim or suit against any Insured is reasonably likely to involve this policy you must notify us in writing as soon as practicable.

**3.** You and any other involved Insured must:

**a.** immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit;

**b.** authorize us to obtain records and other information;

**c.** cooperate with us in the investigation, settlement or defense of the claim or suit; and

**d.** assist us, upon our request, in the enforcement of any right against any person or organization which

may be liable to the Insured because of injury or damage to which this insurance may also apply.

4. If the "Underlying Limits of Insurance" are exhausted solely by payment of "loss," no Insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

### I. Other Insurance

If other insurance applies to a "loss" that is also covered by this policy, this policy will apply excess of the other insurance. Nothing herein will be construed to make this policy subject to the terms, conditions and limitations of such other insurance. However, this provision will not apply if the other insurance is specifically written to be excess of this policy.

Other insurance includes any type of self-insurance or other mechanism by which an Insured arranges for funding of legal liabilities.

### J. Premium

Unless otherwise provided, the premium for this policy is a flat premium and is not subject to adjustment except as provided herein or amended by endorsement. If any



additional premium charge is made to the "underlying insurance" during the policy period or if there is an increase in the risk assumed by us, our premium may be adjusted accordingly.

### K. Terms Conformed to Statute

The terms of this policy which are in conflict with the statutes of the state where this policy is issued are amended to conform to such statutes.

If we are prevented by law or statute from paying on behalf of the Insured, then we will, where permitted by law or statute, indemnify the Insured.

### L. When "Loss" is Payable

Coverage under this policy will not apply unless and until the Insured or the Insured's "underlying insurance" is obligated to pay the full amount of the "Underlying Limits of Insurance."

When the amount of "loss" has finally been determined, we will promptly pay on behalf of the Insured the amount of "loss" falling within the terms of this policy.

### NUCLEAR ENERGY LIABILITY EXCLUSION

This policy does not apply to:

**A.** Any liability, injury or damage:

1. with respect to which any Insured under the policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an Insured under any such policy but for its termination upon exhaustion of its Limits of Insurance; or

2. resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** a person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** any Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

CE 65 24 06 97                    (Page 5 of 7)

**B.** Any injury or "nuclear property damage" resulting from the "hazardous properties" of "nuclear material," if:

**1.** the "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, any Insured or **(b)** has been discharged or dispersed therefrom;

**2.** the "nuclear material" is contained in "spent fuel" or "nuclear waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of any Insured; or

**3.** the injury or "nuclear property damage" arises out of the furnishing by any Insured of services, materials, parts of equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **B.3.** applies only to "nuclear property damage" to such "nuclear facility" and any property therein.

**C.** As used in this exclusion:

**1.** "Hazardous properties" includes radioactive, toxic or explosive properties.

**2.** "Nuclear facility" means:

**a.** any "nuclear reactor";

**b.** any equipment or device designed or used for

  **(1)** separating the isotopes of uranium or plutonium,

  **(2)** processing or utilizing "spent fuel" or

  **(3)** handling, processing or packaging "nuclear waste";

**c.** any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of any Insured at the premises where such equipment or device is located

consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**d.** any structure, basin, excavation, premises or place prepared or used for the storage or disposal of, "nuclear waste," and includes the site on which any of the foregoing is located, all operations considered on such site and all premises used for such operations.

**3.** "Nuclear material" means "source material," "special nuclear material" or by-product material.

**4.** "Nuclear property damage" includes all forms of radioactive contamination of property.

**5.** "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

**6.** "Nuclear waste" means any "nuclear waste" material **(a)** containing "by-product material" other than the tailings of "nuclear waste" produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included within the definition of "nuclear facility" under Paragraph **C.2.a.** or **C.2.b.**

**7.** "Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

**8.** "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor."

This endorsement does not change any other provision of the policy.

**In Witness Whereof,** we have caused this policy to be executed and attested, but this policy will not be valid unless countersigned by one of our duly authorized representatives, where required by law.



**EXCESS LIABILITY**
**CE 65 27 05 16**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FOLLOWING FORM ENDORSEMENT

This endorsement modifies insurance provided under the following:

EXCESS LIABILITY COVERAGE FORM

It is agreed that this policy is subject to the exact terms and conditions of the EVEREST INDEMNITY INSURANCE COMPANY
Policy Number  XC2EX00126-211                     , except with respect to the:

Limits of Insurance;

Premium;  and

Any exclusions or endorsements attached to this policy.

All preprinted terms and conditions of Form CE 6524 0697 are deleted to the extent that they vary from or are inconsistent with the terms and conditions of the EVEREST INDEMNITY INSURANCE COMPANY
Policy Number  XC2EX00126-211                     , except for Condition  **L., When "Loss" is Payable.**

Nothing in this endorsement will obligate us to pay a "loss" or assume charge of the investigation of any claim or defense of any suit against you before the Limits of Insurance shown in Item **5.** of the Declarations, Underlying Insurance, are exhausted by payment of "loss" or "losses" by the Insured or the Insured's "underlying insurance."

This endorsement does not change any other provision of the policy.

© 2016 Liberty Mutual Insurance
Includes copyrighted material of Insurance Services Office, Inc., with its permission.    **Page 1 of 1**

Exhibit 2, Page 024

**COMMERCIAL EXCESS LIABILITY**
CE 65 29 01 15

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CERTIFIED ACTS OF TERRORISM EXCLUSION

This endorsement modifies insurance provided under the following:

  EXCESS LIABILITY COVERAGE FORM

The following exclusion is added to Section **IV - EXCLUSIONS:**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism".

As used in this exclusion:

"Any injury or damage" means any injury or damage covered by this insurance in excess of the "underlying insurance," and includes but is not limited to "bodily injury", "property damage", "personal injury" or "advertising injury" as may be defined in any applicable coverage part or "underlying insurance."

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The terms and conditions of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this policy.

This endorsement does not change any other provision of the policy.

© 2015 Liberty Mutual Insurance
Includes copyrighted material of Insurance Services Office, with its permission.

Exhibit 2, Page 025

**EXCESS LIABILITY**
**CE 66 54 05 09**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF THE LAW EXCLUSION

This endorsement modifies insurance provided under the following:

EXCESS LIABILITY COVERAGE PART

The following exclusion is added to Section IV - Exclusions:

This insurance does not apply to:

Any liability arising directly or indirectly out of any action or omission that violates or is alleged to violate:

1. The Telephone Consumer Protection Act (TCPA) including any amendment of or addition to such law;

2. The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

3. The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

4. Any federal, state or local statute, ordinance or regulation, other than TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

This endorsement does not change any other provision of the policy.

©2010 Liberty Mutual Insurance Company. All rights reserved.

**CE 66 54 05 09**    Includes copyrighted material of Insurance Services Office, Inc., with its permission.    **Page 1 of 1**

EXCESS LIABILITY
CE 88 62 05 16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MANUFACTURERS ERRORS OR OMISSIONS EXCLUSION

This endorsement modifies insurance provided under the following:

EXCESS LIABILITY COVERAGE FORM

**A.** The following exclusion is added to Section **IV - EXCLUSIONS:**

This policy does not apply to:

"Damages" arising out of any "manufacturer's error or omission."

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured.

**B.** For the purposes of this endorsement the following definitions are added to Section **V. DEFINITIONS:**

"Damages":

**a.** Means economic loss sustained by your customer because of their loss of use of their tangible property which has not been physically injured or destroyed, provided that such loss of use does not arise from any sudden and accidental physical injury to "your product."

**b.** "Damages" includes but is not limited to:

**(1)** The purchase or contract price for "your product."

**(2)** Costs and expenses incurred by you or on your behalf to fulfill a warranty, representation, or promise provided with "your product."

**(3)** Disgorgement of profits, restitution, or any money or credits that represent any gain, profit, or advantage to which you are not legally entitled.

**(4)** Costs to restore goodwill of your customer.

**(5)** Criminal or civil penalties.

"Manufacturer's error or omission":

Means an Insured's negligent design, installation or manufacture of "your product" resulting in the failure of "your product" to perform the function or serve the purpose intended after it has left the possession of any Insured.

"Your product" means your product as it is defined by the "first underlying insurance."

This endorsement does not change any other provisions of the policy.

© 2016 Liberty Mutual Insurance.

CE 88 62 05 16    Includes copyrighted material of Insurance Services Office, Inc., with its permission.    Page 1 of 1

**EXCESS LIABILITY**
**CE 88 64 10 14**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION EXCLUSION

**A.** The following exclusion is added to Section **IV - EXCLUSIONS:**

This policy does not apply to:

Any liability, damages, loss, injury, demand, "claim" or "suit" arising out of:

**1.** Any access to or disclosure of any person's or organization's confidential or personal information, including but not limited to patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**2.** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate "electronic data".

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses, fines, penalties (including but not limited to, fees or surcharges from affected financial institutions) or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **1** or **2** above.

However, unless Paragraph **1** above applies, this exclusion does not apply to damages because of "bodily injury".

**B.** For the purposes of this endorsement the following definition is added:

"Electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including but not limited to systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

This endorsement does not change any other provisions of the policy.

**CE 88 64 10 14**    © 2014 Liberty Mutual Insurance.    **Page 1 of 1**
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CU 60 05 06 97

**THIS ENDORSEMENT  CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NAMED  INSURED

The Named Insured listed in Item **1** of the Declarations  is changed  to the following:

RLC INDUSTRIES CO.                                                                   , as per the scheduled
"first  underlying  insurance".

This endorsement  does not change any other provision  of the policy.

CU 60 05 06 97                              **(Page 1 of 1)**

CU 60 53 06 97

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CANCELLATION AMENDMENT

Condition **VI.D.2. (Cancellation)** is amended to read as shown below:

We may cancel this policy. If we cancel because of nonpayment of premium, we must mail or deliver to you not less than ten (10) days' advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you not less than 90 days' advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item **1.** of the Declarations will be sufficient to prove notice.

This endorsement does not change any other provision of the policy.

Exhibit 2, Page 030

This page intentionally left blank.

COMMERCIAL  UMBRELLA
CU 61 69 09 08

**THIS ENDORSEMENT  CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OREGON  CHANGES - CANCELLATION  AND  NONRENEWAL

This endorsement  modifies  insurance  provided  under the following:

COMMERCIAL  UMBRELLA  COVERAGE PART

**A.** Provision  **2.** of Condition  **D. Cancellation**  under **Section VI - Conditions**  is replaced  by the following:

    **2.** If this policy  has been in effect  for:

        **a.** Fewer than 60 days and is not a renewal  policy,  we may cancel for any reason.

        **b.** 60 days or more or is a renewal  policy,  we may cancel policy  only for one or more of the following  reasons:

            **(1)** Nonpayment  of premium;

            **(2)** Fraud or material  misrepresentation   made by you or with your knowledge  in obtaining the policy,  continuing  the policy  or in presenting  a claim  under the policy;

            **(3)** Substantial  increase  in the risk of loss after insurance  coverage  has been issued  or renewed,  including  but not limited  to an increase  in exposure  due to rules, legislation or court  decision;

            **(4)** Failure to comply  with  reasonable  loss control  recommendations;

            **(5)** Substantial  breach of contractual  duties, conditions  or warranties;

            **(6)** Determination  by the commissioner  that the continuation  of a line of insurance  or class of business  to which  the policy  belongs  will jeopardize  our solvency  or will place us in violation  of insurance  laws of Oregon  or any other state;

            **(7)** Loss or decrease  in reinsurance  covering  the risk; or

            **(8)** Any other reason  approved  by the commissioner  by rule.

        We will mail or deliver  to the first Named Insured  written  notice of cancellation,  stating  the reason  for the cancellation  and when the cancellation  is to take effect. This notice will be mailed  or delivered  to the first Named Insured's  last mailing  address known to us.

        With respect  to insurance  provided  under paragraph  **2.b.(8)** above,  the cancellation  will not be effective  until  at least 10 working  days after the first Named Insured  receives  our notice.

        With respect  to insurance  other than that provided  under paragraph  **2.b.(8)** above, cancellation  will not be effective  until  at least:

Exhibit 2, Page 032

    **a.** 10 days after the first Named Insured receives our notice, if we cancel for nonpayment of premium; or

    **b.** 30 days after the first Named Insured receives our notice, if we cancel for any other reason.

**B.** The following are added and supersede any provision to the contrary:

    **1. Nonrenewal**

    We may elect not to renew this policy by mailing or delivering to the first Named Insured, at the last mailing address known to us, written notice of nonrenewal before the:

    **a.** Expiration date of the policy; or

    **b.** Anniversary date of the policy if the policy is written for a term of more than one year or without a fixed expiration date.

    However, if this policy is issued for a term or more than one year and for additional consideration the premium is guaranteed, we may not refuse to renew the policy at its anniversary date.

    Nonrenewal will not be effective until at least 45 days after the first Named Insured receives our notice.

    **2. Mailing Of Notices**

    If a notice of cancellation or nonrenewal is mailed, a post office certificate of mailing will be conclusive proof that the first Named Insured received the notice on the third calendar day after the date of the certificate of mailing.

CU 64 87 10 05

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ECONOMIC OR TRADE SANCTIONS CONDITION ENDORSEMENT

The following is added to Section **VI - CONDITIONS:**

**Economic or Trade Sanctions**

If coverage for a claim or suit under this policy is in violation of any United States of America economic or trade sanctions, including but not limited to, sanctions administered and enforced by the United States Treasury Department's Office of Foreign Assets Control ("OFAC"), then coverage for that claim or suit will be null and void.

This endorsement does not change any other provision of the policy.

CU 64 87 10 05

EXHIBIT 3

EXHIBIT 3

EXHIBIT 3

PLD-PI-001

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Russell Reiner        SBN: 84461<br>REINER, SLAUGHTER, MAINZER & FRANKEL, LLP<br>2851 Park Marina Drive, Suite 200<br>Redding, CA 96001<br>TELEPHONE NO: 530-241-1905     FAX NO. *(Optional):* 530-241-0622<br>E-MAIL ADDRESS *(Optional):* rreiner@reinerslaughter.com<br>ATTORNEY FOR *(Name):* Tim Smith | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SISKIYOU
STREET ADDRESS: 411 Fourth Street
MAILING ADDRESS: 411 Fourth Street
CITY AND ZIP CODE: Yreka, 96097
BRANCH NAME: Yreka Division

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SISKIYOU

SEP -6 2022

BY: _____
DEPUTY CLERK

PLAINTIFF: TIM SMITH

DEFENDANT: ROSEBURG FOREST PRODUCTS CO.; and

[X] DOES 1 TO     10, inclusive

**COMPLAINT—Personal Injury, Property Damage, Wrongful Death**
[ ] AMENDED *(Number):*
Type *(check all that apply):*
[ ] MOTOR VEHICLE   [X] OTHER *(specify):* Fire
  [X] Property Damage   [ ] Wrongful Death        Double or treble
  [X] Personal Injury   [X] Other Damages *(specify):* damages to trees

Jurisdiction *(check all that apply):*
[ ] ACTION IS A LIMITED CIVIL CASE
  Amount demanded [ ] does not exceed $10,000
        [ ] exceeds $10,000, but does not exceed $25,000
[X] ACTION IS AN UNLIMITED CIVIL CASE (exceeds $25,000)
[ ] ACTION IS RECLASSIFIED by this amended complaint
  [ ] from limited to unlimited
  [ ] from unlimited to limited

CASE NUMBER:

CV PO 22-951

1. Plaintiff *(name or names):* Tim Smith
   alleges causes of action against **defendant** *(name or names):* Roseburg Forest Products Co.

2. This pleading, including attachments and exhibits, consists of the following number of pages: 4
3. Each plaintiff named above is a competent adult
   a. [ ] except plaintiff *(name):*
       (1) [ ] a corporation qualified to do business in California
       (2) [ ] an unincorporated entity *(describe):*
       (3) [ ] a public entity *(describe):*
       (4) [ ] a minor [ ] an adult
           (a) [ ] for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
           (b) [ ] other *(specify):*
       (5) [ ] other *(specify):*
   b. [ ] except plaintiff *(name):*
       (1) [ ] a corporation qualified to do business in California
       (2) [ ] an unincorporated entity *(describe):*
       (3) [ ] a public entity *(describe):*
       (4) [ ] a minor [ ] an adult
           (a) [ ] for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
           (b) [ ] other *(specify):*
       (5) [ ] other *(specify):*

[ ] Information about additional plaintiffs who are not competent adults is shown in Attachment 3.

Form Approved for Optional Use
Judicial Council of California
PLD-PI-001 [Rev. January 1, 2007]

**COMPLAINT—Personal Injury, Property
Damage, Wrongful Death**

Code of Civil Procedure, § 425.12
www.courtinfo.ca.gov
Westlaw Doc & Form Builder

LIC0016713
Exhibit 3, Page 001

**PLD-PI-001**

| SHORT TITLE: SMITH V. ROSEBURG FOREST PRODUCTS CO., et al. | CASE NUMBER: |
|---|---|

4. ☐ Plaintiff *(name)*:
is doing business under the fictitious name *(specify)*:

and has complied with the fictitious business name laws.

5. Each defendant named above is a natural person
  a. ☒ except defendant *(name)*: Roseburg Forest Products Co.
    (1) ☐ a business organization, form unknown
    (2) ☒ a corporation
    (3) ☐ an unincorporated entity *(describe)*:

    (4) ☐ a public entity *(describe)*:

    (5) ☐ other *(specify)*:

  c. ☐ except defendant *(name)*:
    (1) ☐ a business organization, form unknown
    (2) ☐ a corporation
    (3) ☐ an unincorporated entity *(describe)*:

    (4) ☐ a public entity *(describe)*:

    (5) ☐ other *(specify)*:

  b. ☐ except defendant *(name)*:
    (1) ☐ a business organization, form unknown
    (2) ☐ a corporation
    (3) ☐ an unincorporated entity *(describe)*:

    (4) ☐ a public entity *(describe)*:

    (5) ☐ other *(specify)*:

  d. ☐ except defendant *(name)*:
    (1) ☐ a business organization, form unknown
    (2) ☐ a corporation
    (3) ☐ an unincorporated entity *(describe)*:

    (4) ☐ a public entity *(describe)*:

    (5) ☐ other *(specify)*:

  ☐ Information about additional defendants who are not natural persons is contained in Attachment 5.

6. The true names of defendants sued as Does are unknown to plaintiff.
  a. ☒ Doe defendants *(specify Doe numbers)*: 1-5 _____ were the agents or employees of other named defendants and acted within the scope of that agency or employment.
  b. ☒ Doe defendants *(specify Doe numbers)*: 6-10 _____ are persons whose capacities are unknown to plaintiff.

7. ☐ Defendants who are joined under Code of Civil Procedure section 382 are *(names)*:

8. This court is the proper court because
  a. ☐ at least one defendant now resides in its jurisdictional area.
  b. ☐ the principal place of business of a defendant corporation or unincorporated association is in its jurisdictional area.
  c. ☒ injury to person or damage to personal property occurred in its jurisdictional area.
  d. ☐ other *(specify)*:

9. ☐ Plaintiff is required to comply with a claims statute, and
  a. ☐ has complied with applicable claims statutes, or
  b. ☐ is excused from complying because *(specify)*:

LIC0016714
Exhibit 3, Page 002

**PLD-PI-001**

| SHORT TITLE: SMITH V. ROSEBURG FOREST PRODUCTS CO., et al. | CASE NUMBER: |
|---|---|

10. The following causes of action are attached and the statements above apply to each *(each complaint must have one or more causes of action attached)*:
   a. ☐ Motor Vehicle
   b. ☒ General Negligence
   c. ☐ Intentional Tort
   d. ☐ Products Liability
   e. ☐ Premises Liability
   f. ☐ Other *(specify):*

11. Plaintiff has suffered
   a. ☐ wage loss
   b. ☒ loss of use of property
   c. ☐ hospital and medical expenses
   d. ☒ general damage
   e. ☒ property damage
   f. ☐ loss of earning capacity
   g. ☒ other damage *(specify):* Double or treble damages to trees.

12. ☐ The damages claimed for wrongful death and the relationships of plaintiff to the deceased are
   a. ☐ listed in Attachment 12.
   b. ☐ as follows:

13. The relief sought in this complaint is within the jurisdiction of this court.

14. **Plaintiff prays** for judgment for costs of suit; for such relief as is fair, just, and equitable; and for
   a. (1) ☒ compensatory damages
      (2) ☐ punitive damages
      The amount of damages is *(in cases for personal injury or wrongful death, you must check (1)):*
      (1) ☒ according to proof
      (2) ☐ in the amount of: $

15. ☐ The paragraphs of this complaint alleged on information and belief are as follows *(specify paragraph numbers):*

Date: September 6, 2022

Russell Reiner
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PLAINTIFF OR ATTORNEY)

PLD-PI-001 [Rev. January 1, 2007]

**COMPLAINT—Personal Injury, Property Damage, Wrongful Death**

Page 3 of 3

LIC0016715
Exhibit 3, Page 003

PLD-PI-001(2)

| SHORT TITLE: SMITH V. ROSEBURG FOREST PRODUCTS CO., et al. | CASE NUMBER: |
|---|---|

First | **CAUSE OF ACTION—General Negligence** | Page 4

_(number)_

ATTACHMENT TO   [ X ] Complaint   [ ] Cross - Complaint

_(Use a separate cause of action form for each cause of action.)_

GN-1. Plaintiff _(name):_ TIM SMITH

alleges that defendant _(name):_ ROSEBURG FOREST PRODUCTS CO.; and

[ X ] Does ___1___ to ___10___

was the legal (proximate) cause of damages to plaintiff. By the following acts or omissions to act, defendant negligently caused the damage to plaintiff
on _(date):_ September 2, 2022
at _(place):_ 1187 Tent Avenue, Weed, CA 96094

_(description of reasons for liability):_

On September 2, 2022, the Mill Fire destroyed over 100 homes in Siskiyou County and killed at least two people. The Mill Fire began in Weed, California, in or around a warehouse owned and operated by Roseburg Forest Products Co. Roseburg negligently maintained and operated the warehouse and adjacent property so as to create, cause, allow contribute to and assist in creating a dangerous condition on the property which caused a fire to burn and destroy plaintiff Tim Smith's home and all of his personal property and cherished belongings. Moreover, as a result of the negligence of Roseburg Forest Products Co., plaintiff Tim Smith was exposed to and had to flee the fire causing him to suffer personal injuries and serious emotional distress as well as property damages, in amounts which will the subject of proof at trial. He was displaced from his home.

At all relevant times, defendants and each of them knew or in the exercise of reasonable care should have known, that they were not properly operating and maintaining their warehouse and adjacent property such that it was likely to create and become a fire hazard and result in injury or cause other damages to persons or property throughout the community.

Defendants, and each of them, so negligently and carelessly operated and maintained the Roseburg warehouse and adjacent property that they caused personal injuries and damages, including property damages to plaintiff Tim Smith. The property damage includes the cost to replace Mr. Smith's home and all of his personal property. It also includes the cost to demolish and remove debris from his property.

Form Approved for Optional Use
Judicial Council of California
PLD-PI-001(2) [Rev. January 1, 2007]

**CAUSE OF ACTION—General Negligence**

Code of Civil Procedure 425.12
www.courtinfo.ca.gov
Westlaw Doc & Form Builder

LIC0016716
Exhibit 3, Page 004

EXHIBIT 4

EXHIBIT 4

EXHIBIT 4

FILED
Superior Court Of California,
Sacramento
09/08/2022
bprasad1
By_____, Deputy
Case Number:
34-2022-00326413

**FRANTZ LAW GROUP, APLC**
James P. Frantz, Esq., SBN. 87492
jfrantz@frantzlawgroup.com
M. Regina Bagdasarian, Esq., SBN. 296219
regina@frantzlawgroup.com
George T. Stiefel, Esq., SBN. 297611
gstiefel@frantzlawgroup.com
C. Nikki Morris, Esq., SBN 344141
nmorris@frantzlawgroup.com
770 L Street, Suite 950
Sacramento, CA 95814
Ph: (916) 492-6059

Attorneys for Plaintiffs

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SACRAMENTO

| | |
|---|---|
| NICHOLE HAMMOND;<br>SHAYNE HAMMOND;<br>KALEB HAMMOND;<br>CIARRA HAMMOND, a minor, by and<br>through Guardian ad Litem NICHOLE<br>HAMMOND; and<br>SHAYNE HAMMOND JR., a minor, by and<br>through Guardian ad Litem NICHOLE<br>HAMMOND<br><br>                    Plaintiffs,<br>          vs.<br><br>ROSEBURG FOREST PRODUCTS CO., a<br>corporation; and<br>DOES 1 THROUGH 100, inclusive,<br><br>                    Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES:**<br><br>1. TRESPASS<br>2. NEGLIGENCE (INCLUDING<br>    VIOLATIONS OF PUBLIC<br>    RESOURCES CODE)<br>3. PRIVATE NUISANCE<br>4. PUBLIC NUISANCE<br><br>**PUNITIVE DAMAGES<br>DEMANDED**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs, by and through the above-captioned attorneys, hereby allege, on information and belief, for causes of action against Defendants state as follows:

1

FILED BY FAX

Exhibit 4, Page 001

**INTRODUCTION**

1.    On or about September 2, 2022, the "Mill Fire" erupted in the City of Weed, California.  To date, the Mill Fire has destroyed nearly 4,000 acres and over 100 structures.  The fire has also resulted in multiple fatalities.

2.    Based on information and belief, the Mill Fire ignited as a result of the actions and inactions of Defendant Roseburg Forest Products Co. at its veneer mill situated in the City of Weed, County of Siskiyou, State of California.

3.    Defendants knew that Siskiyou County is an area highly susceptible to catastrophic fires, having experienced the destruction of the Slater Fire in September of 2020 and the very recent McKinney Fire.

4.    Defendants were well aware of the hazards of the operations for many years. Despite the knowledge of a substantial fire risk, Defendants ignored the hazards and continued to engage in dangerous practices.

5.    Ignition of the Mill Fire was due to actions and inactions of Defendants at the veneer mill in Weed, California.  At the mill, Defendants produces its own electric power in a co-generation facility fueled by wood remnants. The generator ejects ash after consuming the wood. The ash is still combustible and/or capable of starting a fire if not property handled.

6.    Upon information and belief, Defendants failed to handle, cool, control and maintain this waste ash and the hot ash ignited the Mill Fire.

7.    The Mill Fire was avoidable had Defendants complied with the standard of care in inspecting, repairing, and maintaining its operations.

**PARTIES, JURISDICTION AND VENUE**

8.    This Court, as a court of general jurisdiction, has subject-matter jurisdiction over this unlimited civil case and personal jurisdiction over each Defendant. Plaintiffs damages asserted greatly exceed the jurisdictional minimum of this Court.

9.    At all relevant times, Defendant ROSEBURG FOREST PRODUCTS CO. is a cooperation operating the subject veneer mill in the State of California.

2

1   10. Plaintiffs sustained damages in the State of California to their homes,

2 property and/or body and emotional health and strength.

3   11. The true names and capacities of Defendants sued as DOES 1-100, inclusive, are

4 presently unknown to Plaintiffs who, therefore, sues these Defendants by such fictitious names

5 pursuant to Code of Civil Procedure §474. The full extent of the facts linking such fictitiously sued

6 Defendants is unknown to Plaintiffs. Plaintiffs are informed and believe, based thereon allege, that

7 each Defendant designated as a DOE was, and is, negligently, or in some other actionable manner,

8 responsible in some manner for the injuries and events alleged, and thereby negligently, or in some

9 other actionable manner, legally and proximately caused the described injuries and damages alleged

10 by Plaintiffs, and are jointly and severally liable to Plaintiffs. Plaintiffs will seek leave of Court to

11 amend this pleading to state the true names and capacities of such fictitiously named Defendants

12 once ascertained.

13   12. At all times relevant, each of the Defendants, including DOES 1-100, were the

14 representative, agent, servant, employee, alter ego, and/or joint venturer of each of the remaining

15 Defendants; and in doing the things alleged was at all times acting within the course and scope of

16 said capacity, and in doing the things alleged was at all times acting within the course and scope of

17 said agency and employment, and each Defendant has ratified and approved the acts of the

18 remaining Defendants.

19         **GENERAL ALLEGATIONS**

20   13. On or about September 2, 2022, the Mill Fire ignited on Defendants' property in

21 Siskiyou County.

22   14. Siskiyou County is, and historically has been, categorized as a "Very High Fire

23 Hazard Severity Zone" ("VHFHSZ") by Cal Fire. These zones identify an area's likelihood of

24 burning based on its physical conditions. These attributes include fuels, terrain, weather, and other

25 relevant factors. The zones are essential in analyzing how to decrease the fire risk. Additionally,

26 the High Fire Threat Districts established by the California Public Utilities Commission have

27 designated Siskiyou County as Tier 2 - Elevated and Tier 3 – Extreme.

28

3

COMPLAINT

15.     Prior to the Mill Fire, Defendants were aware that Siskiyou County was an area extremely susceptible to an uncontrollable due to its topography, attributes, and history of fires. Less than two years ago, the Slater Fire devastated the area.

16.     Defendants were also aware of a high risk of an uncontrollable fire at the time of the Mill Fire due to the existing conditions and circumstances.  About 1 month prior to the Mill Fire, the McKinney Fire erupted in Siskiyou County.

17.     The alleged failures and shortcomings result from Defendants' negligence and conscious disregard for the safety of the communities it serves to prioritize profits. These failures and shortcomings resulted in the ignition of the well-known tinder-like dry vegetation in Siskiyou County.

18.     Plaintiffs are informed and believe, and thereon allege, that the Mill Fire ignited because Defendants negligently, recklessly, and willfully failed to prudently and safely maintain its facility and operations in Weed, California. Defendants' failure to operate, use, control, inspect, repair, and/or maintain its facility and the surrounding environment caused the Mill Fire to ignite.

19.     The Mill Fire caused Plaintiffs to suffer substantial economic and non-economic harms, including, but not limited to: damage to and/or destruction of real and personal property, including cherished possessions; loss of use and quiet enjoyment of real and personal property; out-of-pocket expenses directly and proximately incurred as a result of the fire; alternative living expenses; evacuation expenses; personal injuries; medical bills; lost wages; loss of earning capacity; loss of business income and/or goodwill; and various types of emotional distress, discomfort, annoyance, inconvenience, anxiety, fear, stress, and mental anguish. The harms caused by the Defendants are extensive and ongoing.

## FIRST CAUSE OF ACTION

### TRESPASS

### (Against all Defendants)

20.     Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

4

1     21.    At all times relevant, Plaintiffs were the owners and/or lawful occupiers of real

2  property damaged by the Mill Fire.

3     22.    Defendants' negligent and/or reckless acts and/or omissions caused the Mill Fire to

4  ignite and spread onto the Plaintiffs' property, resulting in damage to the Plaintiffs' property.

5     23.    Plaintiffs did not grant permission for the Mill Fire to enter their properties.

6     24.    As a factual and legal cause of the trespass, Plaintiffs have suffered, and continue

7  to, economic and non-economic damages including, but not limited to, destruction of and/or

8  damage to real and personal property, loss of use and enjoyment of real and personal property,

9  discomfort, inconvenience, anxiety, fear, annoyance, mental anguish, and stress in an amount to be

10  determined, on an individual basis, according to proof at trial.

11     25.    Defendants' conduct was despicable falling within both malicious and oppressive

12  definitions of California Civil Code §3294. Defendants' conduct evidences a willful and conscious

13  disregard for the rights and safety of others and subjected Plaintiffs to cruel and unjust hardship.

14  Punitive and exemplary damages must punish Defendants according to proof pursuant §3294.

15  Defendants have a history of despicable conduct, deliberately prioritizing profits over the rights

16  and safety of the public, resulting in catastrophic uncontrollable fire, including the Mill Fire.

**SECOND CAUSE OF ACTION**

**NEGLIGENCE**

**(Against all Defendants)**

20     26.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as

21  though fully set forth herein.

22     27.    Defendants had a duty to apply a level of care commensurate with and proportionate

23  to the inherent dangers in designing, engineering, constructing, operating, inspecting, and

24  maintaining the subject mill.

25     28.    Defendants had a duty to vigilantly oversee the operation, inspection, repair, and

26  maintenance of the mill and its local environment in consideration of geography and changing

27  weather and ecologic conditions. This duty required Defendants to take special precautions to

28

5

1    protect adjoining properties from uncontrollable fires caused by its actions and inactions.

2    29.    Under Public Resources Code section 4437, every processor of forest products shall

3    exercise due diligence in the disposal of flammable material incident to the processing, so that the

4    material does not cause the inception or spread of uncontrolled fire.  Additionally, every person,

5    copartnership, firm, corporation, or company that operates a sawmill or plant engaged in the

6    processing or converting of forest products into lumber, shook, ties, poles, posts, veneer, shakes,

7    shingles, and planed or milled products, shall dispose of flammable material incident to that

8    operation. If such flammable material is not to be used as fuel, or as a byproduct, within the

9    operation, it shall be disposed of by burning or by other alternative methods which effectively

10    prevent the flammable material from constituting a fire hazard.

11    30.    Under Public Resources Code section 4440, flammable forest product residue may

12    only be accumulated in piles when the area surrounding the piles is cleared and kept clear of all

13    flammable vegetation and debris.

14    31.    Defendants each breached their duties to exercise the requisite standard of care by:

15    a.   Failing to design, construct, operate, monitor, inspect, and maintain the subject mill
16       and/or mill operations in a manner that considered and abated foreseeable risk of
         uncontrollable fires in the area affected by the Mill Fire;
17
18       b. Failing to maintain proper clearance for flammable residue;

19    c.   Failing to routinely conduct reasonable, proper, frequent, and timely inspections
         and/or maintenance of Defendants' mill and operations;
20
21    d.   Failing to routinely conduct reasonable, proper, frequent, and timely inspections
         and/or maintenance of the clearance space around flammable residue;
22
23    e.   Failing to properly train and supervise employees and agents responsible for
         maintenance and inspections; and/or
24
25    f.   Failing to implement and/or follow regulations and reasonably prudent practices to
         avoid dangerous conditions prone to fire ignition.
26    32.    Furthermore, Defendants' failure to comply with applicable provisions of the Public

27    Resources Code, as alleged herein, is negligence per se. These statutes are aimed at preventing the

28    exact type of harm that Plaintiffs suffered due to Defendants' failure to comply with these statutes

6

1    and Plaintiffs are within the class of individuals these statutes, orders, and rules were implemented

2    to protect.

3         33.    The Mill Fire alleged herein was a factual and legal result of Defendants'

4    negligence, including negligence per se.

5         34.    Defendants' negligence, including Defendants' negligence per se, was a substantial

6    factor in causing Plaintiffs to suffer, and continue to suffer, economic and non-economic damages

7    including, but not limited to, destruction of and/or damage to real and personal property and

8    cherished possessions, loss of use and quiet enjoyment of real and personal property, discomfort,

9    annoyance, inconvenience, anxiety, fear, mental anguish, stress, and emotional distress. Plaintiffs

10   each seek damages to be determined, on an individual basis, according to proof at trial.

11        35.    Defendants' conduct was despicable falling within both malicious and oppressive

12   definitions of California Civil Code §3294. Defendants' conduct evidences a willful and conscious

13   disregard for the rights and safety of others and subjected Plaintiffs to cruel and unjust hardship.

14   Punitive and exemplary damages must punish Defendants according to proof pursuant §3294.

15   Defendants have a history of despicable conduct, deliberately prioritizing profits over the rights

16   and safety of the public, resulting in catastrophic uncontrollable fires, including the Mill Fire.

17                          **THIRD CAUSE OF ACTION**

18                            **PRIVATE NUISANCE**

19                           **(Against all Defendants)**

20        36.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as

21   though fully set forth herein.

22        37.    At all times relevant, Plaintiffs were the owner of real property in the area of the

23   Mill Fire.

24        38.    Defendants owed Plaintiffs a duty to conduct their business, which included

25   operation, inspection, and maintenance of their mill and operations, in a manner that did not

26   threaten, harm, or offend Plaintiffs or obstruct Plaintiffs' free use and comfortable enjoyment of

27   their property or pose a fire hazard to their property.

28                                      7

---

1        39.    Defendants' acts and omissions created a condition and/or permitted a condition to

2  exist that was offensive to one's senses; harmful to one's health; obstructive to the free use of

3  property, so as to interfere with the comfortable enjoyment of life and property; unlawfully

4  obstructed the free passage or use, in a customary manner, of public streets and highways; and an

5  entirely predictable fire hazard to Plaintiffs' property constituting a nuisance pursuant to California

6  Civil Code §3479.

7        40.    Defendants' conduct that created the above conditions was intentional and

8  unreasonable and/or unintentional but caused by negligence or recklessness in light of apparent

9  risks of catastrophic uncontrollable fires.

10       41.    The above-referenced conditions substantially interfered with Plaintiffs' use and

11  quiet enjoyment of their property.

12       42.    The above-referenced conditions also affected a substantial number of individuals

13  concurrently.

14       43.    An ordinary person would be reasonably annoyed and disturbed by the conditions

15  created by Defendants' acts and omissions and the resulting Mill Fire.

16       44.    The seriousness of the harm Defendants caused Plaintiffs outweighs any public

17  benefit that Defendants may provide.

18       45.    Plaintiffs did not consent expressly or impliedly to Defendants' actions and

19  inactions in creating these conditions.

20       46.    Defendants' actions and inactions in creating these conditions were a factual and

21  legal cause of Plaintiffs suffering damages unique to each Plaintiff - and different from damages

22  suffered by other Plaintiffs - including, but not limited to, destruction of and/or damage to real and

23  personal property and cherished possessions, loss of use and quiet enjoyment of real and personal

24  property, discomfort, annoyance, inconvenience, anxiety, fear, mental anguish, stress, and

25  emotional distress. Plaintiffs each seek damages to be determined, on an individual basis,

26  according to proof at trial.

27

28                         8

Exhibit 4, Page 008

1       47.     Defendants' conduct was despicable falling within both malicious and oppressive

2    definitions of California Civil Code §3294. Defendants' conduct evidences a willful and conscious

3    disregard for the rights and safety of others and subjected Plaintiffs to cruel and unjust hardship.

4    Punitive and exemplary damages must punish Defendants according to proof pursuant §3294.

5    Defendants have a history of despicable conduct, deliberately prioritizing profits over the rights

6    and safety of the public, resulting in catastrophic uncontrollable fires, including the Mill Fire.

7                                  **FOURTH CAUSE OF ACTION**

8                                       **PUBLIC NUISANCE**

9                                     **(Against all Defendants)**

10      48.     Plaintiffs incorporate by reference all allegations of the preceding paragraphs as

11   though fully set forth herein.

12      49.     At all times relevant, Plaintiffs were the owners, tenants, and/or lawful occupiers of

13   real properties in the area of the Mill Fire. Plaintiffs held a right to occupy, enjoy, and use their

14   property without interference by Defendants.

15      50.     Defendants owed a duty to the public, including Plaintiffs, to conduct their business,

16   including operation, inspection, and maintenance of mill and operations, in a manner that did not

17   threaten, harm, or offend the public or interfere with public use and comfortable enjoyment of or

18   pose a fire hazard to their property.

19      51.     Defendants' acts and/or omissions created a condition or permitted a condition to

20   exist that was harmful to health; offensive to the senses; obstructive to the free use of property,

21   interfering with the comfortable enjoyment of life and property; unlawfully obstructed the free

22   passage or use, in a customary manner, of public streets and highways; and an entirely predictable

23   fire hazard to Plaintiffs' property.

24      52.     Defendants' conduct that created the above conditions was intentional and

25   unreasonable and/or unintentional but caused by negligence or recklessness considering apparent

26   risks of catastrophic uncontrollable fires.

27

28                                              9

1      53.    The above-referenced conditions affected a substantial number of people

2  simultaneously within the general public, constituting a public nuisance pursuant to California

3  Civil Code §§3479 and 3480 and Public Resources Code §§4170 and 1471.

4      54.    Plaintiffs did not consent expressly or impliedly to Defendants' actions and

5  inactions in creating these conditions.

6      55.    An ordinary person would be reasonably annoyed and disturbed by the conditions

7  created by Defendants' conduct and the resulting Mill Fire.

8      56.    The seriousness of the harm Defendants caused Plaintiffs outweighs any public

9  benefit that Defendants may provide.

10     57.    Defendants' unreasonable conduct resulting in the Mill Fire is a factual and legal

11  cause of injury to the public, including Plaintiffs.

12     58.    As a factual and legal result of Defendants' acts and omissions in creating these

13  conditions, Plaintiffs suffered damages different from the type suffered by the general public and

14  unique to each Plaintiff. Specifically, but not limited to, loss of occupancy, possession, use, and

15  enjoyment of their real and personal property due to destruction of and/or damage to such property.

16  Additionally, Plaintiffs have suffered and continue to suffer discomfort, anxiety, fear, annoyance,

17  inconvenience, mental anguish, stress, and emotional distress.  Plaintiffs each seek damages in an

18  amount to be determined, on an individual basis, according to proof at trial.

19     59.    Plaintiffs have standing to maintain an action for public nuisance under Civil Code

20  §3492 because the nuisance is especially injurious to Plaintiffs, as alleged herein.

21     60.    Defendants' conduct was despicable falling within both malicious and oppressive

22  definitions of California Civil Code §3294. Defendants' conduct evidences a willful and conscious

23  disregard for the rights and safety of others and subjected Plaintiffs to cruel and unjust hardship.

24  Punitive and exemplary damages must punish Defendants according to proof pursuant §3294.

25  Defendants have a history of despicable conduct, deliberately prioritizing profits over the rights

26  and safety of the public, resulting in catastrophic uncontrollable fires, including the Mill Fire.

27

28                            10

Exhibit 4, Page 010

1

**PRAYER FOR RELIEF**

2     Plaintiffs seek the following damages in an amount according to proof at the time of trial:

3     (1)    General and/or special damages determined on an individual basis according to proof;

4     (2)    Loss of use, benefit, goodwill, and enjoyment of Plaintiffs' real and/or personal

5             property;

6     (3)    Loss of wages, earning capacity, goodwill, and/or business profits or proceeds and/or

7             any related displacement expenses;

8     (4)    Evacuation expenses and alternate living expenses;

9     (5)    Erosion damage to real property;

10    (6)    Past and future medical expenses and incidental expenses;

11    (7)    Damages for personal injury, emotional distress, fear, annoyance, disturbance,

12            inconvenience, mental anguish, and loss of quiet enjoyment of property;

13    (8)    Attorneys' fees, expert fees, consultant fees, and litigation costs and expenses as

14            allowed under appliable law;

15    (9)    Prejudgment interest;

16    (10)   For punitive and exemplary damages against Defendants in an amount sufficient to

17            punish Defendants' conduct and deter similar conduct in the future, as allowed under

18            Public Utilities Code §2106 and all other appliable law; and

19    (11)   Any and all other and further such relief as the Court shall deem proper, all according to

20            proof.

21

22    Dated: September _8_, 2022                 **FRANTZ LAW GROUP, APLC**

23

24

25                                              By_____

                                                James P. Frantz
26                                              M. Regina Bagdasarian
                                                George T. Stiefel
27                                              C. Nikki Morris
                                                Attorneys for Plaintiffs
28

11

COMPLAINT

1    **JURY DEMAND**

2    Plaintiffs demand a trial by jury on all causes.

3

4

5    Dated: September ⊗, 2022                    **FRANTZ LAW GROUP, APLC**

6

7

8                                        By_____

9                                            James P. Frantz
                                            M. Regina Bagdasarian
10                                           George T. Stiefel
                                            C. Nikki Morris Attorneys for
11                                           Plaintiffs

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                    12

COMPLAINT

EXHIBIT 5

EXHIBIT 5

EXHIBIT 5

PLD-PI-001

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Russell Reiner          SBN: 84461<br>REINER, SLAUGHTER, MAINZER & FRANKEL, LLP<br>2851 Park Marina Drive, Suite 200<br>Redding, CA 96001<br>TELEPHONE NO:530-241-1905      FAX NO. *(Optional):*530-241-0622<br>E-MAIL ADDRESS *(Optional):*rreiner@reinerslaughter.com<br>ATTORNEY FOR *(Name):*Joselito Bereso Candasa | **ELECTRONICALLY**<br>**F I L E D**<br>*Superior Court of California,*<br>*County of San Francisco*<br>**09/13/2022**<br>**Clerk of the Court**<br>BY: LAURA SIMMONS<br>Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
STREET ADDRESS:400 McAllister Street
MAILING ADDRESS:400 McAllister Street
CITY AND ZIP CODE:San Francisco, 94102-4515
BRANCH NAME:Civic Center Courthouse

PLAINTIFF: JOSELITO BERESO CANDASA, individually and as successor in interest to Lorenza Mondoc Glover, deceased
DEFENDANT: ROSEBURG FOREST PRODUCTS, CO.; and

[X] DOES 1 TO ___10___, inclusive

COMPLAINT—Personal Injury, Property Damage, Wrongful Death
[ ] AMENDED *(Number):*
Type *(check all that apply):*
[ ] MOTOR VEHICLE   [ ] OTHER *(specify):*
   [ ] Property Damage   [X] Wrongful Death
   [X] Personal Injury   [ ] Other Damages *(specify):*

| Jurisdiction *(check all that apply):* | CASE NUMBER: **CGC-22-601752** |
|---|---|
| [ ] ACTION IS A LIMITED CIVIL CASE<br>    Amount demanded   [ ] does not exceed $10,000<br>          [ ] exceeds $10,000, but does not exceed $25,000<br>[X] ACTION IS AN UNLIMITED CIVIL CASE (exceeds $25,000)<br>[ ] ACTION IS RECLASSIFIED by this amended complaint<br>    [ ] from limited to unlimited<br>    [ ] from unlimited to limited | |

1. **Plaintiff** *(name or names):*Joselito Bereso Candasa, individually and as successor in interest to Lorenza Mondoc Glover, deceased
   alleges causes of action against **defendant** *(name or names):*  Roseburg Forest Products, Co.; and Does 1 through 10, inclusive

2. This pleading, including attachments and exhibits, consists of the following number of pages: 10
3. Each plaintiff named above is a competent adult
   a. [ ] **except** plaintiff *(name):*
      (1) [ ] a corporation qualified to do business in California
      (2) [ ] an unincorporated entity *(describe):*
      (3) [ ] a public entity *(describe):*
      (4) [ ] a minor   [ ] an adult
         (a) [ ] for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
         (b) [ ] other *(specify):*
      (5) [ ] other *(specify):*
   b. [ ] **except** plaintiff *(name):*
      (1) [ ] a corporation qualified to do business in California
      (2) [ ] an unincorporated entity *(describe):*
      (3) [ ] a public entity *(describe):*
      (4) [ ] a minor   [ ] an adult
         (a) [ ] for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
         (b) [ ] other *(specify):*
      (5) [ ] other *(specify):*

[ ] Information about additional plaintiffs who are not competent adults is shown in Attachment 3.

Page 1 of 3

| Form Approved for Optional Use<br>Judicial Council of California<br>PLD-PI-001 [Rev. January 1, 2007] | **COMPLAINT—Personal Injury, Property<br>Damage, Wrongful Death** | Code of Civil Procedure, § 425.12<br>*www.courtinfo.ca.gov*<br>Westlaw Doc & Form Builder™ |
|---|---|---|

LIC0016745
Exhibit 5, Page 001

PLD-PI-001

| SHORT TITLE: CANDASA V. ROSEBURG FOREST PRODUCTS CO., et al. | CASE NUMBER: |
|---|---|

4. ☐ Plaintiff *(name):*

is doing business under the fictitious name *(specify):*

and has complied with the fictitious business name laws.

5. Each defendant named above is a natural person
   a. ☒ **except** defendant *(name):* Roseburg Forest Products
   - (1) ☐ a business organization, form unknown
   - (2) ☒ a corporation
   - (3) ☐ an unincorporated entity *(describe):*
   - (4) ☐ a public entity *(describe):*
   - (5) ☐ other *(specify):*

   c. ☐ **except** defendant *(name):*
   - (1) ☐ a business organization, form unknown
   - (2) ☐ a corporation
   - (3) ☐ an unincorporated entity *(describe):*
   - (4) ☐ a public entity *(describe):*
   - (5) ☐ other *(specify):*

   b. ☐ **except** defendant *(name):*
   - (1) ☐ a business organization, form unknown
   - (2) ☐ a corporation
   - (3) ☐ an unincorporated entity *(describe):*
   - (4) ☐ a public entity *(describe):*
   - (5) ☐ other *(specify):*

   d. ☐ **except** defendant *(name):*
   - (1) ☐ a business organization, form unknown
   - (2) ☐ a corporation
   - (3) ☐ an unincorporated entity *(describe):*
   - (4) ☐ a public entity *(describe):*
   - (5) ☐ other *(specify):*

   ☐ Information about additional defendants who are not natural persons is contained in Attachment 5.

6. The true names of defendants sued as Does are unknown to plaintiff.
   a. ☒ Doe defendants *(specify Doe numbers):* 1-5 _____ were the agents or employees of other named defendants and acted within the scope of that agency or employment.
   b. ☒ Doe defendants *(specify Doe numbers):* 6-10 _____ are persons whose capacities are unknown to plaintiff.

7. ☐ Defendants who are joined under Code of Civil Procedure section 382 are *(names):*

8. This court is the proper court because
   a. ☐ at least one defendant now resides in its jurisdictional area.
   b. ☐ the principal place of business of a defendant corporation or unincorporated association is in its jurisdictional area.
   c. ☐ injury to person or damage to personal property occurred in its jurisdictional area.
   d. ☒ other *(specify):* Plaintiff resides in San Francisco County. Defendant Roseburg Forest Products, Co. is a nonresident corporation that has not designated a principal place of business within California.

9. ☐ Plaintiff is required to comply with a claims statute, **and**
   a. ☐ has complied with applicable claims statutes, **or**
   b. ☐ is excused from complying because *(specify):*

**COMPLAINT—Personal Injury, Property Damage, Wrongful Death**

LIC0016746
Exhibit 5, Page 002

PLD-PI-001

| SHORT TITLE: CANDASA V. ROSEBURG FOREST PRODUCTS CO., et al. | CASE NUMBER: |
|---|---|

10. The following causes of action are attached and the statements above apply to each *(each complaint must have one or more causes of action attached)*:
   a. ☐ Motor Vehicle
   b. ☒ General Negligence
   c. ☐ Intentional Tort
   d. ☐ Products Liability
   e. ☐ Premises Liability
   f. ☐ Other *(specify)*:

11. Plaintiff has suffered
   a. ☐ wage loss
   b. ☐ loss of use of property
   c. ☐ hospital and medical expenses
   d. ☒ general damage
   e. ☐ property damage
   f. ☐ loss of earning capacity
   g. ☒ other damage *(specify)*: As the successor in interest to Decedent, Plaintiff is entitled to seek recovery for the pre-death pain and suffering experienced by Decedent prior to her death. Plaintiff additionally seeks wrongful death damages.

12. ☒ The damages claimed for wrongful death and the relationships of plaintiff to the deceased are
   a. ☒ listed in Attachment 12.
   b. ☐ as follows:

13. The relief sought in this complaint is within the jurisdiction of this court.

14. **Plaintiff prays** for judgment for costs of suit; for such relief as is fair, just, and equitable; and for
   a. (1) ☒ compensatory damages
      (2) ☐ punitive damages
      The amount of damages is *(in cases for personal injury or wrongful death, you must check (1))*:
      (1) ☒ according to proof
      (2) ☐ in the amount of: $

15. ☐ The paragraphs of this complaint alleged on information and belief are as follows *(specify paragraph numbers)*:

Date: September 9, 2022

Russell Reiner
_____
(TYPE OR PRINT NAME)

▸ _____
(SIGNATURE OF PLAINTIFF OR ATTORNEY)

PLD-PI-001 [Rev. January 1, 2007]  **COMPLAINT—Personal Injury, Property Damage, Wrongful Death**  Page 3 of 3

LIC0016747
**Exhibit 5, Page 003**

PLD-PI-001(2)

| | |
|---|---|
| SHORT TITLE: CANDASA V. ROSEBURG FOREST PRODUCTS CO., et al. | CASE NUMBER: |

<u>FIRST</u>    **CAUSE OF ACTION—General Negligence**    Page 4
(number)

ATTACHMENT TO   [X] Complaint   [ ] Cross - Complaint

*(Use a separate cause of action form for each cause of action.)*

GN-1. Plaintiff *(name):* JOSELITO BERESO CANDASA, individually and as successor in interest to
Lorenza Mondoc Glover, deceased
alleges that defendant *(name):*   ROSEBURG FOREST PRODUCTS, CO.; and

[X] Does _____1_____ to _____10_____

was the legal (proximate) cause of damages to plaintiff. By the following acts or omissions to act, defendant
negligently caused the damage to plaintiff
on *(date):* September 2, 2022
at *(place):* Weed, Siskiyou County, California

*(description of reasons for liability):*

On or about September 2, 2022, the Mill Fire destroyed over 100 homes in Siskiyou County and
killed at least two people, including Decedent. The Mill Fire began in Weed, California, in or around
a warehouse owned and operated by Defendants. Defendants negligently maintained and operated
the warehouse and adjacent property so as to create, cause, allow contribute to and assist in creating
a dangerous condition on the property.

The negligent operation and maintenance of its property was the proximate cause of the Mill Fire,
which escaped the bounds of the Roseburg Forest Products Co. property. As a result of the
negligence of Defendants, Decedent was exposed to and had to flee the fire causing her to suffer
personal injuries, serious emotional distress and ultimately death. Damages to the aforementioned
are in amounts which will the subject of proof at trial.

At all relevant times, Defendants and each of them knew or in the exercise of reasonable care should
have known, that they were not properly operating and maintaining their warehouse and adjacent
property such that it was likely to create and become a fire hazard and result in injury or death to
persons or property throughout the community.  As a proximate result of Defendants' actions,
Decedent was killed and Plaintiff suffered injury.  But for the actions of Defendants, Decedent would
not have been killed and Plaintiff would not have been injured.

Page 1 of 1

Form Approved for Optional Use
Judicial Council of California
PLD-PI-001(2) [Rev. January 1, 2007]

**CAUSE OF ACTION—General Negligence**

Code of Civil Procedure 425.12
*www.courtinfo.ca.gov*
Westlaw Doc & Form Builder™

LIC0016748
Exhibit 5, Page 004

MC-025

| SHORT TITLE: CANDASA V. ROSEBURG FOREST PRODUCTS CO ., et al. | CASE NUMBER: |
|---|---|

ATTACHMENT *(Number):* _____12_____

*(This Attachment may be used with any Judicial Council form.)*

RELATIONSHIP OF PLAINTIFF TO DECEASED

Plaintiff Joselito Bereso Candasa is the natural son of Decedent, Lorenza Mondoc Glover. Plaintiff is the successor-in-interest to Decedent as defined in Section 377.11 of the California Code of Civil Procedure. Attached to this Complaint as Exhibit 1 and incorporated herein by reference is the Declaration of Joselito Bereso Candasa per Section 377.32 of the California Code of Civil Procedure.

DAMAGES CLAIMED

This is a wrongful death and survivor action sounding in negligence against Defendants Roseburg Forrest Products, Co. and Does 1 through 10. Damages sought are as follows:

1.    WRONGFUL DEATH DAMAGES

As a direct, proximate, immediate, and foreseeable result of said conduct of Defendants, Plaintiff Joselito Bereso Candasa has been deprived of love, companionship, comfort, care, assistance, protection, affection, society, financial support, the loss of gifts and benefits, and moral support from his mother. As a further, direct, proximate, immediate and foreseeable result of the conduct of defendants, Plaintiff has incurred reasonable funeral and burial expenses, the exact amount of which will be subject to proof at the time of trial.

2.    SURVIVAL DAMAGES

On information and belief, Decedent Lorenza Mondoc Glover died while trying to escape the Mill Fire. On information and belief, she tried to escape via her vehicle, but there was too much smoke.

At or around the time of her death, Decedent was speaking to a neighbor on her cell phone, who had called to check on her wellbeing soon after the Mill Fire erupted. Decedent reported to her neighbor seeing smoke and was then heard gasping and grunting. The call then went dead.

On information and belief, Lorenza Mondoc Glover died due to exposure to fire and smoke.

Plaintiff alleges that prior to her death, Lorenza Mondoc Glover experienced significant pain, suffering and fear recoverable pursuant to Code of Civil Procedure 377.34 in an action brought

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page ___1___ of ___2___

*(Add pages as required)*

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

**ATTACHMENT**
**to Judicial Council Form**

*www.courtinfo.ca.gov*
**Westlaw Doc & Form Builder**

LIC0016749
Exhibit 5, Page 005

MC-025

| SHORT TITLE: CANDASA V. ROSEBURG FOREST PRODUCTS CO ., et al. | CASE NUMBER: |
|---|---|

ATTACHMENT *(Number):* _____12_____

*(This Attachment may be used with any Judicial Council form.)*

by Decedent's successor in interest in an amount subject to proof at trial.

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

**Page** __2__ **of** __2__

*(Add pages as required)*

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

**ATTACHMENT**
**to Judicial Council Form**

*www.courtinfo.ca.gov*
**Westlaw Doc & Form Builder**

LIC0016750
Exhibit 5, Page 006

1

LAW OFFICES OF
**REINER, SLAUGHTER,**
**MAINZER & FRANKEL, LLP**
2851 Park Marina Drive, Suite 200
Post Office Box 494940
Redding, CA 96049-4940
(530) 241-1905
FAX (530) 241-0622

2

3

4

5
Russell Reiner, State Bar No. 84461
Todd E. Slaughter, State Bar No. 87753
6
Benjamin H. Mainzer State Bar No. 257748
Rick Lundblade, State Bar No. 220662
7
April K. Stratte, State Bar No. 290423

8
Attorneys for Plaintiff

9

10          SUPERIOR COURT OR CALIFORNIA, COUNTY OF SAN FRANCISCO

11

12 JOSELITO BERESO CANDASA,                    CASE NO.
individually and as successor in interest to
13 Lorenza Mondoc Glover, deceased;

14          Plaintiff,                          **DECLARATION OF JOSELITO BERESO**
                                                **CANDASA**
15 vs.

16 ROSEBURG FOREST PRODUCTS, CO.;
17 and DOES 1 through 10, inclusive

18          Defendants.
19 _____/

20          I, JOSELITO BERESO CANDASA, hereby declare as follows:

21          1.      The Decedent's name is Lorenza Mondoc Glover.  She was my mother.

22          2.      Decedent died on September 2, 2022, in Siskiyou County, California.

23          3.      No proceeding is now pending in California for administration of the

24 Decedent's estate.

25          4.      I am the Decedent's successor in interest (as defined in Section 377.11 of the

26 California Code of Civil Procedure) and succeed to the Decedent's interest in this action.

27

28

DECLARATION OF JOSELITO BERESO CANDASA    EXHIBIT 1                    PAGE 1

5.      No other person has a superior right to commence the action or to be substituted for the Decedent in the pending action.

6.      A copy of Decedent's death certificate is attached as **Exhibit A**.

I declare under penalty of perjury of the laws of the State of California that the foregoing is true and correct.

Executed this ___9th___ day of September, 2022, at _____Weed_____, California.

Joselito Candasa (Sep 9, 2022 14:41 PDT)

JOSELITO BERESO CANDASA

**DECLARATION OF JOSELITO BERESO CANDASA**                          **PAGE 2**

**CERTIFICATE OF DEATH**
STATE OF CALIFORNIA

| Field | Value |
|---|---|
| 1. NAME OF DECEDENT-FIRST (Given) | LORENZA |
| 2. MIDDLE | MONDOC |
| 3. LAST (Family) | GLOVER |
| AKA, ALSO KNOWN AS | BOHOL |
| 4. DATE OF BIRTH | 09/27/1956 |
| 5. AGE Yrs. | 65 |
| 7. SEX | F |
| 6. BIRTH STATE/FOREIGN COUNTRY | PHILLIPINES |
| 12. SOCIAL SECURITY NUMBER | 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 |
| 13. EVER IN U.S. ARMED FORCES? | NO |
| 14. MARITAL STATUS | WIDOWED |
| 15. DATE OF DEATH | 09/02/2022 |
| 16. HOUR | 1602 |

| 8. EDUCATION | 08 |
| 9. WAS DECEDENT HISPANIC/LATINO/A/SPANISH? | YES |
| 10. DECEDENT'S RACE | FILIPINO |
| 17. USUAL OCCUPATION | HOUSEKEEPER |
| 18. KIND OF BUSINESS OR INDUSTRY | HOTEL |
| 19. YEARS IN OCCUPATION | 5 |

| 20A. DECEDENT'S RESIDENCE | 1506 WAKEFIELD AVE |
| 21. CITY | WEED |
| 22. COUNTY/PROVINCE | SISKIYOU |
| 23. ZIP CODE | 96094 |
| 24. YEARS IN COUNTY | 26 |
| 25. STATE/FOREIGN COUNTRY | CA |

| 26. INFORMANT'S NAME, RELATIONSHIP | JOSELITO CANDASA, SON |
| 27. INFORMANT'S MAILING ADDRESS | 1275 MARKET STREET, SAN FRANCISCO, CA 94102 |

| 28. NAME OF SURVIVING SPOUSE-FIRST | JOSE | 29. MIDDLE | | 30. LAST | BERESO | 34. BIRTH STATE | PHILLIPINES |
| 31. NAME OF FATHER/PARENT-FIRST | | | | | | 34A. BIRTH STATE | |
| 32. NAME OF MOTHER/PARENT-FIRST | RUFINA | 36. MIDDLE | | 37. LAST (BIRTH NAME) | MONDOC | 38. BIRTH STATE | PHILLIPINES |

| 39. DISPOSITION DATE | 09/16/2022 |
| 40. PLACE OF FINAL DISPOSITION | NORTHERN VETERAN CEMETERY, 11800 GAS POINT RD, REDDING, CA 96003 |

| 41. TYPE OF DISPOSITION | CREMATE/BURIAL |
| 42. SIGNATURE OF EMBALMER | NOT EMBALMED |
| 43. LICENSE NUMBER | |
| 44. NAME OF FUNERAL ESTABLISHMENT | MOUNT SHASTA MEMORIAL CHAPEL | FD156 |
| 45. SIGNATURE OF LOCAL REGISTRAR | |
| 46. DATE | |

| 101. PLACE OF DEATH | STREET |
| 102. IF HOSPITAL, SPECIFY ONE | |
| 103. IF OTHER THAN HOSPITAL, SPECIFY ONE | Other |
| 104. COUNTY | SISKIYOU |
| 105. FACILITY ADDRESS | WAKEFIELD AVENUE |
| 106. CITY | WEED |

| 107. CAUSE OF DEATH | IMMEDIATE CAUSE: PENDING CARBOXYHEMOGLOBIN LEVEL |
| 108. DEATH REPORTED TO CORONER? | NO |
| 109. BIOPSY PERFORMED? | NO |
| 110. AUTOPSY PERFORMED? | YES |
| 111. USED IN DETERMINING CAUSE? | YES |

| 112. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE | NONE |
| 113. WAS OPERATION PERFORMED FOR ANY CONDITION IN ITEM 107 OR 112? | NO |

| 114. I CERTIFY THAT TO THE BEST OF MY KNOWLEDGE DEATH OCCURRED AT THE HOUR, DATE AND PLACE STATED FROM THE CAUSES STATED | |
| 115. SIGNATURE AND TITLE OF CERTIFIER | |
| 116. LICENSE NUMBER | |
| 117. DATE | |

PRINTED ON: 09/09/2022 12:58 PM
BY: ROBISON, TRAVIS (TMROBISON)

*WORKING COPY*

EXHIBIT A

# Declaration of Joselito Bereso Candasa

Final Audit Report                                                  2022-09-09

| Created: | 2022-09-09 |
|---|---|
| By: | LINDA SCOUBES (LSCOUBES@REINERSLAUGHTER.COM) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAcTiOf8dtJuETd2xp1YgnpoKnT1pwgurd |

## "Declaration of Joselito Bereso Candasa" History

Document created by LINDA SCOUBES (LSCOUBES@REINERSLAUGHTER.COM)
2022-09-09 - 9:29:15 PM GMT- IP address: 47.27.248.118

Document emailed to joefris28@msn.com for signature
2022-09-09 - 9:30:33 PM GMT

Email viewed by joefris28@msn.com
2022-09-09 - 9:39:08 PM GMT- IP address: 173.255.100.162

Signer joefris28@msn.com entered name at signing as Joselito Candasa
2022-09-09 - 9:41:17 PM GMT- IP address: 172.58.37.209

Document e-signed by Joselito Candasa (joefris28@msn.com)
Signature Date: 2022-09-09 - 9:41:18 PM GMT - Time Source: server- IP address: 172.58.37.209

Agreement completed.
2022-09-09 - 9:41:18 PM GMT

 Adobe Acrobat Sign

EXHIBIT 6

EXHIBIT 6

EXHIBIT 6

1  FRANK M. PITRE (SBN 100077)
   fpitre@cpmlegal.com
2  DONALD J. MAGILLIGAN (SBN 257714)
   dmagilligan@cpmlegal.com
3  NABILAH A. HOSSAIN (SBN 329689)
   nhossain@cpmlegal.com
4  ANDREW W. BRITTON (SBN 340052)
   abritton@cpmlegal.com
5  **COTCHETT, PITRE & McCARTHY, LLP**
6  San Francisco Airport Office Center
   840 Malcolm Road
7  Burlingame, CA 94010
   Telephone: 650) 697-6000
8  Facsimile: (650) 697-0577

9
   P. TERRY ANDERLINI (SBN 044783)
10 **ANDERLINI & MCSWEENEY**
   66 Bovet Road, Suite 285
11 San Mateo, California 94402
   Telephone: (650) 212-0001
12 Facsimile: (650) 212-0001
   tanderlini@amlawoffice.com
13

14 *Counsel for Plaintiff*

15

16              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

17              **IN AND FOR THE COUNTY OF SAN FRANCISCO**

ELECTRONICALLY
F I L E D
Superior Court of California,
County of San Francisco

10/04/2022
Clerk of the Court
BY: LAURA SIMMONS
Deputy Clerk

**CGC-22-602159**

| | |
|---|---|
| **ROBERT DAVIES**, an individual;<br><br>    Plaintiff,<br><br>    vs.<br><br>**ROSEBURG FOREST PRODUCTS CO.**,<br>an Oregon corporation; and DOES 1 through<br>100, inclusive,<br><br>    Defendants. | Case No.:<br><br>**COMPLAINT FOR:**<br><br>1) **INVERSE CONDEMNATION**<br><br>2) **TRESPASS**<br><br>3) **NEGLIGENCE**<br><br>4) **PRIVATE NUISANCE**<br><br>5) **PUBLIC NUISANCE**<br><br>6) **VIOLATION OF HEALTH<br>AND SAFETY CODE § 13007**<br><br>**JURY TRIAL DEMANDED** |

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**COMPLAINT**

## TABLE OF CONTENTS

PAGE NO.

I.   INTRODUCTION ................................................................................................ 1

II.  THE PARTIES ................................................................................................... 2

    A. PLAINTIFF ................................................................................................ 2

    B. DEFENDANT ............................................................................................. 2

    C. DOE DEFENDANTS ................................................................................. 3

    D. AGENCY, JOINT VENTURE, AND CONCERT OF ACTION ................ 3

    E. JURISDICTION AND VENUE ................................................................. 3

III. FACTUAL BASIS FOR THE CLAIMS ASSERTED .................................... 4

    A. FIRE-PRONE BYPRODUCTS FROM ROSEBURG'S
       BIOMASS PLANT CAUSED THE MILL FIRE ....................................... 4

    B. THE ROSEBURG FACILITY AND BYPRODUCTS
       FROM ITS BIOMASS PLANT POSED OBVIOUS AND
       KNOWN FIRE RISKS ............................................................................. 5

    C. DEFENDANTS' NEGLIGENCE CAUSED PLAINTIFF
       SUBSTANTIAL HARM .......................................................................... 9

IV.  CAUSES OF ACTION ................................................................................... 11

    FIRST CAUSE OF ACTION – INVERSE CONDEMNATION
    (Against All Defendants) ............................................................................... 12

    SECOND CAUSE OF ACTION - TRESPASS
    (Against All Defendants) ............................................................................... 12

    THIRD CAUSE OF ACTION – NEGLIGENCE
    (Against All Defendants) ............................................................................... 12

    FOURTH CAUSE OF ACTION – PRIVATE NUISANCE
    (Against All Defendants) ............................................................................... 15

    FIFTH CAUSE OF ACTION – PUBLIC NUISANCE
    (Against All Defendants) ............................................................................... 16

    SIXTH CAUSE OF ACTION – VIOLATION OF HEALTH & SAFETY CODE § 13007
    (Against All Defendants) ............................................................................... 17

V.   PRAYER FOR RELIEF ................................................................................. 18

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**COMPLAINT**                                                                                    i

I. **INTRODUCTION**

1.      On the afternoon of September 2, 2022, a fire began at a mill in Weed, California which was owned and operated by **ROSEBURG FOREST PRODUCTS CO.** (**"ROSEBURG"**).  Later named the **MILL FIRE**, it tore through Siskiyou County for 11 days, burned 3,935 acres, destroyed 118 structures, injured three people, and killed two.

2.      The **MILL FIRE** was the result of **ROSEBURG's** deliberate failure to avoid known risks of fire ignition associated with the industrial processes conducted at its mill (**"FACILITY"**).

3.      In addition to creating wood veneer, the **FACILITY** generates electricity at an onsite plant (**"BIOMASS PLANT"**). **ROSEBURG** uses the electricity to power the **FACILITY**, but also transfers the electricity generated by the **BIOMASS PLANT** into Siskiyou County's electrical grid for public use.

4.      The **BIOMASS PLANT** creates electricity by burning wood, which creates a hot ash byproduct. The hot ash, if not properly cooled or treated, poses an obvious risk of fire ignition. This was not news to **ROSEBURG**. Previously, it had been observed that hot ash from the **BIOMASS PLANT** ignited fires at the **FACILITY** on a frequent basis.

5.      **ROSEBURG** installed a fire suppression system but it did not function as intended. Instead of fixing the system, **ROSEBURG** depended on its own employees promptly reacting to extinguish the fires – rather than designing and maintaining an effective fire suppression system.  **ROSEBURG** relied on this practice because it was cheaper, thereby sacrificing the safety of the community which surrounded the facility.

6.      Worse, the **FACILITY** itself, and in particular the aging wooden shed where the hot ash created by the **BIOMASS PLANT** was stored (**"SHED 17"**), was a ticking time bomb.

7.      By September 2022, **SHED 17** was about 100 years old. For years, **ROSEBURG** used **SHED 17** to house truckloads of hot ash from the **BIOMASS PLANT**. The rafters which ran across the ceiling of **SHED 17** were covered with dust and other material. On several occasions, the hot ash would cause sparks to ignite the dust and other random debris hanging from the rafters.

1    8.    Due to the abundant fuel and risk of ignition, proper management of fire risk at

2  the **FACILITY** was paramount.  Further, **ROSEBURG** knew or should have known that severe

3  and enduring drought in Siskiyou County made the region susceptible to wildfires.

4    9.    Despite these obvious and known fire risks, **ROSEBURG** deliberately failed to

5  take measures sufficient to mitigate or prevent fire ignition at the **FACILITY**, including but not

6  limited to failing to design, construct, inspect, or maintain an adequate fire suppression system at

7  the **FACILITY** or adequately manage the ignition-prone byproducts of its **BIOMASS PLANT**.

8    10.    **ROSEBURG** could have and should have prevented the **MILL FIRE**. Instead,

9  **ROSEBURG** chose to save money, placing profits above the safety of its employees and the

10  public.

11    11.    As a result of **ROSEBURG's** acts and omission in operating its **FACILITY**,

12  including its operation of the **BIOMASS PLANT** and treatment of the hot ash byproduct it

13  generated, the **MILL FIRE** spread from the **FACILITY**, irreparably harmed a community,

14  destroyed homes, and killed citizens of Siskiyou County.

15  **II.    THE PARTIES**

16    **A.    PLAINTIFF**

17    12.    **PLAINTIFF ROBERT DAVIES ("PLAINTIFF" or "ROBERT")** is an

18  individual who was, at all times relevant, a natural person and resident of Siskiyou County,

19  California. As a result of the **MILL FIRE, PLAINTIFF,** a 61-year-old person with disabilities,

20  lost his home of over 30 years and all of its contents, is displaced, and suffers enduring harm.

21    **B.    DEFENDANT**

22    13.    Defendant **ROSEBURG FOREST PRODUCTS CO. ("DEFENDANT**

23  **ROSEBURG" "ROSEBURG" or "DEFENDANT")** is a privately-held corporation doing

24  business in California.  At all times relevant, **ROSEBURG** owned, operated, managed, or

25  otherwise exercised control over a wood-products processing and biomass facility which

26  supplied energy to customers in Northern California (**"FACILITY"**).

27  / / /

28  / / /

**COMPLAINT**                                                                                          2

C.    **DOE DEFENDANTS**

14.    Except as described herein, **PLAINTIFF** is ignorant of the true names and/or capacities of the Defendants sued as Does 1 through 100, inclusive, and therefore, **PLAINTIFF** sues these Defendants by such fictitious names. Following further investigation and discovery, **PLAINTIFF** will seek leave of this Court to amend this Complaint to allege their true names and capacities when ascertained. These fictitiously named Doe Defendants are responsible in some manner for the acts, occurrences, and events alleged herein. These Doe Defendants aided, abetted, and/or conspired with Defendants in the wrongful acts and course of conduct, or otherwise negligently caused the damages and injuries claimed herein and are responsible in some manner for the acts, occurrences, and events alleged in this Complaint.

D.    **AGENCY, JOINT VENTURE, AND CONCERT OF ACTION**

15.    At all relevant times, **DEFENDANTS** were the agents, servants, employees, partners, aiders and abettors, co-conspirators, and/or joint venturers of each of the other **DEFENDANTS** and were at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, enterprise, conspiracy, and/or joint venture, and each **DEFENDANT** has ratified and approved the acts of each of the remaining **DEFENDANTS**. Each **DEFENDANT** aided and abetted, encouraged, and rendered substantial assistance to the other **DEFENDANTS** in breaching their obligations to **PLAINTIFF**. In taking action to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoings alleged herein, each of the **DEFENDANTS** acted with an awareness of his/her/its primary wrongdoing and realized his/her/its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

E.    **JURISDICTION AND VENUE**

16.    This Court is a court of general jurisdiction and, therefore, has subject matter jurisdiction over all causes of action alleged herein.

17.    This Court has personal jurisdiction over all parties to this action because each and every party has sufficient minimum contacts with the State of California arising out of or

1 relating to the causes of action herein alleged such that this Court's exercise of personal

2 jurisdiction comports with traditional notions of fair play and substantial justice.

3     18.    Plaintiff is informed and believes, and thereon alleges, that **DEFENDANT**

4 **ROSEBURG** is a business entity that has not filed a statement designating a principal office in

5 California. Therefore, venue is proper in any Court in the State. (*Easton v. Superior Court* (1970)

6 12 Cal.App.3d 243, 246.)

7 **III.**    **FACTUAL BASIS FOR THE CLAIMS ASSERTED**

8     **A.**    **FIRE-PRONE BYPRODUCTS FROM ROSEBURG'S BIOMASS PLANT**
9           **CAUSED THE MILL FIRE**

10     19.    On September 2, 2022, the **MILL FIRE** ignited at a wood-products processing

11 facility ("**FACILITY**") in Weed, California owned and operated by **DEFENDANT**

12 **ROSEBURG**. The **MILL FIRE** burned for 11 days, torched 3,935 acres, destroyed 118

13 structures, injured three people, and killed two.

14     20.    The residents of Siskiyou County, and in particular the residents of Weed – where

15 the **FACILITY** and **ROSEBURG** were the second-largest employer – were ambushed by flame.

16 To illustrate just how fast this fire moved, one only has to look to the location of the local fire

17 department.  The City of Weed's Fire Department is located adjacent to the Roseburg Mill, at

18 128 Roseburg Parkway. Nonetheless, the **MILL FIRE** was burning so ferociously at onset a

19 trained battalion – *responding from an onsite position* – had no chance to halt the progression of

20 this blaze.

21 /// 

22 /// 

23

24

25

26

27

28

**COMPLAINT**                                  4



*Figure 1*: Residential neighborhood in Weed, CA after the Mill Fire.

**B.    THE ROSEBURG FACILITY AND BYPRODUCTS FROM ITS BIOMASS PLANT POSED OBVIOUS AND KNOWN FIRE RISKS**

21.    **ROSEBURG** and all **DEFENDANTS** knew or should have known that the **FACILITY** and its operations posed obvious risks of igniting a fire that could harm property and life.

22.    **ROSEBERG** and all **DEFENDANTS** also knew or should have known that the **FACILITY** was located in an area with high fire risk. By September 2021, 94% of Siskiyou County was categorized as "extreme drought" with over 40% qualifying for "exceptional drought." To date, 2022 has been the 4th driest year in Siskiyou County over the past 128 years, creating an increased risk of wildfire.

23.    Further, **ROSEBURG** knew that Siskiyou County had a recent history of substantial wildfires including the McKinney Fire in 2022 (60,138 acres; 4 deaths), the Lava Fire in 2021 (26,409 acres), the Slater Fire in 2020 (157,220 acres), and the Klamathon Fire in 2018 (38,008 acres).

24.     In addition to the surrounding drought-stricken areas of Siskiyou County, the **FACILITY** itself and its operations posed a known fire risk.

25.     **ROSEBURG** used the **FACILITY** for, among other purposes, processing logs, chips, and larger pieces of wood to create wood veneer. To perform the steps necessary for its industrial process, the **FACILITY** used various powered industrial equipment.

26.     **ROSEBURG** also used the **FACILITY** to generated electricity for itself and for public through the **BIOMASS PLANT**. Like a fireplace, the **BIOMASS PLANT** created heat by burning solid fuel. In this case, the **FACILITY** used byproducts of its wood processing, such as wood chips, as fuel for the **BIOMASS PLANT**. Once burned, the wood became ash.

27.     **ROSEBURG** then removed the hot ash byproduct from the **BIOMASS PLANT** and stored it in a large wooden building built in the 1920s ("**SHED 17**") at the **FACILITY** so it could cool. Just like ashes in a fireplace, the hot ashes from the **BIOMASS PLANT** could ignite a fire if not properly cooled or treated.



*Figure 2*: A building similar to Shed 17 that had stores hot ash at Roseburg Mill.

28.     For decades, **SHED 17** housed ashes from the **BIOMASS PLANT** at the **FACILITY**. Over time, ash, debris, wood chips, and other flammable material accumulated in and around **SHED 17**. Inside, the potentially hot ashes from the **BIOMASS PLANT** lay piled

Exhibit 6, Page 008

1    several feet high in various containers under the building's wooden rafters and beside its wooden

2    walls, which were scarred with burn marks from previous fires. **PLAINTIFF** is further informed

3    and believes that **SHED 17** and its surrounding areas were also the location of industrial

4    equipment, chemicals, and other materials and byproducts associated with the **FACILITY's**

5    operations.

6          29.    Essentially, **ROSEBURG's** management of the **FACILITY** and the manner in

7    which it stored the hot ashes from the **BIOMASS PLANT** made **SHED 17** a tinderbox awaiting

8    a spark. Yet, **ROSEBURG** continued to use **SHED 17** as the primary storage site for the hot ash

9    and potentially flammable product for many years.

10         30.    **ROSEBURG** knew that hot ashes from the **BIOMASS PLANT** posed a fire risk.

11   Fire ignitions caused by hot ashes from the **BIOMASS PLANT** were typical and at the

12   **FACILITY** and a matter of common knowledge to **ROSEBURG's** management and employees

13   overseeing or working at the **FACILITY**. **PLAINTIFF** is informed that while the **FACILITY**

14   experienced many operations-related fire ignitions in recent years (including substantial wood-

15   product ignitions in 2015 and 2017), hot ashes from the **BIOMASS PLANT** stored in **SHED 17**

16   actually caused fires at the **FACILITY** on a frequent basis – with the exact number of these

17   internally-combated "near miss" catastrophes unknown to the public because no formal reports

18   to administrative agencies were generated by Roseburg managers.

19         31.    In an attempt to combat this known ignition risk at the **FACILITY**, **ROSEBURG**

20   installed a suppression system in **SHED 17** that was intended to cool the hot ashes from the

21   **BIOMASS PLANT** and mitigate or prevent fires.

22         32.    However, **ROSEBURG** failed to ensure that the suppression system was

23   adequately designed, constructed, inspected, maintained, managed, or upgraded. **PLAINTIFF** is

24   informed, and thereon alleges, that **ROSEBURG's** management, in an effort to maximize profit

25   from **FACILITY's** operations, failed to allocate sufficient funds to upgrade and/or maintain its

26   fire suppression system and its components.

27

28

LAW OFFICES
Cotchett, Pitre &
McCarthy, LLP

**COMPLAINT**                                                                                      7

33.     Further, the suppression system in **SHED 17** had or was meant to function as a standard sprinkler system which, when it detected a certain amount of heat, was supposed to discharge water to mitigate or eliminate a potential fire.

34.     **PLAINTIFF** is informed and believes that the sprinkler system in **SHED 17** was also inadequately designed, constructed, inspected, or maintained by **ROSEBURG**. As a result, the sprinkler system did not function as intended and, to the extent that it did function, **SHED 17's** suppression system was not capable of suppressing a foreseeable ignition such as the initial stages of **MILL FIRE**.

35.     **ROSEBURG** also knew or should have known that **SHED 17's** fire suppression system did not function as intended and could not stop an ignition caused by hot ashes from the **BIOMASS PLANT** from becoming a deadly wildfire.

36.     Yet, **ROSEBURG** chose a reactive approach to fire risk – only acting once an ignition began – rather than implementing a plan, process, or procedure to proactively address fire risks at the **FACILITY** and, in particular, **SHED 17**. Accordingly, **ROSEBURG** deliberated failed to take critical and life-saving measures in light of obvious and known fire risks and did so, at least in part, because **ROSEBURG's** reactive approach was cheaper.

37.     As a result, the **FACILITY**'s suppression system did not function as intended and hot ashes from the **BIOMASS PLANT**, which could have and should have been cooled or treated, remained hot and piled several feet high in the wooden tinderbox that was **SHED 17**.

38.     Fires were so typical at the **FACILITY**, that **ROSEBURG's** management developed a policy, practice, and procedure under which its own employees would act as "firefighters" if and when a fire ignited the **FACILITY**. By using its own employees to fight fires at the **FACILITY**, **ROSEBURG** could avoid the financial consequences of shutting down the **FACILITY**, sending employees home, paying cleanup costs, or having the fire risks become known to the surrounding community.

39.     **PLAINTIFF** is further informed and believes, however, that **ROSEBURG** did not take reasonable steps to educate or train its deputized employees in the critical methods, techniques, and science of fire suppression.

40.    Simply, it was more important that **ROSEBURG** keep the **FACILITY** running and profitable than keeping its employees and the public safe. In fact, **ROSEBURG's** decision to enlist its employees as private "firefighters" only heightened the risk of a fire at the **FACILITY** growing and spreading due to the lack of education, training, and experience of those employees in the relevant disciplines required for proper emergency fire suppression.

41.    Ultimately, **ROSEBURG** engaged in a pattern and practice of managing the **FACILITY** that consciously and deliberately disregarded known and foreseeable risks posed by hot ashes from the **BIOMASS PLANT** which could ignite a catastrophic wildfire, damage property, cause injuries, and take lives

42.    Accordingly, hot ashes from the **BIOMASS PLANT** remained hot and at risk of ignition. As a foreseeable result, the **MILL FIRE** ignited causing catastrophic harm to the surrounding community.

## C.    DEFENDANTS' NEGLIGENCE CAUSED PLAINTIFF SUBSTANTIAL HARM

43.    **PLAINTIFF ROBERT DAVIES** ("**PLAINTIFF**") lived in his family home in Weed, Calfornia for over 30 years. While living in that home, **PLAINTIFF** raised a family, developed cherished memories, and accumulated precious and irreplaceable personal effects.

44.    **PLAINTIFF**, a widowed 61-year old person with disabilities, felt safe and comfortable in the home he cared so much for.

45.    The **MILL FIRE** transformed **PLAINTIFF's** home to rubble, robbing him of all his material possessions while reducing his life and sense of safety to nothing more than a memory.

46.    **PLAINTIFF** was at his home when the **MILL FIRE** arrived and was forced to evacuate as he saw the flames approaching his property.

47.    Yet, the true depth of **PLAINTIFF's** losses cannot be quantified in numbers, since his greatest loss could never be replaced: In addition to the material contents of his home, Robert Davies also lost the remains of his late wife which were contained in an urn on the

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**COMPLAINT**                                                                                    9

mantle. Now, because of a fire Roseburg should have prevented, he will never be allowed to honor his pledge and scatter his wife's ashes in Greece in accordance with her last wishes.



*Figure 3: Plaintiff Robert Davies' Home after the Mill Fire.*

48.     **PLAINTIFF** is now displaced, suffers substantial economic harm, and further suffers severe and enduring emotional distress associated with the loss of his primary residence and the discomfort, annoyance, disturbance associated with the loss of and attempts to replace his home.

49.     **PLAINTIFF** did not contribute to nor could he have avoided the harm and injury that he suffered as a legal result of **DEFENDANTS'** wrongful conduct.

50.     **PLAINTIFF's** harm and injury could have been avoided if **ROSEBURG** and all other **DEFENDANTS** exercised reasonable care in the management of the **FACILITY**. **DEFENDANTS'** failures include but are not limited to: the willful disregard of known fire risks associated with the **FACILITY**; failing to adequately design, construct, inspect, and/or maintain the fire suppression system in **SHED 17** in a manner so as to make it capable of performing at a level commiserate with the clear and known risks of fire ignition; and deliberately pursuing a course of conduct with respect to the storage of hot ash that increased the risk of a catastrophic wildfire.

IV.    <u>CAUSES OF ACTION</u>

**FIRST CAUSE OF ACTION – INVERSE CONDEMNATION**

**(Against All Defendants)**

51.    **PLAINTIFF** incorporate and re-allege by this reference each of the paragraphs set forth above as though fully set forth herein.

52.    On or about September 2, 2022, **PLAINTIFF** owned real property and/or personal property located within Siskiyou County in the area of the **MILL FIRE**.

53.    Prior to or about September 2, 2022, **DEFENDANTS** installed, owned, operated, used, controlled, and/or maintained the **BIOMASS PLANT,** which generated electricity for use by the public and, by doing so, created hazardous hot-ash byproduct.

54.    On or about September 2, 2022, as a direct, necessary, and legal result of the **DEFENDANTS'** installation, ownership, operation, use, control, management, and/or maintenance for a public use of the **FACILITY** and the **BIOMASS PLANT**, the hazardous hot-ash byproduct ignited the **MILL FIRE**, which destroyed nearly 40,000 acres of land and destroyed nearly 200 properties, including property owned or occupied by **PLAINTIFF,** including **PLAINTIFF's** real and personal property.

55.    The damage to **PLAINTIFF's** real and personal property was caused by the actions and omissions of the **DEFENDANTS** in their design, construction, maintenance, inspection, and oversight of the **BIOMASS PLANT**, as well as its attendant safety and fire suppression systems, for public use and the benefit of the public at large.

56.    **PLAINTIFF** has not received adequate compensation for the damage to and/or destruction of their real and personal property, thus constituting a taking of **PLAINTIFF's** property by the **DEFENDANTS** without just compensation.

57.    As a result of the actions and omissions of the **DEFENDANTS, PLAINTIFF** suffered damages to their real and personal property, including loss of use, interference with access, and diminution in value and/or marketability in an amount according to proof at trial.

58.    As a result of the actions and omissions of the **DEFENDANTS, PLAINTIFF** has incurred and will continue to incur costs, disbursements, and expenses, including reasonable

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**COMPLAINT**                                                                                            11

1    attorney, appraisal, engineering, and other expert fees due to the conduct of the **DEFENDANTS**

2    in amounts that cannot yet be ascertained, but which are recoverable pursuant to Code of Civil

3    Procedure § 1036.

4                    **SECOND CAUSE OF ACTION - TRESPASS**

5                       **(Against All Defendants)**

6        59.     **PLAINTIFF** incorporates and re-alleges each of the paragraphs set forth above as

7    though fully set forth herein.

8        60.     At all relevant times herein, **PLAINTIFF** was the owner, tenant and/or lawful

9    occupier of property damaged by the **MILL FIRE.**

10        61.     **DEFENDANTS** in wrongfully acting and/or failing to act in the manner set forth

11    above, caused the **MILL FIRE** to ignite and/or spread out of control, causing harm, damage,

12    and/or injury to **PLAINTIFF**, resulting in a trespass upon **PLAINTIFF'S** property interests.

13        62.     **PLAINTIFF** did not grant permission for **DEFENDANTS** to wrongfully act in a

14    manner so as to cause the **MILL FIRE** that spread and wrongfully entered upon his property,

15    resulting in the harm, injury, and/or damage alleged above.

16        63.     As a direct and legal result of the wrongful conduct of **DEFENDANTS** that led to

17    the trespass, **PLAINTIFF** has suffered and will continue to suffer damages in an amount

18    according to proof at trial.

19        64.     As a further direct and legal result of the conduct of **DEFENDANTS,**

20    **PLAINTIFF** seeks treble damages for wrongful injuries to timber, trees, or underwood on their

21    property, as allowed under Civil Code § 3346.

22        65.     As a result of the **ROSEBURG DEFENDANTS'** actions and omissions,

23    **PLAINTIFF** seeks the imposition of punitive and exemplary damages against the **ROSEBURG**

24    **DEFENDANTS** as allowed under Cal. Civil Code § 3294.

25               **THIRD CAUSE OF ACTION – NEGLIGENCE**

26                       **(Against All Defendants)**

27        66.     **PLAINTIFF** incorporates and re-alleges by this reference each of the paragraphs

28    set forth above as though fully set forth herein.

67.    The Mill Fire was a direct and legal result of the negligence, carelessness, recklessness, and/or unlawfulness of **DEFENDANTS** who breached their respective duties owed individually and/or collectively to **PLAINTIFF** by, including but not limited to: (1) failing to comply with the applicable statutory, regulatory, and/or professional standards of care; (2) failing to timely and properly maintain, manage, inspect, and/or monitor the subject mill;

68.    The conduct of **DEFENDANTS** failed to meet the requisite standard of care under Public Resources Code § 4437(a) which states: every processor of forest products shall exercise due diligence in the disposal of flammable material incident to the processing, so that the material does not cause the inception or spread of uncontrolled fire. Furthermore, **DEFENDANTS** failed to comply with Public Resources Code § 4437(b) which states: every person, co-partnership, firm, corporation, or company that operates a sawmill or plant engaged in the processing or converting of forest products into lumber, shook, ties, poles, posts, veneer, shakes, shingles, and planed or milled products, shall dispose of flammable material incident to that operation. If such flammable material is not to be used as fuel, or as a byproduct, within the operation, it shall be disposed of by burning or by other alternative methods which effectively prevent the flammable material from constituting a fire hazard.

69.    The conduct of **DEFENDANTS** failed to meet the requisite standard of care under Public Resources Code § 4440(a) which states: flammable forest product residue may only be accumulated in piles when the area surrounding the piles is cleared and kept clear of all flammable vegetation and debris.

70.    **DEFENDANTS** breached their duties, including but not limited to: (i) failing to design, construct, operate, monitor, inspect, and/or maintain the **FACILITY** including but not limited to the management of its **BIOMASS PLANT**, its byproducts, and its suppression system for hot ashes from the **BIOMASS PLANT** in a manner that would reduce the foreseeable risk of fire in the area affected by the **MILL FIRE**; (ii) failing to properly design, construct, operate, monitor, inspect, and/or maintain the sprinkler system and/or fire suppression system at the **FACILITY** and, in particular, **SHED 17**, in a reasonable manner that could be expected to mitigate the risk of foreseeable ignitions; (iii) failing to commit appropriate resources to ensure

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**COMPLAINT**                                                                                              13

1  that the sprinkler system and/or fire suppression system at the **FACILITY** and, in particular,

2  **SHED 17** was properly designed, constructed, operated, monitored, inspected, and/or maintained

3  so that it may operate as intended; (iv) failing to adequately educate or train their agents,

4  employees, or representatives in the methods necessary to adequately mitigate or prevent fire

5  risks at the **FACILITY**; (v) failing to implement and/or follow regulations and reasonably

6  sensible practices to avoid dangerous conditions prone to fire ignition. These breaches and

7  others, in isolation or in combination with one another, were the factual and proximate causes of

8  **PLAINTIFF's** harm.

9      71.    As a result of **DEFENDANTS'** actions and omissions, in isolation or in

10  combination, **PLAINTIFF** has suffered damage to real property, including but not limited to, the

11  loss of his beloved home of 30 years and a loss of use, benefit, goodwill, diminution in value

12  and/or enjoyment of such property in an amount according to proof at trial.

13      72.    As a result of **DEFENDANTS'** actions and omissions, **PLAINTIFF** has suffered

14  damage to and/or loss of personal property, including but not limited to items of peculiar value to

15  **PLAINTIFF** in an amount according to proof at trial.

16      73.    As a result of **DEFENDANTS'** actions and omissions, **PLAINTIFF** has incurred

17  and will continue to incur expenses and other economic damages related to the damage to his

18  property, including costs relating to storage, clean-up, disposal, repair, depreciation, and/or

19  replacement of his property and other related consequential damages in an amount according to

20  proof at trial.

21      74.    As a result of **DEFENDANTS'** actions and omissions, **PLAINTIFF** was injured

22  in his health, strength, and activity in an amount according to proof at trial.

23      75.    As a result of **DEFENDANTS'** actions and omissions, **PLAINTIFF** was

24  required to and/or continue to employ physicians and other health care providers to examine,

25  treat, and care for his physical injuries. **PLAINTIFF** has incurred, and will continue to incur,

26  medical and incidental expenses in an amount according to proof at trial.

27      76.    As a result of **DEFENDANTS'** actions and omissions, **PLAINTIFF** has suffered

28  great mental pain and suffering, including worry, emotional distress, humiliation,

1    embarrassment, anguish, anxiety, and nervousness. **PLAINTIFF** is informed and believes and

2    upon such information and belief alleges, that such injuries have resulted in debilitating injury in

3    an amount according to proof at trial.

4        77.    As a result of **DEFENDANTS'** actions and omissions, **PLAINTIFF** has suffered

5    a loss of income, loss of earning capacity, loss of profits, increased expenses due to

6    displacement, and/or other consequential economic losses in an amount according to proof at

7    trial.

8        78.    As a result of **DEFENDANTS'** wrongful acts and omissions, as here to for

9    alleged **PLAINTIFF** seeks the imposition of punitive and exemplary damages against the

10    **DEFENDANTS** as allowed under Cal. Civil Code § 3294.

11    **FOURTH CAUSE OF ACTION – PRIVATE NUISANCE**

12    **(Against All Defendants)**

13        79.    **PLAINTIFF** incorporates and re-alleges by this reference each of the paragraphs

14    set forth above as though fully set forth herein.

15        80.    **PLAINTIFF** owns and/or occupies property at or near the site of the **MILL**

16    **FIRE**. At all relevant times, **PLAINTIFF** had a right to occupy, enjoy, and/or use their property

17    without interference by **DEFENDANTS**.

18        81.    **DEFENDANTS**, by their acts and omissions set forth above, directly and legally

19    caused an obstruction to the free use of **PLAINTIFF'S** property, an invasion of the

20    **PLAINTIFF'S** right to use his property, and/or an interference with the enjoyment of

21    **PLAINTIFF'S** property resulting in the **PLAINTIFF** suffering unreasonable harm and

22    substantial actual damages constituting a nuisance pursuant to Civil Code §§ 3479 and 3481.

23        82.    As a result of **DEFENDANTS'** actions and omissions, **PLAINTIFF** suffered

24    harm, injury, and damages in an amount according to proof at trial.

25        83.    As a result of the **ROSEBURG DEFENDANTS'** actions and omissions,

26    **PLAINTIFF** seeks the imposition of punitive and exemplary damages against the **ROSEBURG**

27    **DEFENDANTS**.

28

## FIFTH CAUSE OF ACTION – PUBLIC NUISANCE

### (Against All Defendants)

84.    **PLAINTIFF** incorporates and re-alleges by this reference each of the paragraphs set forth above as though fully set forth herein.

85.    **PLAINTIFF** owns and/or occupies property at or near the site of the **MILL FIRE**. At all relevant times, **PLAINTIFF** had a right to occupy, enjoy, and/or use his property without interference by **DEFENDANTS**.

86.    **DEFENDANTS** owed a duty to the public, including **PLAINTIFF**, to conduct the maintenance and/or operation of the subject mill in Siskiyou County, specifically including the sprinkler system and/or fire suppression system, in a manner that did not threaten harm or injury to the public welfare, or offend the public or interfere with public use and enjoyment of their property.

87.    The **MILL FIRE** burned nearly 4,000 acres of land leaving nothing where there were once homes, farms, meadows, fields, and forests. **DEFENDANTS** created a condition that was harmful to the health of the public, including **PLAINTIFF**, and that interfered with the comfortable occupancy, use, and/or enjoyment of **PLAINTIFF'S** property. **PLAINTIFF** did not consent, expressly or impliedly, to **DEFENDANTS'** wrongful conduct.

88.    The hazardous condition that **DEFENDANTS** created and/or permitted to exist affected a substantial number of people within the general public, including **PLAINTIFF**, and constituted a public nuisance under Civil Code §§ 3479 and 3480, and Public Resources Code § 4171. Further, the ensuing uncontrolled wildfire constituted a public nuisance under Public Resources Code § 4170.

89.    As a result of **DEFENDANTS'** actions and omissions, **PLAINTIFF** suffered harm that is different from the type of harm suffered by the general public. Specifically, **PLAINTIFF** has lost occupancy, possession, use, and/or enjoyment of their land, real, and/or personal property, including, but not limited to: a reasonable and rational fear that the area is still dangerous; a diminution in the fair market value of his property; an impairment of the salability of his property; soils that have become hydrophobic; exposure to an array of toxic substances on

his land; the presence of "special waste" (as defined in 22 California Code of Regulations § 66261.120) on his property that requires special management and disposal; and a lingering smell of smoke, and/or constant soot, ash, and/or dust in the air

90.     As a result of **DEFENDANTS'** actions and omissions, **PLAINTIFF** has suffered, and will continue to suffer, discomfort, anxiety, fear, worries, and stress attendant to the interference with **PLAINTIFF'S** occupancy, possession, use, and/or enjoyment of his property, as alleged above.

91.     A reasonable, ordinary person would be annoyed or disturbed by the condition created by **DEFENDANTS** and the resulting fire.

92.     The conduct of **DEFENDANTS** is unreasonable and the seriousness of the harm to the public, including **PLAINTIFF**, outweighs the social utility of **DEFENDANTS'** conduct.

93.     The unreasonable conduct of **DEFENDANTS** is a direct and legal cause of the harm, injury, and/or damage to the public, including **PLAINTIFF.**

94.     The conduct of **DEFENDANTS** constitutes a public nuisance within the meaning of Civil Code §§ 3479 and 3480, Public Resources Code §§ 4104 and 4170, and Code of Civil Procedure § 731. Under Civil Code § 3493, **PLAINTIFF** has standing to maintain an action for public nuisance because the nuisance is one that is especially injurious and/or offensive to the senses of the **PLAINTIFF**, unreasonably interferes with the comfortable enjoyment of his property, unlawfully obstructs the free and customary use of **PLAINTIFF'S** property, and caused individualized harm, injury, and damages to **PLAINTIFF**.

**SIXTH CAUSE OF ACTION – VIOLATION OF HEALTH & SAFETY CODE § 13007**

**(Against All Defendants)**

95.     **PLAINTIFF** incorporates and re-alleges by this reference each of the paragraphs set forth above as though fully set forth herein.

96.     By engaging in the acts and/or omissions alleged herein, **DEFENDANTS** willfully, negligently, carelessly, recklessly, and/or in violation of law, set fire to and/or allowed fire to be set to the property of another in violation of Health and Safety Code § 13007.

**COMPLAINT**

17

97.    As a result of **DEFENDANTS'** violation of Health and Safety Code § 13007, **PLAINTIFF** suffered recoverable damages to property under Health and Safety Code § 13007.21

98.    As a result of **DEFENDANTS'** violation of Health and Safety Code § 13007, **PLAINTIFF** are entitled to reasonable attorneys' fees under Code of Civil Procedure § 1021.9.

99.    As a result of the act and omissions of the **DEFENDANTS, PLAINTIFF**, and each of them have suffered harm, injury and damages as set forth above.

100.    As a result of the **DEFENDANTS'** actions and omissions, **PLAINTIFF** seeks the imposition of punitive and exemplary damages against the **ROSEBURG DEFENDANTS**.

V.    **PRAYER FOR RELIEF**

101.    WHEREFORE, **PLAINTIFF** prays for judgment against **DEFENDANTS ROSEBURG** and DOES 1 through 100, and each of them as follows:

For an award against **DEFENDANTS** for Inverse Condemnation, all according to proof, for:

1.    Repair, depreciation, and/or replacement of damaged, destroyed, and/or lost personal and/or real property;

2.    Loss of wages, earning capacity and/or business profits, use, goodwill, and/or proceeds and/or any related displacement expenses;

3.    All costs of suit, including reasonable attorneys' fees, appraisal fees, engineering fees, other expert fees, and related costs;

4.    Prejudgment interest;

5.    For such other and further relief as the Court shall deem just and proper.

For an award against **DEFENDANTS** for Trespass, Negligence, Private Nuisance, Public Nuisance, and Violation of Health and Safety Code § 13007, all according to proof, for:

1.    Repair, depreciation, and/or replacement of damaged, destroyed, and/or lost personal and/or real property;

2.    Loss of the use and benefit of Plaintiff' real and/or personal property;

3.   Loss of wages, earning capacity, goodwill, and/or business profits or proceeds and/or any related displacement expenses;

4.   Past and future medical expenses and incidental expenses according to proof;

5.   Attorneys' fees, expert fees, consultant fees, and litigation costs and expenses as allowed under Code of Civil Procedure § 1021.9;

6.   Treble damages for wrongful injuries to timber, trees, or underwood as allowed under Civil Code § 3346;

7.   General damages for fear, worry, annoyance, disturbance, inconvenience, mental anguish, emotional distress, loss of quiet enjoyment of property, and personal injury;

8.   All costs of suit;

9.   Prejudgment interest;

10.  Punitive and exemplary damages as allowed under Cal. Civil Code § 3294; and

11.  For such other and further relief as the Court shall deem just and proper.

## VI.   JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Dated: October 4, 2022            **COTCHETT, PITRE & McCARTHY LLP**

FRANK M. PITRE
DONALD J. MAGILLIGAN
NABILAH A. HOSSAIN
ANDREW W. BRITTON
*Counsel for Plaintiff*

Dated: October 4, 2022            **ANDERLINI & MCSWEENEY**

P. TERRY ANDERLINI
*Counsel for Plaintiff*

EXHIBIT 7

EXHIBIT 7

EXHIBIT 7

Brett R. Parkinson (SBN: 230150)
Email: brettp@potterhandy.com
Mark D. Potter (SBN: 166317)
Email: mark@potterhandy.com
**PARKINSON BENSON POTTER**
100 Pine Street, Ste. 1250
San Francisco, CA 94111
Phone: (858) 375-7385
Fax: (888) 422-5191

Bret D. Cook (SBN: 226489)
Email: bretcook@frontiernet.net
**LAW OFFICE OF BRET D. COOK, P.C.**
P.O. Box 425
Greenville, CA 95947
Phone: (530) 313-7901
Fax: (530) 280-4805

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**11/18/2022**
**Clerk of the Court**
BY: JEFFREY FLORES
Deputy Clerk

Attorneys for Plaintiffs

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN FRANCISCO

CGC-22-602896

| | |
|---|---|
| DOROTHY DIXON, CLARK WRIGHT, KAREN WRIGHT, SOUN KAYARATH, SOMBOTH KAYARATH, DEBORAH DALTON, JILL DONNELLAN and HAMEDO MURPHY, | Case No.<br><br>**COMPLAINT FOR DAMAGES**<br><br>**JURY TRIAL DEMANDED** |
| Plaintiffs,<br><br>vs.<br><br>ROSEBURG FOREST PRODUCTS CO., an Oregon corporation; BENJAMIN HORNSBY, an individual; JEFFERY LEE, an INDIVIDUAL, and DOES 1 through 100, inclusive,<br><br>Defendants. | 1. **Negligence**<br>2. **Trespass**<br>3. **Premises Liability**<br>4. **Nuisance**<br>5. **Violation of Health and Safety Code Section 13007** |

Plaintiffs hereby bring the following Complaint for damages against all Defendants and

COMPLAINT FOR DAMAGES - 1

DOES 1-100 ("Defendants"), as a result of the damages that Plaintiffs sustained in the Mill Fire that began on September 2, 2002. Plaintiffs allege as follows:

## INTRODUCTION

1.      This Complaint arises from a fire known as the "Mill Fire" that ravaged the area in and around Weed, California for 11 days in Siskiyou County.  The Mill Fire destroyed 118 structures, leveled the historic neighborhood of Lincoln Heights, burned more than 3,935 acres and tragically resulted in multiple fatalities before it was finally contained on September 13, 2022.



**Homes destroyed in the Mill Fire-Photo by Noah Berger, AP Photo**

2.      The Mill Fire ignited on September 2, 2022, at a mill (the "Mill") located at or near Woodridge Court and Woodridge Way in Weed, California. The Mill is owned and operated by ROSEBURG FOREST PRODUCTS CO. ("ROSEBURG").

3.      The Mill Fire resulted from ROSEBURG's deliberate failure to avoid the risk of

COMPLAINT FOR DAMAGES - 2

fire caused by ROSEBURG's operations at the Mill.

4.      Plaintiffs are informed and believe, and thereon allege, that Defendants ROSEBURG and BENJAMIN HORNSBY ("HORNSBY"), ROSEBURG's Safety Manager for the Mill, and JEFFERY LEE ("LEE"), ROSEBURG's Operations Manager, as well as other individual employees and/or agents of ROSEBURG, or other persons or entities that supplied equipment or services for ROSEBURG's use at the Mill, whose identities are unknown to Plaintiffs at this time (and who, therefore, are sued herein as DOES), are responsible for causing the Mill Fire. Among other acts and omissions, Defendants failed to comply with even the most basic safety standards, instead conducting operations at the Mill in a reckless manner that they knew or should have known caused an unreasonable risk of catastrophic fire.

5.      The fire catastrophically impacted the local community and deeply affected Plaintiffs, taking an unimaginable emotional and physical toll on them in addition to destroying their homes, landscape, personal property, and community.

6.      Plaintiffs are homeowners, renters and other individuals whose property and lives were destroyed by the Mill Fire.  Plaintiffs now sue ROSEBURG, HORNSBY, LEE and Does 1-100 for just compensation for that immense destruction.

**JURISDICTION AND VENUE**

7.      This Court is a court of general jurisdiction and has subject matter jurisdiction over all causes of action alleged herein.

8.      This Court has personal jurisdiction over all parties to this action because Defendants, including ROSEBURG, have conducted significant business in the State of California so as to render the exercise of jurisdiction over Defendants by California courts reasonable and consistent with the traditional notions of fair play and substantial justice.

COMPLAINT FOR DAMAGES - 3

9.      Venue is proper in this Court because, at all times relevant, Defendant ROSEBURG was and is a foreign corporation, making venue proper in any county in California.

**THE PARTIES**

**A.  PLAINTIFFS**

10.      Plaintiffs are individual residents of Weed, California and/or the surrounding areas, who owned or rented properties that were destroyed or damaged by the Mill Fire. The properties owned and/or occupied by Plaintiffs, or any of them, are collectively referred to herein as "Plaintiffs' Properties" or "Plaintiffs' Property."

11.      From on or about September 2, 2022, and continuing through the present, Plaintiff DOROTHY DIXON owned, occupied and had personal property located at 420 Cypress Street, Weed, CA, APN: 060-163-080-000.  DIXON was a long-time resident of Lincoln Heights at the time of the fire.  DIXON's home was only several hundred feet from the origin of the fire.  On or about September 2, 2022, DIXON, 88 years old at the time, was home reading the bible when she heard a large explosion.  Black smoke quickly consumed the neighborhood.  Fearing for her life and worried that she would not make it out, DIXON grabbed her wallet and fled the fast-approaching flames with only the clothes.  But for her pastor rescuing her, DIXON may have lost her life.  DIXON incurred physical injuries during her evacuation.  Her home was completely destroyed in the Mill Fire along with all of her personal property and she continues to struggle with nightmares, PTSD, and related emotional trauma as a result of the destruction of her home and the loss of her community.

12.      From on or about September 2, 2022, and continuing through the present, Plaintiffs SOUN KAYARATH and SOMBOTH KAYARTH rented, occupied and had personal property located at 386 Cypress Street, Weed CA, APN: 060-163-090-000 at the time of the Mill

COMPLAINT FOR DAMAGES - 4

Fire.  The KAYARATHS were in their backyard when they heard an explosion from the fire. When they looked up, their neighbor's house was already on fire and the fire was overhead by the time they got to their car. They narrowly escaped the flames, losing all of their possessions when the home they lived in was lost.

13.     From on or about September 2, 2022, and continuing through the present, Plaintiffs CLARK and KAREN WRIGHT owned, occupied and had personal property located at 5604 Palmer Drive, Weed, CA, APN 107-410-160-000 at the time of the Mill Fire.  The WRIGHTS' home was completely destroyed in the Mill Fire along with substantial personal property.

14.     From on or about September 2, 2022, and continuing through the present, Plaintiff DEBORAH DALTON and JILL DONNELLAN owned, occupied and had personal property located at 17525 Marmot Road, Weed, CA, APN 107-280-070-000.   DALTON and DONNELLAN'S home was completely destroyed in the Mill Fire along with substantial personal property.

15.     From on or about September 2, 2022, and continuing through the present, Plaintiff HAMEDO MURPHY owned, occupied and had personal property located at 17827 Fisher Place, Weed, CA, APN 107-340-040-000.  MURPHY's home sustained substantial damage due to the Mill Fire.

**B.  DEFENDANTS**

16.     Defendant ROSEBURG is, and was at all times relevant to this pleading, an Oregon corporation authorized to do business, and doing business, in California, with its headquarters in Springfield, Oregon.  At all times relevant to this pleading, ROSEBURG has manufactured wood products that are then supplied to members of the public in California and

COMPLAINT FOR DAMAGES - 5

elsewhere throughout the United States.  ROSEBURG, among other things, conducts business operations in northern California at the Mill, which it uses as a veneer mill that produces engineered wood products from raw lumber.

17.    Defendant BENJAMIN HORNSBY is an employee of ROSEBURG and the Mill's Safety Manager, who resides and works in Weed, California. At all times relevant to the facts and circumstances alleged in this pleading, HORNSBY's job responsibilities included making sure that the Mill was operated safely and in accordance with all applicable safety standards.

18.    Defendant JEFFERY LEE is an employee of ROSEBURG and the Mill's Operations Manager, who resides and works in Weed, California. At all times relevant to the facts and circumstances alleged in this pleading, LEE's job responsibilities on the day of the Mill Fire included overseeing all Mill operations and making sure that the Mill was operated safely and in accordance with all applicable safety standards.

19.    The true names and capacities of defendants DOES 1 through 100 are currently unknown to Plaintiffs who, therefore, sue these defendants under these fictitious names pursuant to Code of Civil Procedure section 474. These defendants are each directly and/or vicariously responsible, in some manner, for the harms alleged herein.  If/when Plaintiffs learns these defendants' true names and capacities, Plaintiffs will seek leave to amend this pleading accordingly.

20.    "Defendants" refers collectively to ROSEBURG, HORNSBY, HORNSBY, and DOES 1 through 100.

21.    Plaintiffs are informed and believe that Defendants herein, and each of them, were at all times relevant hereto, the agent, servant, employee, partner, aider and abettor, contractor,

COMPLAINT FOR DAMAGES - 6

subcontractor, co-conspirator and/or joint venturer of each of the remaining Defendants named herein and were at all times operating and acting within the purpose, course and scope of said agency, service, employment, partnership, conspiracy, contract, alter ego and/or joint venture, and with the permission and consent of their co-Defendants.  Each Defendant has rendered substantial assistance and encouragement to the other Defendants, knowing that their conduct was wrongful and/or unlawful, and each Defendant has ratified and approved the acts of each of the remaining Defendants.

<strong>FACTS</strong>

22.    Plaintiffs allege the following on information and belief.

23.    On or around September 2, 2022, the Mill Fire was started by Defendants at the Mill.

24.    On or around September 2, 2022, and for many months and years prior thereto, Defendants knew that ROSEBURG's operations at the Mill were being conducted in a reckless and dangerous manner. The dangers inherent in the Mill's operations were, or should have been, open and obvious to ROSEBURG and its employees, including HORNSBY and HORNSBY, for many months and years.

25.    In addition to producing wood veneer, ROSEBURG produces its own electricity at the Mill in a co-generation plan fueled by wood chips resulting in a byproduct of hot ash.  The hot ash, if not properly cooled, is combustible and poses an obvious risk of fire.

26.    To make matters worse, ROSEBURG stored the hot ash in an area that was not adequately designed or intended for the storage of such ash.  ROSEBURG used an aging wooden building that was close to 100 years old to store the ash. The hot ash had previously ignited fires at the Mill on a regular basis making the risk of fire a clear and ever-present danger.

COMPLAINT FOR DAMAGES - 7

27.     ROSEBURG installed a fire suppression system in the building but the system was not in operation at the time the Mill Fire ignited.  Instead of spending the funds to fix the system, ROSEBURG relied on the ash-cooling system to properly function and on ROSEBURG employees to extinguish the fires. The wood building, the immediately adjacent structure and the surround vegetation represented abundant fuel for a fire.

28.     ROSEBURG knew of the residential properties surrounding the Mill, including the historic Lincoln Heights neighborhood that was only hundreds of feet from where the hot ash was stored.  Lincoln Heights had originally been company housing and most of the homes were older wooden structures laid out close together and thus more susceptible to fire.  ROSEBURG knew that any fire started in the Mill directly threatened the residents of Weed and the surrounding areas, especially those neighborhoods right next to the Mill.

29.     ROSEBURG also knew or should have known due to, among other things, its timber operations, that Siskiyou County is, and historically has been, categorized as a "Very High Fire Hazard Severity Zone" ("VHFHSZ") by Cal Fire.  ROSEBURG knew or should have known that the majority of Siskiyou County has been in either extreme drought or severe drought since 2016, increasing the danger in the area Defendants operate.

30.     In fact, ROSEBURG was specifically aware of the risk of fire in the area due to the nearby 2021 McKinney Fire just a month prior that burned over 60,000 acres and destroyed over 194 structures and caused multiple fatalities. ROSEBURG was also aware of the 2020 Slater Fire that ignited nearby and destroyed approximately 158,000 acres and over 200 structures.   ROSEBURG was also aware of the 2014 Boles Fire that ignited near Weed and burned over 150 structures, including many in Weed.

COMPLAINT FOR DAMAGES - 8

31.     In addition to allowing the dangerous conditions and operations at the Mill to continue despite the unreasonable risk of fire, Defendants were or should have been aware of the hot, dry weather conditions that existed on September 2, 2022, and were or should have been aware of the need to exercise even greater precautions to prevent the ignition and spread of fire in the community, which they knew or should have known would quickly spread. The fire began during a Red Flag Warning.

32.     On September 2, 2022, as a direct result of the dangerous conditions described above, as well as Defendants' failure to take reasonable measures to eliminate or mitigate the dangerous conditions and the recklessness of the ongoing operations, a fire broke out at the Mill. The fire quickly spread to the nearby vegetation and then exploded into the nearby homes in Lincoln Heights, destroying homes and causing two deaths.

33.     Propelled by strong winds, the Mill Fire grew to 2,580 acres within hours, moving into the Lake Shastina and Edgewood communities.  After 11 days, the Mill Fire had destroyed 118 structures, burned 3,935 acres in addition to causing multiple fatalities.



**Lincoln Heights after the Fire- photo by Karl Mondon/Bay Area News Group**

COMPLAINT FOR DAMAGES - 9

34.     For each of the reasons stated above, potentially among many others, Defendants breached their duty of reasonable care owed to Plaintiffs and the general public. Defendants' failure to exercise reasonable caution and prudence resulted in the Mill Fire and caused Plaintiffs to suffer substantial harms, including, but not limited to, destruction of and damage to real property, destruction of and damage to structures, destruction of and damage to personal property and cherished possessions, discomfort, annoyance, inconvenience, mental anguish, loss of quiet enjoyment, and emotional distress. The harms caused by Defendants are extensive and ongoing.

**FIRST CAUSE OF ACTION**
**Negligence**
**(Against All Defendants)**

35.     Plaintiffs incorporate and re-allege each of the paragraphs above as though fully set forth herein at length.

36.     Defendants, and each of them, had a duty to operate, maintain, design, engineer, construct and repair the Mill in a reasonably safe and prudent manner commensurate with the risk of fire, and to take all precautions that a reasonably prudent person in their position would take to prevent ignition and spread of a fire.  Defendants' duty included the duty to vigilantly oversee the operation, maintenance, design, engineering, construction and repair of the Mill in light of the risk of fire, including but not limited to the increased risk that a fire ignited at the Mill would spread uncontrollably due to changing geographic, weather, and ecological conditions into the residential structures next to the Mill in Lincoln Heights and into surrounding areas.

COMPLAINT FOR DAMAGES - 10

37.    Storing ash from a co-generation plant involves a peculiar and inherent danger and risk of fire.  Defendants, and each of them, knew of that risk and knew that given the existing drought conditions and proximity of residential structures to the Mill, any failure to properly cool the ash would likely result in a fire and that such a fire was likely to pose a risk of serious injury, damage and/or death to the general public, including these Plaintiffs.

38.    Further, California Public Resources Code §4437 required Defendants to dispose the ash by methods which "effectively prevent the flammable material from constituting a fire hazard" to eliminate the potential of fire and to prevent any fire from escaping the storage or disposal area. California Public Resources Code §4440 required Defendants to only accumulate the ash in piles when the surrounding area is cleared and kept clear of all flammable vegetation and debris.

39.    Defendants, and each of them, negligently breached the duty of care they owed to Plaintiffs, by, among other things:

    a.    Failing to maintain and operate the Mill in a reasonably prudent manner in order to avoid exposing neighboring properties to a risk of fire;

    b.    Failing to conduct reasonably prompt, proper, and frequent inspections of the Mill, and the equipment, infrastructure used in the Mill's operations and clearance space around the ash storage area;

    c.    Failing to reasonably monitor and maintain their property and operations in a manner that avoids igniting fires, especially during fire-prone weather conditions;

COMPLAINT FOR DAMAGES - 11

d.    Failing to take steps reasonably necessary to prevent the fire that ignited on Defendants' property and spread into the community, especially given the recent history of fires that had ignited on the property;

e.    Failing to properly train and supervise Defendants' agents and/or employees responsible for operations and maintenance on the Mill property;

f.    Failing to implement and follow statutes and regulations and reasonably prudent practices to avoid fire ignition and spread;

g.    Failing to maintain proper clearance for flammable residue; and

h.    Failing to prevent the spread of fire from its premises to neighboring property.

40.    Defendants' failure to comply with applicable provisions of the statutes, regulations, orders and rules as alleged herein, is negligence per se because these statutes, regulations, orders, and rules are aimed at preventing the exact type of harm that Plaintiffs suffered.  Plaintiffs are within the class of individuals these statutes, orders, and rules were implemented to protect.

41.    Defendants' negligence was a substantial factor in causing Plaintiffs to suffer economic and non-economic damages including, but not limited to, destruction of and damage to real property, destruction of and damage to structures, destruction of and damage to personal property and cherished possessions, discomfort, annoyance, inconvenience, mental anguish, loss of quiet enjoyment, and emotional distress. Plaintiffs each seek damages to be determined on an individual basis, according to proof at trial.

COMPLAINT FOR DAMAGES - 12

42.      Defendants, including one or more ROSEBURG officers, directors, and/or managers, acted recklessly and with conscious disregard to human life and safety, and this recklessness and conscious disregard was a substantial factor in bringing about the Mill Fire. This is despicable and oppressive conduct. Plaintiffs thus seek punitive damages in an amount sufficient to punish Defendants and deter such conduct in the future.

**SECOND CAUSE OF ACTION**
**Trespass**
**(Against all Defendants)**

43.      Plaintiffs incorporate and re-allege each of the paragraphs above as though fully set forth herein at length.

44.      At all times relevant herein, Plaintiffs were the owners, tenants, and/or lawful occupiers of property damaged by the Mill Fire.

45.      Defendants negligently and/or recklessly allowed the Mill Fire to ignite and/or spread out of control, causing injury to Plaintiffs.  The spread of a negligently or recklessly caused fire to the land of another constitutes a trespass.

46.      Plaintiffs did <u>not</u> grant permission for Defendants to cause the Mill Fire to enter their properties.

47.      As a direct, proximate and substantial cause of the trespass, Plaintiffs have suffered and will continue to suffer damages, including but not limited to destruction of and /or damage to property, discomfort, annoyance, loss of enjoyment and emotional distress in an amount to be proved at the time of trial.

48.      Plaintiffs suffered damage to timber, trees, and/or underwood as a result of Defendants' trespass; accordingly, Plaintiffs seek treble or double damages for wrongful injuries

COMPLAINT FOR DAMAGES - 13

to their property inclusive of timber, trees, or underwood, on their property as permitted by Civil Code section 3346.

49.    Defendants' conduct was willful and wanton, and with a conscious contempt and disdain for the disastrous consequences that Defendants knew could occur as a result of their dangerous conduct.  As a further direct and legal result of the conduct of Defendants, Plaintiffs seek exemplary damages against Defendants including punitive damages for injuries to Plaintiffs' animals as allowed under Code of Civil Procedure § 3340

### THIRD CAUSE OF ACTION
#### Premises Liability
#### (Against All Defendants)

50.    Plaintiffs incorporate and re-allege each of the paragraphs above as though fully set forth herein at length.

51.    Defendant ROSEBURG and DOES 1-10 were, at all relevant times, the owner of the Mill, which was the origin of the Mill Fire.

52.    Defendants ROSEBURG and DOES 1-10 acted wantonly, unlawfully, carelessly, recklessly, and/or negligently in failing to properly maintain, control, manage, repair and/or inspect Mill and its ongoing operations, allowing an unsafe set of conditions presenting a foreseeable risk of fire danger to exist on said property.

53.    The risk of and danger presented by fire to the persons and property surrounding the Mill was reasonably foreseeable to ROSEBURG and DOES 1-10.

54.    As a direct result of the wrongful acts and/or omissions of Defendants ROSEBURG and DOES 1-100, Plaintiffs suffered, and continue to suffer, the injuries and/or damages described herein.

COMPLAINT FOR DAMAGES - 14

55.    As alleged herein, Defendants, including ROSEBURG and one or more of its officers, directors, and/or managers, allowed ongoing operations at the Mill to occur in a reckless and dangerous manner that prioritized profits over safety. This is despicable, malicious, and oppressive conduct.  Plaintiffs thus seek punitive damages in an amount sufficient to punish Defendants and to deter such conduct in the future.

**FOURTH CAUSE OF ACTION**
**Nuisance**
**(Against all Defendants)**

56.    Plaintiffs incorporate and re-allege each of the paragraphs above as though fully set forth herein at length.

57.    Plaintiffs own and/or occupy real property at or near the site of the Mill Fire. Plaintiffs have a right to own, enjoy and/or use of their property without interference by Defendants, and each of them.

58.    Defendants, and each of them, by acting or failing to act, as alleged herein, created a condition or permitted a condition to exist which was harmful to the health; offensive to the senses; obstructed the free use of property so as to interfere with the comfortable enjoyment of life and property; unlawfully obstructed the free passage or us, in the customary manner, of public streets and highways; and a completely predictable fire hazard.

59.    Plaintiffs did not consent, expressly or impliedly, to the conduct of Defendants and each of them.

60.    The dangerous condition(s) which was/were created by and/or allowed to exist by Defendants, and each of them, affected a substantial number of people within the general public at the same time, including these Plaintiffs.

COMPLAINT FOR DAMAGES - 15

61.    A reasonable ordinary person would be reasonably annoyed or disturbed by the condition created by the actions or inactions of the Defendants, and each of them, and the resulting fire.

62.    The conduct of Defendants, and each of them, is unreasonable and the seriousness of the harm to the public, including these Plaintiffs, outweighs the social utility of Defendants' actions or inactions.

63.    Defendant's actions or inactions were a substantial factor in causing Plaintiffs' harm. As a result of Defendant's conduct, Plaintiffs suffered a type of harm that is different from the type of harm suffered by the general public.  Specifically, Plaintiffs have lost the use and enjoyment of their land, including, but not limited to, a legitimate and rational fear that the area is still dangerous, and/or diminution in the fair market value of their property, and/or impairment of the salability of their property, and/or exposure to an array of toxic substances on their land, and/or a lingering smell of smoke, and/or constant soot, ash, and dust in the air.

64.    As a further legal result of the conduct of Defendants, and each of them, Plaintiffs have suffered, and will continue to suffer, discomfort, anxiety, fear, worries, and stress attendant to the interference with Plaintiffs' use and enjoyment of their property, as alleged herein.

65.    Defendants' conduct resulting in this fire is not an isolated incident, but is ongoing and repeated course of conduct, and Defendants' conduct and failures have resulted in other fires and damage to the public.

66.    Defendants' unreasonable conduct is a direct, proximate and legal cause of condition and the damage to the public, including Plaintiffs.

67.    The conduct of Defendants, and each of them, constitutes a nuisance within the meaning of section 3479 of the Civil Code in that it is injurious and/or offensive to the senses of

COMPLAINT FOR DAMAGES - 16

Plaintiffs and/or unreasonably interferes with their comfortable enjoyment of their properties and/or unlawfully obstructs the free use, in the customary manner, of Plaintiffs' properties, including, but not limited to, all residential uses.

68.     Defendants, including one or more ROSEBURG officers, directors, and/or managers, have deliberately, and repeatedly, prioritized profits over safety.  That is, Defendants have a history of acting recklessly and with conscious disregard to human life and safety, and this history of recklessness and conscious disregard was a substantial factor in bringing about the Mill Fire.  This is despicable and oppressive conduct.  Plaintiffs thus seek punitive damages in an amount sufficient to punish Defendants' long history of prioritizing profits over safety and to deter such conduct in the future.

**FIFTH CAUSE OF ACTION**
**Violation of Health & Safety Code §13007**
**(Against All Defendants)**

69.     Plaintiffs hereby re-allege and incorporate by reference each and every allegation contained above as though the same were set forth herein in full.

70.     By engaging in the acts and omissions alleged in this Complaint, Defendants, and each of them, willfully, negligently, and in violation of law, set fire to and/or allowed fire to be set to the property of another in violation of California Health & Safety Code § 13007.

71.     As a legal result of Defendants' violation of California Health & Safety Code §13007, Plaintiffs suffered recoverable damages to property under California Health & Safety Code § 13007.

72.     As a further legal result of the violation of California Health & Safety Code §13007 by Defendants, some Plaintiffs suffered damages that are entitled to reasonable attorney

COMPLAINT FOR DAMAGES - 17

fees under California Code of Civil Procedure § 1021.9 for the prosecution of this cause of action.

73.    Defendants, including one or more ROSEBURG officers, directors, and/or managers, have deliberately, and repeatedly, prioritized profits over safety.  That is, Defendants have a history of acting recklessly and with conscious disregard to human life and safety, and this history of recklessness and conscious disregard was a substantial factor in bringing about the Mill Fire.  This is despicable and oppressive conduct.  Plaintiffs thus seek punitive damages in an amount sufficient to punish Defendants' long history of prioritizing profits over safety and to deter such conduct in the future.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants, ROSEBURG CORPORATION, PACIFIC GAS & ELECTRIC COMPANY, and DOES 1 through 100, each of them, as follows:

1.    Repair, depreciation, and/or replacement of damaged, destroyed, and/or lost personal and/or real property;

2.    Loss of the use, benefit, goodwill, and enjoyment of Plaintiffs' real and/or personal property;

3.    Loss of wages, earning capacity and/or business profits or proceeds and/or any related displacement expenses;

4.    Past and future medical expenses and incidental expenses according to proof at trial;

5.    Attorney fees, expert fees, consultant fees, and litigation costs and expense, as allowed under California Code of Civil Procedure, Section 1021.9;

COMPLAINT FOR DAMAGES - 18

6. All costs of suit;

7. Prejudgment interest, according to proof;

8. For punitive and exemplary damages against ROSEBURG in an amount sufficient to punish Defendants' conduct and deter similar conduct in the future, as allowed under Public Utilities Code section 2106 and all other applicable law; and

9. General damages for fear, worry, annoyance, disturbance, inconvenience, mental anguish, emotional distress, loss of quiet enjoyment of property, personal injury, and for such other and further relief as the Court shall deem proper, all according to proof.

**Parkinson Benson & Potter**

DATED:  November 18, 2022

By:_____
    Brett R. Parkinson
    Attorneys for Plaintiffs

**Law Office of Bret D. Cook, P.C.**

DATED:  November 18, 2022

By:_____
    Bret D. Cook
    Attorneys for Plaintiffs

COMPLAINT FOR DAMAGES - 19

**DEMAND FOR JURY TRIAL**

Plaintiffs demand trial by jury on all issues of which trial by jury is permitted by law.

**Parkinson Benson & Potter**

DATED:  November 18, 2022

By:_____
　　　Brett R. Parkinson
　　　Attorneys for Plaintiffs

**Law Office of Bret D. Cook, P.C.**

DATED:  November 18, 2022

By:_____
　　　Bret D. Cook
　　　Attorneys for Plaintiffs

COMPLAINT FOR DAMAGES - 20

EXHIBIT 8

EXHIBIT 8

EXHIBIT 8

# EXHIBIT 8 FILED
# UNDER SEAL

EXHIBIT 9

EXHIBIT 9

EXHIBIT 9

# EXHIBIT 9 FILED UNDER SEAL

EXHIBIT 10

EXHIBIT 10

EXHIBIT 10

Thank you for coordinating the call. Please make sure to also include Holly Keahey who I have cc'd on my response. We both can be available the following times:

Friday, 9/9  - 11:30AM-12:30PM , 1PM-2PM CST
Monday 9/12 – 1PM-3PMCST
Tuesday 9/13 – 9AM-3PM CST

Please let me know if you need any further dates.

Thanks,


**SARAH KAUFMAN**
Sr Tech Claims Specialist II
Central West Region Complex

Liberty Mutual Insurance | Helmsman Management Services
Milwaukee, WI
Office: 414-290-4484


How are we doing?              Send us a document

The information contained in this email message and any attachments to this message are confidential and may be privileged or constitute attorney work product. If you are not the intended recipient, please (1) notify me immediately by replying to this message or calling 414-290-4484, (2) do not use, disseminate, distribute or reproduce any part of the message or any attachment, and (3) destroy all copies of this message and attachments. A copy of our privacy notice can be obtained at our Privacy Policy website.

**From:** Steven Hurley <Steven.Hurley@alliant.com>
**Sent:** Thursday, September 08, 2022 1:16 PM
**To:** Kaufman, Sarah <SARAH.KAUFMAN@LibertyMutual.com>
**Subject:** {EXTERNAL} RLC Industries - Date of Incident 9-2-2022 - Claim # P 413-291000

Hi Sarah,

We want to get an initial conference call scheduled with insured, the law firm which has been hire, BakerHostetler, and the insurance carriers that could potentially be involved. We would like to discuss the incident, the insured's response, and next steps.

Could you please provide me some idea of your availability over the next few business days? Also, can you please confirm your time zone.

Regards,

-Steve


**Steven Hurley**
**Vice President, Claims Advocate – Lead**
Alliant Specialty
805 SW Broadway Ste 480
Portland OR 97205

**D** (503) 444-6731
**C** (503) 729-3483
**E** Steven.Hurley@Alliant.com
Alliant.com

LIC0016540

**▶Alliant**

Alliant Insurance Services, Inc.
CA License No. 0C36861

This email and its attachments are for the exclusive use of the intended recipients, and may contain proprietary information and trade secrets of Alliant Insurance Services, Inc. and its subsidiaries. This email may also contain information that is confidential, or otherwise protected from disclosure by contract or law. Any unauthorized use, disclosure, or distribution of this email and its attachments is prohibited. If you are not the intended recipient, let us know by reply email and then destroy all electronic and physical copies of this message and attachments. Nothing in this email or its attachments is intended to be legal, financial, or tax advice, and recipients are advised to consult with their appropriate advisors regarding any legal, financial, or tax implications.

LIC0016541

EXHIBIT 11

EXHIBIT 11

EXHIBIT 11

# BakerHostetler

**Baker&Hostetler** LLP

600 Anton Boulevard
Suite 900
Costa Mesa, CA 92626-7221

T 714.754.6600
F 714.754.6611
www.bakerlaw.com

Joseph L. Chairez
direct dial: 714.966.8822
jchairez@bakerlaw.com

September 9, 2022

Liberty Mutual Insurance
175 Berkley Street
Boston, MA 02116
(primary CGL policy)

Markel American Insurance Company
4521 Highwoods Parkway
Glen Allen VA 23060

Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

Allied World Assurance Company (US) Inc.
ATTN: General Casualty
199 Water Street 24th Floor
New York, NY 10038

Everest National Insurance Company
Warren Corporate Center
100 Everest Way
Warren, NJ 07059

Liberty Mutual Insurance
175 Berkley Street
Boston, MA 02116
(excess liability policy)

LIC0016542

Re:    Insured: *Roseburg Forest Products Co. (subsidiary of RLC Industries Co.)*
       *Liability Claim: "Mill Fire"*
       *Date of Loss: September 2, 2022*
       *Policies: --Liberty Mutual primary CGL No. TB7-661-067089-031 (11-1-21 to 11-1-22)*
                  *Liberty Claim No. P 413-291000*
              *--Markel Commercial Umbrella No. MKLM6MM70000398 (11-1-21 to 11-1-22)*
              *--Chubb/Federal Insurance Co. Commercial Excess No. 7819-50-57 (11-1-21 to 11-1-22)*
                  *Chubb Claim No. 076922029278*
              *--Allied World Excess Liability No. 0311-5913 (11-1-21 to 11-1-22)*
                  *Allied World Claim No. 2022021688*
              *--Everest National Commercial Excess No. XC2EX00126-211 (11-1-21 to 11-1-22)*
              *--Liberty Mutual Excess Liability No. ECO (22) 60 07 79 06 (11-1-21 to 11-1-22)*

Dear Insurance Carriers:

Since Roseburg's initial notice to you of the Mill Fire occurrence, Roseburg has been served with a complaint filed in Sacramento County on September 8, 2022, *Hammond v. Roseburg Forestry*. A copy of the complaint is attached. Also on September 8, Roseburg received the attached correspondence from the Cozen O'Connor firm identified as a Notice of Potential Claim and Request to Preserve Evidence. Both relate to the Mill Fire occurrence.

Pursuant to your respective policies, Roseburg is submitting the complaint and correspondence to each carrier for defense and indemnity. If additional pleadings or demands are received, we will promptly forward them to you. Please contact me if you have any questions.

Very truly yours,

/s/ *Joseph L. Chairez*

Joseph L. Chairez

4880-5352-0433.1

LIC0016543

**FRANTZ LAW GROUP, APLC**
James P. Frantz, Esq., SBN. 87492
jfrantz@frantzlawgroup.com
M. Regina Bagdasarian, Esq., SBN. 296219
regina@frantzlawgroup.com
George T. Stiefel, Esq., SBN. 297611
gstiefel@frantzlawgroup.com
C. Nikki Morris, Esq., SBN 344141
nmorris@frantzlawgroup.com
770 L Street, Suite 950
Sacramento, CA 95814
Ph: (916) 492-6059

Attorneys for Plaintiffs

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SACRAMENTO

NICHOLE HAMMOND;
SHAYNE HAMMOND;
KALEB HAMMOND;
CIARRA HAMMOND, a minor, by and
through Guardian ad Litem NICHOLE
HAMMOND; and
SHAYNE HAMMOND JR., a minor, by and
through Guardian ad Litem NICHOLE
HAMMOND

           Plaintiffs,
    vs.

ROSEBURG FOREST PRODUCTS CO., a
corporation; and
DOES 1 THROUGH 100, inclusive,

           Defendants.

Case No.

**COMPLAINT FOR DAMAGES:**

1. TRESPASS
2. NEGLIGENCE (INCLUDING VIOLATIONS OF PUBLIC RESOURCES CODE)
3. PRIVATE NUISANCE
4. PUBLIC NUISANCE

**PUNITIVE DAMAGES DEMANDED**

**DEMAND FOR JURY TRIAL**

Plaintiffs, by and through the above-captioned attorneys, hereby allege, on information and belief, for causes of action against Defendants state as follows:

1

COMPLAINT

LIC0016544

## INTRODUCTION

1.　　On or about September 2, 2022, the "Mill Fire" erupted in the City of Weed, California.  To date, the Mill Fire has destroyed nearly 4,000 acres and over 100 structures.  The fire has also resulted in multiple fatalities.

2.　　Based on information and belief, the Mill Fire ignited as a result of the actions and inactions of Defendant Roseburg Forest Products Co. at its veneer mill situated in the City of Weed, County of Siskiyou, State of California.

3.　　Defendants knew that Siskiyou County is an area highly susceptible to catastrophic fires, having experienced the destruction of the Slater Fire in September of 2020 and the very recent McKinney Fire.

4.　　Defendants were well aware of the hazards of the operations for many years. Despite the knowledge of a substantial fire risk, Defendants ignored the hazards and continued to engage in dangerous practices.

5.　　Ignition of the Mill Fire was due to actions and inactions of Defendants at the veneer mill in Weed, California.  At the mill, Defendants produces its own electric power in a co-generation facility fueled by wood remnants. The generator ejects ash after consuming the wood. The ash is still combustible and/or capable of starting a fire if not property handled.

6.　　Upon information and belief, Defendants failed to handle, cool, control and maintain this waste ash and the hot ash ignited the Mill Fire.

7.　　The Mill Fire was avoidable had Defendants complied with the standard of care in inspecting, repairing, and maintaining its operations.

## PARTIES, JURISDICTION AND VENUE

8.　　This Court, as a court of general jurisdiction, has subject-matter jurisdiction over this unlimited civil case and personal jurisdiction over each Defendant. Plaintiffs damages asserted greatly exceed the jurisdictional minimum of this Court.

9.　　At all relevant times, Defendant ROSEBURG FOREST PRODUCTS CO. is a cooperation operating the subject veneer mill in the State of California.

2

LIC0016545

Exhibit 11, Page 004

1    10.    Plaintiffs sustained damages in the State of California to their homes,

2    property and/or body and emotional health and strength.

3    11.    The true names and capacities of Defendants sued as DOES 1-100, inclusive, are

4    presently unknown to Plaintiffs who, therefore, sues these Defendants by such fictitious names

5    pursuant to Code of Civil Procedure §474. The full extent of the facts linking such fictitiously sued

6    Defendants is unknown to Plaintiffs. Plaintiffs are informed and believe, based thereon allege, that

7    each Defendant designated as a DOE was, and is, negligently, or in some other actionable manner,

8    responsible in some manner for the injuries and events alleged, and thereby negligently, or in some

9    other actionable manner, legally and proximately caused the described injuries and damages alleged

10    by Plaintiffs, and are jointly and severally liable to Plaintiffs. Plaintiffs will seek leave of Court to

11    amend this pleading to state the true names and capacities of such fictitiously named Defendants

12    once ascertained.

13    12.    At all times relevant, each of the Defendants, including DOES 1-100, were the

14    representative, agent, servant, employee, alter ego, and/or joint venturer of each of the remaining

15    Defendants; and in doing the things alleged was at all times acting within the course and scope of

16    said capacity, and in doing the things alleged was at all times acting within the course and scope of

17    said agency and employment, and each Defendant has ratified and approved the acts of the

18    remaining Defendants.

19    **GENERAL ALLEGATIONS**

20    13.    On or about September 2, 2022, the Mill Fire ignited on Defendants' property in

21    Siskiyou County.

22    14.    Siskiyou County is, and historically has been, categorized as a "Very High Fire

23    Hazard Severity Zone" ("VHFHSZ") by Cal Fire. These zones identify an area's likelihood of

24    burning based on its physical conditions. These attributes include fuels, terrain, weather, and other

25    relevant factors. The zones are essential in analyzing how to decrease the fire risk. Additionally,

26    the High Fire Threat Districts established by the California Public Utilities Commission have

27    designated Siskiyou County as Tier 2 - Elevated and Tier 3 – Extreme.

28

3

COMPLAINT

LIC0016546

15. Prior to the Mill Fire, Defendants were aware that Siskiyou County was an area extremely susceptible to an uncontrollable due to its topography, attributes, and history of fires. Less than two years ago, the Slater Fire devastated the area.

16. Defendants were also aware of a high risk of an uncontrollable fire at the time of the Mill Fire due to the existing conditions and circumstances. About 1 month prior to the Mill Fire, the McKinney Fire erupted in Siskiyou County.

17. The alleged failures and shortcomings result from Defendants' negligence and conscious disregard for the safety of the communities it serves to prioritize profits. These failures and shortcomings resulted in the ignition of the well-known tinder-like dry vegetation in Siskiyou County.

18. Plaintiffs are informed and believe, and thereon allege, that the Mill Fire ignited because Defendants negligently, recklessly, and willfully failed to prudently and safely maintain its facility and operations in Weed, California. Defendants' failure to operate, use, control, inspect, repair, and/or maintain its facility and the surrounding environment caused the Mill Fire to ignite.

19. The Mill Fire caused Plaintiffs to suffer substantial economic and non-economic harms, including, but not limited to: damage to and/or destruction of real and personal property, including cherished possessions; loss of use and quiet enjoyment of real and personal property; out-of-pocket expenses directly and proximately incurred as a result of the fire; alternative living expenses; evacuation expenses; personal injuries; medical bills; lost wages; loss of earning capacity; loss of business income and/or goodwill; and various types of emotional distress, discomfort, annoyance, inconvenience, anxiety, fear, stress, and mental anguish. The harms caused by the Defendants are extensive and ongoing.

### FIRST CAUSE OF ACTION

### TRESPASS

#### (Against all Defendants)

20. Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

4

LIC0016547

Exhibit 11, Page 006

21.     At all times relevant, Plaintiffs were the owners and/or lawful occupiers of real property damaged by the Mill Fire.

22.     Defendants' negligent and/or reckless acts and/or omissions caused the Mill Fire to ignite and spread onto the Plaintiffs' property, resulting in damage to the Plaintiffs' property.

23.     Plaintiffs did not grant permission for the Mill Fire to enter their properties.

24.     As a factual and legal cause of the trespass, Plaintiffs have suffered, and continue to, economic and non-economic damages including, but not limited to, destruction of and/or damage to real and personal property, loss of use and enjoyment of real and personal property, discomfort, inconvenience, anxiety, fear, annoyance, mental anguish, and stress in an amount to be determined, on an individual basis, according to proof at trial.

25.     Defendants' conduct was despicable falling within both malicious and oppressive definitions of California Civil Code §3294. Defendants' conduct evidences a willful and conscious disregard for the rights and safety of others and subjected Plaintiffs to cruel and unjust hardship. Punitive and exemplary damages must punish Defendants according to proof pursuant §3294. Defendants have a history of despicable conduct, deliberately prioritizing profits over the rights and safety of the public, resulting in catastrophic uncontrollable fire, including the Mill Fire.

### SECOND CAUSE OF ACTION

#### NEGLIGENCE

#### (Against all Defendants)

26.     Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

27.     Defendants had a duty to apply a level of care commensurate with and proportionate to the inherent dangers in designing, engineering, constructing, operating, inspecting, and maintaining the subject mill.

28.     Defendants had a duty to vigilantly oversee the operation, inspection, repair, and maintenance of the mill and its local environment in consideration of geography and changing weather and ecologic conditions. This duty required Defendants to take special precautions to

5

LIC0016548

Exhibit 11, Page 007

1    protect adjoining properties from uncontrollable fires caused by its actions and inactions.

2        29.    Under Public Resources Code section 4437, every processor of forest products shall

3    exercise due diligence in the disposal of flammable material incident to the processing, so that the

4    material does not cause the inception or spread of uncontrolled fire.  Additionally, every person,

5    copartnership, firm, corporation, or company that operates a sawmill or plant engaged in the

6    processing or converting of forest products into lumber, shook, ties, poles, posts, veneer, shakes,

7    shingles, and planed or milled products, shall dispose of flammable material incident to that

8    operation. If such flammable material is not to be used as fuel, or as a byproduct, within the

9    operation, it shall be disposed of by burning or by other alternative methods which effectively

10   prevent the flammable material from constituting a fire hazard.

11       30.    Under Public Resources Code section 4440, flammable forest product residue may

12   only be accumulated in piles when the area surrounding the piles is cleared and kept clear of all

13   flammable vegetation and debris.

14       31.    Defendants each breached their duties to exercise the requisite standard of care by:

15       a.    Failing to design, construct, operate, monitor, inspect, and maintain the subject mill
16           and/or mill operations in a manner that considered and abated foreseeable risk of
             uncontrollable fires in the area affected by the Mill Fire;
17
18       b.    Failing to maintain proper clearance for flammable residue;

19       c.    Failing to routinely conduct reasonable, proper, frequent, and timely inspections
20           and/or maintenance of Defendants' mill and operations;

21       d.    Failing to routinely conduct reasonable, proper, frequent, and timely inspections
             and/or maintenance of the clearance space around flammable residue;
22
23       e.    Failing to properly train and supervise employees and agents responsible for
             maintenance and inspections; and/or
24
         f.    Failing to implement and/or follow regulations and reasonably prudent practices to
25           avoid dangerous conditions prone to fire ignition.

26       32.    Furthermore, Defendants' failure to comply with applicable provisions of the Public

27   Resources Code, as alleged herein, is negligence per se. These statutes are aimed at preventing the

28   exact type of harm that Plaintiffs suffered due to Defendants' failure to comply with these statutes

6

COMPLAINT

LIC0016549

1  and Plaintiffs are within the class of individuals these statutes, orders, and rules were implemented

2  to protect.

3    33.    The Mill Fire alleged herein was a factual and legal result of Defendants'

4  negligence, including negligence per se.

5    34.    Defendants' negligence, including Defendants' negligence per se, was a substantial

6  factor in causing Plaintiffs to suffer, and continue to suffer, economic and non-economic damages

7  including, but not limited to, destruction of and/or damage to real and personal property and

8  cherished possessions, loss of use and quiet enjoyment of real and personal property, discomfort,

9  annoyance, inconvenience, anxiety, fear, mental anguish, stress, and emotional distress. Plaintiffs

10  each seek damages to be determined, on an individual basis, according to proof at trial.

11    35.    Defendants' conduct was despicable falling within both malicious and oppressive

12  definitions of California Civil Code §3294. Defendants' conduct evidences a willful and conscious

13  disregard for the rights and safety of others and subjected Plaintiffs to cruel and unjust hardship.

14  Punitive and exemplary damages must punish Defendants according to proof pursuant §3294.

15  Defendants have a history of despicable conduct, deliberately prioritizing profits over the rights

16  and safety of the public, resulting in catastrophic uncontrollable fires, including the Mill Fire.

17  ### THIRD CAUSE OF ACTION

18  ### PRIVATE NUISANCE

19  ### (Against all Defendants)

20    36.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as

21  though fully set forth herein.

22    37.    At all times relevant, Plaintiffs were the owner of real property in the area of the

23  Mill Fire.

24    38.    Defendants owed Plaintiffs a duty to conduct their business, which included

25  operation, inspection, and maintenance of their mill and operations, in a manner that did not

26  threaten, harm, or offend Plaintiffs or obstruct Plaintiffs' free use and comfortable enjoyment of

27  their property or pose a fire hazard to their property.

28

7

COMPLAINT

LIC0016550

1    39.    Defendants' acts and omissions created a condition and/or permitted a condition to

2    exist that was offensive to one's senses; harmful to one's health; obstructive to the free use of

3    property, so as to interfere with the comfortable enjoyment of life and property; unlawfully

4    obstructed the free passage or use, in a customary manner, of public streets and highways; and an

5    entirely predictable fire hazard to Plaintiffs' property constituting a nuisance pursuant to California

6    Civil Code §3479.

7    40.    Defendants' conduct that created the above conditions was intentional and

8    unreasonable and/or unintentional but caused by negligence or recklessness in light of apparent

9    risks of catastrophic uncontrollable fires.

10    41.    The above-referenced conditions substantially interfered with Plaintiffs' use and

11    quiet enjoyment of their property.

12    42.    The above-referenced conditions also affected a substantial number of individuals

13    concurrently.

14    43.    An ordinary person would be reasonably annoyed and disturbed by the conditions

15    created by Defendants' acts and omissions and the resulting Mill Fire.

16    44.    The seriousness of the harm Defendants caused Plaintiffs outweighs any public

17    benefit that Defendants may provide.

18    45.    Plaintiffs did not consent expressly or impliedly to Defendants' actions and

19    inactions in creating these conditions.

20    46.    Defendants' actions and inactions in creating these conditions were a factual and

21    legal cause of Plaintiffs suffering damages unique to each Plaintiff - and different from damages

22    suffered by other Plaintiffs - including, but not limited to, destruction of and/or damage to real and

23    personal property and cherished possessions, loss of use and quiet enjoyment of real and personal

24    property, discomfort, annoyance, inconvenience, anxiety, fear, mental anguish, stress, and

25    emotional distress.  Plaintiffs each seek damages to be determined, on an individual basis,

26    according to proof at trial.

27

28

8

COMPLAINT

LIC0016551

Exhibit 11, Page 010

1    47.    Defendants' conduct was despicable falling within both malicious and oppressive

2  definitions of California Civil Code §3294. Defendants' conduct evidences a willful and conscious

3  disregard for the rights and safety of others and subjected Plaintiffs to cruel and unjust hardship.

4  Punitive and exemplary damages must punish Defendants according to proof pursuant §3294.

5  Defendants have a history of despicable conduct, deliberately prioritizing profits over the rights

6  and safety of the public, resulting in catastrophic uncontrollable fires, including the Mill Fire.

7                                **FOURTH CAUSE OF ACTION**

8                                       **PUBLIC NUISANCE**

9                                    **(Against all Defendants)**

10   48.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as

11  though fully set forth herein.

12   49.    At all times relevant, Plaintiffs were the owners, tenants, and/or lawful occupiers of

13  real properties in the area of the Mill Fire. Plaintiffs held a right to occupy, enjoy, and use their

14  property without interference by Defendants.

15   50.    Defendants owed a duty to the public, including Plaintiffs, to conduct their business,

16  including operation, inspection, and maintenance of mill and operations, in a manner that did not

17  threaten, harm, or offend the public or interfere with public use and comfortable enjoyment of or

18  pose a fire hazard to their property.

19   51.    Defendants' acts and/or omissions created a condition or permitted a condition to

20  exist that was harmful to health; offensive to the senses; obstructive to the free use of property,

21  interfering with the comfortable enjoyment of life and property; unlawfully obstructed the free

22  passage or use, in a customary manner, of public streets and highways; and an entirely predictable

23  fire hazard to Plaintiffs' property.

24   52.    Defendants' conduct that created the above conditions was intentional and

25  unreasonable and/or unintentional but caused by negligence or recklessness considering apparent

26  risks of catastrophic uncontrollable fires.

27

28                                              9

---

                                        COMPLAINT

LIC0016552

1       53.    The above-referenced conditions affected a substantial number of people

2   simultaneously within the general public, constituting a public nuisance pursuant to California

3   Civil Code §§3479 and 3480 and Public Resources Code §§4170 and 1471.

4       54.    Plaintiffs did not consent expressly or impliedly to Defendants' actions and

5   inactions in creating these conditions.

6       55.    An ordinary person would be reasonably annoyed and disturbed by the conditions

7   created by Defendants' conduct and the resulting Mill Fire.

8       56.    The seriousness of the harm Defendants caused Plaintiffs outweighs any public

9   benefit that Defendants may provide.

10      57.    Defendants' unreasonable conduct resulting in the Mill Fire is a factual and legal

11  cause of injury to the public, including Plaintiffs.

12      58.    As a factual and legal result of Defendants' acts and omissions in creating these

13  conditions, Plaintiffs suffered damages different from the type suffered by the general public and

14  unique to each Plaintiff. Specifically, but not limited to, loss of occupancy, possession, use, and

15  enjoyment of their real and personal property due to destruction of and/or damage to such property.

16  Additionally, Plaintiffs have suffered and continue to suffer discomfort, anxiety, fear, annoyance,

17  inconvenience, mental anguish, stress, and emotional distress.  Plaintiffs each seek damages in an

18  amount to be determined, on an individual basis, according to proof at trial.

19      59.    Plaintiffs have standing to maintain an action for public nuisance under Civil Code

20  §3492 because the nuisance is especially injurious to Plaintiffs, as alleged herein.

21      60.    Defendants' conduct was despicable falling within both malicious and oppressive

22  definitions of California Civil Code §3294. Defendants' conduct evidences a willful and conscious

23  disregard for the rights and safety of others and subjected Plaintiffs to cruel and unjust hardship.

24  Punitive and exemplary damages must punish Defendants according to proof pursuant §3294.

25  Defendants have a history of despicable conduct, deliberately prioritizing profits over the rights

26  and safety of the public, resulting in catastrophic uncontrollable fires, including the Mill Fire.

27

28

10

COMPLAINT

LIC0016553

Exhibit 11, Page 012

**PRAYER FOR RELIEF**

Plaintiffs seek the following damages in an amount according to proof at the time of trial:

(1)    General and/or special damages determined on an individual basis according to proof;

(2)    Loss of use, benefit, goodwill, and enjoyment of Plaintiffs' real and/or personal property;

(3)    Loss of wages, earning capacity, goodwill, and/or business profits or proceeds and/or any related displacement expenses;

(4)    Evacuation expenses and alternate living expenses;

(5)    Erosion damage to real property;

(6)    Past and future medical expenses and incidental expenses;

(7)    Damages for personal injury, emotional distress, fear, annoyance, disturbance, inconvenience, mental anguish, and loss of quiet enjoyment of property;

(8)    Attorneys' fees, expert fees, consultant fees, and litigation costs and expenses as allowed under appliable law;

(9)    Prejudgment interest;

(10)    For punitive and exemplary damages against Defendants in an amount sufficient to punish Defendants' conduct and deter similar conduct in the future, as allowed under Public Utilities Code §2106 and all other appliable law; and

(11)    Any and all other and further such relief as the Court shall deem proper, all according to proof.

Dated: September 8, 2022

                          FRANTZ LAW GROUP, APLC

                          By_____

                              James P. Frantz
                              M. Regina Bagdasarian
                              George T. Stiefel
                              C. Nikki Morris
                              Attorneys for Plaintiffs

11

COMPLAINT

LIC0016554

1

## JURY DEMAND

2

Plaintiffs demand a trial by jury on all causes.

3

4

5    Dated: September 8, 2022                FRANTZ LAW GROUP, APLC

6

7

8                                    By_____

9                                        James P. Frantz
                                         M. Regina Bagdasarian
10                                        George T. Stiefel
                                         C. Nikki Morris Attorneys for
11                                        Plaintiffs

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12

COMPLAINT

LIC0016555

EXHIBIT 12

EXHIBIT 12

EXHIBIT 12

# BakerHostetler

**Baker&Hostetler** LLP

600 Anton Boulevard
Suite 900
Costa Mesa, CA 92626-7221

T 714.754.6600
F 714.754.6611
www.bakerlaw.com

Joseph L. Chairez
direct dial: 714.966.8822
jchairez@bakerlaw.com

September 12, 2022

*VIA FEDEX*

Liberty Mutual Insurance
175 Berkley Street
Boston, MA 02116
(primary CGL policy)

Markel American Insurance Company
4521 Highwoods Parkway
Glen Allen VA 23060

Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

Allied World Assurance Company (US) Inc.
ATTN: General Casualty
199 Water Street 24th Floor
New York, NY 10038

Everest National Insurance Company
Warren Corporate Center
100 Everest Way
Warren, NJ 07059

Liberty Mutual Insurance
175 Berkley Street
Boston, MA 02116
(excess liability policy)

Atlanta    Chicago    Cincinnati    Cleveland    Columbus    Costa Mesa    Dallas    Denver    Houston
Los Angeles    New York    Orlando    Philadelphia    San Francisco    Seattle    Washington, DC    Wilmington

LIC0016711

Re:     Insured: Roseburg Forest Products Co. (subsidiary of RLC Industries Co.)
        Liability Claim: "Mill Fire"
        Date of Loss: September 2, 2022
        Policies: --Liberty Mutual primary CGL No. TB7-661-067089-031 (11-1-21 to 11-1-22)
                       Liberty Claim No. P 413-291000
                --Markel Commercial Umbrella No. MKLM6MM70000398 (11-1-21 to 11-1-
        22)
                       Markel Claim No. MXUL86123.
                --Chubb/Federal Insurance Co. Commercial Excess No. 7819-50-57 (11-1-21 to
        11-1- 22)
                       Chubb Claim No. 076922029278
                --Allied World Excess Liability No. 0311-5913 (11-1-21 to 11-1-22)
                       Allied World Claim No. 2022021688
                --Everest National Commercial Excess No. XC2EX00126-211 (11-1-21 to 11-1-
        22)
                --Liberty Mutual Excess Liability No. ECO (22) 60 07 79 06 (11-1-21 to 11-1-22)


Dear Insurance Carriers:

Since Roseburg's initial notice to you of the Mill Fire occurrence, Roseburg has been served
with a complaint filed in Siskiyou County on September 6, 2022, *Smith v. Roseburg
Forest Products Co.*. A copy of the complaint is attached. Also on September 6, Roseburg
received the attached correspondence from the REINER, SLAUGHTER, MAINZER &
FRANKEL, LLP firm identified as a Notice to Preserve Evidence. Both relate to the Mill Fire
occurrence.

Pursuant to your respective policies, Roseburg is submitting the complaint and correspondence
to each carrier for defense and indemnity. If additional pleadings or demands are received, we
will promptly forward them to you. Please contact me if you have any questions.

Very truly yours,


/s/ Joseph L. Chairez

Joseph L. Chairez


Encl.

4858-8599-8386.1

PLD-PI-001

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Russell Reiner    SBN: 84461<br>REINER, SLAUGHTER, MAINZER & FRANKEL, LLP<br>2851 Park Marina Drive, Suite 200<br>Redding, CA 96001<br>TELEPHONE NO: 530-241-1905    FAX NO. (Optional): 530-241-0622<br>E-MAIL ADDRESS (Optional): reiner@reinerslaughter.com<br>ATTORNEY FOR (Name): Tim Smith | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SISKIYOU
STREET ADDRESS: 411 Fourth Street
MAILING ADDRESS: 411 Fourth Street
CITY AND ZIP CODE: Yreka, 96097
BRANCH NAME: Yreka Division

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SISKIYOU

SEP -6 2022

BY: _____
DEPUTY CLERK

PLAINTIFF: TIM SMITH

DEFENDANT: ROSEBURG FOREST PRODUCTS CO.; and

[X] DOES 1 TO    10, inclusive

**COMPLAINT—Personal Injury, Property Damage, Wrongful Death**
[ ] AMENDED *(Number):*
Type *(check all that apply):*
[ ] MOTOR VEHICLE    [X] OTHER *(specify):* Fire
[X] Property Damage    [ ] Wrongful Death    Double or treble
[X] Personal Injury    [X] Other Damages *(specify):* damages to trees

| Jurisdiction *(check all that apply):* | CASE NUMBER: |
|---|---|
| [ ] ACTION IS A LIMITED CIVIL CASE<br>Amount demanded  [ ] does not exceed $10,000<br> [ ] exceeds $10,000, but does not exceed $25,000<br>[X] ACTION IS AN UNLIMITED CIVIL CASE (exceeds $25,000)<br>[ ] ACTION IS RECLASSIFIED by this amended complaint<br> [ ] from limited to unlimited<br> [ ] from unlimited to limited | CV PO 22-951 |

1. Plaintiff *(name or names):* Tim Smith
   alleges causes of action against defendant *(name or names):* Roseburg Forest Products Co.

2. This pleading, including attachments and exhibits, consists of the following number of pages: 4
3. Each plaintiff named above is a competent adult
   a. [ ] except plaintiff *(name):*
      (1) [ ] a corporation qualified to do business in California
      (2) [ ] an unincorporated entity *(describe):*
      (3) [ ] a public entity *(describe):*
      (4) [ ] a minor  [ ] an adult
         (a) [ ] for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
         (b) [ ] other *(specify):*
      (5) [ ] other *(specify):*
   b. [ ] except plaintiff *(name):*
      (1) [ ] a corporation qualified to do business in California
      (2) [ ] an unincorporated entity *(describe):*
      (3) [ ] a public entity *(describe):*
      (4) [ ] a minor  [ ] an adult
         (a) [ ] for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
         (b) [ ] other *(specify):*
      (5) [ ] other *(specify):*

[ ] Information about additional plaintiffs who are not competent adults is shown in Attachment 3.

Form Approved for Optional Use
Judicial Council of California
PLD-PI-001 [Rev. January 1, 2007]

**COMPLAINT—Personal Injury, Property
Damage, Wrongful Death**

Code of Civil Procedure, § 425.12
www.courtinfo.ca.gov
Westlaw Doc & Form Builder

LIC0016713

PLD-PI-001

| SHORT TITLE: SMITH V. ROSEBURG FOREST PRODUCTS CO., et al. | CASE NUMBER: |
|---|---|

4. [ ] Plaintiff *(name):*

    is doing business under the fictitious name *(specify):*

    and has complied with the fictitious business name laws.

5. Each defendant named above is a natural person
  a. [X] except defendant *(name):* Roseburg Forest Products Co.
    (1) [ ] a business organization, form unknown
    (2) [X] a corporation
    (3) [ ] an unincorporated entity *(describe):*

    (4) [ ] a public entity *(describe):*

    (5) [ ] other *(specify):*

  c. [ ] except defendant *(name):*
    (1) [ ] a business organization, form unknown
    (2) [ ] a corporation
    (3) [ ] an unincorporated entity *(describe):*

    (4) [ ] a public entity *(describe):*

    (5) [ ] other *(specify):*

  b. [ ] except defendant *(name):*
    (1) [ ] a business organization, form unknown
    (2) [ ] a corporation
    (3) [ ] an unincorporated entity *(describe):*

    (4) [ ] a public entity *(describe):*

    (5) [ ] other *(specify):*

  d. [ ] except defendant *(name):*
    (1) [ ] a business organization, form unknown
    (2) [ ] a corporation
    (3) [ ] an unincorporated entity *(describe):*

    (4) [ ] a public entity *(describe):*

    (5) [ ] other *(specify):*

[ ] Information about additional defendants who are not natural persons is contained in Attachment 5.

6. The true names of defendants sued as Does are unknown to plaintiff.
  a. [X] Doe defendants *(specify Doe numbers):* 1-5     were the agents or employees of other named defendants and acted within the scope of that agency or employment.
  b. [X] Doe defendants *(specify Doe numbers):* 6-10     are persons whose capacities are unknown to plaintiff.

7. [ ] Defendants who are joined under Code of Civil Procedure section 382 are *(names):*

8. This court is the proper court because
  a. [ ] at least one defendant now resides in its jurisdictional area.
  b. [ ] the principal place of business of a defendant corporation or unincorporated association is in its jurisdictional area.
  c. [X] injury to person or damage to personal property occurred in its jurisdictional area.
  d. [ ] other *(specify):*

9. [ ] Plaintiff is required to comply with a claims statute, and
  a. [ ] has complied with applicable claims statutes, or
  b. [ ] is excused from complying because *(specify):*

---

PLD-PI-001 [Rev. January 1, 2007]

**COMPLAINT—Personal Injury, Property Damage, Wrongful Death**

Page 2 of 3

LIC0016714

PLD-PI-001

| SHORT TITLE:  SMITH V. ROSEBURG FOREST PRODUCTS CO., et al. | CASE NUMBER: |
|---|---|

10. The following causes of action are attached and the statements above apply to each *(each complaint must have one or more causes of action attached)*:
   a. ☐ Motor Vehicle
   b. ☒ General Negligence
   c. ☐ Intentional Tort
   d. ☐ Products Liability
   e. ☐ Premises Liability
   f. ☐ Other *(specify)*:

11. Plaintiff has suffered
   a. ☐ wage loss
   b. ☒ loss of use of property
   c. ☐ hospital and medical expenses
   d. ☒ general damage
   e. ☒ property damage
   f. ☐ loss of earning capacity
   g. ☒ other damage *(specify)*:  Double or treble damages to trees.

12. ☐ The damages claimed for wrongful death and the relationships of plaintiff to the deceased are
   a. ☐ listed in Attachment 12.
   b. ☐ as follows:

13. The relief sought in this complaint is within the jurisdiction of this court.

14. Plaintiff prays for judgment for costs of suit; for such relief as is fair, just, and equitable; and for
   a. (1) ☒ compensatory damages
      (2) ☐ punitive damages
   The amount of damages is *(in cases for personal injury or wrongful death, you must check (1))*:
      (1) ☒ according to proof
      (2) ☐ in the amount of: $

15. ☐ The paragraphs of this complaint alleged on information and belief are as follows *(specify paragraph numbers)*:

Date: September 6, 2022

Russell Reiner
_____
        (TYPE OR PRINT NAME)

▶ _____
        (SIGNATURE OF PLAINTIFF OR ATTORNEY)

PLD-PI-001 [Rev. January 1, 2007]

**COMPLAINT—Personal Injury, Property Damage, Wrongful Death**

Page 3 of 3

LIC0016715

Exhibit 12, Page 005

PLD-PI-001(2)

| SHORT TITLE: SMITH V. ROSEBURG FOREST PRODUCTS CO., et al. | CASE NUMBER: |
|---|---|

First _____ **CAUSE OF ACTION—General Negligence**    Page __4__
(number)

ATTACHMENT TO  [X] Complaint  [ ] Cross - Complaint

*(Use a separate cause of action form for each cause of action.)*

GN-1. Plaintiff *(name):* TIM SMITH

alleges that defendant *(name):* ROSEBURG FOREST PRODUCTS CO.; and

[X] Does ____1____ to ____10____

was the legal (proximate) cause of damages to plaintiff. By the following acts or omissions to act, defendant
negligently caused the damage to plaintiff
on *(date):*  September 2, 2022
at *(place):*  1187 Tent Avenue, Weed, CA 96094

*(description of reasons for liability):*

On September 2, 2022, the Mill Fire destroyed over 100 homes in Siskiyou County and killed at
least two people.  The Mill Fire began in Weed, California, in or around a warehouse owned
and operated by Roseburg Forest Products Co. Roseburg negligently maintained and operated
the warehouse and adjacent property so as to create, cause, allow contribute to and assist in
creating a dangerous condition on the property which caused a fire to burn and destroy plaintiff
Tim Smith's home and all of his personal property and cherished belongings.  Moreover, as a
result of the negligence of Roseburg Forest Products Co., plaintiff Tim Smith was exposed to
and had to flee the fire causing him to suffer personal injuries and serious emotional distress as
well as property damages, in amounts which will the subject of proof at trial. He was displaced
from his home.

At all relevant times, defendants and each of them knew or in the exercise of reasonable care
should have known, that they were not properly operating and maintaining their warehouse and
adjacent property such that it was likely to create and become a fire hazard and result in injury
or cause other damages to persons or property throughout the community.

Defendants, and each of them, so negligently and carelessly operated and maintained the
Roseburg warehouse and adjacent property that they caused personal injuries and damages,
including property damages to plaintiff Tim Smith. The property damage includes the cost to
replace Mr. Smith's home and all of his personal property.  It also includes the cost to demolish
and remove debris from his property.

Form Approved for Optional Use
Judicial Council of California
PLD-PI-001(2) [Rev. January 1, 2007]

**CAUSE OF ACTION—General Negligence**

Page 1 of 1
Code of Civil Procedure 425.12
www.courtinfo.ca.gov
Westlaw Doc & Form Builder

LIC0016716

Exhibit 12, Page 006

EXHIBIT 13

EXHIBIT 13

EXHIBIT 13

# EXHIBIT 13 FILED UNDER SEAL

EXHIBIT 14

EXHIBIT 14

EXHIBIT 14

Video Conference ID: 114 741 494 0
Alternate VTC instructions

**Or call in (audio only)**
+1 469-480-3855,,957384117# United States, Dallas
(844) 883-4661,,957384117# United States (Toll-free)
Phone Conference ID: 957 384 117#
Find a local number | Reset PIN

This conversation, including any comments you offer, could be recorded for training or other permitted business use. By participating, you consent to being recorded. For more information, please click on the Legal link.

Learn More | Help | Meeting options | Legal

---

**From:** David Bona <dbona@ccplaw.com>
**Sent:** Tuesday, September 13, 2022 2:54 PM
**To:** Kaufman, Sarah <SARAH.KAUFMAN@LibertyMutual.com>
**Subject:** {EXTERNAL} RE: P 413-291000-01 RLC Industries Co - DOL: 9/2/2022

Sarah,

I have reviewed the materials and am available for a call whenever it works for you and your manager.

**From:** Kaufman, Sarah [mailto:SARAH.KAUFMAN@LibertyMutual.com]
**Sent:** Tuesday, September 13, 2022 11:36 AM
**To:** David Bona
**Subject:** P 413-291000-01 RLC Industries Co - DOL: 9/2/2022

Good Afternoon Dave,

Enclosed is the minimal information we have received to date from the firm retained by the customer. We are sending this over so you can review and start putting together your thought son how to begin this investigation, recommendations on experts and for the defense of the new suits. Once you have a chance to review, let me know and I will set a call up with my manager and me to discuss further. Hopefully by that time we will have communicated to the customer your involvement in this case.

Please let me know if you have any questions or would like to discuss further.

Thank you,
**Sarah Kaufman**
Sr Tech Claims Specialist II
Central West Region Complex

---

Liberty Mutual Insurance | Helmsman Management Services
Milwaukee, WI
Office: 414-290-4484

How are we doing?          Send us a document

The information contained in this email message and any attachments to this message are confidential and may be privileged or constitute attorney work product. If you are not the intended recipient, please (1) notify me immediately by replying to this message or calling 414-290-4484, (2) do not use, disseminate, distribute or reproduce any part of the message or any attachment, and (3) destroy all copies of this message and attachments. A copy of our privacy notice can be obtained at our Privacy Policy website.

EXHIBIT 15

EXHIBIT 15

EXHIBIT 15

# BakerHostetler

Baker & Hostetler LLP

600 Anton Boulevard
Suite 900
Costa Mesa, CA 92626-7221

T 714.754.6600
F 714.754.6611
www.bakerlaw.com

Joseph L. Chairez
direct dial: 714.966.8822
jchairez@bakerlaw.com

September 14, 2022

**VIA FEDEX**

Liberty Mutual Insurance
175 Berkley Street
Boston, MA 02116
(primary CGL policy)

Markel American Insurance Company
4521 Highwoods Parkway
Glen Allen VA 23060

Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

Allied World Assurance Company (US) Inc.
ATTN: General Casualty
199 Water Street 24th Floor
New York, NY 10038

Everest National Insurance Company
Warren Corporate Center
100 Everest Way
Warren, NJ 07059

Liberty Mutual Insurance
175 Berkley Street
Boston, MA 02116
(excess liability policy)

Atlanta    Chicago    Cincinnati    Cleveland    Columbus    Costa Mesa    Dallas    Denver    Houston
Los Angeles    New York    Orlando    Philadelphia    San Francisco    Seattle    Washington, DC    Wilmington

LIC0016740

Re:    Insured: *Roseburg Forest Products Co. (subsidiary of RLC Industries Co.)*
       *Liability Claim: "Mill Fire"*
       *Date of Loss: September 2, 2022*
       *Policies: --Liberty Mutual primary CGL No. TB7-661-067089-031 (11-1-21 to 11-1-22)*
                  *Liberty Claim No. P 413-291000*
             *--Markel Commercial Umbrella No. MKLM6MM70000398 (11-1-21 to 11-1-22)*
                  *Markel Claim No. MXUL86123.*
             *--Chubb/Federal Insurance Co. Commercial Excess No. 7819-50-57 (11-1-21 to 11-1- 22)*
                  *Chubb Claim No. 076922029278*
             *--Allied World Excess Liability No. 0311-5913 (11-1-21 to 11-1-22)*
                  *Allied World Claim No. 2022021688*
             *--Everest National Commercial Excess No. XC2EX00126-211 (11-1-21 to 11-1-22)*
             *--Liberty Mutual Excess Liability No. ECO (22) 60 07 79 06 (11-1-21 to 11-1-22)*
                  *Liberty Excess Claim No. 24056967*

Dear Insurance Carriers:

Since Roseburg's initial notice to you of the Mill Fire occurrence, Roseburg has been served with a complaint filed in San Francisco County on September 13, 2022, *Candasa/ Glover v. Roseburg Forest Products Co..* A copy of the complaint is attached.

Also on September 13, Roseburg received the attached correspondence via its counsel from the Grotefeld Hoffmann firm. A copy of the September 6, 2022 certified mail correspondence is attached.

Pursuant to your respective policies, Roseburg is submitting the complaint and correspondence to each carrier for defense and indemnity. If additional pleadings or demands are received, we will promptly forward them to you. Please contact me if you have any questions.

Very truly yours,


*/s/ Joseph L. Chairez*

Joseph L. Chairez


Encl.

4876-6513-3107.1

LIC0016741

PLD-PI-001

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

Russell Reiner    SBN: 84461
REINER, SLAUGHTER, MAINZER & FRANKEL, LLP
2851 Park Marina Drive, Suite 200
Redding, CA 96001
TELEPHONE NO: 530-241-1905    FAX NO. *(Optional):* 530-241-0622
E-MAIL ADDRESS *(Optional):* rreiner@reinerslaughter.com
ATTORNEY FOR *(Name):* Joselito Bereso Candasa

**ELECTRONICALLY**
**F I L E D**
Superior Court of California,
County of San Francisco

**09/13/2022**
**Clerk of the Court**
**BY: LAURA SIMMONS**
**Deputy Clerk**

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS: 400 McAllister Street
CITY AND ZIP CODE: San Francisco, 94102-4515
BRANCH NAME: Civic Center Courthouse

PLAINTIFF: JOSELITO BERESO CANDASA, individually and as
successor in interest to Lorenza Mondoc Glover, deceased
DEFENDANT: ROSEBURG FOREST PRODUCTS, CO.; and

[X] DOES 1 TO    10 , inclusive

**COMPLAINT—Personal Injury, Property Damage, Wrongful Death**
[ ] **AMENDED *(Number):***
Type *(check all that apply):*
[ ] **MOTOR VEHICLE**    [ ] **OTHER *(specify):***
[ ] **Property Damage**    [X] **Wrongful Death**
[X] **Personal Injury**    [ ] **Other Damages *(specify):***

Jurisdiction *(check all that apply):*
[ ] **ACTION IS A LIMITED CIVIL CASE**
**Amount demanded**    [ ] **does not exceed $10,000**
[ ] **exceeds $10,000, but does not exceed $25,000**
[X] **ACTION IS AN UNLIMITED CIVIL CASE (exceeds $25,000)**
[ ] **ACTION IS RECLASSIFIED by this amended complaint**
[ ] **from limited to unlimited**
[ ] **from unlimited to limited**

| CASE NUMBER: | CGC-22-601752 |
|---|---|

1. **Plaintiff** *(name or names):* Joselito Bereso Candasa, individually and as successor in interest to Lorenza Mondoc Glover, deceased
alleges causes of action against **defendant** *(name or names):* Roseburg Forest Products, Co.; and Does 1 through 10, inclusive

2. This pleading, including attachments and exhibits, consists of the following number of pages: 10

3. Each plaintiff named above is a competent adult
   a. [ ] **except** plaintiff *(name):*
      (1) [ ] a corporation qualified to do business in California
      (2) [ ] an unincorporated entity *(describe):*
      (3) [ ] a public entity *(describe):*
      (4) [ ] a minor [ ] an adult
         (a) [ ] for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
         (b) [ ] other *(specify):*
      (5) [ ] other *(specify):*
   b. [ ] **except** plaintiff *(name):*
      (1) [ ] a corporation qualified to do business in California
      (2) [ ] an unincorporated entity *(describe):*
      (3) [ ] a public entity *(describe):*
      (4) [ ] a minor [ ] an adult
         (a) [ ] for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
         (b) [ ] other *(specify):*
      (5) [ ] other *(specify):*

[ ] Information about additional plaintiffs who are not competent adults is shown in Attachment 3.

Page 1 of 3

Form Approved for Optional Use
Judicial Council of California
PLD-PI-001 [Rev. January 1, 2007]

**COMPLAINT—Personal Injury, Property
Damage, Wrongful Death**

Code of Civil Procedure, § 425.12
www.courtinfo.ca.gov
Westlaw Doc & Form Builder™

LIC0016745

Exhibit 15, Page 003

PLD-PI-001

| SHORT TITLE: CANDASA V. ROSEBURG FOREST PRODUCTS CO., et al. | CASE NUMBER: |
|---|---|

4. ☐ Plaintiff *(name):*

    is doing business under the fictitious name *(specify):*

    and has complied with the fictitious business name laws.

5. Each defendant named above is a natural person

  a. ☒ **except** defendant *(name):* Roseburg Forest Products
    (1) ☐ a business organization, form unknown
    (2) ☒ a corporation
    (3) ☐ an unincorporated entity *(describe):*

    (4) ☐ a public entity *(describe):*

    (5) ☐ other *(specify):*

  c. ☐ **except** defendant *(name):*
    (1) ☐ a business organization, form unknown
    (2) ☐ a corporation
    (3) ☐ an unincorporated entity *(describe):*

    (4) ☐ a public entity *(describe):*

    (5) ☐ other *(specify):*

  b. ☐ **except** defendant *(name):*
    (1) ☐ a business organization, form unknown
    (2) ☐ a corporation
    (3) ☐ an unincorporated entity *(describe):*

    (4) ☐ a public entity *(describe):*

    (5) ☐ other *(specify):*

  d. ☐ **except** defendant *(name):*
    (1) ☐ a business organization, form unknown
    (2) ☐ a corporation
    (3) ☐ an unincorporated entity *(describe):*

    (4) ☐ a public entity *(describe):*

    (5) ☐ other *(specify):*

  ☐ Information about additional defendants who are not natural persons is contained in Attachment 5.

6. The true names of defendants sued as Does are unknown to plaintiff.
  a. ☒ Doe defendants *(specify Doe numbers):* 1-5 _____ were the agents or employees of other named defendants and acted within the scope of that agency or employment.
  b. ☒ Doe defendants *(specify Doe numbers):* 6-10 _____ are persons whose capacities are unknown to plaintiff.

7. ☐ Defendants who are joined under Code of Civil Procedure section 382 are *(names):*

8. This court is the proper court because
  a. ☐ at least one defendant now resides in its jurisdictional area.
  b. ☐ the principal place of business of a defendant corporation or unincorporated association is in its jurisdictional area.
  c. ☐ injury to person or damage to personal property occurred in its jurisdictional area.
  d. ☒ other *(specify):* Plaintiff resides in San Francisco County. Defendant Roseburg Forest Products, Co. is a nonresident corporation that has not designated a principal place of business within California.

9. ☐ Plaintiff is required to comply with a claims statute, **and**
  a. ☐ has complied with applicable claims statutes, **or**
  b. ☐ is excused from complying because *(specify):*

PLD-PI-001 [Rev. January 1, 2007]

**COMPLAINT—Personal Injury, Property Damage, Wrongful Death**

Page 2 of 3

LIC0016746

PLD-PI-001

| SHORT TITLE: CANDASA V. ROSEBURG FOREST PRODUCTS CO., et al. | CASE NUMBER: |
|---|---|

10. The following causes of action are attached and the statements above apply to each *(each complaint must have one or more causes of action attached):*
   a. ☐ Motor Vehicle
   b. ☒ General Negligence
   c. ☐ Intentional Tort
   d. ☐ Products Liability
   e. ☐ Premises Liability
   f. ☐ Other *(specify):*

11. Plaintiff has suffered
   a. ☐ wage loss
   b. ☐ loss of use of property
   c. ☐ hospital and medical expenses
   d. ☒ general damage
   e. ☐ property damage
   f. ☐ loss of earning capacity
   g. ☒ other damage *(specify):* As the successor in interest to Decedent, Plaintiff is entitled to seek recovery for the pre-death pain and suffering experienced by Decedent prior to her death. Plaintiff additionally seeks wrongful death damages.

12. ☒ The damages claimed for wrongful death and the relationships of plaintiff to the deceased are
   a. ☒ listed in Attachment 12.
   b. ☐ as follows:

13. The relief sought in this complaint is within the jurisdiction of this court.

14. **Plaintiff prays** for judgment for costs of suit; for such relief as is fair, just, and equitable; and for
   a. (1) ☒ compensatory damages
      (2) ☐ punitive damages
      The amount of damages is *(in cases for personal injury or wrongful death, you must check (1)):*
      (1) ☒ according to proof
      (2) ☐ in the amount of: $

15. ☐ The paragraphs of this complaint alleged on information and belief are as follows *(specify paragraph numbers):*

Date: September 9, 2022

Russell Reiner
_____
(TYPE OR PRINT NAME)

▶ *Russell H* _____
(SIGNATURE OF PLAINTIFF OR ATTORNEY)

PLD-PI-001 [Rev. January 1, 2007]           **COMPLAINT—Personal Injury, Property
                                             Damage, Wrongful Death**                    Page 3 of 3

LIC0016747

PLD-PI-001(2)

| SHORT TITLE: CANDASA V. ROSEBURG FOREST PRODUCTS CO., et al. | CASE NUMBER: |
|---|---|

_____ FIRST _____   **CAUSE OF ACTION—General Negligence**   Page __4__
(number)

ATTACHMENT TO   [X] Complaint   [ ] Cross - Complaint

*(Use a separate cause of action form for each cause of action.)*

GN-1. Plaintiff *(name):* JOSELITO BERESO CANDASA, individually and as successor in interest to
Lorenza Mondoc Glover, deceased
alleges that defendant *(name):* ROSEBURG FOREST PRODUCTS, CO.; and

[X] Does ____1____ to ____10____

was the legal (proximate) cause of damages to plaintiff. By the following acts or omissions to act, defendant
negligently caused the damage to plaintiff
on *(date):* September 2, 2022
at *(place):* Weed, Siskiyou County, California

*(description of reasons for liability):*

On or about September 2, 2022, the Mill Fire destroyed over 100 homes in Siskiyou County and
killed at least two people, including Decedent. The Mill Fire began in Weed, California, in or around
a warehouse owned and operated by Defendants. Defendants negligently maintained and operated
the warehouse and adjacent property so as to create, cause, allow contribute to and assist in creating
a dangerous condition on the property.

The negligent operation and maintenance of its property was the proximate cause of the Mill Fire,
which escaped the bounds of the Roseburg Forest Products Co. property. As a result of the
negligence of Defendants, Decedent was exposed to and had to flee the fire causing her to suffer
personal injuries, serious emotional distress and ultimately death. Damages to the aforementioned
are in amounts which will the subject of proof at trial.

At all relevant times, Defendants and each of them knew or in the exercise of reasonable care should
have known, that they were not properly operating and maintaining their warehouse and adjacent
property such that it was likely to create and become a fire hazard and result in injury or death to
persons or property throughout the community. As a proximate result of Defendants' actions,
Decedent was killed and Plaintiff suffered injury. But for the actions of Defendants, Decedent would
not have been killed and Plaintiff would not have been injured.

Form Approved for Optional Use
Judicial Council of California
PLD-PI-001(2) [Rev. January 1, 2007]

**CAUSE OF ACTION—General Negligence**

Page 1 of 1
Code of Civil Procedure 425.12
www.courtinfo.ca.gov
Westlaw Doc & Form Builder™

LIC0016748

Exhibit 15, Page 006

MC-025

| SHORT TITLE: CANDASA V. ROSEBURG FOREST PRODUCTS CO ., et al. | CASE NUMBER: |
|---|---|

ATTACHMENT *(Number):* _____12_____

*(This Attachment may be used with any Judicial Council form.)*

RELATIONSHIP OF PLAINTIFF TO DECEASED

Plaintiff Joselito Bereso Candasa is the natural son of Decedent, Lorenza Mondoc Glover. Plaintiff is the successor-in-interest to Decedent as defined in Section 377.11 of the California Code of Civil Procedure. Attached to this Complaint as Exhibit 1 and incorporated herein by reference is the Declaration of Joselito Bereso Candasa per Section 377.32 of the California Code of Civil Procedure.

DAMAGES CLAIMED

This is a wrongful death and survivor action sounding in negligence against Defendants Roseburg Forrest Products, Co. and Does 1 through 10. Damages sought are as follows:

1.    WRONGFUL DEATH DAMAGES

As a direct, proximate, immediate, and foreseeable result of said conduct of Defendants, Plaintiff Joselito Bereso Candasa has been deprived of love, companionship, comfort, care, assistance, protection, affection, society, financial support, the loss of gifts and benefits, and moral support from his mother. As a further, direct, proximate, immediate and foreseeable result of the conduct of defendants, Plaintiff has incurred reasonable funeral and burial expenses, the exact amount of which will be subject to proof at the time of trial.

2.    SURVIVAL DAMAGES

On information and belief, Decedent Lorenza Mondoc Glover died while trying to escape the Mill Fire. On information and belief, she tried to escape via her vehicle, but there was too much smoke.

At or around the time of her death, Decedent was speaking to a neighbor on her cell phone, who had called to check on her wellbeing soon after the Mill Fire erupted. Decedent reported to her neighbor seeing smoke and was then heard gasping and grunting. The call then went dead.

On information and belief, Lorenza Mondoc Glover died due to exposure to fire and smoke.

Plaintiff alleges that prior to her death, Lorenza Mondoc Glover experienced significant pain, suffering and fear recoverable pursuant to Code of Civil Procedure 377.34 in an action brought

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page ___1___ of ___2___

*(Add pages as required)*

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

**ATTACHMENT**
**to Judicial Council Form**

www.courtinfo.ca.gov
Westlaw Doc & Form Builder™

LIC0016749

MC-025

SHORT TITLE: CANDASA V. ROSEBURG FOREST PRODUCTS CO
— ., et al.

CASE NUMBER:

ATTACHMENT (Number): _____ 12 _____
(This Attachment may be used with any Judicial Council form.)

by Decedent's successor in interest in an amount subject to proof at trial.

(If the item that this Attachment concerns is made under penalty of perjury, all statements in this
Attachment are made under penalty of perjury.)

Page ___2___ of ___2___
(Add pages as required)

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

**ATTACHMENT
to Judicial Council Form**

www.courtinfo.ca.gov
Westlaw Doc & Form Builder-

LIC0016750

Exhibit 15, Page 008

LAW OFFICES OF
**REINER, SLAUGHTER,
MAINZER & FRANKEL, LLP**
2851 Park Marina Drive, Suite 200
Post Office Box 494940
Redding, CA 96049-4940
(530) 241-1905
FAX (530) 241-0622

Russell Reiner, State Bar No. 84461
Todd E. Slaughter, State Bar No. 87753
Benjamin H. Mainzer State Bar No. 257748
Rick Lundblade, State Bar No. 220662
April K. Stratte, State Bar No. 290423

Attorneys for Plaintiff

**SUPERIOR COURT OR CALIFORNIA, COUNTY OF SAN FRANCISCO**

| | |
|---|---|
| JOSELITO BERESO CANDASA, individually and as successor in interest to Lorenza Mondoc Glover, deceased; | CASE NO. |
| Plaintiff, | **DECLARATION OF JOSELITO BERESO CANDASA** |
| vs. | |
| ROSEBURG FOREST PRODUCTS, CO.; and DOES 1 through 10, inclusive | |
| Defendants. | |

I, JOSELITO BERESO CANDASA, hereby declare as follows:

1. The Decedent's name is Lorenza Mondoc Glover. She was my mother.

2. Decedent died on September 2, 2022, in Siskiyou County, California.

3. No proceeding is now pending in California for administration of the Decedent's estate.

4. I am the Decedent's successor in interest (as defined in Section 377.11 of the California Code of Civil Procedure) and succeed to the Decedent's interest in this action.

DECLARATION OF JOSELITO BERESO CANDASA   EXHIBIT 1                     PAGE 1

LIC0016751

5.      No other person has a superior right to commence the action or to be substituted for the Decedent in the pending action.

6.      A copy of Decedent's death certificate is attached as **Exhibit A**.

I declare under penalty of perjury of the laws of the State of California that the foregoing is true and correct.

Executed this ___9th___ day of September, 2022, at ___Weed___, California.

Joselito Candasa (Sep 9, 2022 14:41 PDT)

JOSELITO BERESO CANDASA

DECLARATION OF JOSELITO BERESO CANDASA                                    PAGE 2

LIC0016752

Exhibit 15, Page 010

**CERTIFICATE OF DEATH**
STATE OF CALIFORNIA

| | | | |
|---|---|---|---|
| 1. NAME OF DECEDENT-FIRST (Given) | 2. MIDDLE | 3. LAST (Family) | |
| LORENZA | MONDOC | GLOVER | |

| AKA, ALSO KNOWN AS – Include full AKA (FIRST, MIDDLE, LAST) | 4. DATE OF BIRTH mm/dd/ccyy | 5. AGE Yrs. | 6. SEX |
| BOHOL | 09/27/1956 | 65 | F |

| 9. BIRTH STATE/FOREIGN COUNTRY | 10. SOCIAL SECURITY NUMBER | 11. EVER IN U.S. ARMED FORCES? | 12. MARITAL STATUS/SDDP at time of death | 7. DATE OF DEATH mm/dd/ccyy | 8. HOUR (24 Hours) |
| PHILIPPINES | 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 | YES [X] NO | WIDOWED | 09/02/2022 | 1602 |

| 13. EDUCATION | 14/15. WAS DECEDENT HISPANIC/LATINO/A/SPANISH? | 16. DECEDENT'S RACE | | |
| 08 | YES [X] NO | FILIPINO | | |

| 17. USUAL OCCUPATION – Type of work for most of life. DO NOT USE RETIRED. | 18. KIND OF BUSINESS OR INDUSTRY (e.g., grocery store, road construction, employment agency, etc.) | 19. YEARS IN OCCUPATION |
| HOUSEKEEPER | HOTEL | 5 |

| 20. DECEDENT'S RESIDENCE (Street and number, or location) | | | |
| 1506 WAKEFIELD AVE | | | |
| 21. CITY | 22. COUNTY/PROVINCE | 23. ZIP CODE | 24. YEARS IN COUNTY | 25. STATE/FOREIGN COUNTRY |
| WEED | SISKIYOU | 96094 | 26 | CA |

| 26. INFORMANT'S NAME, RELATIONSHIP | 27. INFORMANT'S MAILING ADDRESS |
| JOSELITO CANDASA, SON | 1276 MARKET STREET, SAN FRANCISCO, CA 94102 |

| 28. NAME OF SURVIVING SPOUSE/SDDP–FIRST | 29. MIDDLE | 30. LAST (Given name) | |
| | | | |
| 31. NAME OF FATHER/PARENT–FIRST | 32. MIDDLE | 33. LAST | 34. BIRTH STATE |
| JOSE | | BERESO | PHILLIPINES |
| 35. NAME OF MOTHER/PARENT–FIRST | 36. MIDDLE | 37. LAST (Birth name) | 38. BIRTH STATE |
| RUFINA | | MONDOC | PHILLIPINES |

| 39. DISPOSITION DATE mm/dd/ccyy | 40. PLACE OF FINAL DISPOSITION | | |
| 09/16/2022 | NORTHERN VETERAN CEMETERY 11800 GAS POINT RD, REDDING, CA 96003 | | |

| 41. TYPE OF DISPOSITION(S) | 42. SIGNATURE OF EMBALMER | 43. LICENSE NUMBER |
| CREMATE/BURIAL | ▶ NOT EMBALMED | – |
| 44. NAME OF FUNERAL ESTABLISHMENT | 45. LICENSE NUMBER | 46. SIGNATURE OF LOCAL REGISTRAR | 47. DATE mm/dd/ccyy |
| MOUNT SHASTA MEMORIAL CHAPEL | FD156 | | |

| 101. PLACE OF DEATH | | | |
| STREET | | | |
| 103. COUNTY | 103a. FACILITY ADDRESS OR LOCATION WHERE FOUND (Street and number, or location) | | 104. CITY |
| SISKIYOU | WAKEFIELD AVENUE | | WEED |

| 107. CAUSE OF DEATH | | |
| IMMEDIATE CAUSE (Final disease or condition resulting in death) | (a) PENDING CARBOXYHEMOGLOBIN LEVEL | |
| Sequentially list conditions, if any, leading to cause on line (a). | (b) | |
| CAUSE (Disease or injury that initiated events resulting in death) LAST | (c) | |
| | (d) | |

| 111. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN 107 |
| NONE |

| 112. WAS OPERATION PERFORMED FOR ANY CONDITION IN ITEM 107 OR 111? (If yes, list type of operation and date.) |
| NO |

| PRINTED ON: 09/09/2022 12:56 PM BY ROBISON, TRAVIS (TMROBISON) | FAX AUTH# | CENSUS TRACT |

EXHIBIT A

LIC0016753

# Declaration of Joselito Bereso Candasa
Final Audit Report                                                                        2022-09-09

| | |
|---|---|
| Created: | 2022-09-09 |
| By: | LINDA SCOUBES (LSCOUBES@REINERSLAUGHTER.COM) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAcTiOf8dtJuETd2xp1YgnpoKnT1pwgurd |

## "Declaration of Joselito Bereso Candasa" History

📑 Document created by LINDA SCOUBES (LSCOUBES@REINERSLAUGHTER.COM)
  2022-09-09 - 9:29:15 PM GMT- IP address: 47.27.248.118

📤 Document emailed to joefris28@msn.com for signature
  2022-09-09 - 9:30:33 PM GMT

📑 Email viewed by joefris28@msn.com
  2022-09-09 - 9:39:08 PM GMT- IP address: 173.255.100.162

✍ Signer joefris28@msn.com entered name at signing as Joselito Candasa
  2022-09-09 - 9:41:17 PM GMT- IP address: 172.58.37.209

✍ Document e-signed by Joselito Candasa (joefris28@msn.com)
  Signature Date: 2022-09-09 - 9:41:18 PM GMT - Time Source: server- IP address: 172.58.37.209

✅ Agreement completed.
  2022-09-09 - 9:41:18 PM GMT

 Adobe Acrobat Sign

EXHIBIT 16

EXHIBIT 16

EXHIBIT 16

**Sent:**      9/22/2022 4:52:12 PM
**To:**        David Bona [dbona@ccplaw.com]
**Subject:**   RE: Mill Fire: Roseburg facility inspection

**SARAH KAUFMAN**
Sr Tech Claims Specialist II
Central West Region Complex

Liberty Mutual Insurance | Helmsman Management Services
Milwaukee, WI
Office: 414-290-4484

How are we doing?                          Send us a document

The information contained in this email message and any attachments to this message are confidential and may be privileged or constitute attorney work product. If you are not the intended recipient, please (1) notify me immediately by replying to this message or calling 414-290-4484, (2) do not use, disseminate, distribute or reproduce any part of the message or any attachment, and (3) destroy all copies of this message and attachments. A copy of our privacy notice can be obtained at our Privacy Policy website.

**From:** David Bona <dbona@ccplaw.com>
**Sent:** Thursday, September 22, 2022 11:27 AM
**To:** Kaufman, Sarah <SARAH.KAUFMAN@LibertyMutual.com>
**Subject:** {EXTERNAL} RE: Mill Fire: Roseburg facility inspection

Sarah,
It should not be an issue.  I will confer with Abid and get back to you shortly.

**From:** Kaufman, Sarah [mailto:SARAH.KAUFMAN@LibertyMutual.com]
**Sent:** Thursday, September 22, 2022 7:58 AM
**To:** David Bona
**Subject:** FW: Mill Fire: Roseburg facility inspection
**Importance:** High

David,

Where are we on getting our experts lined up?  Can we make the dates below work?

Let me know if you want to discuss.

Thanks,

**SARAH KAUFMAN**
Sr Tech Claims Specialist II
Central West Region Complex

Liberty Mutual Insurance | Helmsman Management Services
Milwaukee, WI
Office: 414-290-4484

How are we doing?                          Send us a document

The information contained in this email message and any attachments to this message are confidential and may be privileged or constitute attorney work product. If you are not the intended recipient, please (1) notify me immediately by replying to this message or calling 414-290-4484, (2) do not use, disseminate, distribute or reproduce any part of the message or any attachment, and (3) destroy all copies of this message and attachments. A copy of our privacy notice can be obtained at our Privacy Policy website.

**From:** Dow, Dustin M. <ddow@bakerlaw.com>
**Sent:** Thursday, September 22, 2022 9:46 AM
**To:** Kaufman, Sarah <SARAH.KAUFMAN@LibertyMutual.com>; Keahey, Holly <HOLLY.KEAHEY@LibertyMutual.com>; melisa.thompson@Markel.com; drothman@chubb.com; Ryan.Gaffney@everestre.com; Faddis, Christopher <Christopher.Faddis@LibertyMutual.com>; vincent.sweeney@awac.com
**Cc:** Chairez, Joseph <jchairez@bakerlaw.com>; Bator, Chris <CBator@bakerlaw.com>; Divok, Eva <edivok@bakerlaw.com>; Petre, Timothy P. <tpetre@bakerlaw.com>; Julian, Robert <rjulian@bakerlaw.com>
**Subject:** {EXTERNAL} Mill Fire: Roseburg facility inspection

*Re:*
*Insured: Roseburg Forest Products Co. (subsidiary of RLC Industries Co.)*
*Liability Claim: "Mill Fire"*
*Date of Loss: September 2, 2022*
*Policies: --Liberty Mutual primary CGL No. TB7-661-067089-031 (11-1-21 to 11-1-22), Liberty Claim No. P 413-291000; Markel Commercial Umbrella No. MKLM6MM70000398 (11-1-21 to 11-1-22); Chubb/Federal Insurance Co. Commercial Excess No. 7819-50-57 (11-1-21 to 11-1- 22), Chubb Claim No. 076922029278; Allied World Excess Liability No. 0311-5913 (11-1-21 to 11-1-22), Allied World Claim No. 2022021688; Everest National Commercial Excess No. XC2EX00126-211 (11-1-21 to 11-1-22); Liberty Mutual Excess Liability No. ECO (22) 60 07 79 06 (11-1-21 to 11-1-22), claim No. 24056967*

Dear Insurance Carriers:

We previously advised you of Cal Fire's inspection of Roseburg's Weed, California facility scheduled for Thursday, September 22 and Friday, September 23 as part of Cal Fire's investigation of the Mill Fire.

We are writing in this letter to advise you that the equipment at Roseburg's Weed, California facility will remain in the condition it will be in following Cal Fire's inspection until October 6, at which time Roseburg anticipates preparing the facilities to return to operation.  This may include modifying, moving, and possibly dismantling equipment, cleaning up the burn site and restarting equipment for operation. Accordingly, Roseburg hereby invites interested parties, including Roseburg's insurance carriers, to inspect the equipment during the week of October 3.

Time is of the essence as Roseburg anticipates that facility production will resume the at the end of the week on October 7, 2022. The inspection invitation will remain open until September 30, 2022 and will be subject to an inspection protocol to be agreed upon in advance. If any carriers would like to participate in an inspection of the subject equipment, please contact us to coordinate a mutually convenient date and time between October 3 and October 6.

Thank you for your attention and cooperation in the matter.  We look forward to hearing from you.

--Dustin Dow

**Dustin Dow**
Partner

**BakerHostetler**
Key Tower
127 Public Square | Suite 2000
Cleveland, OH 44114-1214
T +1.216.861.7098
M +1.513.290.2345

LIC_0025781

ddow@bakerlaw.com
bakerlaw.com



This email is intended only for the use of the party to which it is
addressed and may contain information that is privileged,
confidential, or protected by law. If you are not the intended
recipient you are hereby notified that any dissemination, copying
or distribution of this email or its contents is strictly prohibited.
If you have received this message in error, please notify us immediately
by replying to the message and deleting it from your computer.

Any tax advice in this email is for information purposes only. The content
of this email is limited to the matters specifically addressed herein
and may not contain a full description of all relevant facts or a
complete analysis of all relevant issues or authorities.

Internet communications are not assured to be secure or clear of
inaccuracies as information could be intercepted, corrupted, lost,
destroyed, arrive late or incomplete, or contain viruses. Therefore,
we do not accept responsibility for any errors or omissions that are
present in this email, or any attachment, that have arisen as a result
of e-mail transmission.

LIC_0025782

# EXHIBIT 17

# EXHIBIT 17

# EXHIBIT 17

Message

---

| | |
|---|---|
| **From:** | Kaufman, Sarah [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=48109347E6F24467B4543F8D692501AB-KAUFMAN, SA] |
| **Sent:** | 9/22/2022 2:31:59 PM |
| **To:** | Chairez, Joseph [jchairez@bakerlaw.com] |
| **CC:** | Steven Hurley [Steven.Hurley@alliant.com] |
| **Subject:** | P 413-291000-01 Roseburg Forest Products Co - Reservation of Rights |
| **Attachments:** | Reservation of Rights Roseburg Forest Products.pdf |

Good Evening,

Please see the enclosed letter which is also being sent via certified mail.

Thank you,

**SARAH KAUFMAN**
Sr Tech Claims Specialist II
Central West Region Complex

Liberty Mutual Insurance | Helmsman Management Services
Milwaukee, WI
Office: 414-290-4484

> How are we doing?

> Send us a document

The information contained in this email message and any attachments to this message are confidential and may be privileged or constitute attorney work product. If you are not the intended recipient, please (1) notify me immediately by replying to this message or calling 414-290-4484, (2) do not use, disseminate, distribute or reproduce any part of the message or any attachment, and (3) destroy all copies of this message and attachments. A copy of our privacy notice can be obtained at our Privacy Policy website.

LIC0016871



**Sarah Kaufman**
Senior Technical Claims Specialist II
Sarah.Kaufman@LibertyMutual.com
414-290-4484

September 22, 2022

**VIA U.S. MAIL AND EMAIL**

Joseph L. Chairez
Baker & Hostetler LLP
600 Anton Boulevard
Suite 900
Costa Mesa, CA 92626-7221
jchairez@bakerlaw.com

Re:    *Smith v. Roseburg Forest Products Co.*
       Siskiyou County Superior Court Case No. CV PO 22-951

       *Hammond v. Roseburg Forest Products Co.*
       Sacramento County Superior Court Case No. 34-2022-00326413-CU-NP-GDS

       *Candasa v. Roseburg Forest Products Co.*
       San Francisco County Superior Court Case No. CGC-22-601752

       Insured:        Roseburg Forest Products Co. (a subsidiary of RLC Industries Co.)
       Claim No.       P 413-291000
       Policy No.      TB7-661-067089-031 (11/01/2021-11/01/2022)
       Company:        Liberty Insurance Corporation
       Date Of Loss: September 2, 2022

Dear Mr. Chairez:

This letter responds to Roseburg Forest Products Company's ("Roseburg") tender of defense and indemnity to Liberty Insurance Corporation ("Liberty," "us," or "we") of the above-referenced lawsuits (collectively "Lawsuits"), which name Roseburg as a defendant. This letter provides our coverage position with regard to the Lawsuits. As more fully described in this letter, we will defend Roseburg in the Lawsuits under the captioned policy, subject to a limited reservation of rights.

Liberty issued policy number TB7-661-067089-031 to First Named Insured RLC Industries Co., effective November 1, 2021 to November 1, 2022. As a wholly owned subsidiary of RLC Industries Co., Roseburg is an insured under the Policy. The Policy was in effect at the time of the September 2, 2022 fire giving rise to the Lawsuits. The Policy affords General Liability Coverage, as modified by the Logger's Property Damage Liability Endorsement, that potentially applies to the Lawsuits. Based on the information received to date, Liberty will provide a defense under the modified General Liability Coverage form.

To date, only the *Hammond* Plaintiffs have alleged punitive damage claims against Roseburg. Liberty will not indemnify Roseburg against any punitive damage claims a jury may award in the *Hammond*

1



LIC0016872

Lawsuit, or any other future punitive damage claims asserted against Roseburg, as punitive damages are not insurable under California law.

In addition, the Policy contains a Condition that precludes coverage for payments Roseburg makes, obligations it may assume, or expenses it may incur voluntarily, without Liberty's consent. We understand Roseburg has asked Liberty to contribute toward Roseburg's $50 million "Community Relief Fund," and that Roseburg has already paid, or committed to pay, over $500,000 toward approximately 225 claims. Liberty reserves the right to decline coverage for Roseburg's payments to Relief Fund recipients under the "no voluntary payment" provision of the policy, since it is still reviewing Roseburg's request. In addition, it appears that the claimants seek reimbursement for expenses that may not constitute covered damages under the Policy and/or without offering a release of all claims against all insureds under the Policy. Finally, please note that Liberty will not pay fees and/or costs Roseburg incurs and pays for AlixPartners' services as the claim administrator.

Liberty bases this explanation of its coverage position and reservation of rights on its current understanding of the Plaintiffs' claims in the Lawsuits.

## THE LAWSUITS

On Roseburg's behalf, you have tendered three lawsuits to Liberty to date. The Lawsuits against Roseburg arise from a fire that occurred on September 2, 2022, in Weed, California (the "Fire"). The Fire is alleged to have begun in or around a warehouse that Roseburg owned and operated as part of its veneer mill manufacturing facility (the "Mill"). The Fire spread to the Lincoln Heights neighborhood near the Mill, destroyed over 100 homes, and killed at least two people. All of the Lawsuits allege that Roseburg negligently maintained and operated the warehouse, and created a dangerous condition that allowed the Fire to expand past the boundaries of Roseburg's property and into the Lincoln Heights neighborhood.

### The Smith Lawsuit

On September 6, 2022, Tim Smith filed a Complaint against Roseburg in the Superior Court of California, County of Siskiyou, Case No. CV PO 22-951. Smith alleges a single cause of action for Negligence.

Smith alleges that he had to flee the fire, causing him to suffer "personal injuries and serious emotional distress as well as property damage." Smith alleges he has been displaced from his home. Smith seeks compensatory damages for loss of use of his property, property damage, general damages (including the cost to demolish and remove debris from his property) and "double or treble damages to trees."

### The Hammond Lawsuit

On September 8, 2022, Nichole Hammond, Shayne Hammond, Kalee Hammond, and Ciarra and Shayne Hammond (both minors, through their Guardian ad Litem Nichole Hammond) filed a Complaint against Roseburg in the Superior Court of California, County of Sacramento, Case No. 34-2022-00326413-CU-NP-GDS.

The Hammonds allege causes of action for Trespass, Negligence, Private Nuisance and Public Nuisance. The Hammonds claim that, as a result of the Mill Fire, they have suffered economic and non-economic damages, including, but not limited to, destruction of and/or damage to real and personal

2



LIC0016873

property and cherished possessions, loss of use and quiet enjoyment of real and personal property, discomfort, annoyance, inconvenience, anxiety, fear, mental anguish, stress and emotional distress. The Hammonds seek general and special damages, loss of use of their property, loss of wages, evacuation expenses and alternate living expenses, erosion damage, past and future medical expenses and incidental expenses, personal injury damages, attorneys' fees, prejudgment interest, and punitive damages on all causes of action.

**The Candasa Lawsuit**

On September 13, 2022, Joselito Bereso Candasa filed a Complaint against Roseburg in the Superior Court of California, County of San Francisco, Case No. CGC-22-601752.

Candasa alleges a single cause of action for Negligence. Candasa alleges that his mother, Lorenza Glover, had to flee the fire, and died in her vehicle while trying to escape. Candasa seeks damages not only on his own behalf under a wrongful death claim, but also on his mother's behalf under a survival claim.

The above information summarizes the allegations in the Lawsuits. Please refer to the Lawsuits for the complete allegations. By referring to the allegations in the Lawsuits, Liberty is not contending that such allegations are true.

## OTHER INFORMATION

On September 7, 2022, you advised us that Roseburg issued a press release announcing the creation of a $50 million "Community Relief Fund" to aid Weed residents impacted by the fire. According to the press release, Roseburg established the fund to assist residents with temporary shelter, medical supplies and treatment, transportation, clothing, food and water, and child care/day care services.

After Roseburg issued the press release, you sent Liberty a letter asking for its "consent and participation in a proposed claims-funding and administration process described in the attached press release issued this morning." We are considering Roseburg's request, but have not yet provided our consent.

We understand that, as of September 19, 2022, Roseburg has paid, or has committed to pay, 225 claims, totaling $514,035.00.

## THE POLICY

Liberty issued the following Commercial General Liability policy to RLC Industries Co. (the "First Named Insured"):[1]

| | |
|---|---|
| Policy Number: | TB7-661-067089-031 |
| Effective Dates: | 11/01/2021 to 11/01/2022 |
| Stated Limits: | |

---

[1]    Please refer to the Policy for original font and format. Should the quotation of Policy wording in this letter contain any typographical or formatting error(s), the actual Policy wording and formatting controls.

3



$2,000,000   Per Occurrence Limit for Bodily Injury and Property Damage
$2,000,000   Personal and Advertising Injury Limit
$4,000,000   General Aggregate Limit
$4,000,000   Products-Completed Operations Aggregate Limit

The Policy also schedules a $250,000 per occurrence deductible.

Roseburg Forest Products Co. is a wholly owned subsidiary of RLC Industries, and is also an insured pursuant to the "Broad Form Named Insured – Majority Interest" endorsement in the Policy.

The Policy includes Coverage Form CG 00 01 04 13 (the "Coverage Form"). It also includes "Commercial General Liability Enhancement Form for Manufacturers" Form LC 04 46 01 17 (the "Enhancement Form").

The Policy also includes Logger's Property Damage Liability Endorsement Form LD 04 16 07 11 (the "Logger's Endorsement"). The Logger's Endorsement schedules a $2 million "logger's each occurrence limit" and $4 million "logger's property damage aggregate limit."

**The CGL Coverage Form**

On page 1 of the CGL Coverage Form, it states, in part:

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.  **Insuring Agreement**

    a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        (1)   The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

        (2)   Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

        1.   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B.**

    b.   This insurance applies to "bodily injury" and "property damage" only if:

        (1)   The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        (2)   The "bodily injury" or "property damage" occurs during the policy period; . . .

4



The CGL Coverage Form contains the following definitions:

3.    "Bodily injury" means:[2]

   a.    Bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time;

   b.    Mental anguish, shock or humiliation arising out of injury as defined in Paragraph a. above.  Mental anguish means any type of mental or emotional illness or distress.

*        *        *

13.    "Occurrence" means:[3]

   a.    With respect to "bodily injury" or "property damage", an accident, including continuous or repeated exposure to substantially the same general harmful conditions…

*        *        *

17.    "Property damage" means:

   a.    Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it: or

   b.    Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it. . . .

On page 10 of the Coverage Form, it states, in part:

**SECTION III – LIMITS OF INSURANCE**

1.    The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a.    Insureds;

   b.    Claims made or "suits" brought; or

   c.    Persons or organizations making claims or bringing "suits".

On page 11 of the Coverage Form, it states, in part:

---

[2]    The definition of "bodily injury" is amended by the Enhancement Form.
[3]    The definition of "occurrence" is amended by Form LC 29 06 08 08.

---

5



LIC0016876

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

2.    Duties In The Event Of Occurrence, Offense, Claim Or Suit

*     *     *

d.    No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**<u>The Logger's Endorsement</u>**

Among other things, the Logger's Endorsement adds a "property damage" exclusion to the CGL Coverage Form and provides exceptions to that exclusion, in part, as follows:

The following exclusion is added to Paragraph 2. Coverage A (Section I):

This insurance does not apply to "property damage" for which coverage is provided under Logger's Property Damage Liability Coverage.

The following coverage is added to Section I - Coverages:

**LOGGER'S PROPERTY DAMAGE LIABILITY COVERAGE**

1.    **Insuring Agreement:**

a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "logger's property damage" to which this insurance applies arising out of "your logging and lumbering operations". We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1)    The amount we will pay for damages is limited as described in Section III – Limits of Insurance; and

(2)    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under the Logger's Property Damage Liability Coverage.

As used above, damages because of "logger's property damage" includes "fire fighting expenses" resulting from "your logging and lumbering operations" only if no "forester" has suspended these operations.

Supplementary Payments - Coverages A and B shall apply to the Logger's Property Damage Liability Coverage. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

b.    This insurance applies to "logger's property damage" only if:

6



LIC0016877

Exhibit 17, Page 007

(1) The "logger's property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "logger's property damage" occurs during the policy period; and

(3) The "logger's property damage" arises out of "your logging and lumbering operations" performed pursuant to a written contract for a Designated Customer listed in the Schedule.

* * *

3. The following changes apply to Section III – Limits of Insurance:

 a. The following is added to Paragraph 2.

  2. The General Aggregate Limit is the most we will pay for the sum of:

   d. Damages under the Logger's Property Damage Liability Coverage.

 b. The following paragraphs are added:

  8. The Logger's Property Damage Aggregate Limit shown in the Schedule is the most we will pay for the sum of all damages because of "logger's property damage".

  9. Subject to 2. and 8. above, the Logger's Each Occurrence Limit shown in the Schedule is the most we will pay for all damages because of "logger's property damage" arising out of any one "occurrence".

 c. You are responsible, up to the Deductible Amount shown above, for the total of:

  (1) all damages, including amounts paid in settlement of a claim or "suit", plus

  (2) all "allocated loss adjustment expense";

because of all "property damage" as the result of any one "occurrence". We are responsible for those amounts of damages to which this insurance applies (subject to the applicable limits of insurance) and "allocated loss adjustment expense" that exceed the applicable deductible amount shown above.

The Logger's Each Occurrence Limit and the Logger's Property Damage Aggregate Limit shown in the Schedule shall be reduced by amounts paid or payable by you within the deductible amount.

We have the right to advance any part or all of the deductible to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible as has been advanced by us. Exercise of our right to advance such amount shall not create any obligations or be construed as a waiver or estoppel of our rights under this policy.

7



LIC0016878

Exhibit 17, Page 008

4. **Additional Definitions**

   a.    "Your logging and lumbering operations" means logging, the felling and bucking of timber, log road building, sawmilling, planning, plywood, veneer, pulp or paper milling, and all operations necessary or incidental to logging including railroading or trucking of felled trees or timber, maintenance of logging campsites, and the ownership, management, or reforestation of timberlands by you or on your behalf.

   b.    "Logger's property damage" means:

      (1)    physical injury to any "vehicle" or railroad rolling stock while being loaded or unloaded including all resulting loss of use; and

      (2)    "property damage" due to fire resulting from "your logging and lumbering operations" including physical injury to timberlands, standing timber, felled or bucked timber, owned by others.

   c.    "Vehicle," as used in the Logger's Property Damage Liability Coverage means any land motor vehicle, trailer or semi-trailer.

   d.    "Fire fighting expenses" means your portion of the actual cost incurred by others in controlling or extinguishing a fire. It does not include your expenses for your "employees", or others you may hire to fulfill your obligation to use a reasonable effort, to control or extinguish a fire.

   e.    "Forester" means a federal or state forester, including any of his or her authorized representatives.

   f.    "Allocated loss adjustment expense" includes, but is not limited to:

      (1)    Attorneys' fees for claims in "suit";

      (2)    Court costs and other items of expense such as:

         (a)    costs for medical, expert and other witnesses at trials or hearings, stenographic costs and costs of copies of documents and transcripts; and

         (b)    medical, expert, or consultant fees and expenses relating to the defense of any claim or "suit"; and

      (3)    Any other expense described in Supplementary Payments – Coverages A and B.

The Policy is incorporated by reference into this letter in its entirety. Although we have attempted to include all of the Policy provisions that we believe are pertinent to the instant determination, the Policy provisions set forth above in no way replace the provisions of the actual Policy issued. If you have any questions regarding the terms, definitions, conditions, endorsements and/or limits of liability contained in the applicable Policy, you should refer to the Policy itself. To the extent there is any discrepancy between this letter and the Policy, the Policy controls.



LIC0016879

### LIBERTY'S COVERAGE POSITION

Subject to all of its terms, conditions, and limitations, the Policy covers Roseburg's liability for "bodily injury" or "property damage" caused by an "occurrence." The Lawsuits do not fully describe the Plaintiffs' injuries. Therefore, to the extent, if any, that the Plaintiffs seek damages that fall outside the scope of the Policy's insuring provisions, either under the Coverage Form or the Logger's Endorsement, Liberty reserves the right to decline coverage.

Plaintiffs in the *Hammond* Lawsuit seek punitive damages on all causes of action. In California, by law, an insurer cannot indemnify its insureds for punitive damages. Liberty therefore declines to indemnify Roseburg against the *Hammond* Plaintiffs' punitive damage claims.

In light of these coverage issues, Liberty reserves its right to disclaim coverage for some of the damages that might be awarded against Roseburg in the Lawsuits. Liberty does not believe that its limited reservation of rights creates a disqualifying conflict of interest for an attorney retained by it to defend Roseburg against the Lawsuits. Therefore, Liberty has retained David Bona of Carlson, Calladine & Peterson, LLP, 275 Battery street, 16th Floor, San Francisco, California, 94111, (415) 391-3911 to represent Roseburg at this time.

Liberty reserves its right to withdraw from Roseburg's defense upon reasonable notice, including, but not limited to the point at which Liberty has exhausted all applicable policy limits by payment of covered claims. Additionally, Liberty reserves the right to seek reimbursement from Roseburg for attorneys' fees and costs that it may incur solely in the defense of claims not potentially covered under any coverage parts of the Policy, and/or any indemnity payment it may make, to the full extent permitted by law. Liberty will not pay for legal fees and costs unrelated to Roseburg's defense of the claims and/or the current Lawsuits and/or any future lawsuits arising from the Fire.

Finally, on a more general note, Liberty reserves its right to decline reimbursement to Roseburg for payments that Roseburg has made or will make to claimants through its $50 million "Community Relief Fund." As set forth above, the Policy contains a provision in Section IV – Commercial General Liability Conditions, that bars policy benefits to an insured that makes any payments, assumes any obligations, or incurs any expense without Liberty's consent. At this time, Liberty is unable to consent to Roseburg's payments toward the Relief Fund or to Relief Fund recipients until it has had an opportunity to review and consider the basis and/or reasonableness of those payments. In addition, we have reviewed the spreadsheet detail that you provided to us on September 20, 2022, regarding the first 225 (approximate) claims for which Roseburg appears to have paid, or committed to pay, over $500,000. We note that many of the claimed costs may not be covered under the policy as covered damages (for example, temporary housing, meals, business losses, or where there is no description of the claimed loss). Thus, Liberty reserves its right to decline reimbursement to Roseburg or payment toward the Community Relief Fund to the extent those payments would not be for covered damages under the Policy, are otherwise unreasonable, and/or where Relief Fund recipients do not offer a release of all claims against Roseburg and all insureds under the Policy. As noted above, Liberty will not pay fees and/or costs Roseburg incurs and pays for AlixPartners' services as the claim administrator for the Relief Fund.

### CONCLUSION

The above discussions of applicable and potentially applicable provisions of the Policy, are based upon Liberty's current understanding of the claims asserted against Roseburg and the nature of the damages

9



LIC0016880

or other relief sought. It is not an inclusive list of all potentially applicable provisions of the Policy. Liberty may amend its position, its reservation of rights, or its declination as its investigation proceeds, and/or after other claimants file future lawsuits. Additional investigation may provide new or different information bearing on the Policy and questions of coverage, and Liberty may choose to rely on such other information to modify its coverage position and/or reservation of rights, including, but not limited to, additional grounds upon which to deny, reject, or decline coverage. <u>Liberty is not waiving any of its rights to rely upon any other provision in the Policy, or any other policy, or under the law</u>.

If you and/or any party seeking coverage believes this claim, or any part of this claim, has been wrongfully denied or rejected, you/they may contact the following State of California agency:

California Department of Insurance
Consumer Services Division
300 South Spring Street
Los Angeles, California 90013
1-800-927-HELP or (213 )897-8921
www.insurance.ca.gov

We trust that Liberty's coverage position, as outlined here, and its limited reservation of rights is clear, but we welcome any questions you may have. Also, if you believe Liberty's understanding of the facts set forth above is inaccurate, please let us know at your earliest opportunity. As always, Liberty welcomes receipt of any additional information you believe bears on any of the coverage issues discussed above.

Sincerely

Sarah Kaufman
Senior Technical Claims Specialist II
Central West Region Complex
Liberty Mutual Insurance | Helmsman Management Services
Office: 414-290-4484
sarah.kaufman@libertymutual.com

10



LIC0016881

Exhibit 17, Page 011

EXHIBIT 18

EXHIBIT 18

EXHIBIT 18

Message

| | |
|---|---|
| **From**: | David Bona [dbona@ccplaw.com] |
| **Sent**: | 9/27/2022 4:38:54 PM |
| **To**: | Kaufman, Sarah [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=48109347e6f24467b4543f8d692501ab-Kaufman, Sa] |
| **Subject**: | {EXTERNAL} RE: RLC |
| **Attachments**: | David Bona CV.PDF; David Bona Bio.pdf |

Sarah,

I got back to the office and located my CV. I also attached the bio so you have them both in one place. Let me know if you need anything else or have any questions.

---

**From:** Kaufman, Sarah [mailto:SARAH.KAUFMAN@LibertyMutual.com]
**Sent:** Tuesday, September 27, 2022 1:36 PM
**To:** David Bona
**Subject:** RLC

Hi David,

Can you please send me your CV and Bio for RLC.

Thanks,

**SARAH KAUFMAN**
Sr Tech Claims Specialist II
Central West Region Complex

Liberty Mutual Insurance | Helmsman Management Services
Milwaukee, WI
Office: 414-290-4484

How are we doing?            Send us a document

The information contained in this email message and any attachments to this message are confidential and may be privileged or constitute attorney work product. If you are not the intended recipient, please (1) notify me immediately by replying to this message or calling 414-290-4484, (2) do not use, disseminate, distribute or reproduce any part of the message or any attachment, and (3) destroy all copies of this message and attachments. A copy of our privacy notice can be obtained at our Privacy Policy website.

LIC0016891

**A. David Bona**
275 Battery Street, Suite 1600
San Francisco, California 94111
Office: (415) 391-9857    Cell: (415) 218-4156
dbona@ccplaw.com

## SUMMARY OF QUALIFICATIONS

Skilled attorney with over 20 years of experience defending clients in high-exposure, complex litigation involving wildland fires, floods, complex equipment failures, catastrophic injury and wrongful death in both State and Federal Court. Routinely handles mass-tort cases involving thousands of plaintiffs in California, Texas and other states. Clients include companies in the electrical utility, vegetation management, telecommunications, construction and manufacturing industries. Manages all aspects of multi-party, complex litigation, including e-discovery, technical and scientific subject matters and evidence, binding arbitration, alternative dispute resolution and multiple trials

## LEGAL EXPERIENCE

**Carlson Calladine & Peterson**, San Francisco, CA                    October 2007 - Present
Senior Associate (2007-2011); Partner (2011-Present)

Responsible for managing all aspects of defense-side, high-exposure, complex litigation, including wildland fires, floods, equipment failures, catastrophic injury and wrongful death. Defends contractors and electrical utilities in multi-million dollar wildland fire litigation in numerous states. Assist clients in vegetation management, telecommunication and construction industries with developing and implementing fire mitigation plans and procedures. Extensive experience in all aspects of wildfire claims including electrical engineering, metallurgy, fire behavior and fire progression and evaluating wildfire damages, including residential and business losses, environmental harm and economic valuation of environmental and habitat damage. Trial counsel/Co-lead trial counsel in numerous multi-party cases, most lasting over a month including: (1) Defending a California State Agency against claims brought by businesses, land owners and other individuals for losses allegedly stemming from the partial collapse of a Dam's main spillway; (2) Defending an engineering, procurement, and construction contractor in a trial involving a fire that ignited during construction of a pipeline; (3) Defending a construction contractor against wildfire claims for a fire that ignited during a construction project.

**Lyddan Law Group**, San Francisco, CA                    April 2006 - October 2007
Associate

Asked to join firm started in April 2006 by Jeffrey Lyddan, former Chair of Tort & Trial Litigation Practice Group at Carroll, Burdick & McDonough. Involved in all aspects of trial, trial preparation and pretrial litigation. Take, defend, and prepare dozens of fact, client and expert witnesses for depositions. Prepare and conduct direct and cross-examination of 10-15 witnesses during the liability and damages phases of complex multi-party trials and actively second-chairing a six-week wrongful death trial. Retain experts, prepare evidence and exhibits, and prepare jury instructions and special verdict forms. Prepare and argue motions in limine, pretrial motions, and opening statement and

LIC0016892

closing argument. Prepare and argue successful motion for summary adjudication. Attend mediations and mandatory settlement conferences resulting in multi-million dollar settlements.

**Carroll, Burdick & McDonough**, San Francisco, CA          September 2004 – April 2006
Senior Associate

Significant trial experience and extensive pretrial preparation, including sole responsibility for direct and cross-examination of witnesses regarding damages and presenting all evidence related to damages. Drafted jury instructions, motions in limine, and a motion for a directed verdict. Assisted with seven-month trial by taking numerous expert depositions, preparing expert witnesses for trial, and participating in voir dire. Took and defended more than 100 depositions. Assumed responsibility for two cases received mere weeks before the trial date. Involved in strategic decisions regarding motion practice and legal theories and defenses in multi-million dollar catastrophic property and personal injury matters.

**Thornton Taylor Becker & Shinn,** San Francisco, CA          August 2000 - September 2004
Associate                                                               Summer Associate, 1999

Second chair for two trials, including a three-week jury trial and a five-day adverse employment action trial. Drafted coverage opinions in construction defect claims, conducted and prevailed in four arbitrations. Assisted with preparation of questions for witnesses and researched evidentiary and other legal issues that arose during trial. Deposed more than 40 parties, witnesses and expert witnesses. Published article "Reliability and Relevance of Expert Testimony in Federal Court" in *Municipal Law Institute* Vol. 118 (2001),

## EDUCATION

**UCLA School of Law, Los Angeles, CA**                          J.D., May 2000
Activities:       Moot Court Participant, 1998-1999
                  Staff Member, *Bulletin of Law and Technology,* 1998- 1999

**University of Utah,** Salt Lake City, UT          B.S., *cum laude,* Philosophy, 1997
Honors and Activities:       Dean's List; Teaching assistant for logic courses

## MEMBERSHIPS AND AFFILIATIONS

State Bar of California, Member
State Bar of Texas, Member
United States District Court – Northern, Central and Southen Districts of California
Ninth Circuit Court of Appeals
Association of Defense Counsel of Northern California and Nevada
National Fire Protection Association, Member

## SEMINARS AND PRESENATIONS

Organizer and Sponsor, National Wildland Fire Conference, 2018 and continuingPanelist, National Wildland Fire Litigation Conference, annually from 2008 through 2019

LIC0016893

**David Bona**

David Bona is a partner with the San Francisco based law firm, Carlson, Calladine & Peterson LLP. Mr. Bona has devoted the majority of his career to defending his clients in high-exposure, complex litigation, including cases involving wildland fire, floods, equipment failures, catastrophic injury and wrongful death.

Mr. Bona has in-depth knowledge of forensic investigation techniques and the admissibility of technical and scientific evidence. He also has extensive experience using remote sensing technologies for catastrophic loss investigation, complex damages analysis, fire progression analysis and other issues that arise in complex litigation. Mr. Bona routinely handles mass-tort cases involving thousands of parties in California, Texas and other states. He has managed all aspects of multi-party, complex litigation, including e-discovery, technical and scientific subject matters and evidence, binding arbitration, alternative dispute resolution and multiple trials.

Mr. Bona received his B.A. from the University of Utah and his J.D. from the UCLA School of Law. He is admitted to the California Bar and the Texas Bar. Mr. Bona is a regular speaker in matters involving catastrophic loss investigation, multi-party litigation strategies and wildland fire litigation. When not practicing law, David enjoys traveling with his family, cycling and basketball.

**Areas of Practice**
Wildland Fire Litigation, including: Property Damage, Products Liability, Premises Liability
Catastrophic Injury Defense

**Education**
UCLA School of Law, Los Angeles, California (J.D. – 2000)
University of Utah, Salt Lake City (B.A. – 1997)

**Professional Associations and Memberships**
State Bar of California, Member
State Bar of Texas, Member
Association of Defense Counsel of Northern California and Nevada

LIC0016894

EXHIBIT 19

EXHIBIT 19

EXHIBIT 19

From:        Kaufman, Sarah [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP
             (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=48109347E6F24467B4543F8D692501AB-KAUFMAN, SA]
Sent:        9/28/2022 7:23:13 PM
To:          David Bona [dbona@ccplaw.com]
Subject:     RE: P 413-291000-01 RLC Industries Co - DOL: 9/2/2022

Hi David,

There have been conversations with the customer that I have not been a part of regarding the issue of
counsel. It is still our position that the case will be transferred to you. I am guessing this is why you have not
heard back.

**SARAH KAUFMAN**
Sr Tech Claims Specialist II
Central West Region Complex

Liberty Mutual Insurance | Helmsman Management Services
Milwaukee, WI
Office: 414-290-4484

**How are we doing?**                    **Send us a document**

The information contained in this email message and any attachments to this message are confidential and may be privileged or
constitute attorney work product. If you are not the intended recipient, please (1) notify me immediately by replying to this message or
calling 414-290-4484, (2) do not use, disseminate, distribute or reproduce any part of the message or any attachment, and (3) destroy
all copies of this message and attachments. A copy of our privacy notice can be obtained at our Privacy Policy website.

**From:** David Bona <dbona@ccplaw.com>
**Sent:** Wednesday, September 28, 2022 2:19 PM
**To:** Kaufman, Sarah <SARAH.KAUFMAN@LibertyMutual.com>
**Subject:** {EXTERNAL} RE: P 413-291000-01 RLC Industries Co - DOL: 9/2/2022

Sarah,
I left another message for the attorneys at Baker Hostetler and still have not heard back from them. I will keep
trying. Please let me know if you hear anything from Baker or the insured.

On another note, we learned that that the Franz Law Firm, which filed the Hammond complaint, amended their
complaint to add two new defendants. Those defendants are RJ Pelletier Construction Inc. and Cowley D&L Cowley
D&L. We have not been able to obtain a copy of the amended complaint yet, so it is not clear what the two new
defendants supposedly did to cause or exacerbate the fire. I will send you a copy of the amended complaint as soon as
it is available.

Thank you,

**David Bona, Esq.**
*Carlson, Calladine & Peterson LLP*
*275 Battery Street, 16th Floor*
*San Francisco, California 94111*
*Direct Dial:   415.391.9857*
*Cellular:      415.218.4156*

*Website:  www.ccplaw.com*

LIC_0028869

**ATTORNEY-CLIENT  CONFIDENTIAL AND PRIVILEGED COMMUNICATION:**  If you are not a client of Carlson, Calladine & Peterson LLP  and/or the lawyer who sent this email, or one specifically authorized to receive this electronic mail by a client of this firm, you may not read, copy, use, or distribute this privileged attorney-client communication.  If you received this e-mail in error,  **PLEASE DELETE THIS EMAIL AND ITS ATTACHMENTS** from  any instrument on which you have received this, and from any work-station and all e-mail servers.  Please then reply to the sender or contact the firm at (415) 391-3911 to advise us that you received and have deleted the email.  Thank you.

LIC_0028870

EXHIBIT 20

EXHIBIT 20

EXHIBIT 20

# BakerHostetler

**Baker & Hostetler** LLP

600 Anton Boulevard
Suite 900
Costa Mesa, CA 92626-7221

T 714.754.6600
F 714.754.6611
www.bakerlaw.com

Joseph L. Chairez
direct dial: 714.966.8822
jchairez@bakerlaw.com

October 5, 2022

*VIA FEDEX*

Liberty Mutual Insurance
175 Berkley Street
Boston, MA 02116
(primary CGL policy)

Markel American Insurance Company
4521 Highwoods Parkway
Glen Allen VA 23060

Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

Allied World Assurance Company (US) Inc.
ATTN: General Casualty
199 Water Street 24th Floor
New York, NY 10038

Everest National Insurance Company
Warren Corporate Center
100 Everest Way
Warren, NJ 07059

Liberty Mutual Insurance
175 Berkley Street
Boston, MA 02116
(excess liability policy)

LIC0016994

Re:   Insured: Roseburg Forest Products Co. (subsidiary of RLC Industries Co.)
      Liability Claim: "Mill Fire"
      Date of Loss: September 2, 2022
      Policies: --Liberty Mutual primary CGL No. TB7-661-067089-031 (11-1-21 to 11-1-22)
                Liberty Claim No. P 413-291000
            --Markel Commercial Umbrella No. MKLM6MM70000398 (11-1-21 to 11-1-22)
                Markel Claim No. MXUL86123.
            --Chubb/Federal Insurance Co. Commercial Excess No. 7819-50-57 (11-1-21 to 11-1-22)
                Chubb Claim No. 076922029278
            --Allied World Excess Liability No. 0311-5913 (11-1-21 to 11-1-22)
                Allied World Claim No. 2022021688
            --Everest National Commercial Excess No. XC2EX00126-211 (11-1-21 to 11-1-22)
            --Liberty Mutual Excess Liability No. ECO (22) 60 07 79 06 (11-1-21 to 11-1-22)

Dear Insurance Carriers:

Since Roseburg's initial notice to you of the Mill Fire occurrence, Roseburg has been served with a complaint filed in San Francisco County on or about October 4, 2022, *Davies v. Roseburg Forest Products Co..* A copy of the complaint is attached.

Pursuant to your respective policies, Roseburg is submitting the complaint and correspondence to each carrier for defense and indemnity. If additional pleadings or demands are received, we will promptly forward them to you. Please contact me if you have any questions.

Very truly yours,

*/s/ Joseph L. Chairez*

Joseph L. Chairez

Encl.

4873-2372-8950.1

LIC0016995

1  FRANK M. PITRE (SBN 100077)
   fpitre@cpmlegal.com
2  DONALD J. MAGILLIGAN (SBN 257714)
   dmagilligan@cpmlegal.com
3  NABILAH A. HOSSAIN (SBN 329689)
   nhossain@cpmlegal.com
4  ANDREW W. BRITTON (SBN 340052)
   abritton@cpmlegal.com
5  **COTCHETT, PITRE & McCARTHY, LLP**
   San Francisco Airport Office Center
6  840 Malcolm Road
   Burlingame, CA 94010
7  Telephone: (650) 697-6000
   Facsimile: (650) 697-0577
8
9  P. TERRY ANDERLINI (SBN 044783)
   **ANDERLINI & MCSWEENEY**
10 66 Bovet Road, Suite 285
   San Mateo, California 94402
11 Telephone: (650) 212-0001
   Facsimile: (650) 212-0001
12 tanderlini@amlawoffice.com
13
14 *Counsel for Plaintiff*
15
16        **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
17           **IN AND FOR THE COUNTY OF SAN FRANCISCO**
18 **ROBERT DAVIES**, an individual;           Case No.:
19        Plaintiff,
20                                              **COMPLAINT FOR:**
21     vs.                                      1)   **INVERSE CONDEMNATION**
22 **ROSEBURG FOREST PRODUCTS CO.,**           2)   **TRESPASS**
23 an Oregon corporation; and DOES 1 through    3)   **NEGLIGENCE**
   100, inclusive,
24                                              4)   **PRIVATE NUISANCE**
        Defendants.
25                                              5)   **PUBLIC NUISANCE**
26                                              6)   **VIOLATION OF HEALTH
                                                     AND SAFETY CODE § 13007**
27                                              __**JURY TRIAL DEMANDED**__
28
   LAW OFFICES
   COTCHETT, PITRE &
   McCARTHY, LLP
        **COMPLAINT**

LIC0016973

## TABLE OF CONTENTS

PAGE NO.

I.   INTRODUCTION ................................................................................................ 1

II.   THE PARTIES .................................................................................................... 2

   A.  PLAINTIFF ................................................................................................. 2

   B.  DEFENDANT .............................................................................................. 2

   C.  DOE DEFENDANTS ................................................................................... 3

   D.  AGENCY, JOINT VENTURE, AND CONCERT OF ACTION ..................... 3

   E.  JURISDICTION AND VENUE .................................................................... 3

III.  FACTUAL BASIS FOR THE CLAIMS ASSERTED ........................................... 4

   A.  FIRE-PRONE BYPRODUCTS FROM ROSEBURG'S
      BIOMASS PLANT CAUSED THE MILL FIRE ............................................ 4

   B.  THE ROSEBURG FACILITY AND BYPRODUCTS
      FROM ITS BIOMASS PLANT POSED OBVIOUS AND
      KNOWN FIRE RISKS ................................................................................. 5

   C.  DEFENDANTS' NEGLIGENCE CAUSED PLAINTIFF
      SUBSTANTIAL HARM ............................................................................... 9

IV.  CAUSES OF ACTION ......................................................................................... 11

   FIRST CAUSE OF ACTION – INVERSE CONDEMNATION
   (Against All Defendants) .......................................................................... 12

   SECOND CAUSE OF ACTION - TRESPASS
   (Against All Defendants) .......................................................................... 12

   THIRD CAUSE OF ACTION – NEGLIGENCE
   (Against All Defendants) .......................................................................... 12

   FOURTH CAUSE OF ACTION – PRIVATE NUISANCE
   (Against All Defendants) .......................................................................... 15

   FIFTH CAUSE OF ACTION – PUBLIC NUISANCE
   (Against All Defendants) .......................................................................... 16

   SIXTH CAUSE OF ACTION – VIOLATION OF HEALTH & SAFETY CODE § 13007
   (Against All Defendants) .......................................................................... 17

V.   PRAYER FOR RELIEF ....................................................................................... 18

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**COMPLAINT**                                                                         i

LIC0016974

1    I.    **INTRODUCTION**

2         1.    On the afternoon of September 2, 2022, a fire began at a mill in Weed, California

3    which was owned and operated by **ROSEBURG FOREST PRODUCTS CO.**

4    ("**ROSEBURG**").  Later named the **MILL FIRE**, it tore through Siskiyou County for 11 days,

5    burned 3,935 acres, destroyed 118 structures, injured three people, and killed two.

6         2.    The **MILL FIRE** was the result of **ROSEBURG's** deliberate failure to avoid

7    known risks of fire ignition associated with the industrial processes conducted at its mill

8    ("**FACILITY**").

9         3.    In addition to creating wood veneer, the **FACILITY** generates electricity at an

10   onsite plant ("**BIOMASS PLANT**"). **ROSEBURG** uses the electricity to power the

11   **FACILITY**, but also transfers the electricity generated by the **BIOMASS PLANT** into Siskiyou

12   County's electrical grid for public use.

13        4.    The **BIOMASS PLANT** creates electricity by burning wood, which creates a hot

14   ash byproduct. The hot ash, if not properly cooled or treated, poses an obvious risk of fire

15   ignition. This was not news to **ROSEBURG**. Previously, it had been observed that hot ash from

16   the **BIOMASS PLANT** ignited fires at the **FACILITY** on a frequent basis.

17        5.    **ROSEBURG** installed a fire suppression system but it did not function as

18   intended. Instead of fixing the system, **ROSEBURG** depended on its own employees promptly

19   reacting to extinguish the fires -- rather than designing and maintaining an effective fire

20   suppression system.  **ROSEBURG** relied on this practice because it was cheaper, thereby

21   sacrificing the safety of the community which surrounded the facility.

22        6.    Worse, the **FACILITY** itself, and in particular the aging wooden shed where the

23   hot ash created by the **BIOMASS PLANT** was stored ("**SHED 17**"), was a ticking time bomb.

24        7.    By September 2022, **SHED 17** was about 100 years old. For years, **ROSEBURG**

25   used **SHED 17** to house truckloads of hot ash from the **BIOMASS PLANT**. The rafters which

26   ran across the ceiling of **SHED 17** were covered with dust and other material. On several

27   occasions, the hot ash would cause sparks to ignite the dust and other random debris hanging

28   from the rafters.

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**COMPLAINT**                                                                    1

1      8.    Due to the abundant fuel and risk of ignition, proper management of fire risk at

2 the **FACILITY** was paramount.  Further, **ROSEBURG** knew or should have known that severe

3 and enduring drought in Siskiyou County made the region susceptible to wildfires.

4      9.    Despite these obvious and known fire risks, **ROSEBURG** deliberately failed to

5 take measures sufficient to mitigate or prevent fire ignition at the **FACILITY**, including but not

6 limited to failing to design, construct, inspect, or maintain an adequate fire suppression system at

7 the **FACILITY** or adequately manage the ignition-prone byproducts of its **BIOMASS PLANT**.

8      10.   **ROSEBURG** could have and should have prevented the **MILL FIRE**. Instead,

9 **ROSEBURG** chose to save money, placing profits above the safety of its employees and the

10 public.

11     11.   As a result of **ROSEBURG's** acts and omission in operating its **FACILITY**,

12 including its operation of the **BIOMASS PLANT** and treatment of the hot ash byproduct it

13 generated, the **MILL FIRE** spread from the **FACILITY**, irreparably harmed a community,

14 destroyed homes, and killed citizens of Siskiyou County.

15 **II.**    **THE PARTIES**

16    **A.**    **PLAINTIFF**

17     12.   **PLAINTIFF ROBERT DAVIES ("PLAINTIFF" or "ROBERT")** is an

18 individual who was, at all times relevant, a natural person and resident of Siskiyou County,

19 California. As a result of the **MILL FIRE, PLAINTIFF,** a 61-year-old person with disabilities,

20 lost his home of over 30 years and all of its contents, is displaced, and suffers enduring harm.

21    **B.**    **DEFENDANT**

22     13.   Defendant **ROSEBURG FOREST PRODUCTS CO.** (**"DEFENDANT**

23 **ROSEBURG" "ROSEBURG" or "DEFENDANT"**) is a privately-held corporation doing

24 business in California.  At all times relevant, **ROSEBURG** owned, operated, managed, or

25 otherwise exercised control over a wood-products processing and biomass facility which

26 supplied energy to customers in Northern California (**"FACILITY"**).

27 / / /

28 / / /

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**COMPLAINT**                                          2

LIC0016976

1    **C.    DOE DEFENDANTS**

2        14.    Except as described herein, **PLAINTIFF** is ignorant of the true names and/or

3    capacities of the Defendants sued as Does 1 through 100, inclusive, and therefore, **PLAINTIFF**

4    sues these Defendants by such fictitious names. Following further investigation and discovery,

5    **PLAINTIFF** will seek leave of this Court to amend this Complaint to allege their true names

6    and capacities when ascertained. These fictitiously named Doe Defendants are responsible in

7    some manner for the acts, occurrences, and events alleged herein. These Doe Defendants aided,

8    abetted, and/or conspired with Defendants in the wrongful acts and course of conduct, or

9    otherwise negligently caused the damages and injuries claimed herein and are responsible in

10   some manner for the acts, occurrences, and events alleged in this Complaint.

11   **D.    AGENCY, JOINT VENTURE, AND CONCERT OF ACTION**

12       15.    At all relevant times, **DEFENDANTS** were the agents, servants, employees,

13   partners, aiders and abettors, co-conspirators, and/or joint venturers of each of the other

14   **DEFENDANTS** and were at all times operating and acting within the purpose and scope of said

15   agency, service, employment, partnership, enterprise, conspiracy, and/or joint venture, and each

16   **DEFENDANT** has ratified and approved the acts of each of the remaining **DEFENDANTS**.

17   Each **DEFENDANT** aided and abetted, encouraged, and rendered substantial assistance to the

18   other **DEFENDANTS** in breaching their obligations to **PLAINTIFF**. In taking action to aid and

19   abet and substantially assist the commission of these wrongful acts and other wrongdoings

20   alleged herein, each of the **DEFENDANTS** acted with an awareness of his/her/its primary

21   wrongdoing and realized his/her/its conduct would substantially assist the accomplishment of the

22   wrongful conduct, wrongful goals, and wrongdoing.

23   **E.    JURISDICTION AND VENUE**

24       16.    This Court is a court of general jurisdiction and, therefore, has subject matter

25   jurisdiction over all causes of action alleged herein.

26       17.    This Court has personal jurisdiction over all parties to this action because each

27   and every party has sufficient minimum contacts with the State of California arising out of or

28

LIC0016977

Exhibit 20, Page 007

1    relating to the causes of action herein alleged such that this Court's exercise of personal

2    jurisdiction comports with traditional notions of fair play and substantial justice.

3        18.    Plaintiff is informed and believes, and thereon alleges, that **DEFENDANT**

4    **ROSEBURG** is a business entity that has not filed a statement designating a principal office in

5    California. Therefore, venue is proper in any Court in the State. (*Easton v. Superior Court* (1970)

6    12 Cal.App.3d 243, 246.)

7    **III.    FACTUAL BASIS FOR THE CLAIMS ASSERTED**

8        **A.    FIRE-PRONE BYPRODUCTS FROM ROSEBURG'S BIOMASS PLANT**
            **CAUSED THE MILL FIRE**
9

10       19.    On September 2, 2022, the **MILL FIRE** ignited at a wood-products processing

11   facility ("**FACILITY**") in Weed, California owned and operated by **DEFENDANT**

12   **ROSEBURG**. The **MILL FIRE** burned for 11 days, torched 3,935 acres, destroyed 118

13   structures, injured three people, and killed two.

14       20.    The residents of Siskiyou County, and in particular the residents of Weed – where

15   the **FACILITY** and **ROSEBURG** were the second-largest employer – were ambushed by flame.

16   To illustrate just how fast this fire moved, one only has to look to the location of the local fire

17   department. The City of Weed's Fire Department is located adjacent to the Roseburg Mill, at

18   128 Roseburg Parkway. Nonetheless, the **MILL FIRE** was burning so ferociously at onset a

19   trained battalion – *responding from an onsite position* – had no chance to halt the progression of

20   this blaze.

21   ///

22   ///

23

24

25

26

27

28

LIC0016978

Exhibit 20, Page 008



*Figure 1*: Residential neighborhood in Weed, CA after the Mill Fire.

### B. THE ROSEBURG FACILITY AND BYPRODUCTS FROM ITS BIOMASS PLANT POSED OBVIOUS AND KNOWN FIRE RISKS

21.    **ROSEBURG** and all **DEFENDANTS** knew or should have known that the **FACILITY** and its operations posed obvious risks of igniting a fire that could harm property and life.

22.    **ROSEBERG** and all **DEFENDANTS** also knew or should have known that the **FACILITY** was located in an area with high fire risk. By September 2021, 94% of Siskiyou County was categorized as "extreme drought" with over 40% qualifying for "exceptional drought." To date, 2022 has been the 4th driest year in Siskiyou County over the past 128 years, creating an increased risk of wildfire.

23.    Further, **ROSEBURG** knew that Siskiyou County had a recent history of substantial wildfires including the McKinney Fire in 2022 (60,138 acres; 4 deaths), the Lava Fire in 2021 (26,409 acres), the Slater Fire in 2020 (157,220 acres), and the Klamathon Fire in 2018 (38,008 acres).

LIC0016979

Exhibit 20, Page 009

1    24.    In addition to the surrounding drought-stricken areas of Siskiyou County, the

2  **FACILITY** itself and its operations posed a known fire risk.

3    25.    **ROSEBURG** used the **FACILITY** for, among other purposes, processing logs,

4  chips, and larger pieces of wood to create wood veneer. To perform the steps necessary for its

5  industrial process, the **FACILITY** used various powered industrial equipment.

6    26.    **ROSEBURG** also used the **FACILITY** to generated electricity for itself and for

7  public through the **BIOMASS PLANT**. Like a fireplace, the **BIOMASS PLANT** created heat

8  by burning solid fuel. In this case, the **FACILITY** used byproducts of its wood processing, such

9  as wood chips, as fuel for the **BIOMASS PLANT**. Once burned, the wood became ash.

10    27.    **ROSEBURG** then removed the hot ash byproduct from the **BIOMASS PLANT**

11  and stored it in a large wooden building built in the 1920s ("**SHED 17**") at the **FACILITY** so it

12  could cool. Just like ashes in a fireplace, the hot ashes from the **BIOMASS PLANT** could ignite

13  a fire if not properly cooled or treated.



25  *Figure 2*: A building similar to Shed 17 that had stores hot ash at Roseburg Mill.

26    28.    For decades, **SHED 17** housed ashes from the **BIOMASS PLANT** at the

27  **FACILITY**. Over time, ash, debris, wood chips, and other flammable material accumulated in

28  and around **SHED 17**. Inside, the potentially hot ashes from the **BIOMASS PLANT** lay piled

LIC0016980

Exhibit 20, Page 010

1  several feet high in various containers under the building's wooden rafters and beside its wooden

2  walls, which were scarred with burn marks from previous fires. **PLAINTIFF** is further informed

3  and believes that **SHED 17** and its surrounding areas were also the location of industrial

4  equipment, chemicals, and other materials and byproducts associated with the **FACILITY's**

5  operations.

6       29.    Essentially, **ROSEBURG's** management of the **FACILITY** and the manner in

7  which it stored the hot ashes from the **BIOMASS PLANT** made **SHED 17** a tinderbox awaiting

8  a spark. Yet, **ROSEBURG** continued to use **SHED 17** as the primary storage site for the hot ash

9  and potentially flammable product for many years.

10      30.    **ROSEBURG** knew that hot ashes from the **BIOMASS PLANT** posed a fire risk.

11  Fire ignitions caused by hot ashes from the **BIOMASS PLANT** were typical and at the

12  **FACILITY** and a matter of common knowledge to **ROSEBURG's** management and employees

13  overseeing or working at the **FACILITY**. **PLAINTIFF** is informed that while the **FACILITY**

14  experienced many operations-related fire ignitions in recent years (including substantial wood-

15  product ignitions in 2015 and 2017), hot ashes from the **BIOMASS PLANT** stored in **SHED 17**

16  actually caused fires at the **FACILITY** on a frequent basis – with the exact number of these

17  internally-combated "near miss" catastrophes unknown to the public because no formal reports

18  to administrative agencies were generated by Roseburg managers.

19      31.    In an attempt to combat this known ignition risk at the **FACILITY**, **ROSEBURG**

20  installed a suppression system in **SHED 17** that was intended to cool the hot ashes from the

21  **BIOMASS PLANT** and mitigate or prevent fires.

22      32.    However, **ROSEBURG** failed to ensure that the suppression system was

23  adequately designed, constructed, inspected, maintained, managed, or upgraded. **PLAINTIFF** is

24  informed, and thereon alleges, that **ROSEBURG's** management, in an effort to maximize profit

25  from **FACILITY's** operations, failed to allocate sufficient funds to upgrade and/or maintain its

26  fire suppression system and its components.

27

28

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**COMPLAINT**                                                7

LIC0016981

33.    Further, the suppression system in **SHED 17** had or was meant to function as a standard sprinkler system which, when it detected a certain amount of heat, was supposed to discharge water to mitigate or eliminate a potential fire.

34.    **PLAINTIFF** is informed and believes that the sprinkler system in **SHED 17** was also inadequately designed, constructed, inspected, or maintained by **ROSEBURG**. As a result, the sprinkler system did not function as intended and, to the extent that it did function, **SHED 17's** suppression system was not capable of suppressing a foreseeable ignition such as the initial stages of **MILL FIRE**.

35.    **ROSEBURG** also knew or should have known that **SHED 17's** fire suppression system did not function as intended and could not stop an ignition caused by hot ashes from the **BIOMASS PLANT** from becoming a deadly wildfire.

36.    Yet, **ROSEBURG** chose a reactive approach to fire risk – only acting once an ignition began – rather than implementing a plan, process, or procedure to proactively address fire risks at the **FACILITY** and, in particular, **SHED 17**. Accordingly, **ROSEBURG** deliberated failed to take critical and life-saving measures in light of obvious and known fire risks and did so, at least in part, because **ROSEBURG's** reactive approach was cheaper.

37.    As a result, the **FACILITY's** suppression system did not function as intended and hot ashes from the **BIOMASS PLANT**, which could have and should have been cooled or treated, remained hot and piled several feet high in the wooden tinderbox that was **SHED 17**.

38.    Fires were so typical at the **FACILITY**, that **ROSEBURG's** management developed a policy, practice, and procedure under which its own employees would act as "firefighters" if and when a fire ignited the **FACILITY**. By using its own employees to fight fires at the **FACILITY**, **ROSEBURG** could avoid the financial consequences of shutting down the **FACILITY**, sending employees home, paying cleanup costs, or having the fire risks become known to the surrounding community.

39.    **PLAINTIFF** is further informed and believes, however, that **ROSEBURG** did not take reasonable steps to educate or train its deputized employees in the critical methods, techniques, and science of fire suppression.

LIC0016982

Exhibit 20, Page 012

40.     Simply, it was more important that **ROSEBURG** keep the **FACILITY** running and profitable than keeping its employees and the public safe. In fact, **ROSEBURG's** decision to enlist its employees as private "firefighters" only heightened the risk of a fire at the **FACILITY** growing and spreading due to the lack of education, training, and experience of those employees in the relevant disciplines required for proper emergency fire suppression.

41.     Ultimately, **ROSEBURG** engaged in a pattern and practice of managing the **FACILITY** that consciously and deliberately disregarded known and foreseeable risks posed by hot ashes from the **BIOMASS PLANT** which could ignite a catastrophic wildfire, damage property, cause injuries, and take lives

42.     Accordingly, hot ashes from the **BIOMASS PLANT** remained hot and at risk of ignition. As a foreseeable result, the **MILL FIRE** ignited causing catastrophic harm to the surrounding community.

### C.   DEFENDANTS' NEGLIGENCE CAUSED PLAINTIFF SUBSTANTIAL HARM

43.     **PLAINTIFF ROBERT DAVIES** ("**PLAINTIFF**") lived in his family home in Weed, Calfornia for over 30 years. While living in that home, **PLAINTIFF** raised a family, developed cherished memories, and accumulated precious and irreplaceable personal effects.

44.     **PLAINTIFF**, a widowed 61-year old person with disabilities, felt safe and comfortable in the home he cared so much for.

45.     The **MILL FIRE** transformed **PLAINTIFF's** home to rubble, robbing him of all his material possessions while reducing his life and sense of safety to nothing more than a memory.

46.     **PLAINTIFF** was at his home when the **MILL FIRE** arrived and was forced to evacuate as he saw the flames approaching his property.

47.     Yet, the true depth of **PLAINTIFF's** losses cannot be quantified in numbers, since his greatest loss could never be replaced: In addition to the material contents of his home, Robert Davies also lost the remains of his late wife which were contained in an urn on the

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**COMPLAINT**

9

LIC0016983

1  mantle. Now, because of a fire Roseburg should have prevented, he will never be allowed to

2  honor his pledge and scatter his wife's ashes in Greece in accordance with her last wishes.



13  *Figure 3*: Plaintiff Robert Davies' Home after the Mill Fire.

15      48.     **PLAINTIFF** is now displaced, suffers substantial economic harm, and further

16  suffers severe and enduring emotional distress associated with the loss of his primary residence

17  and the discomfort, annoyance, disturbance associated with the loss of and attempts to replace

18  his home.

19      49.     **PLAINTIFF** did not contribute to nor could he have avoided the harm and injury

20  that he suffered as a legal result of **DEFENDANTS'** wrongful conduct.

21      50.     **PLAINTIFF's** harm and injury could have been avoided if **ROSEBURG** and all

22  other **DEFENDANTS** exercised reasonable care in the management of the **FACILITY**.

23  **DEFENDANTS'** failures include but are not limited to: the willful disregard of known fire risks

24  associated with the **FACILITY**; failing to adequately design, construct, inspect, and/or maintain

25  the fire suppression system in **SHED 17** in a manner so as to make it capable of performing at a

26  level commiserate with the clear and known risks of fire ignition; and deliberately pursuing a

27  course of conduct with respect to the storage of hot ash that increased the risk of a catastrophic

28  wildfire.

LIC0016984

Exhibit 20, Page 014

IV.   **CAUSES OF ACTION**

**FIRST CAUSE OF ACTION – INVERSE CONDEMNATION**

**(Against All Defendants)**

51.   **PLAINTIFF** incorporate and re-allege by this reference each of the paragraphs set forth above as though fully set forth herein.

52.   On or about September 2, 2022, **PLAINTIFF** owned real property and/or personal property located within Siskiyou County in the area of the **MILL FIRE**.

53.   Prior to or about September 2, 2022, **DEFENDANTS** installed, owned, operated, used, controlled, and/or maintained the **BIOMASS PLANT,** which generated electricity for use by the public and, by doing so, created hazardous hot-ash byproduct.

54.   On or about September 2, 2022, as a direct, necessary, and legal result of the **DEFENDANTS'** installation, ownership, operation, use, control, management, and/or maintenance for a public use of the **FACILITY** and the **BIOMASS PLANT**, the hazardous hot-ash byproduct ignited the **MILL FIRE**, which destroyed nearly 40,000 acres of land and destroyed nearly 200 properties, including property owned or occupied by **PLAINTIFF**, including **PLAINTIFF's** real and personal property.

55.   The damage to **PLAINTIFF's** real and personal property was caused by the actions and omissions of the **DEFENDANTS** in their design, construction, maintenance, inspection, and oversight of the **BIOMASS PLANT**, as well as its attendant safety and fire suppression systems, for public use and the benefit of the public at large.

56.   **PLAINTIFF** has not received adequate compensation for the damage to and/or destruction of their real and personal property, thus constituting a taking of **PLAINTIFF's** property by the **DEFENDANTS** without just compensation.

57.   As a result of the actions and omissions of the **DEFENDANTS, PLAINTIFF** suffered damages to their real and personal property, including loss of use, interference with access, and diminution in value and/or marketability in an amount according to proof at trial.

58.   As a result of the actions and omissions of the **DEFENDANTS, PLAINTIFF** has incurred and will continue to incur costs, disbursements, and expenses, including reasonable

**COMPLAINT**                                                                                          11

LIC0016985

1   attorney, appraisal, engineering, and other expert fees due to the conduct of the **DEFENDANTS**

2   in amounts that cannot yet be ascertained, but which are recoverable pursuant to Code of Civil

3   Procedure § 1036.

4                         **SECOND CAUSE OF ACTION - TRESPASS**

5                                **(Against All Defendants)**

6       59.     **PLAINTIFF** incorporates and re-alleges each of the paragraphs set forth above as

7   though fully set forth herein.

8       60.     At all relevant times herein, **PLAINTIFF** was the owner, tenant and/or lawful

9   occupier of property damaged by the **MILL FIRE**.

10      61.     **DEFENDANTS** in wrongfully acting and/or failing to act in the manner set forth

11  above, caused the **MILL FIRE** to ignite and/or spread out of control, causing harm, damage,

12  and/or injury to **PLAINTIFF**, resulting in a trespass upon **PLAINTIFF'S** property interests.

13      62.     **PLAINTIFF** did not grant permission for **DEFENDANTS** to wrongfully act in a

14  manner so as to cause the **MILL FIRE** that spread and wrongfully entered upon his property,

15  resulting in the harm, injury, and/or damage alleged above.

16      63.     As a direct and legal result of the wrongful conduct of **DEFENDANTS** that led to

17  the trespass, **PLAINTIFF** has suffered and will continue to suffer damages in an amount

18  according to proof at trial.

19      64.     As a further direct and legal result of the conduct of **DEFENDANTS**,

20  **PLAINTIFF** seeks treble damages for wrongful injuries to timber, trees, or underwood on their

21  property, as allowed under Civil Code § 3346.

22      65.     As a result of the **ROSEBURG DEFENDANTS'** actions and omissions,

23  **PLAINTIFF** seeks the imposition of punitive and exemplary damages against the **ROSEBURG**

24  **DEFENDANTS** as allowed under Cal. Civil Code § 3294.

25                       **THIRD CAUSE OF ACTION – NEGLIGENCE**

26                               **(Against All Defendants)**

27      66.     **PLAINTIFF** incorporates and re-alleges by this reference each of the paragraphs

28  set forth above as though fully set forth herein.

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**COMPLAINT**                                                                    12

LIC0016986

Exhibit 20, Page 016

67.     The Mill Fire was a direct and legal result of the negligence, carelessness, recklessness, and/or unlawfulness of **DEFENDANTS** who breached their respective duties owed individually and/or collectively to **PLAINTIFF** by, including but not limited to: (1) failing to comply with the applicable statutory, regulatory, and/or professional standards of care;  (2) failing to timely and properly maintain, manage, inspect, and/or monitor the subject mill;

68.     The conduct of **DEFENDANTS** failed to meet the requisite standard of care under Public Resources Code § 4437(a) which states: every processor of forest products shall exercise due diligence in the disposal of flammable material incident to the processing, so that the material does not cause the inception or spread of uncontrolled fire. Furthermore, **DEFENDANTS** failed to comply with Public Resources Code § 4437(b) which states: every person, co-partnership, firm, corporation, or company that operates a sawmill or plant engaged in the processing or converting of forest products into lumber, shook, ties, poles, posts, veneer, shakes, shingles, and planed or milled products, shall dispose of flammable material incident to that operation. If such flammable material is not to be used as fuel, or as a byproduct, within the operation, it shall be disposed of by burning or by other alternative methods which effectively prevent the flammable material from constituting a fire hazard.

69.     The conduct of **DEFENDANTS** failed to meet the requisite standard of care under Public Resources Code § 4440(a) which states: flammable forest product residue may only be accumulated in piles when the area surrounding the piles is cleared and kept clear of all flammable vegetation and debris.

70.     **DEFENDANTS** breached their duties, including but not limited to: (i) failing to design, construct, operate, monitor, inspect, and/or maintain the **FACILITY** including but not limited to the management of its **BIOMASS PLANT**, its byproducts, and its suppression system for hot ashes from the **BIOMASS PLANT** in a manner that would reduce the foreseeable risk of fire in the area affected by the **MILL FIRE**; (ii) failing to properly design, construct, operate, monitor, inspect, and/or maintain the sprinkler system and/or fire suppression system at the **FACILITY** and, in particular, **SHED 17**, in a reasonable manner that could be expected to mitigate the risk of foreseeable ignitions; (iii) failing to commit appropriate resources to ensure

LIC0016987

Exhibit 20, Page 017

that the sprinkler system and/or fire suppression system at the **FACILITY** and, in particular,

**SHED 17** was properly designed, constructed, operated, monitored, inspected, and/or maintained

so that it may operate as intended; (iv) failing to adequately educate or train their agents,

employees, or representatives in the methods necessary to adequately mitigate or prevent fire

risks at the **FACILITY**; (v) failing to implement and/or follow regulations and reasonably

sensible practices to avoid dangerous conditions prone to fire ignition. These breaches and

others, in isolation or in combination with one another, were the factual and proximate causes of

**PLAINTIFF's** harm.

71.    As a result of **DEFENDANTS'** actions and omissions, in isolation or in

combination, **PLAINTIFF** has suffered damage to real property, including but not limited to, the

loss of his beloved home of 30 years and a loss of use, benefit, goodwill, diminution in value

and/or enjoyment of such property in an amount according to proof at trial.

72.    As a result of **DEFENDANTS'** actions and omissions, **PLAINTIFF** has suffered

damage to and/or loss of personal property, including but not limited to items of peculiar value to

**PLAINTIFF** in an amount according to proof at trial.

73.    As a result of **DEFENDANTS'** actions and omissions, **PLAINTIFF** has incurred

and will continue to incur expenses and other economic damages related to the damage to his

property, including costs relating to storage, clean-up, disposal, repair, depreciation, and/or

replacement of his property and other related consequential damages in an amount according to

proof at trial.

74.    As a result of **DEFENDANTS'** actions and omissions, **PLAINTIFF** was injured

in his health, strength, and activity in an amount according to proof at trial.

75.    As a result of **DEFENDANTS'** actions and omissions, **PLAINTIFF** was

required to and/or continue to employ physicians and other health care providers to examine,

treat, and care for his physical injuries. **PLAINTIFF** has incurred, and will continue to incur,

medical and incidental expenses in an amount according to proof at trial.

76.    As a result of **DEFENDANTS'** actions and omissions, **PLAINTIFF** has suffered

great mental pain and suffering, including worry, emotional distress, humiliation,

LIC0016988

Exhibit 20, Page 018

1  embarrassment, anguish, anxiety, and nervousness. **PLAINTIFF** is informed and believes and

2  upon such information and belief alleges, that such injuries have resulted in debilitating injury in

3  an amount according to proof at trial.

4      77.    As a result of **DEFENDANTS'** actions and omissions, **PLAINTIFF** has suffered

5  a loss of income, loss of earning capacity, loss of profits, increased expenses due to

6  displacement, and/or other consequential economic losses in an amount according to proof at

7  trial.

8      78.    As a result of **DEFENDANTS'** wrongful acts and omissions, as here to for

9  alleged **PLAINTIFF** seeks the imposition of punitive and exemplary damages against the

10  **DEFENDANTS** as allowed under Cal. Civil Code § 3294.

11          **FOURTH CAUSE OF ACTION – PRIVATE NUISANCE**

12          **(Against All Defendants)**

13      79.    **PLAINTIFF** incorporates and re-alleges by this reference each of the paragraphs

14  set forth above as though fully set forth herein.

15      80.    **PLAINTIFF** owns and/or occupies property at or near the site of the **MILL**

16  **FIRE**. At all relevant times, **PLAINTIFF** had a right to occupy, enjoy, and/or use their property

17  without interference by **DEFENDANTS**.

18      81.    **DEFENDANTS**, by their acts and omissions set forth above, directly and legally

19  caused an obstruction to the free use of **PLAINTIFF'S** property, an invasion of the

20  **PLAINTIFF'S** right to use his property, and/or an interference with the enjoyment of

21  **PLAINTIFF'S** property resulting in the **PLAINTIFF** suffering unreasonable harm and

22  substantial actual damages constituting a nuisance pursuant to Civil Code §§ 3479 and 3481.

23      82.    As a result of **DEFENDANTS'** actions and omissions, **PLAINTIFF** suffered

24  harm, injury, and damages in an amount according to proof at trial.

25      83.    As a result of the **ROSEBURG DEFENDANTS'** actions and omissions,

26  **PLAINTIFF** seeks the imposition of punitive and exemplary damages against the **ROSEBURG**

27  **DEFENDANTS**.

28

**COMPLAINT**

15

LIC0016989

## FIFTH CAUSE OF ACTION – PUBLIC NUISANCE

### (Against All Defendants)

84.    **PLAINTIFF** incorporates and re-alleges by this reference each of the paragraphs set forth above as though fully set forth herein.

85.    **PLAINTIFF** owns and/or occupies property at or near the site of the **MILL FIRE**. At all relevant times, **PLAINTIFF** had a right to occupy, enjoy, and/or use his property without interference by **DEFENDANTS**.

86.    **DEFENDANTS** owed a duty to the public, including **PLAINTIFF**, to conduct the maintenance and/or operation of the subject mill in Siskiyou County, specifically including the sprinkler system and/or fire suppression system, in a manner that did not threaten harm or injury to the public welfare, or offend the public or interfere with public use and enjoyment of their property.

87.    The **MILL FIRE** burned nearly 4,000 acres of land leaving nothing where there were once homes, farms, meadows, fields, and forests. **DEFENDANTS** created a condition that was harmful to the health of the public, including **PLAINTIFF**, and that interfered with the comfortable occupancy, use, and/or enjoyment of **PLAINTIFF'S** property. **PLAINTIFF** did not consent, expressly or impliedly, to **DEFENDANTS'** wrongful conduct.

88.    The hazardous condition that **DEFENDANTS** created and/or permitted to exist affected a substantial number of people within the general public, including **PLAINTIFF**, and constituted a public nuisance under Civil Code §§ 3479 and 3480, and Public Resources Code § 4171. Further, the ensuing uncontrolled wildfire constituted a public nuisance under Public Resources Code § 4170.

89.    As a result of **DEFENDANTS'** actions and omissions, **PLAINTIFF** suffered harm that is different from the type of harm suffered by the general public. Specifically, **PLAINTIFF** has lost occupancy, possession, use, and/or enjoyment of their land, real, and/or personal property, including, but not limited to: a reasonable and rational fear that the area is still dangerous; a diminution in the fair market value of his property; an impairment of the salability of his property; soils that have become hydrophobic; exposure to an array of toxic substances on

LIC0016990

Exhibit 20, Page 020

1  his land; the presence of "special waste" (as defined in 22 California Code of Regulations §

2  66261.120) on his property that requires special management and disposal; and a lingering smell

3  of smoke, and/or constant soot, ash, and/or dust in the air

4       90.    As a result of **DEFENDANTS'** actions and omissions, **PLAINTIFF** has suffered,

5  and will continue to suffer, discomfort, anxiety, fear, worries, and stress attendant to the

6  interference with **PLAINTIFF'S** occupancy, possession, use, and/or enjoyment of his property,

7  as alleged above.

8       91.    A reasonable, ordinary person would be annoyed or disturbed by the condition

9  created by **DEFENDANTS** and the resulting fire.

10       92.    The conduct of **DEFENDANTS** is unreasonable and the seriousness of the harm

11  to the public, including **PLAINTIFF**, outweighs the social utility of **DEFENDANTS'** conduct.

12       93.    The unreasonable conduct of **DEFENDANTS** is a direct and legal cause of the

13  harm, injury, and/or damage to the public, including **PLAINTIFF**.

14       94.    The conduct of **DEFENDANTS** constitutes a public nuisance within the meaning

15  of Civil Code §§ 3479 and 3480, Public Resources Code §§ 4104 and 4170, and Code of Civil

16  Procedure § 731. Under Civil Code § 3493, **PLAINTIFF** has standing to maintain an action for

17  public nuisance because the nuisance is one that is especially injurious and/or offensive to the

18  senses of the **PLAINTIFF**, unreasonably interferes with the comfortable enjoyment of his

19  property, unlawfully obstructs the free and customary use of **PLAINTIFF'S** property, and

20  caused individualized harm, injury, and damages to **PLAINTIFF**.

21      **SIXTH CAUSE OF ACTION – VIOLATION OF HEALTH & SAFETY CODE § 13007**

22             **(Against All Defendants)**

23       95.    **PLAINTIFF** incorporates and re-alleges by this reference each of the paragraphs

24  set forth above as though fully set forth herein.

25       96.    By engaging in the acts and/or omissions alleged herein, **DEFENDANTS**

26  willfully, negligently, carelessly, recklessly, and/or in violation of law, set fire to and/or allowed

27  fire to be set to the property of another in violation of Health and Safety Code § 13007.

28

LIC0016991

Exhibit 20, Page 021

97. As a result of **DEFENDANTS'** violation of Health and Safety Code § 13007, **PLAINTIFF** suffered recoverable damages to property under Health and Safety Code § 13007.21

98. As a result of **DEFENDANTS'** violation of Health and Safety Code § 13007, **PLAINTIFF** are entitled to reasonable attorneys' fees under Code of Civil Procedure § 1021.9.

99. As a result of the act and omissions of the **DEFENDANTS, PLAINTIFF,** and each of them have suffered harm, injury and damages as set forth above.

100. As a result of the **DEFENDANTS'** actions and omissions, **PLAINTIFF** seeks the imposition of punitive and exemplary damages against the **ROSEBURG DEFENDANTS.**

## V.    PRAYER FOR RELIEF

101. WHEREFORE, **PLAINTIFF** prays for judgment against **DEFENDANTS** ROSEBURG and DOES 1 through 100, and each of them as follows:

For an award against **DEFENDANTS** for Inverse Condemnation, all according to proof, for:

1. Repair, depreciation, and/or replacement of damaged, destroyed, and/or lost personal and/or real property;

2. Loss of wages, earning capacity and/or business profits, use, goodwill, and/or proceeds and/or any related displacement expenses;

3. All costs of suit, including reasonable attorneys' fees, appraisal fees, engineering fees, other expert fees, and related costs;

4. Prejudgment interest;

5. For such other and further relief as the Court shall deem just and proper.

For an award against **DEFENDANTS** for Trespass, Negligence, Private Nuisance, Public Nuisance, and Violation of Health and Safety Code § 13007, all according to proof, for:

1. Repair, depreciation, and/or replacement of damaged, destroyed, and/or lost personal and/or real property;

2. Loss of the use and benefit of Plaintiff' real and/or personal property;

LIC0016992

Exhibit 20, Page 022

3.     Loss of wages, earning capacity, goodwill, and/or business profits or proceeds and/or any related displacement expenses;

4.     Past and future medical expenses and incidental expenses according to proof;

5.     Attorneys' fees, expert fees, consultant fees, and litigation costs and expenses as allowed under Code of Civil Procedure § 1021.9;

6.     Treble damages for wrongful injuries to timber, trees, or underwood as allowed under Civil Code § 3346;

7.     General damages for fear, worry, annoyance, disturbance, inconvenience, mental anguish, emotional distress, loss of quiet enjoyment of property, and personal injury;

8.     All costs of suit;

9.     Prejudgment interest;

10.    Punitive and exemplary damages as allowed under Cal. Civil Code § 3294; and

11.    For such other and further relief as the Court shall deem just and proper.

## VI.   JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Dated: October 4, 2022

                                **COTCHETT, PITRE & McCARTHY LLP**

                                FRANK M. PITRE
                                DONALD J. MAGILLIGAN
                                NABILAH A. HOSSAIN
                                ANDREW W. BRITTON
                                *Counsel for Plaintiff*

Dated: October 4, 2022

                                  **ANDERLINI & MCSWEENEY**

                                P. TERRY ANDERLINI
                                *Counsel for Plaintiff*

**COMPLAINT**                                                 19

LIC0016993