UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RLC INDUSTRIES CO. and ROSEBURG FOREST PRODUCTS CO., <br><br> Plaintiffs, <br><br> v. <br><br> LIBERTY INSURANCE CORPORATION, <br><br> Defendant. | No. 2:23-cv-00649-TLN-SCR <br><br><br> **ORDER** |

This matter is before the Court on Plaintiffs RLC Industries Co. ("RLC") and Roseburg Forest Products Co.'s ("Roseburg") (collectively, "Plaintiffs") Motion for Partial Summary Adjudication. (ECF No. 104.) Also before the Court is Defendant Liberty Insurance Corporation's ("Defendant") Motion for Summary Judgment. (ECF No. 103.) Both motions are fully briefed. (ECF Nos. 109, 111, 120, 121.) For the reasons set forth below, the Court DENIES Plaintiffs' Motion for Partial Summary Adjudication (ECF No. 104) and GRANTS in part and DENIES in part Defendant's Motion for Summary Judgment (ECF No. 103).

///

///

///

I. **FACTUAL AND PROCEDURAL BACKGROUND**[1]

This case arises out of a fire that began at Roseburg's veneer mill and spread to two communities in Northern California (the "Mill Fire"). In September 2022, Roseburg operated a veneer mill in Weed, California. (ECF No. 109-1 at 2.) To protect its operations, Roseburg maintained an insurance tower with six insurers including Defendant and its related or affiliated entity Ohio Casualty Insurance Company ("Ohio Casualty"). (*Id.* at 3; ECF No. 13 at 5.)

Defendant issued a commercial general liability policy to Roseburg for the policy period of November 1, 2021, to November 1, 2022 (the "Policy"). (ECF No. 112 at 2.) The Policy scheduled a $2,000,000 per occurrence "bodily injury" limit and a $2,000,000 per occurrence "logger's property damage liability" limit. (*Id.*) The Policy provided that Defendant "may at [its] discretion, investigate any 'occurrence' and settle any claim or 'suit' that may result." (*Id.* at 2–3.) The Policy further provided that Defendant "will have the right and duty to defend the insured against any 'suit' that may result." (*Id.*) The Policy expressly defined "suit" to mean "a civil proceeding" seeking damages "to which this insurance applies[.]" (*Id.* at 3–4.) Defendant also agreed to pay, with respect to any claim it investigated or settled or any suit against the insured it defended, all expenses it incurred, and all reasonable expenses incurred by the insured at its request to assist it in the investigation or defense of the claim or suit. (*Id.* at 4.) The Policy separately precluded Roseburg from voluntarily incurring any expense, except at Roseburg's own cost. (*Id.*)

On September 2, 2022, the Mill Fire started inside Roseburg's mill and traveled through the neighboring communities of Weed and Lake Shastina, California, burning just under 4,000 acres, causing three fatalities, and damaging or destroying about 89 home and businesses. (*Id.* at 6.) The Mill Fire led to five lawsuits. (ECF No. 109-1 at 23.) On September 3, 2022, Roseburg hired Baker & Hostetler LLP ("Baker") to lead Roseburg's response and defense to Mill Fire liability. (*Id.*) Baker recommended Roseburg retain AlixPartners, LLC ("Alix"), a consulting

---

[1] The factual background is taken largely verbatim from Plaintiffs' Statement of Undisputed Facts (ECF No. 109-1) and Defendant's Statement of Undisputed Facts (ECF No. 112). The facts are not disputed unless otherwise indicated.

2

1    company, to provide "Community Fund and related Claims Administration Services," including
2    "[w]orking with [Roseburg], and its counsel to design and develop the claims process and
3    "[r]eceiv[ing] and process[ing] all proofs of claim and maintain[ing] the claims register." (ECF
4    No. 112 at 8.)

5    On September 6, 2022, Roseburg notified Defendant of the Mill Fire. (ECF No. 109-1 at
6    36.) Roseburg advised it had retained Baker and requested Defendant's consent to continue using
7    Baker as defense counsel. (*Id.*) Defendant initially considered Roseburg's request that it approve
8    or consent to Baker's selection as tripartite defense counsel,[2] but ultimately, declined to proceed
9    for reasons which are disputed by the parties. (ECF No. 112 at 12, 14.) Instead, Defendant
10   selected David Bona ("Bona") of Carlson, Calladine & Peterson LLP as Roseburg's tripartite
11   defense counsel. (*Id.* at 17.) On September 22, 2022, Defendant accepted Roseburg's tender of
12   defense of three lawsuits subject to a limited reservation of rights. The rights reserved included:
13   (1) a right not to indemnify Roseburg against any punitive damage claims a jury may award; (2) a
14   right to decline coverage for Roseburg's payments to its "Community Relief Fund" under the "no
15   voluntary payment" provision of the Policy; and (3) a right to not pay fees and/or costs Roseburg
16   incurred and paid for Alix ("September 22, 2022 Reservation of Rights Letter"). (*Id.* at 23–25.)
17   On October 7, 2022, Roseburg sent Defendant a letter which indicated it had the right to select
18   independent counsel, and "Baker [was] best positioned and best suited to represent Roseburg."
19   (*Id.* at 42.) On November 9, 2022, Defendant accepted Roseburg's tender of defense of a fourth
20   lawsuit. (*Id.* at 25.) The fifth lawsuit settled before Defendant accepted Roseburg's tender of
21   defense. (*Id.* at 26.)

22   Counsel for Roseburg settled the majority of Mill Fire claims in December 2022, three
23   months after the fire occurred. (ECF No. 109-1 at 74.) On January 31, 2023, Defendant issued a
24   check for $792,000 in response to Roseburg's reimbursement request and advised that its

---

[2] Defendant defines a tripartite relationship as one in which "the attorney characteristically is engaged and paid by the carrier to defend the insured . . . . In such a situation, the attorney has two clients whose primary, overlapping and common interest is the speedy and successful resolution of the claim and litigation." *American Mut. Ins. Co. v. Sup. Ct.*, 38 Cal. App. 3d 579, 591–92 (1974).

1 reimbursement payments had exhausted the $4,000,000 in policy limits available under the
2 Policy, thus concluding Defendant's duty to defend Roseburg against Mill Fire suits. (*Id.* at 53.)
3 Plaintiffs brought this action on April 7, 2023, asserting breach of contract and breach of
4 the covenant of good faith and fair dealing claims. (ECF No. 1.) On December 12, 2024,
5 Plaintiffs filed their motion for partial summary adjudication and Defendant filed its motion for
6 summary judgment. (ECF Nos. 103, 104.)

## II. STANDARD OF LAW

Summary judgment is appropriate when the moving party demonstrates no genuine issue of any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id*. at 324 (internal quotation marks omitted). Indeed, summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, *i.e.*, a fact that might affect the outcome of the

4

suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id*. at 251–52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank of Ariz.*, 391 U.S. at 288–89. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits. Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982). The evidence of the opposing party is to be believed and all reasonable inferences that may be drawn from the facts pleaded before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id*. at 587. Cross-motions for summary judgment are evaluated separately under the same standard, 'giving the nonmoving party in each instance the benefit of all reasonable inferences.'" *Am. C.L. Union of Nev. v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003) (citations omitted).

//

//

//

**III.   ANALYSIS**

The parties concurrently move for summary judgment as to Plaintiffs' breach of contract claim.[3] (ECF Nos. 103, 104.) Defendant also moves for summary judgment as to Plaintiffs' breach of the covenant of good faith and fair dealing claim. (ECF No. 104.) The Court will address each claim in turn.

### A.   Breach of Contract Claim

Plaintiffs argue Defendant breached the Policy when it did not fulfill its duty to defend Plaintiffs against Mill Fire liability. (ECF No. 104-1 at 13–24.) Defendant disagrees and argues it discharged its duty when it timely accepted Roseburg's defense and appointed defense counsel. (ECF No. 103 at 20.)

In a claim for breach of contract, a plaintiff must establish: (1) a contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damage to plaintiff. *Nationwide Mutual Ins. Co. v. Ryan*, 36 F. Supp. 3d 930, 938 (N.D. Cal. 2014). Here, the parties only dispute the third prong — whether Defendant breached the contract — and thus the Court declines to address the remaining prongs.[4] Under the third prong, an entity breaches an insurance contract when it "fail[s] to perform under the policy." *Lincoln Nat'l Life Ins. Co. v. Graham*, No. 2:12-cv-02177-SVW-RZ, 2012 WL 12893937, at *7 (C.D. Cal. Sept. 6, 2012); *see also Earth Elements, Inc. v. Nat'l Am. Ins. Co.*, 41 Cal. App. 4th 110, 114 (1995) (stating an insurance company breaches a contract when it wrongfully "fail[s] to provide coverage or defend a claim").

Plaintiffs contend Defendant failed to fulfill its duty to defend in three ways. (ECF No. 104-1 at 13–24.) First, Plaintiffs argue Defendant's coverage position — its reservation of rights and its coordination with Ohio Casualty as to the wildfire exclusion in its policy — created

---

[3] The legal issues presented in Plaintiffs' Motion for Partial Summary Adjudication (ECF No. 103) overlap with those in Defendant's Motion for Summary Judgment (ECF No. 104). Accordingly, the Court refers to the briefing from both motions in summarizing the parties' arguments throughout its Order.

[4] The parties also dispute the amount of Roseburg's damages, but agree the issue involves disputes of fact that cannot be resolved on summary adjudication. (ECF No. 104-1 at 13–14; ECF No. 109 at 25.)

6

conflicts of interest, which each yielded a right to independent counsel. (*Id.* at 15–20.) Second, Plaintiffs argue Defendant failed to appoint tripartite counsel with the capacity to mount an effective defense. (*Id.* at 20–21.) Third, Plaintiffs argue Defendant failed to provide and fund an immediate defense. (*Id.* at 21–24.) The Court will consider each argument in turn.

> *i.   Independent Counsel*

Plaintiffs argue Defendant's coverage position created two separate conflicts of interest, which each yielded a right to independent counsel. (ECF No. 104-1 at 15.) First, Plaintiffs contend the September 22, 2022 Reservation of Rights Letter created a conflict of interest between Roseburg and Defendant because it reserved Defendant's right to deny coverage at any time. (*Id.* at 15–16.) Thus, Plaintiffs contend Defendant could deny coverage based on the Policy's pollution exclusion, the Policy's intended injury exclusion or the lack of an "occurrence." (*Id.*) Second, Plaintiffs contend Defendant coordinated with Ohio Casualty as to the wildfire exclusion in Ohio Casualty's policy, which created a separate conflict of interest. (*Id.* at 16.)

In opposition, Defendant argues it did not have an obligation to provide Plaintiffs with independent counsel because no actual conflict of interest existed. (ECF No. 109 at 16–20.) First, Defendant contends the September 22, 2022 Reservation of Rights letter did not reserve rights on any specific coverage defense and, instead, provided a "general" reservation of the right to later decline coverage and withdraw its defense, which does not constitute a conflict.[5] (*Id.* at 6–7.) Defendant argues Plaintiffs improperly seek to manufacture a conflict of interest by relying on coverage defenses that Defendant never raised. (*Id.* at 7.) Second, Defendant contends it never asserted — and could not assert — a wildfire exclusion defense because the Policy

---

[5] Defendant also makes two threshold arguments. First, Defendant argues Plaintiffs disregard the Policy's terms and limitations such as Defendant's duty under the Policy to defend "suits" — not claims — and pay for defense expenses incurred by Defendant — not Roseburg. (ECF No. 109 at 6.) Second, Defendant argues Plaintiffs disregard that, absent Defendant's request or consent, the Policy does not allow Roseburg to recover expenses that it voluntarily incurred. (*Id.*) As the Court concludes Defendant did not breach the contract, the Court declines to address these arguments.

7

contained no such exclusion. (*Id.* at 18.) Defendant further contends Ohio Casualty never reserved rights on its wildfire exclusion either. (*Id.*)

In diversity cases involving insurance coverage claims in California, federal courts apply California law. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F. 3d 1025, 1031 (9th Cir. 2008). California Civil Code § 2860 ("§ 2860") provides:

> (a) If the provisions of a policy of insurance impose a duty to defend upon an insurer and a conflict of interest arises which creates a duty on the part of the insurer to provide independent counsel to the insured, the insurer shall provide independent counsel to represent the insured unless, at the time the insured is informed that a possible conflict may arise or does exist, the insured expressly waives in writing, the right to independent counsel. An insurance contract may contain a provision which sets forth the method of selecting counsel consistent with this section.
>
> (b) For purposes of this section, a conflict of interest does not exist as to allegations or facts in the litigation for which the insurer denies coverage; however, when an insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim, a conflict may exist. No conflict of interest shall be deemed to exist as to allegations of punitive damages or be deemed to exist solely because an insured is sued for an amount in excess of the insurance policy limits.

Thus, pursuant to § 2860, the obligation to provide independent counsel is triggered when (1) the insurer makes a reservation of rights as to a coverage issue and (2) the counsel first retained by the insurer controls the outcome of that issue. Cal. Civ. Code § 2860(b). The requirement to provide independent counsel is not based on insurance law but "on the ethical duty of an attorney to avoid representing conflicting interests." *Golden Eagle Ins. Co. v. Foremost Ins. Co.*, 20 Cal. App. 4th 1372, 1394 (1993). For independent counsel to be required, the conflict of interest must be "significant, not merely theoretical, actual, not merely potential." *Dynamic Concepts, Inc. v. Truck Ins. Exchange*, 61 Cal. App. 4th 999, 1007 (1998).

Here, the undisputed evidence demonstrates Defendant did not raise any Policy terms or exclusions as a potential bar to coverage. Specifically, there is no evidence that Defendant raised a bar to coverage based on the Policy's pollution exclusion, the Policy's intended injury exclusion, the lack of an "occurrence," or a wildfire exclusion. Indeed, the Policy did not contain a wildfire exclusion, and Plaintiffs do not dispute that neither Defendant nor Ohio Casualty

8

1  asserted a defense based on a wildfire exclusion. (ECF No. 103-7 at 293–304.) Thus, "[w]here
2  the insurer has not expressly reserved its right to deny coverage under a particular exclusion in its
3  policy, there can be no actual conflict based on the application of that exclusion during the
4  pendency of the action." *Dynamic Concepts, Inc.*, 61 Cal. App. 4th at 1010 n.10.

5        Plaintiffs' advancement of two novel theories as to why a conflict of interest existed are
6  unpersuasive. First, Plaintiffs' argument that a conflict of interest existed because Defendant
7  could have asserted the Policy's terms and exclusions at some point based on Defendant's 2022
8  Reservation of Rights letter is contrary to California law. As previously noted, for independent
9  counsel to be required, the conflict of interest must be "significant, not merely theoretical, actual,
10 not merely potential." *Dynamic Concepts, Inc.*, 61 Cal. App. 4th at 1007. Second, Plaintiffs'
11 argument that a conflict of interest existed because Ohio Casualty had a wildfire exclusion in its
12 Policy and a relationship exists between Defendant and Ohio Casualty is underdeveloped.
13 Plaintiffs offer no authority to support that an exclusion in an excess policy with no duty to
14 defend triggers an obligation of a primary defending insurer with no such exclusion to provide
15 independent counsel. Absent more from Plaintiffs, the Court finds no actual conflict of interest
16 existed as Defendant did not expressly reserve its right to deny coverage under a particular
17 exclusion in the Policy.

18         *ii.*    *Competent Tripartite Counsel*

19       Plaintiffs argue Defendant breached its duty to defend by failing to appoint tripartite
20 counsel with the capacity to mount an effective defense. (ECF No. 104-1 at 21.) Plaintiffs
21 describe Carlson, Calladine & Peterson LLP as an unknown firm with just nine attorneys. (ECF
22 No. 109-1 at 63–64.) Plaintiffs contend the firm's website stressed its competence in representing
23 insurers in bad faith cases, though it mentioned a two-attorney fire group. (*Id.* at 64.) Plaintiffs
24 further contend Defendant never responded to requests for information about the firm's capacity.
25 (*Id.* at 65.) Plaintiffs argue an insurer could not have fulfilled its duty to defend by appointing a
26 single attorney at a nine-person firm to defend the Mill Fire claims. (ECF No. 104-1 at 21.)
27 Plaintiffs further argue the firm lacked sufficient resources to competently defend the Mill Fire
28 claims and Defendant made no effort to show otherwise. (*Id.*)

In opposition, Defendant argues it did not breach its duty to defend as it had the right to control the defense through appointed counsel. (ECF No. 109 at 8.) Defendant contends Bona had the requisite skill and experience to defend Roseburg against lawsuits arising from the Mill Fire, and law firm size is not a measure of competency. (*Id.*) Specifically, Defendant contends Bona defended approximately twenty fire loss cases, many of which involved millions or hundreds of millions of dollars in alleged damages and had extensive experience defending a broad range of negligence and other types of tort claims. (ECF No. 112 at 18.)

A liability insurer's duty to defend requires that it employ competent counsel to represent the insured. *Merritt v. Reserve Ins. Co.*, 34 Cal. App. 3d 858, 882 (1973). Under the California Rules of Professional Conduct, "competence" in "any legal service" is defined as applying "the (i) learning and skill, and (ii) mental, emotional, and physical ability reasonably necessary for the performance of such service." Cal. R. Prof. Conduct 1.1(b).

The Court finds Plaintiffs have not met their burden of demonstrating that Defendant breached their duty to employ competent counsel. Rather than discussing the measures of competency, as laid out in the California Rules of Professional Conduct, Plaintiffs make the conclusory argument that Defendant could not fulfill its duty by appointing a single attorney at a nine-person firm. Plaintiffs' argument is unsupported by law or fact. The undisputed evidence demonstrates Bona defended at least twenty clients in lawsuits involving mass fire claims. (ECF No. 112 at 18–23.) Accordingly, and absent argument to the contrary, the Court finds Bona was competent to apply the learning and skill and mental, emotional, and physical ability reasonability necessary for the performance of defense counsel against Mass Fire liability, and Defendant did not breach its duty to defend.

### iii.   *Provide and Fund Immediate Defense*

First, Plaintiffs argue Defendant breached its duty to defend by delaying in providing an immediate defense for Plaintiffs. (ECF No. 104-1 at 21–23.) Specifically, Plaintiffs contend Roseburg notified Defendant of the Mill Fire claims on September 6, 2022, but Defendant did not appoint counsel until September 22, 2022. (ECF No. 109-1 at 36.)

Defendant contends Roseburg tendered the first of three Mill Fire lawsuits on

September 9, 2022 and the others on September 12 and 14, 2022.  (ECF No. 112 at 17.)  Defendant argues it accepted Roseburg's defense within thirteen days of tender, which complied with applicable insurance regulations.  (*Id.* at 25.)

The Court finds Defendant did not fail to provide an immediate defense.  Defendant accepted Roseburg's defense within thirteen days of tender — well within the applicable timeframe.  *See* 10 Cal. C. Regs. § 2695(b); 10 Cal. C. Regs. § 2695.5(e); Cal. Ins. Code 790.03(h)(4).

Second, Plaintiffs argue Defendant breached its duty to defend by failing to fund Roseburg's defense promptly.  (ECF No. 104-1.)  Specifically, Plaintiffs contend Defendant waited nearly a year after Plaintiffs filed the instant suit to pay the fees Baker incurred between September 6, 2022 and September 22, 2022.[6]  (ECF No. 109-1 at 76.)  According to Plaintiff, this delay alone constituted a breach of the duty to defend.  (*Id.*)  Plaintiffs further contend Roseburg has yet to receive full payment for its defense costs.  (ECF No. 104-1 at 24.)

Defendant argues Roseburg failed to send it its expense invoices prior to filing suit, despite its invitation to do so.  (ECF No. 109 at 13.)  Defendant further argues it had no duty to fund Plaintiffs' defense through Baker and paid Roseburg's post-tender, pre-acceptance defense fees and costs.  (*Id.* at 42.)

The Court finds Defendant did not fail to fund an immediate defense.  It is undisputed that Defendant reimbursed Plaintiffs $946,794.70 for reasonable post-tender, pre-acceptance attorneys' fees and costs.  (ECF No.109-1 at 76.)  To the extent Plaintiffs argue Defendant's payment was delayed, Plaintiffs fail to explain why the delay was unreasonable.  In fact, Plaintiffs fail to respond at all to Defendant's proffered reason for the timing of its payment.  Furthermore, and as already discussed, once Defendant accepted tender of Plaintiffs' defense, it was not under

---

[6]  Plaintiffs argue for the first and only time in their reply brief that Defendant did not pay all costs Plaintiffs incurred between September 2, 2022 through September 6, 2022 — *i.e.*, Plaintiffs' pre-tender costs.  (ECF No. 121 at 13.)  Plaintiffs' position is devoid of meaningful analysis and unsupported by applicable authority.  As such, the Court declines to consider Plaintiffs' argument.  *Zamani v. Carnes,* 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

any obligation to pay for fees and costs Plaintiffs incurred for Baker and Alix as the Policy prohibits coverage for expenses incurred without Defendant's consent. (ECF No. 112 at 4, 6–8.) Accordingly, the Court finds Defendant funded an immediate defense.

In sum, based on the record before it, the Court finds Defendant was not required to provide independent counsel as no actual conflict of interest existed between Defendant and Roseburg, Defendant appointed competent defense counsel, and Defendant provided and funded an immediate defense. Accordingly, the Court DENIES Plaintiffs' Motion for Partial Summary Adjudication and GRANTS Defendant's Motion for Summary Judgment as to Plaintiffs' breach of contract claim.

### B.     Breach of Good Faith and Fair Dealing Claim

Defendant contends the undisputed material facts prove that Defendant timely accepted Roseburg's defense, appointed defense counsel, reimbursed Roseburg for reasonable post-tender, pre-acceptance fees and costs, and paid its full $4,000,000 policy limits. (ECF No. 103 at 28.) In opposition, Plaintiffs assert Defendant repeatedly and unreasonably deprived Plaintiffs of policy benefits in the following ways: failing to conduct an independent investigation or analysis of the facts of the Mill Fire or Roseburg's exposure; delaying its acceptance of Roseburg's defense; unilaterally appointing counsel without the capacity to defend Roseburg; declining to provide independent counsel; reimbursing Roseburg for post-tender, pre-acceptance defense costs a year after Plaintiffs filed the instant lawsuit without explaining which costs were included; scheming with Ohio Casualty to file a declaratory judgment action against Roseburg; retaining Bona on September 13, 2022 and withholding the information for over a week; giving Roseburg the impression that it had no issues with Baker as defense counsel; alleging a conflict with Baker even though Baker immediately withdrew from any coverage-related responsibilities; failing to respond to questions about Bona's capacity to handle the case; and providing Roseburg with no other options for defense counsel. (ECF No. 111 at 25.)

In California, "all contracts contain an implied covenant of good faith and fair dealing." San Jose Prod. *Credit Ass'n v. Old Rep. Life Ins. Co.*, 723 F.2d 700, 703 (9th Cir. 1984). "This covenant requires each contracting party to refrain from doing anything to injure the right of the

12

other to receive the benefits of the agreement." *Id.* (quoting *Egan v. Mutual of Omaha Insurance Co.*, 24 Cal. 3d 809, 818 (1979)). Courts have found bad faith in situations where the insurer has made only a "perfunctory investigation" regardless of whether there is a genuine dispute to coverage. *See Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 723 (2007), *as modified* (Dec. 19, 2007) ("The genuine dispute rule does not relieve an insurer from its obligation to thoroughly and fairly investigate, process and evaluate the insured's claim. A genuine dispute exists only where the insurer's position is maintained in good faith and on reasonable grounds."); *Progressive W. Ins. Co. v. Tiscareno*, No. 08-CV-180 W (CAB), 2010 WL 3063276, at *5 (S.D. Cal. Aug. 3, 2010) (finding that summary judgment was not appropriate as to a bad faith claim involving an insurer where there was a material issue of fact as the insurer's reasonableness in delaying payments).

Here, there are allegations that Defendant acted in bad faith and deprived Plaintiffs of benefits of the Policy. (ECF No. 111 at 24.) Defendant fails to adequately respond to these allegations. Therefore, there is a genuine dispute as to whether Defendant fulfilled its obligation to Plaintiffs. See *Frommoethelydo v. Fire Ins. Exch.*, 42 Cal. 3d 208, 220 (1986) (finding a breach where the insurer was advised of the existence of witnesses who had observed the equipment in plaintiff's house, and the insurer failed to investigate). Because Plaintiffs have demonstrated that genuine issues of material fact exist regarding Defendant's reasonableness, summary judgment is not appropriate. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### C.   Punitive Damages

Similarly, Defendant fails to show that the Court should grant summary judgment as to Plaintiffs' prayer for punitive damages. Civil Code section 3294 provides: "In an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, express or implied, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant." *Egan*, 24 Cal. 3d at 819. The special relationship between the insurer and the insured illustrates the public policy considerations that support exemplary damages in such cases. *Id.* This relationship is

1 inherently unbalanced due to the adhesive nature of insurance contracts which place the insurer in a superior bargaining position. *See Jonathan Neil & Associates, Inc. v. Jones*, 33 Cal. 4th 917, 937 (2004), *as modified* (Oct. 20, 2004) ("In the area of insurance contracts the covenant of good faith and fair dealing has taken on a particular significance, in part because of the special relationship between the insurer and the insured."). Thus, the California Supreme Court has found that the availability of punitive damages is compatible with the recognition of insurers' underlying public obligations and reflects an attempt to restore balance in the contractual relationship. *Egan*, 24 Cal. 3d at 820. Based on such allegations, the Court finds that summary judgment as to Plaintiffs' prayer for punitive damages would be inappropriate at this juncture.

Accordingly, the Court DENIES Defendant's Motion for Summary Judgment as to Plaintiffs' breach of good faith and fair dealing claim and punitive damages.

### IV. CONCLUSION

For the foregoing reasons, the Court hereby DENIES Plaintiffs' Motion for Partial Summary Adjudication (ECF No. 104) and GRANTS in part and DENIES in part Defendant's Motion for Summary Judgment (ECF No. 103) as follows:

1. The Court GRANTS Defendant's Motion for Summary Judgment as to Plaintiffs' first cause of action for breach of contract;
2. The Court DENIES Defendant's Motion for Summary Judgment as to Plaintiffs' second cause of action for breach of good faith and fair dealing; and
3. The Court DENIES Defendant's Motion for Summary Judgment as to Plaintiffs' claim for punitive damages.

The parties are hereby ordered to file a Joint Notice of Trial Readiness within thirty (30) days of the electronic filing date of this Order, indicating their readiness to proceed to trial on Plaintiffs' remaining claims.

IT IS SO ORDERED.

Date: August 27, 2025

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE